FILED
CLERK, U.S. DISTRICT COURT

OCT 3 1 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1  Lynn Lincoln Sarko, Esq.
   lsarko@kellerrohrback.com
2  Michael D. Woerner, Esq.
   mwoerner@kellerrohrback.com
3  Gretchen Freeman Cappio, Esq.
   gcappio@kellerrohrback.com
4  Havila Unrein, Esq.
   hunrein@kellerrohrback.com
5  **KELLER ROHRBACK, L.L.P.**
   1201 Third Avenue, Suite 3200
6  Seattle, WA 98101
   Telephone: (206) 623-1900
7  Facsimile: (206) 623-3384

8  Sharon Hritz, Esq. (CA Bar No. 265105)
   shritz@kellerrohrback.com
9  **KELLER ROHRBACK L.L.P.**
   1129 State Street, Suite 8
10 Santa Barbara, CA 93101
   Phone: (805) 456-1496
11 Facsimile: (805) 456-1497

12 Mark D. Samson, Esq.
   msamson@kellerrohrback.com
13 **KELLER ROHRBACK, P.L.C.**
   3101 N. Central Avenue, Suite 1400
14 Phoenix, AZ 85012
   Telephone: (602) 248-0088
15 Facsimile: (602) 248-2822

16 *Additional Counsel on Signature Page*

17          **UNITED STATES DISTRICT COURT**
           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
18
                                              **CV12-09366** -SVW (MANx)
19 JENNIFER L. SAAVEDRA, an                   Case No.
   individual, on behalf of herself and all
20 other persons similarly situated,          **COMPLAINT**

21              Plaintiff,                     CLASS ACTION

22       vs.                                   DEMAND FOR JURY TRIAL

23 ELI LILLY AND COMPANY, an Indiana
   corporation,
24
                Defendant.
25

26
27       For her Complaint, Plaintiff Jennifer L. Saavedra ("Plaintiff"), upon information

28 and belief, alleges as follows:

1

## NATURE OF ACTION

1.     This matter arises out of Defendant Eli Lilly and Company's ("Lilly") deceptive and unlawful marketing of the "blockbuster" antidepressant Cymbalta (generically known as duloxetine).  Since Cymbalta first entered the antidepressant market in 2004, Lilly has engaged in a calculated campaign to mislead consumers and healthcare professionals about the frequency, severity, and duration of symptoms associated with stopping Cymbalta, a condition known as Cymbalta withdrawal.

2.     Lilly's clinical trials of Cymbalta indicate that Cymbalta withdrawal is a frequent and, at times, painful condition.  Users stopping Cymbalta experience symptoms such as headaches, dizziness, nausea, fatigue, diarrhea, paresthesiam, vomiting, irritability, nightmares, insomnia, anxiety, hyperhidrosis, sensory disturbances, suicidal ideation, electrical "brain zaps," seizures, and vertigo.  These symptoms can range from mild to severe—the latter consisting of debilitating and painful symptoms that last several months.

3.     Since Cymbalta's release in 2004, Lilly has warned consumers and healthcare professionals that Cymbalta withdrawal symptoms occur "at a rate greater than or equal to one (1) percent[.]"  This characterization is at best misleading.  In truth, Lilly's own clinical trials indicate that up to fifty-one (51) percent of Cymbalta users experience withdrawal symptoms, and approximately thirty (30) percent of users experience moderate or severe symptoms.

4.     Lilly has carefully crafted a warning label that is designed to mislead consumers and healthcare professionals into believing that Cymbalta withdrawal is rare or mild.  The reason why is simple—Lilly knows that once it gets users "hooked" on Cymbalta, Lilly will have a legion of physically-dependant, life-long customers.

5.     In response to Lilly's deceptive and unlawful marketing practices, a community of former and current Cymbalta users has emerged to provide mutual support and guidance in dealing with Cymbalta withdrawal.  Since Lilly has not

provided any substantive guidance on how to properly deal with Cymbalta withdrawal, people have developed *ad hoc* programs for slowly weaning off Cymbalta over several months. Regardless of the approach, however, users attempting to stop Cymbalta, even gradually, experience substantial withdrawal symptoms. Users can even experience Cymbalta withdrawal months after they have fully stopped taking the drug.

6.     Plaintiff Jennifer L. Saavedra ("Plaintiff"), like many Cymbalta consumers within the United States, used Cymbalta to treat ongoing depression and anxiety. She believed, based on Lilly's extensive marketing and promotion that Cymbalta would help her manage the symptoms related to her medical condition. She did not know at that time, however, that she was trading marginal relief from depression and anxiety for dependency on a drug. After taking Cymbalta for a period of time, Plaintiff felt that her depression and anxiety had improved and she decided to stop Cymbalta. But, despite her best efforts, she could not. She began to experience substantial and significant withdrawal symptoms including, but not limited to, severe nausea, electrical "brain zaps," full-body shaking, and debilitating tunnel vision. She was forced to continue Cymbalta just to mitigate the withdrawal. She was, in other words, "hooked." Although it took her almost an entire year, Plaintiff was able to slowly wean herself off Cymbalta. However, even after she had finally stopped Cymbalta, she continued to experience withdrawal symptoms for several months. Plaintiff would have never started Cymbalta if she had known the truth.

7.     Lilly knew that disclosing the real risks of Cymbalta withdrawal in its marketing and risk disclosure materials would have been disastrous to its sales. Instead of honestly disclosing the risks associated with Cymbalta withdrawal and letting consumers and prescribing healthcare professionals decide if Cymbalta was worth the risk, Lilly chose to engage in deceptive and unlawful marketing practices designed to hide the truth.

8.     As a result of Lilly's deceptive and unlawful marketing practices, it is estimated that Lilly has sold approximately $18 billion in Cymbalta between 2004 and 2011.

9.     Plaintiff brings this lawsuit against Lilly in two capacities.  First, Plaintiff brings a consumer protection class action, on behalf of herself and those similarly situated, seeking relief for Lilly's deceptive and unlawful marketing of Cymbalta in the United States.  Second, Plaintiff brings suit on behalf of herself for the personal injuries and pain she sustained during her Cymbalta withdrawal.

## PARTIES

10.     Plaintiff Jennifer J. Saavedra is, and was at all times material herein, a citizen, resident, and domicile of the State of California, County of Los Angeles.

11.     Defendant Eli Lilly and Company is, and was at all times material herein, an Indiana corporation with its headquarters in Indianapolis, Indiana.  Lilly is, and was at all material times herein, a pharmaceutical company involved in the research, development, testing, manufacture, production, distribution, marketing, and sale of numerous pharmaceutical products, including Cymbalta (generically known as duloxetine).  Lilly regularly conducts business, including the sale and marketing of Cymbalta, within the State of California and the United States of America.

## JURISDICTION AND VENUE

12.     With regard to the class action claims, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d).  Members of the proposed nationwide class are citizens of different States than Lilly.  Furthermore, the aggregate amount in controversy exceeds $5,000,000.

13.     With regard to the individual claims against Lilly, this Court has subject-matter jurisdiction pursuant to 18 U.S.C. § 1332(a).  There is complete diversity of citizenship between Plaintiff and Lilly and the amount in controversy exceeds $75,000.

14.     This Court has personal jurisdiction over Lilly because Lilly has purposefully directed its marketing and sales of numerous pharmaceutical products to the State of California.  Lilly has had substantial contacts with the State of California such that maintenance of the action is consistent with traditional notions of fair play and substantial justice.

15.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b).  A substantial portion of the events giving rise to the claims alleged in this Complaint took place within the Central District for the District of California.

## FACTUAL BACKGROUND

16.     The market for antidepressants is large and competitive.  Since the emergence of "blockbuster" antidepressants in the 1980s, a multi-billion dollar industry has taken hold in the United States and Europe.  The antidepressant industry generates revenue in excess of $11 billion each year and the market continues to grow annually.  There are dozens of brand name and generic drugs approved by the Food and Drug Administration ("FDA") for the treatment of depression and anxiety.  Due to the availability of so many different antidepressants, prescribing physicians and consumers typically "shop around" when trying to find the right drug.  Thus, in order to remain competitive in the competitive antidepressant market, pharmaceutical companies spend hundreds of millions of dollars each year promoting directly to consumers and the medical community.  The sheer number of drug commercials on television today speaks to the competitive nature of the industry.

17.     Lilly is one of the largest pharmaceutical companies in the world with annual revenues exceeding $20 billion.  Lilly is a leader in the antidepressant industry and has enjoyed considerable financial success from the manufacture and sale of psychotropic drugs designed to treat mental illness.  In fact, Lilly was the creator of the first "blockbuster" drug in the antidepressant industry: Prozac (generically known as fluoxetine).

18.     When Lilly launched Prozac in 1988, it was touted as the first "Selective Serotonin Reuptake Inhibitor" ("SSRI") antidepressant, a class of drugs that supposedly increases the neurotransmitter serotonin in the brain.  It was theorized that reduced levels of serotonin in the brain was the primary physiological cause of depression and through use of an SSRI, such as Prozac, one could "balance the brain's chemistry" and increase otherwise deficient serotonin levels.  Although recent research has undermined the "balancing brain chemistry" theory, Prozac was extremely popular in the 1990s and was the top-selling antidepressant of its kind.

19.     In August 2001, Lilly's patent on Prozac expired, leading to a proliferation of generic versions of the drug.  Needing to fill the void left by the decreased sales of Prozac, Lilly developed a new (and patented) antidepressant: Cymbalta.  Unlike Prozac, Cymbalta is a "Serotonin Norepinephrine Reuptake Inhibitor ("SNRI"), which in addition to supposedly increasing the amount of serotonin in the brain, also increases the amount of norepinephrine (a neurotransmitter and hormone associated with cardiovascular regulation).  Lilly and other SNRI manufactures admit that "the exact way that Cymbalta works in people is unknown," however, they promote the drugs by stating that higher levels of these neurotransmitters somehow improve and elevate mood.

20.     Cymbalta was approved by the FDA in 2004 for Major Depressive Disorder ("MDD") after it was initially rejected in 2003 due to Lilly's significant violations of good manufacturing practices and Cymbalta's potential for liver toxicity. The FDA approved Cymbalta after the manufacturing issues were resolved and a liver toxicity warning was included with the prescribing information.  Thereafter, Lilly obtained approval of Cymbalta for various other indications including Generalized Anxiety Disorder (2007), fibromyalgia (2008), and musculoskeletal pain (2010). Currently, Lilly is undergoing clinical trials with Cymbalta to gain approval for the treatment of Chronic Fatigue Syndrome.

21.     Since gaining approval from the FDA in 2004 for MDD, Lilly has aggressively marketed Cymbalta to the public and the medical community, spending millions each year on advertising and promotion.  Lilly promotes Cymbalta directly to consumers and healthcare professionals through all major media outlets, including television, radio, internet, print, and a large force of pharmaceutical representatives.  After Cymbalta's launch in 2004, Lilly initiated one of the largest (and most expensive) direct-to-consumer marketing campaigns.  Cymbalta's slogan:  "Depression Hurts. Cymbalta can help." and its accompanying advertisements flooded all major media markets.  The campaign was a huge success and propelled Cymbalta to be one the top selling "blockbuster" antidepressants from 2004 until the present.  It also made Lilly one of the largest direct-to-consumer advertisers in the pharmaceutical industry.

22.     A substantial portion of Defendant's revenue and profits derive from the sale of Cymbalta.  Since Cymbalta's approval in 2004, Cymbalta sales have generated billions each year, including approximately $3.1 billion in 2009, $3.5 billion in 2010, and $4.16 billion in 2011.

### Lilly Deliberately Misled Consumers About the Frequency, Severity, and Duration of Cymbalta Withdrawal

23.     Cymbalta can create a physical dependence.  Users who take Cymbalta are faced with severe physiological and psychological symptoms when they attempt to stop, including, *inter alia*, headaches, dizziness, nausea, fatigue, diarrhea, paresthesiam, vomiting, irritability, nightmares, insomnia, anxiety, hyperhidrosis, sensory disturbances, electric shock sensations in the head, suicidal ideation, seizures, and vertigo.  Accordingly, once Cymbalta users try to stop, the symptoms can be severe enough to force them to start taking Cymbalta again simply to stop the withdrawal.  In other words, users develop a physical dependence on Cymbalta.  To beat the physical dependence, users are forced to engage a protracted period of withdrawal—slowly reducing the ingestion of Cymbalta over several months until it is fully out of the body.

During this period, users still experience substantial withdrawal symptoms, which can even continue for months after fully stopping the drug.

24.    The frequency, severity, and duration of Cymbalta withdrawal has been concealed from consumers and healthcare professionals since Cymbalta first entered the market in 2004.  Lilly, through a comprehensive and misleading marketing strategy, purposefully deceived consumers and healthcare professionals into believing that Cymbalta withdrawal is rare or uncommon.   In truth, a significant percentage of Cymbalta users experience withdrawal.

25.    Cymbalta's label and prescription information mischaracterizes the frequency, severity, or duration of Cymbalta withdrawal.  The Cymbalta label, as of 2011, states:

> Discontinuation symptoms have been systematically evaluated in patients taking duloxetine.  Following abrupt or tapered discontinuation in placebo-controlled clinical trials, the following **symptoms occurred at rate greater than or equal to 1%** and at a significantly higher rate in duloxetine-treated patients compared to those discontinuing from placebo: dizziness, nausea, headache, fatigue, paresthesia, vomiting, irritability, nightmares, insomnia, diarrhea, anxiety, hyperhidrosis, and vertigo.
>
> During marketing of other SSRIs and SNRIs (serotonin and norepinephrine reuptake inhibitors), there have been spontaneous reports of adverse events occurring upon discontinuation of these drugs, particularly when abrupt, including the following: dysphoric mood, irritability, agitation, dizziness, sensory disturbances (e.g., paresthesias such as electric shock sensations), anxiety, confusion, headache, lethargy, emotional lability, insomnia, hypomania, tinnitus, and seizures.  Although these events are generally self-limiting, some have been reported to be severe.

(emphasis added).  Although Lilly has amended Cymbalta's label several times since 2004, such as the inclusion and exclusion of certain withdrawal symptoms and minor word changes, the label has not been materially altered since its first publication.

26.    Cymbalta's warning label, as it existed in 2004 and up until the present, is fundamentally misleading and deceptive.  A casual reading of the label suggests that withdrawal symptoms occur in approximately one (1) percent of users.  A detailed reading of the label, however, tells you essentially nothing.  A consumer or prescribing

healthcare professional reading this warning would gain very little information about the actual frequency, severity, or duration of Cymbalta withdrawal and would reasonably conclude that the likelihood of withdrawal symptoms was generally rare or approximately one (1) percent.

27.     In truth, Cymbalta withdrawal is frequent and severe.  As documented in Cymbalta's clinical trials, which were used by Lilly to gain approval from the FDA for the treatment of clinical depression, during six (6) double-blind trials of Cymbalta approximately forty-five (45) percent of users experienced some withdrawal symptoms and approximately twenty-five (25) percent experienced moderate or severe symptoms. David G. Perahia, et al, *Symptoms Following Abrupt Discontinuation of Duloxetine Treatment in Patients with Major Depressive Disorder*, 89 JOURNAL OF AFFECTIVE DISORDERS 207, 208-09 (2005).[1]  Several experiencing severe withdrawal symptoms even required hospitalization.  Moreover, during a much larger open-label trial (where users were aware they were taking Cymbalta) involving 1,279 subjects, approximately fifty-one (51) percent of users experienced some withdrawal symptoms, and approximately thirty (30) percent experienced moderate or severe symptoms.  The results of Lilly's clinical trials indicate that approximately half of Cymbalta users experience withdrawal symptoms when they stop taking the drug.

28.     Nowhere on the Cymbalta label does it indicate that a significant percentage of users who knowingly take Cymbalta, *i.e.*, (51) percent, experience withdrawal symptoms or that approximately thirty (30) percent of users experience severe to moderate withdrawal.  Instead, Lilly has carefully crafted a misleading and confusing phrase "greater than or equal to one (1) percent" to suggest to consumers and

---

[1] The study also noted that the withdrawal symptom data complied during Lilly's clinical trials was gathered from "spontaneous reports" of symptoms (patients volunteering symptoms), and not using the more accurate "symptom checklist."  The authors state that use of a symptom checklist would likely produce even higher incidence rates of withdrawal symptoms.

1    prescribing healthcare professionals that withdrawal symptoms are rare or

2    approximately one (1) percent.

3         29.    Lilly's clinical trials also revealed that approximately half of those

4    individuals experiencing Cymbalta withdrawal exhibited symptoms lasting longer than

5    two weeks (the period of time Lilly's clinical trials kept track of withdrawal symptoms).

6         30.    Again, nowhere on Cymbalta's label does it indicate the potential duration

7    of withdrawal symptoms.

8         31.    Lilly has been aware of the existence of antidepressant withdrawal

9    syndrome in SNRIs and SSRIs for many years.  Moreover, Lilly was fully aware of the

10   frequency, severity, and duration of Cymbalta withdrawal as it was documented in

11   Cymbalta's clinical trials.  However, instead of giving consumers and prescribing

12   healthcare professionals sufficient information to decide whether the potential for

13   Cymbalta withdrawal was worth the risk, Lilly deliberately obscured the data.  Lilly

14   carefully crafted a "discontinuation warning" designed to give the impression that

15   Cymbalta withdrawal was rare.  Lilly knew that in the competitive antidepressant

16   market, if consumers and healthcare professionals knew how frequently Cymbalta

17   created physical dependence, Cymbalta would not be the "blockbuster" drug Lilly

18   needed it to be.

19        32.    Lilly's deceptive warning label is just one component of a comprehensive

20   marketing scheme designed to mislead consumers and healthcare professionals about

21   the risks of Cymbalta.  On information and belief, Lilly has engaged in selective and

22   biased publication of Cymbalta's clinical trials by only publishing studies favorable to

23   Cymbalta.  Selective publication of clinical trial data gives the impression that Cymbalta

24   is safer and more effective than it actually is.  A recent study published in the New

25   England Journal of Medicine exposed this practice.  *See* Erick H. Turner, et al.,

26   *Selective Publication of Antidepressant Trials and Its Influence on Apparent Efficacy*,

27   358 NEW ENG. J. MED. 252, 252-60 (2008).  The study found "a bias toward the

28

publication of positive results" and that a survey of published literature indicates that ninety-four (94) percent of clinical trial studies were positive, whereas only fifty-one (51) percent of the studies actually submitted to the FDA were positive.  The study concluded that, as a result of this selective publication, the published literature conveyed a misleading impression that drugs like Cymbalta were thirty-three (33) percent more effective than the clinical trial data supported.

33.     Lilly is no stranger to misleading advertising tactics.  Lilly has a documented history of concealing the adverse effects of psychotropic medication in the pursuit of profit.  In 2009, Lilly was criminally prosecuted by the United States Department of Justice for improperly advertising and concealing the adverse side effects of Zyprexa, an antipsychotic drug, between 1996 and 2007 (a period of time wherein Lilly was marketing Cymbalta).  Lilly ultimately pled guilty to the charges and was forced to pay a $1.415 billion settlement to the United States, including a $515 million criminal fine, which, at that time, was the single largest settlement in healthcare litigation history.

34.     Lilly's history of misleading consumers also extends to its advertising and marketing of Cymbalta.  On September 21, 2007, the FDA penalized Lilly for unlawfully promoting delayed-release Cymbalta products to consumers through various direct mailer advertisements.  According to the FDA, Lilly's Cymbalta advertisement was "false or misleading" because it "overstate[d] the efficacy of Cymbalta by suggesting that patients with [diabetic peripheral neuropathy] who are treated with the drug experience less pain interference with overall functions, ***when this has not been demonstrated by substantial evidence or substantial clinical experience.***"  Letter from Michelle Safarick, Regulatory Review Officer, Division of Drug Marketing, FDA, to Michelle Sharp, Manager of U.S. Regulatory Affairs, Eli Lilly and Company (Sept. 21, 2007) at 4 (emphasis added). [2]  The FDA further stated that Lilly's advertisements were

---

[2] *Available at* http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/

misleading because they "fail to reveal facts that are material[.]" *Id.* at 5. Those material facts include "the Precautions relating to hepatotoxicity, ***abrupt discontinuation of Cymbalta treatment***, and use of the drug in patients with concomitant illness." *Id.* (emphasis added).

35.    Again, on March 26, 2009, Lilly was penalized for illegally marketing Cymbalta and several other drugs for failing to include relevant risk information and inadequately communicating the drug's approved indications in numerous online advertisements.  Letter from Michael Sauers, Regulatory Review Officer, Division of Drug Marketing, FDA, to Michelle Sharp, Director of U.S. Regulatory Affairs, Eli Lilly and Company (Mar. 26, 2009) at 2-3.[3]  The FDA demanded that Lilly cease its illegal marketing practices, and "encourage[d] [Lilly] to review [their] promotional materials for the other prescription drug products that Lilly promotes in the United States and to discontinue or revise any materials with the same or similar violations[.]" *Id.* at 3-4.

36.    Despite being monitored by the FDA, and being penalized and corrected on numerous occasions, Lilly is doing it again.  This time, Lilly is concealing the frequency, severity, and duration of Cymbalta withdrawal.   Lilly's marketing approach for Cymbalta is calculated to mislead consumers about Cymbalta withdrawal so users develop a physical dependence.  For example, Lilly's current marketing campaign, "the Cymbalta Promise" is specifically designed to exploit Cymbalta's unknown habit-forming characteristics.  The Cymbalta Promise provides new users the "opportunity" to take Cymbalta free of charge for sixty (60) days—the time it takes, according to Lilly's clinical trials, to create withdrawal symptoms in approximately half of users.  Lilly knows that once it gets users "hooked" by offering free Cymbalta for sixty (60) days,

---

EnforcementActivitiesbyFDA/WarningLettersandNoticeofViolationLetterstoPharmaceuticalCompanies/ucm054170.pdf.

[3] *Available at* http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/EnforcementActivitiesbyFDA/WarningLettersandNoticeofViolationLetterstoPharmaceuticalCompanies/UCM143536.pdf.

users will have a very difficult time getting off the drug, *i.e.*, Lilly will have a legion of physically-dependant, long-term customers.

**Plaintiff Was Misled Into Taking Cymbalta**

37.    On or about June 8, 2009, Plaintiff Jennifer L. Saavedra was prescribed a twenty (20) mg daily dose of Cymbalta by her psychiatrist to treat ongoing depression and general anxiety.  Over the course of the next four (4) months, her dosage was increased to ninety (90) mg per day.

38.    On or about April 2010, Plaintiff decided she no longer wanted to take Cymbalta.  She began slowly tapering off her intake of Cymbalta and began experiencing severe withdrawal symptoms.  Plaintiff experienced, *inter alia*, the following symptoms:  severe nausea; tunnel vision which would lead to vomiting when she moved her head; electrical shock sensations in her head; feeling like she would "black out" at any moment; body twitches; whole body shaking; severe insomnia; diarrhea; and wildly erratic emotional swings.  Plaintiff's symptoms were so debilitating that they directly adversely impacted her ability to work.

39.    Plaintiff went through Cymbalta withdrawal for approximately one year and was able to finally stop Cymbalta completely on or about May, 2011.  Plaintiff, however, continued to suffer from withdrawal symptoms for a few months thereafter.

40.    Before taking Cymbalta, Plaintiff read the prescription information and drug label for Cymbalta.  Plaintiff believed, based on the information on the label, that Cymbalta withdrawal was rare.  Plaintiff relied on Lilly's representations in making a decision to start taking Cymbalta.

41.    In November, 2011, the Plaintiff learned that Cymbalta withdrawal was more common than what was stated on Cymbalta's prescription information and drug label.  Specifically, Plaintiff learned that Lilly's clinical studies showed that up to half of users who cease taking Cymbalta experience symptoms.  If Plaintiff had known that a significant percentage of Cymbalta users suffer from withdrawal symptoms, she would

never have started taking Cymbalta.  Plaintiff would have sought a safer, non-habit forming treatment alternative.

42.    Lilly's misleading and deceptive marking of Cymbalta, however, caused Plaintiff to purchase and use Cymbalta when she otherwise would not have.  As a result, Lilly's misleading and deceptive marketing tactics caused Plaintiff to suffer substantial personal injury when she went through a lengthy and painful period of Cymbalta withdrawal.

## CLASS ACTION ALLEGATIONS

43.    This matter is brought by Plaintiff on behalf of herself and those similarly situated.  Since Lilly's deceptive and unlawful marketing practices occurred within all of the states and the District of Columbia, the matter is brought both as a nationwide class action and as forty-one state subclasses plus the District of Columbia.

### Class and Subclass Designations

44.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of herself and all other similarly situated, defined as follows:

> All persons within the United States of America who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Nationwide Class" or "Nationwide Issue Class").[4]

45.    Pursuant to Rule 23(c)(5), Plaintiff brings this action on behalf of herself and one or more of the following subclasses[5]:

---

[4] All classes are currently defined to begin in August, 2004 when Lilly began marketing and selling Cymbalta.  Plaintiff reserves the right to revise the class definition start date(s) as the litigation proceeds.

[5] Since the following states do not allow consumer protection class action claims, they have not been alleged or included as a subclass herein:  Alabama, Georgia, Louisiana, Mississippi, Montana, South Carolina, Tennessee, and Virginia.  In addition, a State Subclass for Iowa has not been alleged pursuant to Iowa Code § 714H.7.

(1)  All persons within the State of Alaska who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Alaska Subclass");

(2)  All persons within the State of Arizona who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Arizona Subclass");

(3)  All persons within the State of Arkansas who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Arkansas Subclass");

(4)  All persons within the State of California who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("California Subclass");

(5)  All persons within the State of Colorado who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Colorado Subclass");

(6)  All persons within the State of Connecticut who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Connecticut Subclass");

(7)  All persons within the State of Delaware who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from

the launch of Cymbalta in August, 2004 until the present ("Delaware Subclass");

(8)     All persons within the District of Columbia who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("D.C. Subclass");

(9)     All persons within the State of Florida who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Florida Subclass");

(10)    All persons within the State of Hawaii who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Hawaii Subclass");

(11)    All persons within the State of Idaho who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Idaho Subclass");

(12)    All persons within the State of Illinois who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Illinois Subclass");

(13)    All persons within the State of Indiana who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Indiana Subclass");

(14)  All persons within the State of Kansas who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Kansas Subclass");

(15)  All persons within the Commonwealth of Kentucky who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Kentucky Subclass");

(16)  All persons within the State of Maine who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Maine Subclass");

(17)  All persons within the State of Maryland who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Maryland Subclass");

(18)  All persons within the Commonwealth of Massachusetts who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Massachusetts Subclass");

(19)  All persons within the State of Michigan who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Michigan Subclass");

(20)  All persons within the State of Minnesota who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from

17

the launch of Cymbalta in August, 2004 until the present ("Minnesota Subclass");

(21)   All persons within the State of Missouri who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Missouri Subclass");

(22)   All persons within the State of Nebraska who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Nebraska Subclass");

(23)   All persons within the State of Nevada who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Nevada Subclass");

(24)   All persons within the State of New Hampshire who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("New Hampshire Subclass");

(25)   All persons within the State of New Jersey who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("New Jersey Subclass");

(26)   All persons within the State of New Mexico who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("New Mexico Subclass");

(27)   All persons within the State of New York who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("New York Subclass");

(28)   All persons within the State of North Carolina who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("North Carolina Subclass");

(29)   All persons within the State of North Dakota who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("North Dakota Subclass");

(30)   All persons within the State of Ohio who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Ohio Subclass");

(31)   All persons within the State of Oklahoma who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Oklahoma Subclass");

(32)   All persons within the State of Oregon who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Oregon Subclass");

(33)   All persons within the Commonwealth of Pennsylvania who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed

by Lilly from the launch of Cymbalta in August, 2004 until the present ("Pennsylvania Subclass");

(34)  All persons within the State of Rhode Island who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Rhode Island Subclass");

(35)  All persons within the State of South Dakota who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("South Dakota Subclass");

(36)  All persons within the State of Texas who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Texas Subclass");

(37)  All persons within the State of Utah who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Utah Subclass");

(38)  All persons within the State of Vermont who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Vermont Subclass");

(39)  All persons within the State of Washington who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Washington Subclass");

(40)   All persons within the State of West Virginia who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("West Virginia Subclass");

(41)   All persons within the State of Wisconsin who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Wisconsin Subclass");

(42)   All persons within the State of Wyoming who purchased and/or paid for Cymbalta manufactured and/or distributed and/or marketed by Lilly from the launch of Cymbalta in August, 2004 until the present ("Wyoming Subclass");

### Rule 23(c)(4) Nationwide Issue Class

46.   In Counts I-XLVII, this Complaint alleges various consumer class action claims pursuant to each state's consumer protection or unfair and deceptive practices statute.  Each state has specific elements attendant to each cause of action which are alleged in Counts I-XLVII respectively.  However, there is substantial overlap among each state's statute.

47.   Lilly's marketing, advertisements, and warning labels were the same nationwide.  Lilly sold the same Cymbalta with the same warning labels nationwide.  Through its advertising and warning label, Lilly represented to each consumer in each state that the withdrawal symptoms associated with Cymbalta were rare.  In truth, Lilly knew that Cymbalta withdrawal was frequent and severe, and deliberately mislead consumers within the United States.

48.   Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

49.    In an effort to materially advance the litigation as a whole, pursuant to Rule 23(c)(4), the Plaintiff brings this action on behalf of herself and the Nationwide Class to resolve the first element  of Counts I-XLVII, i.e., whether Cymbalta's warning label is misleading or deceptive.  Since Lilly's misconduct was uniform throughout the United States—Lilly put the same misleading label on every package of Cymbalta— this issue is suited for class wide resolution.  Specifically, the issues applicable to the Nationwide Issue Class are:

> a.  Whether Cymbalta's warning label, as it was published from 2004 until the present, would mislead the average consumer about the frequency, severity, or duration of Cymbalta withdrawal.
>
> b.  Whether Lilly's conduct was knowing, intentional, or involved reckless disregard.

50.    The Nationwide Issue Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

> a.  Numerosity:   Individual joinder of the Nationwide Class members would be wholly impracticable.  Cymbalta has been purchased by millions of persons in the United States.
>
> b.  Commonality:   Questions of law and fact are common to the Nationwide Class.  As this is an issue class under Rule 23(c)(4), there is, by definition common questions of law applicable to all members of the Nationwide Class.
>
> c.  Typicality:   Plaintiff's claims are typical of the claims of the Nationwide Class, because her claims arise from the same course of conduct by Lilly, *i.e.*, deceptive and unlawful marketing practices related to Cymbalta.  Plaintiff is a typical class representative because, like all members of the Nationwide Class, she purchased Cymbalta that

was being deceptively and unlawfully marketed within the United States.

d. Adequacy:  Plaintiff will fairly and adequately represent and protect the interests of the Nationwide Class.  Her consumer protection claims are common to all members of the Class and she has a strong interest in vindicating her rights.  In addition, Plaintiff, and the Nationwide Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

51. The Nationwide Issue Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action in this context is superior.

a. With regard to Rule 23(b)(1)(A), resolution of the issues presented for the Nationwide Class on an individual basis would pose a serious risk of requiring Lilly to follow inconsistent courses of continuing conduct. One court could determine that the Cymbalta warning was partially misleading and order Lilly to take specific action.  Another court could also determine that the Cymbalta warning was defective but order a conflicting course of conduct.  If the issues presented for this Nationwide Class are not dealt with by a single court, there is a very real possibility that Lilly would be subjected to an "inescapable legal quagmire" of not being able to comply with one judgment without violating terms of another.

b. With regard to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Nationwide Class.  The issues at stake here relate exclusively to Lilly's conduct which was uniform across the entire class, *i.e.*, the misleading and deceptive marketing of Cymbalta within the United States.  Therefore, individual issues or defenses would be irrelevant for

the purposes of the Nationwide Issue Class. The issues at stake for the Nationwide Class fully predominate over any individual issues on a class wide basis. In addition, this Nationwide Issue Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*,:

    i.   Resolution of the Nationwide Issues would materially advance the litigation of the individual subclasses and potential individual litigants;

    ii.   Individual joinder of the Subclasses and individual members is wholly impracticable;

    iii.  The economic damages suffered by the individual members may be relatively modest compared to the expense and burden of individual litigation;

    iv.  The court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties;

    v.   The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale; and

    vi.  Individual litigation by members would not be effective in stopping Lilly's deceptive and unlawful conduct which will continue unless stopped by a class action lawsuit.

c.  In the alternative, or in addition to certification under Rule 23(b)(1) or (b)(3), certification is also warranted under Rule 23(b)(2). Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Nationwide Class. Certification under Rule 23(b)(2) is appropriate because Lilly has acted or refused to act on

grounds that that apply generally to the Nationwide Class, *i.e.*, Lilly has marketed the same Cymbalta using the same misleading labels and advertisements to the entire class.  Any final injunctive or declaratory relief would apply to the entire Nationwide Class as Lilly would be prevented from continuing its unlawful and deceptive marketing practices and be required to honestly disclose to consumers the risks associated with Cymbalta withdrawal.

52.    Notice of these classes could be provided by publication in national publications and through individual mailings.

### The State Subclasses

53.    The fact finder would be required to determine whether Lilly's conduct constituted a violation of the each state's consumer protection statute as alleged in the various Subclasses.  Counts I-XLVII allege separate statewide class actions for consumer protection, pursuant to Rule 23(c)(5), on behalf of the consumers of each state, *i.e.*, the Subclasses.

54.    Counts I-XLVII are properly brought and should be maintained as class actions under Rule 23(a) and (c)(5), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

    a.    Numerosity:  Joinder of the individual member of each Subclass would be impracticable.  Cymbalta has been purchased by millions of persons in the United States divided among the states.

    b.    Commonality:   Questions of law and fact are common within each Subclass and predominate over questions affecting only individual members of the Subclass, including, *inter alia*, the following:

        i.    Whether the Subclasses suffered ascertainable damages or losses under the state's consumer protection law;

25

ii.   Whether the Subclasses are entitled to damages and equitable and/or injunctive relief under the state's consumer protection law;

iii.   Whether Lilly's alleged conduct was done with sufficient oppression, fraud, or malice to warrant exemplary, punitive, treble, or double damages against Lilly under the Subclass's state law.

c.   Typicality:   Plaintiff's claims are typical of the claims of the Subclasses because her claims arise from the same course of conduct by Lilly, *i.e.*, deceptive and unlawful marketing practices related to Cymbalta. Plaintiff is a typical class representative because, like all members of the various Subclasses, she purchased Cymbalta that was being deceptively and unlawfully marketed.

d.   Adequacy:  Plaintiff will fairly and adequately represent and protect the interests of the various Subclasses.  Her consumer protection claims are common to all members of the Subclasses and she has a strong interest in vindicating her rights—the same rights at stake within the various Subclasses.  In addition, Plaintiff, and the Subclasses are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

55.   Counts I-XLVII are properly brought and should be maintained as class actions under Rule 23(b) and (c)(5) because a class action in this context is superior.

a.   With regard to Rule 23(b)(1)(A), resolution of the issues presented in the various Subclasses on an individual basis would pose a serious risk of requiring Lilly to follow inconsistent courses of continuing conduct. A court in one state could determine that the Cymbalta warning was in violation of a state consumer protection law and order Lilly to take specific action.  Another court in that state could also determine that the

26

Cymbalta warning was defective but order a conflicting course of conduct.  If the issues presented in the various Subclasses are not dealt with by a single court for each Subclass, there is a very real possibility that Lilly would be subjected to an "inescapable legal quagmire" of not being able to comply with one judgment without violating terms of another.   This is further compounded when one considers the potential conflicting orders that could manifest in different state and federal tribunals.

b.  With regard to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the various Subclasses.  Each Subclass is concerned with Lilly's conduct in marketing and selling Cymbalta within each state.  The sole issue of each individual member of the Subclasses is whether they purchased Cymbalta that was being unlawfully marketed.  Thus, the common issues of law and fact pertaining to each Subclass predominates over any individual issues.  In addition, bringing this action as forty-two individual Subclasses is a superior mechanism for resolving this controversy because, *inter alia*,:

   i.   Individual joinder of each consumer within the Subclasses is wholly impracticable;

   ii.  The economic damages suffered by the individual members may be relatively modest compared to the expense and burden of individual litigation;

   iii.  The court system would benefit from the class actions because individual litigation would overload court dockets and magnify the delay and expense to all parties;

  iv. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale; and

  v. Individual litigation by members would not be effective in stopping Lilly's deceptive and unlawful conduct which will continue unless stopped by these class actions.

 c. In the alternative, or in addition to certification under Rule 23(b)(1) or (b)(3),  certification is also warranted under Rule 23(b)(2) for each State Subclass.  Plaintiff seeks injunctive relief on behalf of each State Subclass Member on grounds generally applicable to each State Subclass.  Certification under Rule 23(b)(2) is appropriate because Lilly has acted or refused to act on grounds that that apply generally to each State Subclass, *i.e.*, Lilly has marketed the same Cymbalta using the same misleading labels and advertisements.  Any final injunctive or declaratory relief would apply to each State Subclass as Lilly would be prevented from continuing its unlawful and deceptive marketing practices and be required to honestly disclose to each State Subclass member, and state consumers in general, the risks associated with Cymbalta withdrawal.

56. Notice of each Subclass could be provided by publication in national and local publications, through the creation of public website, and through individual mailings.

57. To the extent notice is required under the states' consumer protection statutes, Plaintiff will, or had, complied.

**COUNTS I -XLVII**
**VIOLATIONS OF VARIOUS STATES'**
**CONSUMER PROTECTION STATUTES**

58.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

59.     Plaintiff, the Nationwide Class, and the State Subclasses bring this action against Lilly for violations of state consumer protection statutes.

60.     The allegations alleged herein deal exclusively with the harm caused by Lilly through its deceptive and unlawful marketing practices to consumers.  The personal injury component of these claims, however, is not part of Counts I-XLVII. Counts I-XLVII deal exclusively with consumer protection and the money spent by consumers for a drug which, as labeled, should never have been on the market in any state within the United States. Plaintiff's personal injury causes of action are, instead, alleged in Counts XLVII-LIII.

**COUNT I  (ALASKA SUBCLASS)**
**VIOLATIONS OF ALASKA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, ALASKA STAT. §§ 45.50.471, *ET SEQ.***

61.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

62.     Alaska's Unfair Trade Practices and Consumer Protection Law, Alaska Stat. **§§** 45.50.471, *et seq.* makes it unlawful to engage in unfair methods of competition and deceptive practices in the conduct of trade or commerce.

63.     As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing practices pursuant to Alaska Stat. **§** 45.50.471(a), by representing to the Alaska Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

64.     Specifically, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices pursuant to Alaska Stat. **§** 45.50.471(b):

a. § 45.50.471(b)(4):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

b. § 45.50.471(b)(11):  Lilly, through advertisements and drug labels, made misleading statements that Cymbalta withdrawal occurred in one (1) percent or greater of users, which had a likelihood of creating confusion or misunderstanding about the frequency, severity, and duration of Cymbalta withdrawal.  Lilly's conduct resulted in deceiving consumers and competitors about the frequency, severity, and duration of Cymbalta withdrawal.

c. § 45.50.471(b)(12):  Lilly, through advertisements and drug labels, employed deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealed, suppressed, or omitted a material fact regarding the frequency, severity, and duration of Cymbalta withdrawal, with the intent that consumers rely upon the concealment, suppression, or omission in connection with the sale or advertisement of Cymbalta.

65.    Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

66.    Plaintiff and the Alaska Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

67.     Plaintiff and the Alaska Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices pursuant to Alaska Stat. § 45.50.531(a), through the purchase of Cymbalta that was illegally advertised and marketed in violation of Alaska Stat. § 45.50.471(a) and (b).

68.     As a result of Lilly's violations of Alaska's Unfair Trade Practices and Consumer Protection Laws, the Alaska Subclass seeks an order of this Court awarding the Alaska Subclass, *inter alia*, actual damages, treble damages, restitution, punitive damages (fifty (50) percent of which will be deposited into Alaska's general fund), attorneys' fees and costs, and for such other relief as set forth below.

## COUNT II (ARIZONA SUBCLASS)
### VIOLATIONS OF ARIZONA'S CONSUMER FRAUD ACT, ARIZ. REV. STAT. §§ 44-1521, *ET SEQ.*

69.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

70.     Arizona's Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq.* makes it unlawful to use any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been mislead, deceived, or damaged thereby.

71.     As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing by representing to the Arizona Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe. Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

72.     Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement

that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

73.     Plaintiff and the Arizona Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

74.     Plaintiff and the Arizona Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Arizona's Consumer Fraud Act.

75.     As a result of Lilly's violations of the Arizona's Consumer Fraud Act, the Arizona Subclass seeks an order of this Court awarding the Arizona Subclass, *inter alia*, actual damages, restitution, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT III (ARKANSAS SUBCLASS)**
**VIOLATIONS OF ARKANSAS'S DECEPTIVE TRADE PRACTICES ACT,**
**ARK. CODE ANN. §§ 4-88-101, *ET SEQ.***

76.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

77.     Arkansas's Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq.* makes it unlawful to engage in deceptive and unconscionable trade practices in the selling and marketing of a product.

78.     As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Ark. Code Ann. **§** 4-88-107(a) by representing to the Arkansas Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

79.     Specifically, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices pursuant to Ark. Code Ann. **§** 4-88-107(a):

    a.  § 4-88-107(a)(1):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

    b.  § 4-88-107(a)(3):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the Arkansas Subclass that would perform as advertised.

    c.  § 4-88-107(a)(10):  Lilly's made misleading statements about the frequency, severity, and duration of Cymbalta withdrawal, which constituted an unconscionable, false, and deceptive business and marketing practice.

80.    Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

81.    Plaintiff and the Arkansas Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

82.    Plaintiff and the Arkansas Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices pursuant to Ark. Code Ann. § 4-88-107(a), through the purchase of Cymbalta that was illegally advertised and marketed in violation of Ark. Code Ann. § 4-88-107(a).

83.    As a result of Lilly's violations of Arkansas's Deceptive Trade Practices Act, the Arkansas Subclass seeks an order of this Court, pursuant to Ark. Code Ann. § 4-88-113(f) and Civil Justice Reform Act of 2003, Ark. Code Ann. § 16-55-201, *et seq.*,

1  awarding the Arkansas Subclass, *inter alia*, actual damages, restitution, punitive
2  damages, attorneys' fees and costs, and for such other relief as set forth below.

3  **COUNT IV (CALIFORNIA SUBCLASS)**
**VIOLATIONS OF CALIFORNIA'S CONSUMERS LEGAL REMEDY ACT,**
4  **CAL. CIV. CODE §§ 1750, *ET SEQ.***

5  84.  Plaintiff incorporates by reference each and every prior and subsequent
6  allegation of this Complaint as if fully restated here.

7  85.  California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et*
8  *seq.* makes it unlawful to engage in unfair methods of competition and unfair or
9  deceptive acts or practices intended to result, or which results, in the sale or lease of
10  goods or services to any consumer.

11  86.  Plaintiff and the California Subclass were, and continue to be, all times
12  material to the Complaint, "consumers" and "persons" as defined by the Cal. Civ. Code
13  § 1761.  Plaintiff and California Subclass purchased and/or paid for Cymbalta for
14  personal and/or family and/or household use during the relevant time period.

15  87.  As alleged throughout this Complaint, Lilly deliberately engaged in
16  deceptive and unlawful marketing in violation of Civ. Code § 1770(a) by representing to
17  the California Subclass that Cymbalta withdrawal was rare or infrequent when, in truth,
18  it is common and severe.  Lilly sold and marketed Cymbalta while concealing and
19  misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

20  88.   Specifically, Lilly has violated the following proscribed practices pursuant
21  to Cal. Civ. Code § 1770(a) with the purpose of inducing Plaintiff and the Class to
22  purchase and ingest Cymbalta:

23       a.  § 1770(a) (5):  Lilly represented to Plaintiff and the California Subclass
24           that Cymbalta withdrawal was rare or infrequent when, in truth, it was
25           common and severe.

26       b.  § 1770(a)(7):  Lilly represented to Plaintiff and the California Subclass
27           that Cymbalta was of a particular quality, *i.e.*, not likely to create

28

withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the California Subclass.

c.   § 1770(a)(9):  Lilly advertised Cymbalta as an effective and safe drug, and represented to potential users that Cymbalta withdrawal was rare. In truth, Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the California Subclass.

89.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

90.   Plaintiff and the California Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

91.   Plaintiff and the California Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices pursuant to Cal. Civ. Code § 1770(a), through the purchase of Cymbalta that was illegally advertised and marketed in violation of Cal. Civ. Code § 1770(a).

92.   As a result of Lilly's violations of the California's Consumer Legal Remedies Act, Plaintiff seeks an order of this Court permanently enjoining Lilly from perpetrating its deceptive and unlawful marketing practices.  Pursuant to Cal. Civ. Code § 1782(d), if Lilly does not take action to cease its deceptive and unlawful marketing practices within thirty (30) days of being served with this Complaint, Plaintiff will amend this Complaint to seek, in addition to an order enjoining Lilly from continuing its deceptive and unlawful practices, an order awarding, *inter alia*,  Plaintiff and the

California Subclass actual damages, restitution, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT V (CALIFORNIA SUBCLASS)**
**VIOLATIONS OF CALIFORNIA's UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.***

93.  Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

94.  California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.  California's Unfair Competition Law is interpreted broadly and provides a cause of action for any unlawful, unfair, or fraudulent business act or practice.   Any unlawful, unfair, or fraudulent business practice that causes injury to consumers falls within the ambit of California's Unfair Competition Law.

95.  Lilly engaged in substantial advertising and marketing of Cymbalta within the State of California.

96.  Because of Lilly's unlawful, fraudulent, and unfair business practices, Plaintiff and the California Subclass were misled into purchasing and using Cymbalta. Plaintiff and the California Subclass relied, to their detriment, on Lilly's false representations that Cymbalta withdrawal was rare.

**Unlawful Business Practices**

97.  As set forth in the preceding paragraphs, Lilly has engaged in the unlawful business practice of misleading Plaintiff and the California Subclass regarding the frequency, severity, and duration of Cymbalta withdrawal.  Lilly's deceptive and unlawful marketing practices have violated numerous California laws, including, *inter alia*:  Cal. Civ. Code §§ 1709, *et seq.* (fraudulent deceit); Cal. Civ. Code §§ 1571, et seq. (fraud); Cal. U. Com. Code §§ 2313-15 (breach of express and implied warranty);

Cal. Bus. & Prof. Code §§ 17500, *et seq.* (false advertising and marketing); and Cal. Civ. Code §§ 1750, et seq. (violations of California's Consumer Legal Remedies Act).

98.   As a result of Lilly's unlawful business practices, Plaintiff and the California Subclass purchased without sufficient information regarding a material side-effect of the drug.  Specifically, Plaintiff and the California Subclass were misled into believing that Cymbalta withdrawal was rare, where in fact, it occurred in almost half of users.  Plaintiff and the California Subclass reasonably relied upon Lilly's misrepresentations regarding Cymbalta withdrawal in deciding whether to purchase and use the drug.

99.   In addition to engaging in unlawful marketing practices, Lilly's also engaged in an unlawful method of competition.  Lilly deliberately misled Plaintiff and the California Subclass about the frequency and severity of Cymbalta and thereby artificially inflated Cymbalta's price on the open market.   Because Plaintiff and the California Subclass were unaware of the high incidence of Cymbalta withdrawal, they more likely to purchase Cymbalta as opposed to a competing antidepressant that was not habit-forming.  The market was unable to correctly valuate Cymbalta and, therefore, Lilly gained an unlawful competitive advantage over competing antidepressant drugs.  This unlawful method of competition resulted in Plaintiff and the California Subclass paying a substantially higher price for Cymbalta than it was actually worth.

**Fraudulent Business Practices**

100.   As set forth in the preceding paragraphs, Lilly has engaged in the fraudulent business practice of misleading Plaintiff and the California Subclass regarding the frequency, severity, and duration of Cymbalta withdrawal.

101.   A business act or practice is "fraudulent" under California's Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

102.   As set forth in the preceding paragraphs, Lilly engaged in a comprehensive scheme to mislead consumers and physicians regarding the frequency and severity of Cymbalta withdrawal.  Because of Lilly's fraudulent business practice, Plaintiff and the California Subclass were misled about the frequency, severity, and duration of Cymbalta withdrawal and, accordingly, purchased Cymbalta without knowing an important side effect of the drug.

## Unfair Business Practices

103.   As set forth in the preceding paragraphs, Lilly has engaged in an unfair business practice of misleading Plaintiff and the California Subclass regarding the frequency, severity, and duration of Cymbalta withdrawal.

104.   A business practice is unfair when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

105.   Lilly's deceptive and unlawful marketing practices offend public policy and are fundamentally immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.   Lilly's scheme is simple—mislead consumers about the habit-forming characteristics of Cymbalta and exploit consumers' physical dependence on the drug for profit.  This conduct offends any notion of public policy.  Moreover, by creating a physical dependence on the drug, a drug which has serious potential side effects, consumers are severely harmed by continued, long-term, and unwanted use of Cymbalta.

106.   The harm to Plaintiff and the California Subclass caused by Lilly's unfair business practices outweighs any countervailing benefits to consumers or competition, and could not reasonably have been known and avoided by consumers.  Furthermore, Lilly's unfair business practices cannot be excused for any business justification, motive, or rationale in light of the severity of Lilly's misconduct and the harm caused to Plaintiff and the California Subclass.

107.   As a result of Lilly's violations of the UCL, Plaintiff seeks an order of this Court enjoining Lilly from continuing this unlawful, fraudulent, and unfair practices and awarding Plaintiff and the California Subclass, *inter alia*, actual damages, restitution, a disgorgement of Lilly's profits, and for such other relief set forth below.

**COUNT VI (CALIFORNIA SUBCLASS)**
**VIOLATIONS OF CALIFORNIA'S FALSE ADVERSTING LAW**
**CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.***

108.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

109.   Plaintiff and the California Subclass bring a cause of action against Lilly pursuant to Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("California's False Advertising Law").

110.   The purpose of California's False Advertising Law is to protect consumers from false or misleading advertising and promotions.  California's False Advertising Law prohibits the false or deceptive advertising of products to consumers in any form of media, when the company placing the advertisement knows, or should have known, that the advertisement would be likely to mislead consumers about a material aspect of a product.

111.   Lilly uses advertising on its packaging and through various media outlets to sell and market Cymbalta directly to consumers.   The advertisements and labeling are deceptive, untrue, or misleading within the meaning of the California's False Advertising Law because they misstate the frequency, severity, and duration of withdrawal symptoms associate with Cymbalta.

112.   In making and disseminating the statements alleged herein, Lilly knew or should have known that the statements were untrue or misleading, and that it acted in violation of California's False Advertising Law.  Lilly knew or should have known the true frequency, severity, and duration of withdrawal symptoms as the data was complied in Lilly's own clinical trials of Cymbalta.  Lilly, however, deliberately chose to engage

in false adverting by placing a misleading and deceptive "discontinuation warning" for the purpose of inducing Plaintiff and Class Members into purchasing and ingesting Cymbalta.

113.   Lilly's misrepresentations of material facts related to Cymbalta, as detailed above, constitute false and misleading advertising in violation of California's False Advertising Law.

114.    Through its deceptive and unlawful marketing practices, Lilly has improperly and illegally obtained money from Plaintiff and the California Subclass.

115.   Pursuant to California's False Advertising Law, specifically Cal. Bus. & Prof. Code § 17535, Plaintiff and the California Subclass seek an order of this Court requiring Lilly to fully disclose the true nature of its misrepresentations to consumers and healthcare professionals, disgorging Lilly's ill-gotten gains and/or award full restitution of all monies wrongfully acquired by means of its false advertising, enjoining Lilly from continuing to violate California's False Advertising Law in its sale and marketing of Cymbalta, awarding those damages available under California law, and for such other relief as set forth below.

## COUNT VII (COLORADO SUBCLASS)
## VIOLATIONS OF COLORADO'S CONSUMER PROTECTION ACT
## COLO. REV. STAT. §§ 6-1-101, *ET SEQ.*

116.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

117.   Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, *et seq.* makes it unlawful to engage in deceptive a trade practices as defined by Colo. Rev. Stat. § 6-1-105.

118.   Lilly engaged in substantial advertising and marketing of Cymbalta within the State of Colorado.

119.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Colo. Rev. Stat. § 6-1-105 by

representing to the Colorado Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

120.   In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices pursuant to Colo. Rev. Stat. § 6-1-105:

    a.  § 6-1-105 (1)(e):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

    b.  § 6-1-105 (1)(g):  Lilly represented to Plaintiff and the Colorado Subclass that Cymbalta was of a particular quality, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Colorado Subclass.

    c.  § 6-1-105 (1)(i):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the Colorado Subclass that would perform as advertised.

    d.  § 6-1-105 (1)(u):  Lilly, through advertisements and drug labels, failed to disclose material information regarding the frequency, severity, and duration of Cymbalta withdrawal with the intent to induce Plaintiff and the Colorado Subclass into purchasing Cymbalta.

121.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement

that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

122.   Plaintiff and the Colorado Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

123.   Plaintiff and the Colorado Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices pursuant to Colo. Rev. Stat. § 6-1-105, through the purchase of Cymbalta that was illegally advertised and marketed in violation of Colo. Rev. Stat. § 6-1-105.

124.   Prosecution of this claim will result in a substantial public benefit because this class action will prevent Lilly from continuing to deceive and mislead Plaintiff and the Colorado Subclass, and all consumers with the State of Colorado, and will provide an important public health benefit by apprising consumers and prescribing physicians of the substantial risks associated with Cymbalta withdrawal.

125.   As a result of Lilly's violations of Colorado's Consumer Protection Act, the Colorado Subclass seeks an order of this Court, pursuant to Colo. Rev. Stat. § 6-1-113 awarding the Colorado Subclass, *inter alia*, actual damages, restitution,  treble damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT VIII (CONNECTICUT SUBCLASS)
## VIOLATIONS OF CONNECTICUT'S UNFAIR TRADE PRACTICES ACT
## CONN. GEN. STAT. §§ 42-110a, *ET SEQ.*

126.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

127.   Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.*, makes it unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

128.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Conn. Gen. Stat. § 42-110b by

representing to the Connecticut Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

129.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing practices pursuant to, by selling and marketing Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

130.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

131.   Plaintiff and the Connecticut Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

132.   Plaintiff and the Connecticut Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Connecticut's Unfair Trade Practices Act.

133.   As a result of Lilly's violations of Connecticut's Unfair Trade Practices Act, the Connecticut Subclass seeks an order of this Court, pursuant to Conn. Gen. Stat. § 42-110g awarding the Connecticut Subclass, *inter alia*, actual damages, restitution, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT IX (DELAWARE SUBCLASS)**
**VIOLATIONS OF DELAWARE'S CONSUMER FRAUD ACT**
**DEL. CODE ANN. TIT. 6 §§ 2511, *ET SEQ.***

134.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

135.   Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6 §§ 2511, *et seq.* makes it unlawful to engage in any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

136.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Del. Code Ann. tit. 6 § 2513by representing to the Delaware Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

137.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

138.   Plaintiff and the Delaware Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

139.   Plaintiff and the Delaware Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Delaware's Consumer Fraud Act.

140.   As a result of Lilly's violations of Delaware's Consumer Fraud Act, the Delaware Subclass seeks an order of this Court awarding the Delaware Subclass, *inter alia*, actual damages, restitution, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT X (D.C. SUBCLASS)**
**VIOLATIONS OF THE DISTRICT OF COLUMBIA**

**CONSUMER PROTECTION PROCEDURES ACT, D.C. CODE §§ 28-3901, *ET SEQ.***

141.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

142.   The District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq.*, makes it unlawful to engage in unlawful trade practices as defined by D.C. Code § 28-3904.

143.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of D.C. Code § 28-3904 by representing to the D.C. Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

144.   In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices pursuant to D.C. Code § 28-3904:

    a.   § 28-3904(a):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

    b.   § 28-3904(d):  Lilly represented to Plaintiff and the D.C. Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the D.C. Subclass.

    c.   § 28-3904(e):  Lilly, through advertisements and drug labels, misrepresented a material fact about Cymbalta withdrawal by indicating that Cymbalta occurred in one (1) percent or greater of users.  This

45

misstatement had a likelihood of misleading Plaintiff and the D.C. Subclass.

d. § 28-3904(f):  Lilly, through advertisements and drug labels, failed to disclose a material fact about Cymbalta withdrawal by indicating that Cymbalta occurred in one (1) percent or greater of users.  This misstatement had a likelihood of misleading Plaintiff and the D.C. Subclass.

e. § 28-3904(h):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the D.C. Subclass that would perform as advertised.

145.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

146.   Plaintiff and the D.C. Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

147.   Plaintiff and the D.C. Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of D.C. Code § 28-3904.

148.   As a result of Lilly's violations of the District of Columbia Consumer Protection Procedures Act, the D.C. Subclass seeks an order of this Court, pursuant to D.C. Code § 28-3905(k) awarding the D.C. Subclass, *inter alia*, actual damages, restitution, civil penalties, treble damages, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

### COUNT XI (FLORIDA SUBCLASS)
### VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### FLA. STAT. §§ 501.201, *ET SEQ.*

149.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

150.   Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*,  makes it unlawful to engage unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

151.    A business practice is unfair under Florida law when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

152.   Lilly's deceptive and unlawful marketing practices within the State of Florida offend public policy and are fundamentally immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.   Lilly's scheme is simple— mislead consumers about the habit-forming characteristics of Cymbalta and exploit consumers' physical dependence on the drug for profit.  This conduct offends any notion of public policy and is truly unethical.  Moreover, by creating a physical dependence on the drug, a drug which has serious potential side effects, consumers are severely harmed by continued, long-term, and unwanted use of Cymbalta.

153.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Fla. Stat. § 501.204(1) by representing to the Florida Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

154.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement

that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

155.   Plaintiff and the Florida Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

156.   Plaintiff and the Florida Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Fla. Stat. § 501.204(1).

157.   As a result of Lilly's violations of the Florida's Deceptive and Unfair Trade Practices Act, the Florida Subclass seeks an order of this Court, pursuant to Fla. Stat. § 501-211 awarding the Florida Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XII (HAWAII SUBCLASS)
## VIOLATIONS OF HAWAII'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
## HAW. REV. STAT. §§ 480-1, *ET SEQ.*

158.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

159.   Hawaii's Unfair and Deceptive Trade Practices Act, Haw. Rev. Stat. §§ 480-1, *et seq.*, makes it unlawful to engage unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

160.   A business practice is unfair under Hawaii law when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

161.   Lilly's deceptive and unlawful marketing practices with the State of Hawaii offend public policy and are fundamentally immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.   Lilly's scheme is simple—mislead consumers about the habit-forming characteristics of Cymbalta and exploit

consumers' physical dependence on the drug for profit.  This conduct offends any notion of public policy and is truly unethical.  Moreover, by creating a physical dependence on the drug, a drug which has serious potential side effects, consumers are severely harmed by continued, long-term, and unwanted use of Cymbalta.

162.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Haw. Rev. Stat. § 480-2 by representing to the Hawaii Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

163.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

164.   Plaintiff and the Hawaii Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

165.   Plaintiff and the Hawaii Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Haw. Rev. Stat. § 480-2.

166.   As a result of Lilly's violations of the Hawaii's Unfair and Deceptive Trade Practices Act, the Hawaii Subclass seeks an order of this Court, pursuant to Haw. Rev. Stat. § 480-13(b) and (c), awarding the Hawaii Subclass, *inter alia*, actual damages, treble damages, civil penalties, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XIII (IDAHO SUBCLASS)**
**VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT**

## IDAHO CODE ANN. §§ 48-601, *ET SEQ.*

167.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

168.   The Idaho Consumer Protection Act, Idaho Code Ann. §§ 48-601, *et seq.*, makes it unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

169.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Idaho Code Ann. § 48-603 by representing to the Idaho Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

170.   In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices pursuant to Idaho Code Ann. § 48-603:

a.   § 48-603(5):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

b.   § 48-603(7):  Lilly represented to Plaintiff and the Idaho Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Idaho Subclass.

c.   § 48-603(9):  § 28-3904(e):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the Idaho Subclass that would perform as advertised.

d.   § 48-603(17):  Lilly, through advertisements and drug labels, engaged in a practice that was misleading, false, or deceptive when it represented to Plaintiff and the Class that Cymbalta withdrawal occurred in one (1) percent or greater of users.  This misstatement had a likelihood of misleading Plaintiff and the Idaho Subclass.

171.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

172.   Plaintiff and the Idaho Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

173.   Plaintiff and the Idaho Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Idaho Code Ann. § 48-603.

174.   As a result of Lilly's violations of the Idaho Consumer Protection Act, the Idaho Subclass seeks an order of this Court, pursuant to Idaho Code Ann. § 48-608(1), awarding the Idaho Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XIV (ILLINOIS SUBCLASS)**
**VIOLATIONS OF ILLINOIS' CONSUMER FRAUD AND DECEPTIVE**
**BUSINESS PRACTICES ACT, 815 ILL. COMP. STAT. 505/1, *ET SEQ.***

175.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

176.   The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 501/1, *et seq.*, makes it unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

51

commerce, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact.

177.   A business practice is unfair under Illinois law when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

178.   Lilly's deceptive and unlawful marketing practices with the State of Illinois offend public policy and are fundamentally immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.   Lilly's scheme is simple— mislead consumers about the habit-forming characteristics of Cymbalta and exploit consumers' physical dependence on the drug for profit.  This conduct offends any notion of public policy and is truly unethical.  Moreover, by creating a physical dependence on the drug, a drug which has serious potential side effects, consumers are severely harmed by continued, long-term, and unwanted use of Cymbalta.

179.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of 815 Ill. Comp. Stat. 501/2 by representing to the Illinois Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

180.   In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices pursuant to 815 Ill. Comp. Stat. 510/2:

    a.   510/2(5):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta

withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

b.  510/2(7):  Lilly represented to Plaintiff and the Illinois Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Illinois Subclass.

c.  510/2(9):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the Illinois Subclass that would perform as advertised.

d.  § 48-603(12):  Lilly, through advertisements and drug labels, engaged in a practice that was misleading, false, or deceptive when it represented to Plaintiff and the Illinois Subclass that Cymbalta withdrawal occurred in one (1) percent or greater of users.  This misstatement had a likelihood of confusing or misleading Plaintiff and the Illinois Subclass.

181.  Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

182.  Plaintiff and the Illinois Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

183.  Plaintiff and the Illinois Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of 815 Ill. Comp. Stat. 501/2 and 510/2.

184.    As a result of Lilly's violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Subclass seeks an order of this Court, pursuant to 815 Ill. Comp. Stat. 505/10a, *et seq.*, awarding the Illinois Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XV (INDIANA SUBCLASS)**
**VIOLATIONS OF INDIANA'S DECEPTIVE CONSUMER SALES ACT**
**IND. CODE. §§ 24-5-0.5-0.1, *ET SEQ.***

185.    Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

186.    Indiana's Deceptive Consumer Sales Act, Ind. Code. §§ 24-5-.05-0.1, *et seq.*, makes it unlawful for a supplier to make deceptive representations as to the subject matter of a consumer transaction.

187.    As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Ind. Code. § 24-5-.05-3 by representing to the Indiana Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

188.    In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices pursuant to Ind. Code. § 24-5-.05-3:

      a.  § 24-5-.05-3(a)(1):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

      b.  § 24-5-.05-3(a)(2):  Lilly represented to Plaintiff and the Indiana Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not

likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Indiana Subclass.

c.   § 24-5-.05-3(a)(11):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the Indiana Subclass that would perform as advertised.

189.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

190.   Plaintiff and the Indiana Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

191.   Plaintiff and the Indiana Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Ind. Code. § 24-5-.05-3.

192.   Because Lilly engaged in a scheme, artifice, or device to defraud with the intent to deliberately misled and defraud Plaintiff and the Indiana Subclass, as is alleged throughout this Complaint, Lilly's conduct is an incurable deceptive act pursuant to Ind. Code § 24-5-.05-2(7).

193.   As a result of Lilly's violations of Indiana's Deceptive Consumer Sales Act, the Indiana Subclass seeks an order of this Court, pursuant to Ind. Code. § 24-5-.05-4(b), awarding the Indiana Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XVI (KANSAS SUBCLASS)
## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT

## KAN. STAT. ANN §§ 50-634, *ET SEQ.*

194.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

195.   The Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-634, *et seq.*, makes it unlawful to engage in any deceptive or unconscionable act or practice in connection with a consumer transaction.

196.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Kan. Stat. Ann. §§ 50-626 and 50-627 by representing to the Kansas Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

197.   In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices:

a.   § 50-626(b)(1)(D):  Lilly represented to Plaintiff and the Kansas Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Kansas Subclass.

b.   § 50-626(b)(2):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.  Lilly's conduct constituted a falsehood, exaggeration, innuendo, or ambiguity as to a material fact about Cymbalta.

56

c.  § 50-626(b)(3):  Lilly, through advertisements and drug labels, failed to disclose to Plaintiff and the Kansas Subclass that Cymbalta withdrawal symptoms occur in approximately half of users.

d.  §50-627(b)(6):  Lilly knowingly made a misleading statement regarding the frequency, severity, and duration of Cymbalta withdrawal, a statement upon which Lilly knew was likely to be relied on by Plaintiff and the Kansas Subclass to their physical and emotional detriment.

198.  Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

199.  Plaintiff and the Kansas Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

200.  Plaintiff and the Kansas Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Kan. Stat. Ann. §§  50-626 and 50-627.

201.  As a result of Lilly's violations of Kansas Consumer Protection Act, the Kansas Subclass seeks an order of this Court, pursuant to Kan. Stat. Ann. § 50-634, awarding the Kansas Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XVII (KENTUCKY SUBCLASS)**
**VIOLATIONS OF THE KENTUCKY'S CONSUMER PROTECTION ACT**
**KY. REV. STAT. ANN. §§ 367.110, *ET SEQ.***

202.  Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

203.   Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*, makes it unlawful to engage in any unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.

204.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Ky. Rev. Stat. Ann. § 367.170 by representing to the Kentucky Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

205.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

206.   Plaintiff and the Kentucky Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

207.   Plaintiff and the Kentucky Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Ky. Rev. Stat. Ann. § 367.170.

208.   Plaintiff and the Kentucky Subclass purchased Cymbalta for personal, familial, or household use, not for the purposes of resale or distribution.

209.   As a result of Lilly's violations of Kentucky's Consumer Protection Act, the Kentucky Subclass seeks an order of this Court, pursuant to Ky. Rev. Stat. Ann. § 367.220, awarding the Kentucky Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XVIII (MAINE SUBCLASS)**
**VIOLATIONS OF THE MAINE UNFAIR TRADE PRACTICES ACT**

58

## ME. REV. STAT. ANN. TIT. 5, §§ 205-A, *ET SEQ.*[6]

210.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

211.   The Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, §§ 205-A, *et seq.*, makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

212.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Maine law by representing to the Maine Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

213.   Lilly's concealment and misleading statements regarding the frequency, severity, and duration of Cymbalta withdrawal caused or was likely to cause substantial injury to Plaintiff and the Maine Subclass as they were unaware of a serious risk associated with the drug.  The harm to Plaintiff and the Maine Subclass caused by Lilly's unfair business practices outweighs any countervailing benefits to consumers or competition, and could not reasonably have been known and avoided by consumers because the material information was made unavailable by Lilly.

214.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

---

[6] A demand has been sent to Lilly giving notice of the claims alleged herein pursuant to Me. Rev. Stat. Ann. tit. 5, §§ 2013(1-A).  If after thirty-days, Lilly offers a reasonable settlement for the Maine Subclass, Count XVIII will be dismissed with prejudice.

215.   Plaintiff and the Maine Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

216.   Plaintiff and the Maine Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Me. Rev. Stat. Ann. tit. 5, § 205.

217.   As a result of Lilly's violations of the Maine Unfair Trade Practices Act, the Maine Subclass seeks an order of this Court, pursuant to Me. Rev. Stat. Ann. tit. 5, § 213, awarding the Maine Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XIX (MARYLAND SUBCLASS)
## VIOLATIONS OF MARYLAND'S CONSUMER PROTECTION ACT
## MD. CODE ANN., COM. LAW §§ 13-101, *ET SEQ.*

218.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

219.   Maryland's Consumer Protection Act, Md. Code. Ann., Com. Law §§ 13-101, *et seq.*, makes it unlawful to engage in any unfair or deceptive trade practices.

220.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Md. Code. Ann., Com. Law § 13-101 by representing to the Maryland Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

221.   In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices pursuant to Md. Code. Ann., Com. Law § 13-101:

a. § 13-101(1):  Lilly made false or misleading statements regarding the frequency, severity, and duration of Cymbalta withdrawal which had a

capacity, tendency or effect of deceiving or misleading Plaintiff and the Maryland Subclass into believing Cymbalta withdrawal was rare.

b. § 13-101(2)(i):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.  Lilly's conduct constituted a falsehood, exaggeration, innuendo, or ambiguity as to a material fact about Cymbalta.

c. § 13-101(2)(iv):  Lilly represented to Plaintiff and the Maryland Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Maryland Subclass.

d. § 13-101(2)(3):  Lilly, through advertisements and drug labels, failed to disclose a material fact about Cymbalta withdrawal, i.e. that it occurred in approximately half of users, which had the effect of misleading Plaintiff and the Maryland Subclass about the frequency, severity, and duration of Cymbalta withdrawal.

e.  § 13-101(2)(5):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the Maryland Subclass that would perform as advertised.

f. § 13-101(2)(9):  in a comprehensive scheme to mislead consumers and physicians regarding the frequency and severity of Cymbalta withdrawal.  Because of Lilly's fraudulent business practice, Plaintiff and the Maryland Subclass were misled about the frequency, severity,

and duration of Cymbalta withdrawal and, accordingly, purchased and used Cymbalta without knowing an important side effect of the drug. This conduct was misleading because it was likely to mislead consumers acting reasonably.

222.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

223.   Plaintiff and the Maryland Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

224.   Plaintiff and the Maryland Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Md. Code. Ann., Com. Law § 13-101.

225.   As a result of Lilly's violations of Maryland's Consumer Protection Act, the Maryland Subclass seeks an order of this Court, pursuant to Md. Code. Ann., Com. Law § 13-408, awarding the Maryland Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XX (MASSACHUSETTS SUBCLASS)
VIOLATIONS OF MASSACHUSETTS'S CONSUMER PROTECTION ACT
MASS. GEN. LAWS CH. 93A, §§ 1, *ET SEQ.*[7]**

226.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

---

[7] A demand has been sent to Lilly giving notice of the claims alleged herein pursuant to Mass. Gen. Laws ch. 93A, § 9(3).  If after thirty-days, Lilly offers a reasonable settlement for the Massachusetts Subclass, Count XX will be dismissed with prejudice.

227.   Massachusetts's Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1, *et seq.*, makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

228.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Mass. Gen. Laws ch. 93A, § 2 by representing to the Massachusetts Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

229.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

230.   Plaintiff and the Massachusetts Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

231.   Plaintiff and the Massachusetts Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Mass. Gen. Laws ch. 93A, § 2.

232.   As a result of Lilly's violations of Massachusetts's Consumer Protection Act, the Massachusetts Subclass seeks an order of this Court awarding the Massachusetts Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XXI (MICHIGAN SUBCLASS)**
**VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT**
**MICH. COMP. LAWS §§ 445.901, *ET SEQ.***

233.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

234.   The Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901, *et seq.*, makes it unlawful to engage in any unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.

235.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Mich. Comp. Laws § 445.903 by representing to the Michigan Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

236.   In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices pursuant to Mich. Comp. Laws § 445.903:

      a.   § 445.903(1)(c):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

      b.   § 445.903(1)(e):  Lilly represented to Plaintiff and the Michigan Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Michigan Subclass.

      c.   § 445.903(1)(g):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the Michigan Subclass that would perform as advertised.

d.  § 445.903(1)(s):  Lilly failed to state the true frequency, severity, and duration of Cymbalta withdrawal, the omission of which tends to mislead or deceive consumers.  Plaintiff and the Michigan Subclass were misled.  Moreover, there was no reasonable way Plaintiff and the Michigan Subclass could have reasonably known the true clinical results of Cymbalta withdrawal due to Lilly's intentional deception.

237.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

238.   Plaintiff and the Michigan Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

239.   Plaintiff and the Michigan Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Mich. Comp. Laws § 445.903.

240.   As a result of Lilly's violations of the Michigan Consumer Protection Act, the Michigan Subclass seeks an order of this Court, pursuant to Mich. Comp. Laws § 445.911(3), awarding the Michigan Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XXII (MINNESOTA SUBCLASS)**
**VIOLATIONS OF THE MINNESOTA'S UNLAWFUL TRADE PRACTICES ACT**
**MINN. STAT. §§ 325D.09, *ET SEQ.***

241.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

242.   Minnesota's Unlawful Trade Practices Act, Minn. Stat. §§ 325D.09, *et seq.*, makes it unlawful to misrepresent, directly or indirectly, the true quality, ingredients or origin in connection with the sale of merchandise.

243.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Minn. Stat. § 325D.13 by representing to the Minnesota Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

244.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

245.   Plaintiff and the Minnesota Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

246.   Plaintiff and the Minnesota Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Minn. Stat. § 325D.13.

247.   Plaintiff and the Minnesota Subclass bring this cause of action pursuant to Minn. Stat. § 8.31(3a).  Prosecution of this claim under Minnesota's "Private Attorney General" statute is proper because a substantial public benefit will be effectuated through litigation of this claim.  Specifically, this class action will prevent Lilly from continuing to deceive and mislead Plaintiff and the Minnesota Subclass, and all consumers with the State of Minnesota, and will provide an important public health benefit by apprising consumers and prescribing physicians of the substantial risks associated with Cymbalta withdrawal.

248.   As a result of Lilly's violations of Minnesota's Unlawful Trade Practices Act, the Minnesota Subclass seeks an order of this Court, pursuant to Minn. Stat. § 8.31(3a), awarding the Minnesota Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, costs associated with investigation, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XXIII (MINNESOTA SUBCLASS)
### VIOLATIONS OF THE MINNESOTA'S CONSUMER FRAUD ACT
### MINN. STAT. §§ 325F.69, *ET SEQ.*

249.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

250.   Minnesota's Consumer Fraud Act, Minn. Stat. §§ 325F.69, *et seq.*, makes it unlawful to use fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged.

251.   As alleged in this Complaint, Lilly has, through advertisements and drugs labels, knowingly used fraud, false pretenses, false promises, misrepresentations, misleading statements or deceptive practices to induce Plaintiff and the Class to purchase Cymbalta by making misleading representation regarding the frequency, severity, and duration of Cymbalta withdrawal.

252.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

253.   Plaintiff and the Minnesota Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

254.   Plaintiff and the Minnesota Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Minn. Stat. § 325F.69.

255.   Plaintiff and the Minnesota Subclass bring this cause of action pursuant to Minn. Minn. Stat. § 8.31(3a).  Prosecution of this claim under Minnesota's "Private Attorney General" statute is proper because a substantial public benefit will be effectuated through litigation of this claim.  Specifically, this class action will prevent Lilly from continuing to deceive and mislead Plaintiff and the Minnesota Subclass, and all consumers with the State of Minnesota, and will provide an important public health benefit by apprising consumers and prescribing physicians of the substantial risks associated with Cymbalta withdrawal.

256.   As a result of Lilly's violations of Minnesota's Consumer Fraud Act, the Minnesota Subclass seeks an order of this Court, pursuant to Minn. Stat. § 8.31(3a), awarding the Minnesota Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, costs associated with investigation, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XXIV (MINNESOTA SUBCLASS)**
**VIOLATIONS OF THE MINNESOTA'S FALSE ADVERTISING ACT**
**MINN. STAT. §§ 325F.67, *ET SEQ.***

257.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

258.   Minnesota's False Advertising Act, Minn. Stat. §§ 325F.67, *et seq.*, makes it unlawful to publish any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading in an advertisement for the purpose of selling or increasing the consumption of a product, regardless of any pecuniary or other damage that occurs as a result.

259.   Lilly uses advertising on its packaging and through various media outlets to sell and market Cymbalta directly to consumers in the State of Minnesota.   The

advertisements and labeling are deceptive, untrue, or misleading within the meaning of Minnesota's False Advertising Act because they represent that Cymbalta withdrawal is rare when, in truth, it is common and severe and occurs in approximately half of Cymbalta users.

260.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

261.   In making and disseminating the statements alleged herein, Lilly knew or should have known that the statements were untrue or misleading, and that it acted in violation of Minnesota's False Advertising Act.  Lilly knew or should have known the true frequency, severity, and duration of withdrawal symptoms as the data was complied in Lilly's own clinical trials of Cymbalta.  Lilly, however, deliberately chose to engage in false adverting by placing a misleading and deceptive "discontinuation warning" for the purpose of inducing Plaintiff and the Minnesota Subclass into purchasing and ingesting Cymbalta.

262.   Plaintiff and the Class relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

263.    Through its deceptive and unlawful marketing practices, Lilly has improperly and illegally obtained money from Plaintiff and the Minnesota Subclass.

264.   Plaintiff and the Minnesota Subclass bring this cause of action pursuant to Minn. Minn. Stat. § 8.31(3a).  Prosecution of this claim under Minnesota's "Private Attorney General" statute is proper because a substantial public benefit will be effectuated through litigation of this claim.  Specifically, this class action will prevent Lilly from continuing to deceive and mislead Plaintiff and the Minnesota Subclass, and all consumers with the State of Minnesota, and will provide an important public health

benefit by apprising consumers and prescribing physicians of the substantial risks associated with Cymbalta withdrawal.

265.   As a result of Lilly's violations of Minnesota's False Advertising Act, the Minnesota Subclass seeks an order of this Court, pursuant to Minn. Stat. § 8.31(3a), awarding the Minnesota Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, costs associated with investigation, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XXV (MISSOURI SUBCLASS)
## VIOLATIONS OF MISSOURI'S MERCHANDISING PRACTICES ACT
## MO. REV. STAT. §§ 407.010, *ET SEQ.*

266.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

267.   Missouri's Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.*, makes it unlawful to use any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.

268.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Mo. Rev. Stat. §§ 407.020(1) by representing to the Missouri Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

269.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

270.   Plaintiff and the Missouri Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

271.   Plaintiff and the Missouri Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Mo. Rev. Stat. §§ 407.020(1).

272.   As a result of Lilly's violations of the Missouri's Merchandising Practices Act, the Missouri Subclass seeks an order of this Court awarding the Missouri Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

### COUNT XXVI (NEBRASKA SUBCLASS)
### VIOLATIONS OF NEBRASKA'S CONSUMER PROTECTION ACT
### NEB. REV. STAT. §§ 59-1601., *ET SEQ.*

273.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

274.   Nebraska's Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et seq.*, makes it unlawful engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

275.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Neb. Rev. Stat. § 59-1602 by representing to the Nebraska Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

276.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement

that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

277.   Plaintiff and the Nebraska Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

278.   Plaintiff and the Nebraska Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Neb. Rev. Stat. § 59-1602.

279.   Prosecution of this claim will result in a substantial public benefit because this class action will prevent Lilly from continuing to deceive and mislead Plaintiff and the Nebraska Subclass, and all consumers with the State of Nebraska, and will provide an important public health benefit by apprising consumers and prescribing physicians of the substantial risks associated with Cymbalta withdrawal.

280.   As a result of Lilly's violations of the Nebraska's Consumer Protection Act, the Nebraska Subclass seeks an order of this Court, pursuant to Neb. Rev. Stat. § 59-1602, awarding the Nebraska Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XXVII (NEVADA SUBCLASS)**
**VIOLATIONS OF NEVADA'S DECEPTIVE TRADE PRACTICES ACT**
**NEV. REV. STAT. §§ 598.0903., *ET SEQ.***

281.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

282.   Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*, makes it unlawful engage in a variety of unfair and deceptive trade practices as defined in Nev. Rev. Stat. §§ 598.0915 – 598.0925.

283.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Nevada law by representing to the

Nevada Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

284.   Specifically, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices:

a. § 598.0915(5):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

b. § 598.0915(7):  Lilly represented to Plaintiff and the Nevada Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Nevada Subclass.

c. § 598.0915(9):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the Nevada Subclass that would perform as advertised.

d. § 598.0915(15):  Lilly made false representations regarding the frequency, severity, and duration of withdrawal symptoms in marketing and selling Cymbalta.

e. § 598.0925(1)(a):  Lilly made a scientific, clinical, or quantifiable assertion in an advertisements, to wit, stated that Cymbalta occurred in one (1) percent or greater of Cymbalta users, which would cause a reasonable person to believe that Cymbalta withdrawal is rare, when

73

Lilly knew through its clinical trials that the actual percentage of users experiencing withdrawal was approximately half.

285.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

286.   Plaintiff and the Nevada Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

287.   Plaintiff and the Nevada Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Nevada law.

288.   Prosecution of this claim will result in a substantial public benefit because this class action will prevent Lilly from continuing to deceive and mislead Plaintiff and the Nevada Subclass, and all consumers with the State of Nevada, and will provide an important public health benefit by apprising consumers and prescribing physicians of the substantial risks associated with Cymbalta withdrawal.

289.   As a result of Lilly's violations of the Nevada's Deceptive Trade Practices Act, the Nevada Subclass seeks an order of this Court, pursuant to Nev. Rev. Stat. § 41.600, awarding the Nevada Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XXVIII (NEW HAMPSHIRE SUBCLASS)
## VIOLATIONS OF NEW HAMPSHIRE'S CONSUMER PROTECTION ACT
## NH. REV. STAT. ANN. §§ 358-A:1, *ET SEQ.*

290.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

291.   New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:1, *et seq.*, makes it unlawful engage in a any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within the state.

292.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of N.H. Rev. Stat. Ann. § 358-A:2 by representing to the New Hampshire Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

293.   In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices detailed in N.H. Rev. Stat. Ann. § 358-A:2:

   a.  § 358-A:2(V):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

   b.  § 358-A:2(VII):  Lilly represented to Plaintiff and the New Hampshire Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the New Hampshire Subclass.

   c.  § 358-A:2(IX):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the New Hampshire Subclass that would perform as advertised.

294.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

295.   Plaintiff and the New Hampshire Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

296.   Plaintiff and the New Hampshire Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of N.H. Rev. Stat. Ann. § 358-A:2.

297.   As a result of Lilly's violations of the Hampshire's Consumer Protection Act, the New Hampshire Subclass seeks an order of this Court awarding the New Hampshire Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, treble or double damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XXIX (NEW JERSEY SUBCLASS)
## VIOLATIONS OF NEW JERSEY'S CONSUMER PROTECTION ACT
## N.J. STAT. ANN. §§ 56:8-1, *ET SEQ.*

298.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

299.   New Jersey's Consumer Protection Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*, makes it unlawful engage in a any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate,  regardless of whether a person has in fact been misled, deceived or damaged.

300.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of N.J. Stat. Ann. § 56:8-2 by representing to the New Jersey Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

301.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

302.   Plaintiff and the New Jersey Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

303.   Plaintiff and the New Jersey Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of N.J. Stat. Ann. § 56:8-2.

304.   As a result of Lilly's violations of the New Jersey's Consumer Protection Act, the New Jersey Subclass seeks an order of this Court awarding the New Jersey Subclass, *inter alia*, actual damages, full refunds of all moneys spent on Cymbalta, restitution, an injunction against the use of unlawful trade practice, treble damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XXX (NEW MEXICO SUBCLASS)**
**VIOLATIONS OF THE NEW MEXICO UNFAIR PRACTICES ACT**
**N.M. STAT. ANN. §§ 57-12-1, *ET SEQ.***

305.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

306.   The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq.*, makes it unlawful engage in any unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce.

307.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of N.M. Stat. Ann. § 57-12-3 by representing to the New Mexico Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

308.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

309.   Plaintiff and the New Mexico Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

310.   Plaintiff and the New Mexico Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of N.M. Stat. Ann. § 57-12-3.

311.   As a result of Lilly's violations of the New Mexico Unfair Practices Act, the New Mexico Subclass seeks an order of this Court awarding the New Mexico Subclass, *inter alia*, actual damages, full refunds of all moneys spent on Cymbalta, restitution, an injunction against the use of unlawful trade practice, treble damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XXXI (NEW YORK SUBCLASS)**
**VIOLATIONS OF NEW YORK'S CONSUMER PROTECTION FROM DECEPTIVE ACTS AND PRACTICES LAW, N.Y. GEN. BUS. LAW §§ 349, *ET SEQ.***

312.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

313.   The New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law §§ 349, *et seq.*, makes it unlawful engage in any deceptive acts, practices, or false advertising in the conduct of any business, trade, or commerce.

314.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of N.Y. Gen. Bus. Law § 349 by representing to the New York Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

315.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

316.   In addition, Lilly engaged in false advertising pursuant to N.Y. Gen. Bus. Law § 35-a, on its drug labeling, direct-to-consumer advertisements, and various other forms of promotion by misstating the frequency, severity, and duration of a material side-effect of Cymbalta, to wit, that Cymbalta withdrawal is relatively rare when, in fact, it occurs in approximately half of Cymbalta users.  Lilly's false representations regarding the frequency, severity, and duration of Cymbalta withdrawal relate to a material aspect of Cymbalta, because Cymbalta withdrawal is a potential adverse effect of the drug.

317.   Plaintiff and the New York Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

318.   Plaintiff and the New York Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of pursuant to N.Y. Gen. Bus. Law §§ 349 and 350.

319.   As a result of Lilly's violations of the New York's Consumer Protection from Deceptive Acts and Practices Law, the New York Subclass seeks an order of this Court awarding the New York Subclass, *inter alia*, actual damages, full refunds of all moneys spent on Cymbalta, restitution, an injunction against the use of unlawful trade practice, treble damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XXXII (NORTH CAROLINA SUBCLASS)**
**VIOLATIONS OF NORTH CAROLINA'S UNFAIR AND DECEPTIVE PRACTICES LAW**
**N.C. GEN. STAT. §§ 75-1.1, *ET SEQ.***

320.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

321.   North Carolina's Unfair and Deceptive Practices Law, N.C. Gen. Stat. §§ 75-1.1, *et seq.*, makes it unlawful to engage in any unfair methods of competition or deceptive acts or practices affecting business activities.

322.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of N.C. Gen. Stat. § 75-1.1 by representing to the North Carolina Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

323.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement

that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

324.   Plaintiff and the North Carolina Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

325.   Plaintiff and the North Carolina Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of N.C. Gen. Stat. § 75-1.1.

326.   As a result of Lilly's violations of the North Carolina's Unfair and Deceptive Practices Law, the North Carolina Subclass seeks an order, pursuant to N.C. Gen. Stat. § 75-16, of this Court awarding the North Carolina Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, treble or punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XXXIII (NORTH DAKOTA SUBCLASS)
## VIOLATIONS OF NORTH DAKOTA'S UNLAWFUL SALES OR
## ADVERTISING PRACTICES LAW N.D. CENT. CODE §§ 51-15-01, *ET SEQ.*

327.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

328.   North Dakota's Unlawful Sales or Advertising Practices Law, N.D. Cent. Code §§ 51-15-01, *et seq.*, makes it unlawful to act, use, or employ a deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged.

329.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of N.D. Cent. Code § 51-15-01 by representing to the North Dakota Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta

while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

330.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

331.   Plaintiff and the North Dakota Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

332.   Plaintiff and the North Dakota Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of N.D. Cent. Code § 51-15-01.

333.   As a result of Lilly's violations of the North Dakota's Unfair and Deceptive Practices Law, the North Dakota Subclass seeks an order, pursuant to N.D. Cent. Code § 51-15-09, of this Court awarding the North Dakota Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, treble damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XXXIV (OHIO SUBCLASS)
### VIOLATIONS OF OHIO'S CONSUMER SALES PRACTICES ACT
### OHIO REV. CODE §§ 1345.01, *ET SEQ*

334.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

335.   Ohio's Consumer Sales Practices Act, Ohio Rev. Stat. §§ 1345.01, *et seq.*, makes it unlawful for engage in an unfair or deceptive act or practice in connection with a consumer transaction.

336.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Ohio Rev. Stat. § 1345.02(B) by representing to the Ohio Subclass that Cymbalta withdrawal was rare or infrequent

when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

337.   In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices pursuant to Ohio Rev. Stat. § 1345.02(B):

  a. § 1345.02(B)(1):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

  b. § 1345.02(B)(2):  Lilly represented to Plaintiff and the Class that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Ohio Subclass.

338.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

339.   Plaintiff and the Ohio Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

340.   Plaintiff and the Ohio Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Ohio Rev. Stat. § 1345.02(B).

341.   As a result of Lilly's violations of the Ohio's Consumer Sales Practices Act, the Ohio Subclass seeks an order of this Court, pursuant to Ohio Rev. Stat. §

1345.09, awarding the Ohio Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XXXV (OKLAHOMA SUBCLASS)
## VIOLATIONS OF THE OKLAHOMA CONUMER PROTECTION ACT
## OKLA. STAT. TIT. 15, §§ 751, *ET SEQ*

342.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

343.   The Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751, *et seq.*, makes it unlawful engage in any act enumerated in Okla. Stat. tit. 15, §§ 753.

344.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Okla. Stat. tit. 15, § 753 by representing to the Oklahoma Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

345.   In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices in violation of Okla. Stat. tit. 15, § 753:

   a. § 753(5):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

   b. § 753(7):  Lilly represented to Plaintiff and the Oklahoma Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Oklahoma Subclass.

c.  § 753(8):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the Oklahoma Subclass that would perform as advertised.

346.  Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

347.  Plaintiff and the Oklahoma Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

348.  Plaintiff and the Oklahoma Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed in violation of Okla. Stat. tit. 15, § 753.

349.  As a result of Lilly's violations of the North Oklahoma Consumer Protection Act, the Oklahoma Subclass seeks an order of this Court awarding the Oklahoma Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XXXVI (OREGON SUBCLASS)**
**VIOLATIONS OF OREGON'S UNLAWFUL TRADE PRACTICES LAW**
**OR. REV. STAT. §§ 646.605, *ET SEQ***

350.  Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

351.  Oregon's Unlawful Trade Practices Law, Or. Rev. Stat. §§ 646.605, *et seq.*, makes it unlawful engage in any unlawful act as specified by the statute.

352.  As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Oregon law by representing to the

Oregon Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

353.    In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices in violation of Or. Rev. Stat. § 646.608:

      a. § 646.608(1)(e):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

      b. § 646.608(1)(g):  Lilly represented to Plaintiff and the Oregon Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Oregon Subclass.

      c. § 646.608(1)(u):  Lilly generally engaged in deceptive conduct in misleading Plaintiff and the Oregon Subclass about the frequency, severity, and duration of Cymbalta withdrawal.

354.    Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

355.    Plaintiff and the Oregon Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

356.   Plaintiff and the Oregon Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed.

357.   As a result of Lilly's violations of the Oregon's Unlawful Trade Practices Law, the Oregon Subclass seeks an order of this Court awarding the Oregon Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XXXVII (PENNSYLVANIA SUBCLASS)**
**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW, 73 PA. STAT. ANN. §§ 201-1, *ET SEQ***

358.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

359.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1, *et seq.*, makes it unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

360.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of 73 Pa. Stat. Ann. § 201-2 by representing to the Pennsylvania Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

361.   In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices in pursuant to 73 Pa. Stat. Ann. § 201-2(4):

   a. § 201-2(4)(v):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta

withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

b. § 201-2(4)(vii):  Lilly represented to Plaintiff and the Pennsylvania Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Pennsylvania Subclass.

c. § 201-2(4)(ix):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the Pennsylvania Subclass that would perform as advertised.

362.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

363.   Plaintiff and the Pennsylvania Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

364.   Plaintiff and the Pennsylvania Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed.

365.   As a result of Lilly's violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, the Pennsylvania Subclass seeks an order of this Court awarding the Pennsylvania Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive / treble damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XXXVIII (RHODE ISLAND SUBCLASS)

**VIOLATIONS OF THE RHODE ISLAND UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION ACT, R.I. GEN. LAWS §§ 6-13.1-1, *ET SEQ***

366.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

367.   The Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*, makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

368.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Rhode Island law by representing to the Rhode Island Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

369.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

370.   Plaintiff and the Rhode Island Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

371.   Plaintiff and the Rhode Island Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed.

372.   As a result of Lilly's violations of the Rhode Island Unfair Trade Practices and Consumer Protection Act, the Rhode Island Subclass seeks an order of this Court awarding the Rhode Island Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive / treble damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XXXIX (SOUTH DAKOTA SUBCLASS)
### VIOLATIONS OF SOUTH DAKOTA'S DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW, S.D. CODIFIED LAWS §§ 37-24-6, *ET SEQ*

373.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

374.   South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37-24-6, *et seq.*, makes it unlawful to act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been mislead, deceived, or damaged.

375.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of South Dakota law by representing to the South Dakota Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

376.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

377.   Plaintiff and the South Dakota Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

378.   Plaintiff and the South Dakota Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed.

379.   As a result of Lilly's violations of South Dakota's Deceptive Trade Practices and Consumer Protection Law, the South Dakota Subclass seeks an order of

90

this Court, pursuant to S.D. Codified Laws § 37-24-31, awarding the South Dakota Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive / treble damages, attorneys' fees and costs, and for such other relief as set forth below.

### COUNT XL (TEXAS SUBCLASS)
### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT, TEX. BUS. & COM. CODE §§ 17.41, *ET SEQ*

380.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

381.   The Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*, makes it unlawful to engage in false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.

382.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Tex. Bus. & Com. Code § 17.46 by representing to the Texas Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

383.   In addition, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices in violation of Tex. Bus. & Com. Code § 17.46:

      a.   § 17.46(5):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

      b.   § 17.46(7):  Lilly represented to Plaintiff and the Texas Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal

occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Texas Subclass.

c. § 17.46(9):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the Texas Subclass that would perform as advertised.

384.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

385.   Plaintiff and the Texas Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

386.   Plaintiff and the Texas Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed.

387.   As a result of Lilly's violations of the Texas Deceptive Trade Practices-Consumer Protection Act, the Texas Subclass seeks an order of this Court awarding the Texas Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive / treble damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XLI (UTAH SUBCLASS)**
**VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT**
**UTAH CODE ANN. §§ 13-11-1, *ET SEQ***

388.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

389.   The Utah Consumer Sales Practices Act, Utah Code. Ann. §§ 13-11-1, *et seq.*, makes it unlawful for a supplier to engage in any deceptive act or practice in connection with a consumer transaction.

390.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Utah Code. Ann. § 13-11-4(1) by representing to the Utah Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

391.   In addition, Lilly committed, *inter alia*, the following unlawful and deceptive marketing practices specifically enumerated in Utah Code. Ann. § 13-11-4(2):

      a.  § 13-11-4(2)(a):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific characteristic, use, or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

      b.  § 13-11-4(2)(b):  Lilly represented to Plaintiff and the Utah Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Utah Subclass.

392.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

93

393.   Plaintiff and the Utah Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

394.   Plaintiff and the Utah Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed.

395.   As a result of Lilly's violations of the Utah Consumer Sales Practices Act, the Utah Subclass seeks an order of this Court awarding the Utah Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, punitive damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XLII (VERMONT SUBCLASS)
## VIOLATIONS OF VERMONT'S CONSUMER PROTECTION LAW
## VT. STAT. ANN. TIT. 9, §§ 2451, *ET SEQ*

396.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

397.   Vermont's Consumer Protection Law, Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.*, makes it unlawful for a supplier to engage in any unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce.

398.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Vermont law by representing to the Vermont Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

399.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

400.   Plaintiff and the Vermont Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

401.   Plaintiff and the Vermont Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed.

402.   As a result of Lilly's violations of the Vermont's Consumer Protection Law, the Vermont Subclass seeks an order of this Court awarding the Vermont Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, treble damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XLIII (WASHINGTON SUBCLASS)
## VIOLATIONS OF WASHINGTON'S CONSUMER PROTECTION ACT
## WASH. REV. CODE §§ 19.86.010, *ET SEQ*

403.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

404.   Washington's Consumer Protection Act, Wash. Rev. Code §§ 19.86.010, *et seq.*, makes it unlawful to engage in any unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce.

405.   At all relevant times, Lilly engaged in "trade" and/or "commerce" within the meaning of Wash. Rev. Code § 19.86.010.

406.   The Washington Consumer Protection Act broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.  Wash. Rev. Code § 19.86.0120.

407.   As alleged throughout this Complaint, Lilly engaged in unlawful marketing that had the capacity to deceive consumers in violation of Washington law by representing to the Washington Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta

1  while concealing and misrepresenting the frequency, severity, and duration of Cymbalta
2  withdrawal.

3  408.  Lilly's concealment and misrepresentation regarding the frequency,
4  severity, and duration of Cymbalta withdrawal was a material omission / misstatement
5  that had the capacity to deceive consumers.

6  409.  Plaintiff and the Washington Subclass relied upon Lilly's deceptive and
7  unlawful marketing practices, including, *inter alia*, the representation that the warnings
8  related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

9  410.  Plaintiff and the Washington Subclass lost money as a result of Lilly's
10 deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally
11 advertised and marketed.

12 411.  Prosecution of this claim will result in a substantial public benefit because
13 this class action will prevent Lilly from continuing to deceive and mislead Plaintiff and
14 the Washington Subclass, and all consumers with the State of Washington, and will
15 provide an important public health benefit by apprising consumers and prescribing
16 physicians of the substantial risks associated with Cymbalta withdrawal.

17 412.  As a result of Lilly's violations of the Washington's Consumer Protection
18 Act, the Washington Subclass seeks an order of this Court awarding the Washington
19 Subclass, *inter alia*, actual damages, restitution, an injunction against the use of
20 unlawful trade practice, treble damages, attorneys' fees and costs, and for such other
21 relief as set forth below.

**COUNT XLIV (WEST VIRGINIA SUBCLASS)**
**VIOLATIONS THE WEST VIGINIA CONSUMER CREDIT AND**
**PROTECTION ACT**
**W. VA. CODE ANN. § 46A-1-101, *ET SEQ***

413.  Plaintiff incorporates by reference each and every prior and subsequent
allegation of this Complaint as if fully restated here.

96

414.   The West Virginia Consumer Credit and Protection Act, W. Va. Code Ann. §§ 46A-1-101, *et seq.*, makes it unlawful to engage in any unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce.

415.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of West Virginia law by representing to the West Virginia Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

416.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

417.   Plaintiff and the West Virginia Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

418.   Plaintiff and the West Virginia Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed.

419.   As a result of Lilly's violations of the West Virginia Consumer Credit and Protection Act, the West Virginia Subclass seeks an order of this Court awarding the West Virginia Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, treble damages, attorneys' fees and costs, and for such other relief as set forth below.

## COUNT XLV (WISCONSIN SUBCLASS)
## VIOLATIONS WISCONSIN'S FRAUDULENT DRUG ADVERTISING LAW
## WIS. STAT. § 100.182

420.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

421.   Wisconsin's Fraudulent Drug Advertising Law, Wis. Stat. § 100.182, makes it unlawful to advertise the availability of any drug or publish or circulate such an advertisement with the intent of selling, increasing the consumption of or generating interest in the drug if the advertisement contains any untrue, deceptive or misleading representations material to the effects of the drug.

422.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Wisconsin law by representing to the Wisconsin Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

423.   Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

424.   Plaintiff and the Wisconsin Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

425.   Plaintiff and the Wisconsin Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed.

426.   As a result of Lilly's violations of Wisconsin's Fraudulent Drug Advertising Law, the Wisconsin Subclass seeks an order of this Court awarding the Wisconsin Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, double damages, attorneys' fees and costs, and for such other relief as set forth below.

**COUNT XLVI (WYOMING SUBCLASS)**
**VIOLATIONS THE WYOMING CONSUMER PROTECTION ACT**
**WYO. STAT. ANN. §§ 40-12-101, ET SEQ.**

427.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

428.   The Wyoming Consumer Protection Act, Wyo. Stat. Ann. §§ 40-12-101, *et seq.*, makes it unlawful to engage in deceptive trade practices as defined by the Act.

429.   As alleged throughout this Complaint, Lilly deliberately engaged in deceptive and unlawful marketing in violation of Wyo. Stat. Ann. § 40-12-102 by representing to the Wyoming Subclass that Cymbalta withdrawal was rare or infrequent when, in truth, it is common and severe.  Lilly sold and marketed Cymbalta while concealing and misrepresenting the frequency, severity, and duration of Cymbalta withdrawal.

430.   Specifically, Lilly has committed, *inter alia*, the following unlawful and deceptive marketing practices in violation of Wyo. Stat. Ann. § 40-12-102(a):

      a.   § 40-12-102(a)(i):  Lilly knowingly represented through advertisements and drug labels that Cymbalta had a specific use or benefit that it did not have, *i.e.*, that Cymbalta users rarely suffered Cymbalta withdrawal, when in fact, Lilly knew that Cymbalta withdrawal was frequent and severe.

      b.   § 40-12-102(a)(iii):  Lilly represented to Plaintiff and the Wyoming Subclass that Cymbalta was of a particular quality or standard, *i.e.*, not likely to create withdrawal symptoms.  In truth, Lilly knew that Cymbalta withdrawal occurs in a substantial percentage of users and Lilly concealed this fact from Plaintiff and the Wyoming Subclass.

      c.   § 40-12-102(a)(x):  Lilly advertised and sold Cymbalta indicating that Cymbalta withdrawal was rare, where, in fact, Lilly never intended to provide Cymbalta to Plaintiff and the Wyoming Subclass that would perform as advertised.

d.  § 40-12-102(a)(xv):  Lilly's conduct, as alleged throughout this Complaint, of misleading Plaintiff and the Wyoming Subclass about the frequency, severity, and duration of Cymbalta withdrawal was deceptive and unfair.

431.  Lilly's concealment and misrepresentation regarding the frequency, severity, and duration of Cymbalta withdrawal was a material omission / misstatement that would cause a consumer to believe, incorrectly, that Cymbalta withdrawal was a rare adverse effect.

432.  Plaintiff and the Wyoming Subclass relied upon Lilly's deceptive and unlawful marketing practices, including, *inter alia*, the representation that the warnings related to the frequency, severity, and duration of Cymbalta withdrawal were accurate.

433.  Because Lilly engaged in a scheme, artifice, or device to defraud with the intent to deliberately misled and defraud Plaintiff and the Wyoming Subclass, as is alleged throughout this Complaint, Lilly's conduct is an incurable deceptive act pursuant to Wyo. Stat. Ann. § 40-12-108.

434.  Plaintiff and the Wyoming Subclass lost money as a result of Lilly's deceptive and unlawful marketing practices by purchasing Cymbalta that was illegally advertised and marketed.

435.  As a result of Lilly's violations of the Wyoming Consumer Protection Act, the Wyoming Subclass seeks an order of this Court, pursuant to Wyo. Stat. Ann. § 40-12-108(b), awarding the Wyoming Subclass, *inter alia*, actual damages, restitution, an injunction against the use of unlawful trade practice, treble damages, attorneys' fees and costs, and for such other relief as set forth below.

436.  The Wyoming Subclass will provide any required notice to appropriate entities regarding Defendants' unfair and deceptive trade practices.

## COUNTS XLVIII-LIII
## INDIVIDUAL CAUSES OF ACTION
## FOR PERSONAL INJURY

437.   Counts XLVIII-LIII allege causes of action pertaining to the personal injury Plaintiff suffered while weaning off of Cymbalta.  Counts XLVIII-LIII are not premised on consumer protection.  They are based on making the Plaintiff whole for the personal injury she sustained as a result of Lilly putting to market a product that was unreasonably dangerous to consumers and from which Plaintiff sustained significant injury.  These claims are brought individually against Lilly.

## COUNT XLVIII
## (INDIVIDUALLY)
## BREACH OF EXPRESS WARRANTY

438.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

439.   Plaintiff brings a cause of action against Lilly for breach of express warranty.

440.   Lilly made numerous representations, descriptions, and promises to Plaintiff regarding the frequency and severity of withdrawal symptoms caused by ceasing to take Cymbalta.  Accordingly, Defendant expressly warranted that Cymbalta had a low or rare incidence of withdrawal.

441.   Lilly, however, knew that its representations, descriptions, and promises regarding Cymbalta withdrawal were false.  Lilly was aware, as demonstrated in its own clinical trials of Cymbalta, that withdrawal symptoms occurred in almost half of users.  Lilly's representations were deliberately misleading and false.

442.   Plaintiff reasonably relied on Lilly's representations in purchasing and ingesting Cymbalta.  Cymbalta, however, did not perform as was warranted.  Cymbalta withdrawal was substantially more frequent than had been represented.  Accordingly, Lilly breached its express warranty by providing a drug that contained side-effects that were never disclosed to the Plaintiff.

443.   As a direct and proximate result of Lilly's false and misleading representations and warranties, Plaintiff suffered significant damages.  Accordingly, Plaintiff seeks an order of this Court:

       a.   Awarding Plaintiff compensatory damages;

       b.   Awarding Plaintiff all economic and non-economic damages for the personal injury she sustained while withdrawing from Cymbalta;

       c.   Imposing exemplary / punitive damages against Lilly;

       d.   Awarding costs and reasonable attorneys' fees; and

       e.   Providing for such other relief as set forth below.

**COUNT XLIX**
**(INDIVIDUALLY)**
**BREACH OF IMPLIED WARRANTY**

444.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

445.   Plaintiff brings a cause of action against Lilly for breach of implied warranty.

446.   Lilly made numerous representations, descriptions, and promises to Plaintiff regarding the frequency and severity of withdrawal symptoms caused by stopping Cymbalta.  Specifically, Cymbalta's label suggests that withdrawal symptoms occurred in approximately one (1) percent of users.

447.   Plaintiff reasonably relied on Lilly's representations in purchasing and ingesting Cymbalta.

448.   As set forth throughout this Complaint, Lilly knew that its representations, descriptions and promises regarding Cymbalta withdrawal were false.

449.   When Plaintiff purchased Cymbalta, it did not conform to the promises or affirmations of fact made on Cymbalta's label.  The incidence of Cymbalta withdrawal was substantially more common than Lilly had represented.

450.   Accordingly, Cymbalta failed to conform to Lilly's implied warranty regarding the frequency, severity, and duration of Cymbalta withdrawal.

451.   As a direct and proximate result of Lilly's false and misleading representations and warranties, Plaintiff suffered significant personal injury when she underwent Cymbalta withdrawal.   Accordingly, Plaintiff seeks an order of this Court:

      a.   Awarding Plaintiff compensatory damages;

      b.   Awarding Plaintiff economic and non-economic damages for the personal injury she sustained while withdrawing from Cymbalta;

      c.   Imposing exemplary / punitive damages against Lilly;

      d.   Awarding costs and reasonable attorneys' fees; and

      e.   Providing for such other relief as set forth below.

**COUNT L**
**(INDIVIDUALLY)**
**FRAUDULENT CONCEALMENT**

452.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

453.   Plaintiff brings a cause of action against Lilly for the fraudulent concealment of an adverse side effect of Cymbalta from Plaintiff.

454.   Lilly knew that Cymbalta withdrawal occurred in a substantial percentage of users.  Lilly, however, concealed this fact from Plaintiff in the selling and marketing of Cymbalta.  Specifically, nowhere on Cymbalta's packaging or its attendant prescription information does Lilly state the true likelihood that users would develop a physical dependence on the drug, *i.e.*, suffer from Cymbalta withdrawal.  In fact, Cymbalta's packaging and attendant prescription information deliberately misleads users by suggesting that Cymbalta withdrawal occurs in approximately one (1) percent of users.

455.   Lilly owed Plaintiff a duty to exercise reasonable care and diligence in stating the material side effects of Cymbalta.  Full disclosure of potential side effects is

an important component in making a decision about whether one starts a potent psychotropic medication.

456.   Lilly breached that duty to Plaintiff by deliberately misstating the frequency, severity, and duration of Cymbalta withdrawal.  Lilly's deception was done with the specific intent to induce Plaintiff into purchasing Cymbalta under false pretenses.

457.   As a proximate result of Lilly's fraudulent concealment, Plaintiff was induced to purchase and continue to purchase Cymbalta.   If Plaintiff had been aware of the habit-forming properties of Cymbalta, she would never have purchased or used Cymbalta.

458.   Lilly's fraudulent concealment has caused the Plaintiff to suffer significant damages.   Accordingly, Plaintiff seeks an order of this Court:

a.   Awarding Plaintiff compensatory damages;

b.   Awarding Plaintiff all appropriate damages for the personal injury she sustained while withdrawing from Cymbalta;

c.   Imposing exemplary / punitive damages against Lilly;

d.   Awarding costs and reasonable attorneys' fees; and

e.   Providing for such other relief as set forth below.

**COUNT LI
(INDIVIDUALLY)
UNJUST ENRICHMENT**

459.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

460.   Plaintiff brings a cause of action against Lilly for the inequitable and unjust enrichment of Lilly through its unlawful and deceptive marketing practices.

461.   Lilly has received benefits from Plaintiff in the form of the money paid by Plaintiff in purchasing Cymbalta.

462.   By deliberately misleading Plaintiff and the public that Cymbalta withdrawal was rare, Lilly reaped millions of dollars in profits that it otherwise would not have obtained and caused Plaintiff to spend money on Cymbalta.

463.   Lilly is aware of its receipt of those benefits and received those benefits to the detriment of Plaintiff.

464.   Lilly continues to retain those benefits to the detriment of Plaintiff.

465.   Under the circumstances, it would be inequitable and against good conscience for Lilly to retain those benefits.

466.   As a direct and proximate result of Lilly's deceptive and unlawful marketing practices, Plaintiff suffered significant damages.   Accordingly, Plaintiff seeks an order of this Court:

       a.   Disgorging Lilly's ill-gotten gains acquired as a result of its deceptive and unlawful marketing practices;

       b.   Awarding restitution to the Plaintiff;

       c.   Imposing exemplary / punitive damages against Lilly;

       d.   Awarding costs and reasonable attorneys' fees; and

       e.   Providing for such other relief as set forth below.

## COUNT LII
## (INDIVIDUALLY)
## STRICT PRODUCTS LIABILITY

467.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

468.   Plaintiff brings a cause of action for strict products liability against Lilly.

469.   Lilly is, and was at all times relevant herein, engaged in the business of designing, testing, manufacturing, and promoting prescription medications, including Cymbalta, to the general public.

470.   At all times relevant herein, Cymbalta posed a significant risk of injury to users.  Specifically, Cymbalta poses a significant risk of creating physical dependence.

471.   Lilly was fully aware of the risks Cymbalta posed to consumers.  Lilly's clinical trials of Cymbalta showed that a significant percentage of Cymbalta users experienced withdrawal symptoms.

472.   The risks associated with Cymbalta withdrawal, however, were neither obvious nor commonly known.  Thus, Lilly owed a duty to adequately warn users, including Plaintiff, of the risks associated with stopping Cymbalta.

473.   The Cymbalta manufactured, prescribed, and sold by Lilly was not accompanied by proper warnings regarding the frequency, severity, and duration of Cymbalta withdrawal symptoms.   The warnings did not accurately reflect that a significant percentage of Cymbalta users suffered from withdrawal symptoms as documented in Lilly's clinical trials.  Rather, the warnings suggested that Cymbalta withdrawal was rare, or occurred at a rate of approximately one (1) percent.

474.   Plaintiff, in accordance with its prescribed and reasonably for foreseeable use, began ingesting Cymbalta to treat her medical conditions.  When she attempted to stop, as set forth in preceding paragraphs, she experienced severe withdrawal symptoms over the course of several months.  During this period, Plaintiff suffered significant personal injury and pain.

475.   As direct and proximate result of Lilly's defective production and marketing of Cymbalta, Plaintiff suffered significant damages.   Accordingly, Plaintiff seeks an order of this Court:

    a.  Awarding Plaintiff compensatory damages;

    b.  Awarding Plaintiff all economic and non-economic damages for the personal injury she sustained while withdrawing from Cymbalta including, *inter alia*, pain and suffering, emotional distress, anguish, shock, stress, and mental suffering;

    c.  Imposing exemplary / punitive damages against Lilly;

    d.  Awarding costs and reasonable attorneys' fees; and

e.  Providing for such other relief as set forth below.

## COUNT LIII
## (INDIVIDUALLY)
## NEGLIGENCE

476.  Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

477.  Plaintiff brings a cause of action for negligence Lilly.

478.  Lilly has a duty to exercise reasonable care in the design, formulation, manufacture, sale, promotion, supply and/or distribution of the drug Cymbalta, including the duty to assure the product is as effective as it is promoted, that the product carries adequate warnings, and the duty to ensure that the product does not cause users to suffer from unreasonable, dangerous side effects.

479.  Lilly was negligent in the design, manufacture, testing, advertising, marketing, promoting, labeling, supply, and sale of Cymbalta in that it:

a.  Failed to provide proper warnings regarding the true frequency, severity, and duration of Cymbalta withdrawal symptoms;

b.  Failed to provide any warnings that Cymbalta would cause users to become physically dependant on the drug;

c.  Deliberately misled users by suggesting that Cymbalta withdrawal was rare;

d.   Failed to provide proper training and instructions to users and healthcare professionals regarding the appropriate methods for stopping Cymbalta;

e.  Failed to warn that the risks associated with Cymbalta exceeded the risks or other comparable treatment options;

f.  Failed to warn of the potential duration associated with Cymbalta.

g.  Misrepresented the difficulty and severity of symptoms associated with withdrawal;

h. Negligently designed Cymbalta in a way that it knew would cause withdrawal and physical dependence;

i. Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or concealed  material facts regarding the safety and efficacy of Cymbalta to the Plaintiff, the public, the FDA and the medical community;

j. Failed to comply with its post-manufacturing duty to warn that Cymbalta was being promoted, distributed, and prescribed without warning of the true risk of side effects and without accurate information regarding potential withdrawal symptoms;

k. Was otherwise careless, negligence, grossly negligent, reckless, and acted with willful and wanton disregard for Plaintiff's rights and safety.

480.   Despite the fact that Lilly knew that Cymbalta created frequent and severe withdrawal symptoms, Lilly continued to market Cymbalta to consumers, including Plaintiff.  Lilly knew that Cymbalta users, including Plaintiff, would suffer reasonably foreseeable injuries as a result of its failure to exercise reasonable care.

481.   Had Lilly provided an adequate warning regarding the frequency, severity, and duration of Cymbalta withdrawal, Plaintiff would never have started Cymbalta, would not have suffered its withdrawal symptoms, and would never have become physically dependant on Cymbalta.

482.   As a direct and proximate result of Lilly's negligence, misrepresentations, and recklessness, Plaintiff has suffered significant damages.  Accordingly, Plaintiff seeks an order of this Court:

a. Awarding Plaintiff compensatory damages;

b. Awarding Plaintiff all appropriate damages for the personal injury she sustained while withdrawing from Cymbalta including, *inter alia*, pain

and suffering, emotional distress, anguish, shock, stress, and mental suffering;

c. Imposing exemplary / punitive damages against Lilly;

d. Awarding costs and reasonable attorneys' fees; and

e. Providing for such other relief as set forth below.

## EXEMPLARY / PUNITIVE / TREBLE DAMAGES ALLEGATIONS

483. Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

484. Lilly's conduct as alleged herein was done with oppression, fraud, and malice. Lilly was fully aware of the frequency, severity, and duration of Cymbalta withdrawal as documented in its own clinical trials. Nonetheless, Lilly deliberately crafted its warning language to mislead consumers and healthcare professionals into believing that withdrawal symptoms were rare and mild. This was not done by accident. Lilly knew that it could turn a profit by "hooking" consumers on Cymbalta. Such conduct was done with the intent to injure and was done with a conscious disregard of consumer rights.

485. There is no indication that Lilly will stop its deceptive and unlawful marketing practices unless it is punished and deterred.

Accordingly, the exemplary /punitive / treble damages are warranted insofar as they are allowed by, and pursuant to, the law of each State Subclass and, in the context of Plaintiff's individual claims, the State of California.

///

///

///

///

//

/

## **DEMAND FOR JURY TRIAL**

486.   Plaintiff respectfully requests a trial by jury on all claims triable as a matter of right.

## **PRAYER FOR RELIEF**

487.   WHEREFORE, Plaintiff individually and on behalf all those similarly situated, prays for judgment and the following relief:

    a.   That Lilly be permanently enjoined from performing further acts in violation of the various state consumer protection actions alleged herein.

    b.   Grant Plaintiff and each Subclass awards of actual and compensatory damages in such amount to be determined at trial and as provided by applicable law;

    c.   Grant Plaintiff and each Subclass a refund of all moneys acquired by Lilly by means of its deceptive and unlawful marketing of Cymbalta;

    d.   Grant Plaintiff and each Subclass awards of restitution and/or disgorgement of Lilly's profit from its deceptive and unlawful marketing of Cymbalta in violation of the various state consumer protection statutes;

    e.   Grant Plaintiff and each eligible Subclass exemplary and punitive damages sufficient to punish and deter Lilly and others from future deceptive and unlawful marketing practices;

    f.   Grant Plaintiff and each Subclass pre-judgment and post-judgment interest;

    g.   Grant Plaintiff and each Subclass reasonable attorneys' fees and costs of suit; and

    h.   Grant Plaintiff and each Subclass such other and further relief as the Court deems just and proper under the circumstances

DATED this 31st day of October, 2012.

**KELLER ROHRBACK, L.L.P.**

By:  Sharon Hritz, Esq. (CA Bar No. 265105)

Lynn Lincoln Sarko, Esq.
lsarko@kellerrohrback.com
Michael D. Woerner, Esq.
mwoerner@kellerrohrback.com
Gretchen Freeman Cappio, Esq.
gcappio@kellerrohrback.com
Havila Unrein, Esq.
hunrein@kellerrohrback.com
**KELLER ROHRBACK, L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384

Sharon Hritz, Esq. (CA Bar No. 265105)
shritz@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496 / Fax:(805) 456-1497

Mark D. Samson, Esq.
msamson@kellerrohrback.com
**KELLER ROHRBACK, P.L.C.**
3101 N. Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088 / Fax: (602) 248-2822

Samuel S. Deskin, Esq.
sam@deskinlawfirm.com
**DESKIN LAW FIRM, A PLC**
16944 Ventura Blvd, Office
Encino, CA 91316
Tel.:  (800) 709-8978 / Fax: (800) 709-8971

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Harris L. Pogust, Esq.
hpogust@pbmattorneys.com
T. Matthew Leckman, Esq.
MLeckman@pbmattorneys.com
**POGUST BRASLOW MILLROOD LLC**
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel.: (800) 897-8930 / Fax: (610) 941-4245

*Counsel for Plaintiffs*