1   Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
    lsarko@kellerrohrback.com
2   Michael D. Woerner, Esq., *admitted pro hac vice*
    mwoerner@kellerrohrback.com
3   Juli E. Farris, Esq. (CA Bar No. 141716)
    jfarris@kellerrohrback.com
4   Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
    gcappio@kellerrohrback.com
5   Havila Unrein, Esq., *admitted pro hac vice*
    hunrein@kellerrohrback.com
6   **KELLER ROHRBACK L.L.P.**
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101
7   Telephone: (206) 623-1900 / Fax: (206) 623-3384

8   Juli E. Farris, Esq. (CA Bar No. 141716)
    jfarris@kellerrohrback.com
    Sharon Hritz, Esq. (CA Bar No. 265105)
9   shritz@kellerrohrback.com
    **KELLER ROHRBACK L.L.P.**
    1129 State Street, Suite 8
10  Santa Barbara, CA 93101
    Tel: (805) 456-1496 / Fax: (805) 456-1497

11  Mark D. Samson, Esq., *admitted pro hac vice*
    msamson@kellerrohrback.com
12  **KELLER ROHRBACK P.L.C.**
    3101 N. Central Avenue, Suite 1400
    Phoenix, AZ 85012
13  Tel: (602) 248-0088 / Fax: (602) 248-2822

    ***Additional Counsel for Plaintiffs on following page***

14
15                **UNITED STATES DISTRICT COURT**
                  **CENTRAL DISTRICT OF CALIFORNIA**

16  JENNIFER L. SAAVEDRA, DR.          | **NO. 2:12-CV-09366-SVW(MANX)**
    MELISSA STRAFFORD, CAROL           |
    JACQUEZ, and DAVID MATTHEWS,       | **CLASS ACTION**
17  JR., on behalf of themselves and all other |
    persons similarly situated,        |
18                                     | **PLAINTIFFS' OPPOSITION TO**
                  Plaintiffs,          | **DEFENDANT'S MOTION TO**
19                                     | **DISMISS**
           vs.                         |
20  ELI LILLY AND COMPANY, an Indiana  | **THE HONORABLE STEPHEN V.**
    corporation,                       | **WILSON**
21                Defendant.           |

1  Samuel S. Deskin, Esq.
   sam@deskinlawfirm.com
2  DESKIN LAW FIRM, PLC
   16944 Ventura Blvd
3  Encino, CA 91316
   Tel.: (800) 709-8978 / Fax: (800) 709-8971

4  Harris L. Pogust, Esq.
   hpogust@pbmattorneys.com
5  T. Matthew Leckman, Esq.
   MLeckman@pbmattorneys.com
6  POGUST BRASLOW MILLROOD LLC
   161 Washington Street, Suite 1520
7  Conshohocken, PA 19428
   Tel.: (800) 897-8930 / Fax: (610) 941-4245

8  *Additional Counsel for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

1

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ...................................................................1

II.     FACTS: 1 DOES NOT EQUAL 44 .........................................................2

III.    ARGUMENT ...........................................................................................3

    A.    Plaintiffs' Claims are Plausible ..................................................3

    B.    Plaintiffs Have Standing To Seek Declaratory and
           Injunctive Relief ..........................................................................4

    C.    Plaintiffs Plausibly Alleged the Elements of Their
           Consumer Claims..........................................................................6

           1.    The Cymbalta discontinuation warning is unfair
                  and unlawful ..........................................................................6

           2.    Plaintiffs sufficiently alleged their exposure to
                  Lilly's unfair and unlawful advertising ...................................9

    D.    Saavedra plausibly alleged her individual claims ...........................10

    E.    The Learned Intermediary Doctrine Does Not Bar
           Plaintiffs' Claims ......................................................................12

           1.    The "learned intermediary" doctrine does not
                  apply in consumer protection cases......................................12

           2.    Lilly failed to inform physicians and consumers .................16

           3.    The learned intermediary doctrine does not bar
                  Saavedra's individual claims.................................................18

           4.    The learned intermediary doctrine is inapplicable
                  where Lilly advertised directly to consumers ......................20

    F.    Plaintiffs' Claims are Not Preempted.............................................22

           1.    Plaintiffs Did Not Allege Fraud on the FDA ......................23

           2.    Plaintiffs' Claims are not Barred by the Primary
                  Jurisdiction Doctrine.............................................................24

IV.    CONCLUSION ..............................................................................25

i

1

2 <u>**TABLE OF AUTHORITIES**</u>

3 <u>**Cases**</u>

4 *Arnold v. Dow Chem. Co.*,
   91 Cal. App. 4th 698, 110 Cal. Rptr. 2d 722 (2001)......................................11

5 *Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..............................4
6
*Bell Atl. Corp. v. Twombly*,
7   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..............................4

8 *Bine v. Sterling Drug, Inc.*,
   422 S.W.2d 623 (Mo. 1968)...........................................................................16
9
*Buckman Co. v. Plaintiffs' Legal Comm.*,
10   531 U.S. 341, 121 S.Ct. 1012, 148 L. Ed. 2d 854 (2001) ..............................23

11 *Carlin  v. Superior Court*,
    13 Cal. 4th 1104, 920 P.2d 1347 (1996)........................................................15

12 *Carmichael v. Reitz*,
    17 Cal. App. 3d 958, 95 Cal. Rptr. 381 (Cal. Ct. App. 1971) ........................20
13
*Carr-Davis v. Bristol-Myers Squibb Co.*,
14   No. 07-1098 (D.N.J. Jan. 28, 2013)...............................................................17

15 *Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008).......................................................................25

16 *Colacicco v. Apotex*,
    173 L. Ed. 2d 672, 129 S. Ct. 1578 (2009).....................................................13
17
*Colacicco v. Apotex*,
18   432 F.Supp.2d 514 (E.D. Pa. 2006)...............................................................13

19 *Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal.App.4th 663, 38 Cal. Rptr. 3d 36 (2006)...........................................16
20
*Conte v. Wyeth*,
21   168 Cal. App. 4th 89, 85 Cal. Rptr. 3d 299 (Cal. Ct. App. 2009) ..................19

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012)........................................................................14

*Davis v. Wyeth Laboratories, Inc.*,
    399 F.2d 121 (9th Cir. 1968)........................................................................22

*Doe v. United States*,
    419 F.3d 1058 (9th Cir. 2005)........................................................................4

*Erickson v. Pardus*,
    551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ..............................4

*Garside v. Osco Drug, Inc.*,
    764 F.Supp. 208 (D. Mass. 1991)................................................................22

*Gest v. Bradbury*,
    443 F.3d 1177 (9th Cir. 2006)........................................................................5

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997)........................................................................4

*Green v. Blue Cross & Blue Shield of Massachusetts, Inc.*,
    47 Mass. App. Ct 443, 713 N.E.2d 992 (Mass. App. Ct. 1999) ....................16

*Griffith v. Blatt*,
    334 Or. 456, 51 P.3d 1256 (2002)................................................................13

*Heindel v. Pfizer, Inc.*,
    381 F.Supp.2d 364 (D.N.J. 2004)................................................................13

*Henderson v. Gruma Corp.*,
    No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011)....................5, 6

*Hill v. Searle Laboratories*,
    884 F.2d 1064 (8th Cir. 1989)......................................................................22

*Hornisher v. Eli Lilly & Co.*,
    No. 09-1453, 2010 WL 1957300 (N.D. Cal. May 14, 2010) ........................19

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales*
    *Practices Litig.*,
    701 F.Supp.2d 356 (E.D.N.Y. 2010)............................................................23

*In re Budeprion XL Marketing and Sales Litig.,*
   MDL No. 2107, 2010 WL 2135625 (E.D. Penn. May 26, 2010) ...................23

*In re Mattel, Inc.,*
   588 F. Supp. 2d 1111 (C.D. Cal. 2008) ........................................................10

*Int'l Fidelity Ins. Co. v. Wilson,*
   387 Mass. 841, 443 NE.2d 1308 (1983) ......................................................10

*Janda v. T-Mobile, USA, Inc.,*
   No. 05-03729, 2008 WL 4847116 (N.D. Cal. Nov. 7, 2008) ...........................6

*Johnson v. American Standard, Inc.,*
   43 Cal. 4th 56, 74 Cal. Rptr. 108 (Cal. 2008) ..............................................20

*Karlin v. IVF Am., Inc.,*
   93 N.Y. 2d 282, 712 N.E.2d 662 (1999) ......................................................16

*Keegan v. Am. Honda Motor Co., Inc.,*
   838 F.Supp.2d 929 (C.D. Cal. 2012) ...........................................................15

*Krueger v. Wyeth,*
   No. 03-2496, 2011 WL 8971449 (S.D. Cal. Mar. 30, 2011) ..........................17

*Kwikset Corp. v. Superior Court,*
   51 Cal.4th 310, 120 Cal. Rptr.3d 741, 246 P.3d 877 (Cal. 2011)...................15

*Larsen v. Trader Joe's Co.,*
   No. 11-05188, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ..........................5

*Laster v. T-Mobile USA, Inc.,*
   407 F.Supp.2d 1181 (S.D. Cal. 2005) ............................................................9

*Lefaivre v. KV Pharm. Co.,*
   636 F.3d 935 (8th Cir. 2010)..................................................................23, 24

*Leider v. Ralfe,*
   387 F. Supp. 2d 283 (S.D.N.Y. 2005) .........................................................10

*Lily Transp. Corp. v. Royal Institutional Servs., Inc.,*
   64 Mass. App. Ct. 179, 832 N.E.2d 666 (2005) ...........................................14

*Lockwood v. Conagra Foods, Inc.,*
   597 F.Supp.2d 1028 (N.D. Cal. 2009)..........................................................25

iv

*Louros v. Cyr,*
 175 F. Supp. 2d 497 (S.D.N.Y. 2001) ...........................................................15

*MacDonald v. Ortho Pharm. Corp.,*
 394 Mass. 131, 475 N.E. 2d 65 (Mass. 1985).........................................16, 20

*Martin v. Hacker,*
 83 N.Y. 2d 1, 628 N.E.2d 1308 (N.Y. 1993) .................................................16

*McEwen v. Ortho Pharm. Corp.,*
 270 Or. 375, 528 P.2d 522 (Or. 1974) ............................................................20

*McNeil v. Wyeth,*
 462 F.3d 364 (5th Cir. 2006) ..........................................................................18

*Motus v. Pfizer, Inc.,*
 196 F. Supp. 2d 984 (C.D. Cal. 2001) ............................................................19

*Notmeyer v. Stryker Corp.,*
 502 F.Supp.2d 1051 (N.D. Cal. 2007)............................................................20

*Pelman ex rel. Pelman v. McDonald's Corp.,*
 396 F.3d 508 (2d Cir. 2005) ...........................................................................10

*Perez v. Wyeth Laboratories,*
 161 N.J. 1, 734 A.2d 1245 (N.J. 1999).....................................................21, 22

*Peterson v. Cellco P'ship,*
 164 Cal.App.4th 1583, 80 Cal.Rptr.3d 316 (2008).........................................12

*Plubell v. Merck & Co., Inc.,*
 289 S.W.3d 707 (Mo. Ct. App. 2009) .............................................................10

*Plubell v. Merck & Co., Inc.,*
 No. 04-235817-01, 2008 WL 4771525 (Mo. Cir. Ct. June 12,
 2008) ..........................................................................................................13, 15

*Rikos v. Procter & Gamble Co.,*
 782 F.Supp.2d 522 (S.D. Ohio 2011)..............................................................25

*Salyards ex. rel. Salyards v. Metso Minerals,*
 No. 04-05798, 2005 WL 3021959 (E.D. Cal. Nov. 10, 2005) ........................19

*Scott v. Blue Springs Ford Sales, Inc.*,
   215 S.W.3d 145 (Mo.Ct.App.2006) ................................................16

*Shum v. Intel Corp.*,
   630 F. Supp. 2d 1063 (N.D. Cal. 2009) ........................................12

*Shum v. Intel Corp.*,
   633 F.3d 1067 (Fed. Cir. 2010) ....................................................12

*Stevens v. Parke, Davis & Co.*,
   9 Cal. 3d 51, 107 Cal. Rptr. 45 (Cal. 1973) ..................................16

*Thom v. Bristol-Myers Squibb Co.*,
   353 F.3d 848 (10th Cir. 2003)......................................................17

*Toole v. Richardson-Merrell Inc.*,
   251 Cal. App. 2d 689, 60 Cal. Rptr. 398 (1967)...........................11

*Williams v. Beechnut Nutrition Corp.*,
   185 Cal. App. 3d 135, 229 Cal. Rptr. 605 (1986).........................11

*Wyeth v. Levine*,
   555 U.S. 555, 129 S.Ct. 1187, 173 L. Ed. 2d 51 (2009) ............6, 22

*Zafarana v. Pfizer, Inc.*,
   724 F.Supp.2d 545 (E.D. Pa. 2010)..............................................13

## **Other Authorities**

21 C.F.R § 201.57....................................................................................14

21 C.F.R. § 201.57....................................................................................1

21 C.F.R. § 201.57(c)(10)(iii) ..................................................................8

21 C.F.R. § 201.57(c)(6)(i) ......................................................................8

21 C.F.R. § 201.57(c)(7)(ii)(A) ...............................................................8

Cal. Bus. & Prof. Code § 17200 ............................................................14

Cal. Bus. & Prof. Code § 17500 ............................................................14

Cal. Civ. Code § 1750 ............................................................................14

Cal. Civ. Code § 1761(d) ...................................................................14

Cal. Com. Code § 2314....................................................................11

*Faulty Warning Labels Add to Risk in prescription Drugs*,
    Sherly Gay Stolberg,  N.Y. TIMES, June 4, 1999, at A27...............................21

Fed. R. Civ. P. 12(b)(6)......................................................................3

Fed. R. Civ. P. 8(a) ...........................................................................3

*Label and Approval History: Cymbalta*,
    FDA.GOV,
    http://www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm?f
    useaction=Search.Label_ApprovalHistory#apphist (last visited
    Feb. 4, 2013)...................................................................13

Mass. Gen. Laws Ch. 93A ...............................................................14

Mo. Rev. Stat. § 407.010 ..................................................................14

N.Y. Gen. Bus. Law §§ 349 and 350....................................................14

*Prescribing Information*,
    LILLY.COM, pi.lilly.com/us/cymbalta-pi.pdf (last visited Feb. 4,
    2013) ...........................................................................13

Restatement (Second) of Torts § 402A, cmt. *j*....................................20

*Symptoms Following Abrupt Discontinuation of Duloxetine Treatment
    in Patients with Major Depressive Disorder*,
    89 JOURNAL OF AFFECTIVE DISORDERS 207 (2005) .......................17

## I.   PRELIMINARY STATEMENT

In their First Amended Complaint ("FAC") (Dkt. 44), four consumers—including one medical doctor—of the antidepressant Cymbalta filed a putative class action under their respective states' consumer protection statutes against the manufacturer of Cymbalta, Eli Lilly and Company ("Lilly"). In addition, one Plaintiff, Ms. Saavedra, also states individual claims for personal injury under California law. The gravamen of Plaintiffs' claims is that Lilly's Cymbalta label—the product information Lilly provides with every package of Cymbalta—and its extensive advertising misleadingly state that withdrawal symptoms were experienced at a rate of 1% or greater, when Lilly's own studies showed the true risk to be at least 44%.

Plaintiffs meticulously plead the required elements of their states' consumer protection statutes and other claims. Rather than refute the actual statutory elements, which Lilly must do if it is to succeed on its Rule 12 motion, Lilly makes the centerpiece of its argument a tortured view of what it calls the "Learned Intermediary Doctrine." In its brief, even Lilly's description of the label at issue is misleading. "Physician package insert" does not appear in the Code of Federal Regulations that Lilly cites. *See* (Motion To Dismiss, Dkt. 46 ("MTD") at 1, 2, 22); 21 C.F.R. § 201.57 (West 2013).

There are two primary flaws with Lilly's Learned Intermediary argument.

1

First, an intermediary—such as a treating doctor—can only be "learned" if he or she has the relevant information to share with a patient in the first place. Carried to its logical conclusion, Lilly's argument implies an absurd result: that every prescribing doctor would have to determine what information a drug company did not include on its label before he or she prescribed a drug to a patient. Second, there is no learned intermediary defense available under the consumer protection acts of the states of California, New York, Missouri, and Massachusetts. There is no "duty" element to these statutory causes of action beyond manufacturers' responsibility to tell the truth about their products. Lilly has not been truthful about Cymbalta's withdrawal risks, and therefore it must address each element of the consumer protection acts of California, New York, Missouri, and Massachusetts.

## II.   FACTS: 1 DOES NOT EQUAL 44

Neither a reasonable consumer of a drug nor a healthcare professional would equate risks of 1 and 44 percent. Thus, Lilly misled Plaintiffs, including Melissa Strafford, M.D., when it labeled and promoted its blockbuster antidepressant Cymbalta as posing a 1% or greater risk of withdrawal symptoms. (FAC ¶ 2). In truth, Lilly's own studies showed that individual withdrawal symptoms occur at rates as high as *19.2%*, while *44%* or more of Cymbalta's users experienced at least one withdrawal symptom. (*Id.* ¶ 30).

Plaintiffs allege they would never have purchased or consumed Cymbalta if

they had known the truth about the frequency, severity, and/or duration of its withdrawal symptoms. (*Id.* ¶¶ 8, 10, 12, 13). All Plaintiffs experienced withdrawal symptoms after discontinuing Cymbalta, including but not limited to, severe nausea, diarrhea, electrical "brain zaps," full-body shaking and twitching, severe insomnia, erratic emotional swings, and tunnel vision (*Id.* ¶¶ 8, 9, 10, 12, 13, 53, 54). Plaintiffs slowly weaned themselves off the drug over the course of several months to almost an entire year, yet continued to experience withdrawal symptoms for up to several months after stopping Cymbalta completely. *Id.*

The Cymbalta label is silent as to the significant percentage of users who would, according to Lilly's own studies, experience withdrawal symptoms, and it does not inform doctors or consumers that Lilly knew that the majority of those withdrawal symptoms would be moderate or severe. (*Id.* ¶¶ 31, 44-50). In addition, Lilly's direct-to-consumer advertising led Plaintiffs to believe that Cymbalta was safe, and that its withdrawal symptoms were not worrisome. (*Id.* ¶¶ 25, 37-41, 111). All Plaintiffs allege that Lilly's extensive representations influenced their decisions to purchase and consume the drug. (*See, e.g., Id.* ¶¶ 8, 9, 12, 13).

## III.   ARGUMENT

### A.    Plaintiffs' Claims are Plausible

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Pursuant to Fed. R. Civ. P. 12(b)(6), a Motion to Dismiss should be

3

denied if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). *Iqbal* and *Twombly* do not impose a "probability requirement." *Iqbal*, 556 U.S. 678. Rather, a complaint states a plausible claim for relief if the factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. On this motion, the Court "must construe the complaint in the light most favorable to [Plaintiffs], taking all [of their] allegations as true and drawing all reasonable inferences from the complaint in [their] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). To comply with the notice pleading requirements, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (quoting *Twombly*, 550 U.S. at 555). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997) (citation omitted). As set forth herein, Plaintiffs plausibly alleged all the elements of their claims and have given Lilly fair notice thereof.

**B.    Plaintiffs Have Standing To Seek Declaratory and Injunctive Relief**

4

1      Lilly claims Plaintiffs cannot demonstrate standing because they are not

2   "realistically threatened by a *repetition* of the violation" of the consumer protection

3   acts. (MTD at 23, quoting *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006)

4   (emphasis in original)). This argument fails in the consumer protection context, as

5   California's district courts have recently held when interpreting the Ninth Circuit's

6   opinion in *Gest*, 443 F.3d at 1177.

7      As stated in *Larsen v. Trader Joe's Co.*, No. 11-05188, 2012 WL 5458396,

8   at *4 (N.D. Cal. June 14, 2012), where the court specifically analyzed that

9   defendant's argument based on *Gest*, 444 F.3d at 1177, Lilly's proposition would

10  "eviscerate" the intent of the state legislatures in adopting consumer protection

11  statutes by barring any consumers "who avoid[] the offending product from

12  seeking injunctive relief." *Id.* Lilly could repeatedly, *ad infinitum*, induce

13  consumers to purchase its product based on upon its unfair and unlawful

14  statements, and then avoid having to correct such misrepresentations because the

15  consumer would never again want to purchase the product as misrepresented.

16  Judge Matz in the Central District has analyzed standing similarly. *See Henderson*

17  *v. Gruma Corp.*, No. 10-04173, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11,

18  2011). Plaintiffs injured by unlawful and unfair practices will always "be deemed

19  to avoid the cause of the injury thereafter ('once bitten, twice shy')," and therefore

20  this is not a ground on which to deny Article III standing. *Id.*

21

5

Since Lilly has taken no action to change its misleading advertising, "Plaintiffs, as representatives of a class, should be entitled to pursue injunctive relief on behalf of all consumers in order to protect consumers from Defendant's alleged false advertising." *Henderson*, 2011 WL 1362188 at *8; *see also Janda v. T-Mobile, USA, Inc.*, No. 05-03729, 2008 WL 4847116, at *4 (N.D. Cal. Nov. 7, 2008) (leave to amend to cure any standing defects in request for injunctive relief).

**C.    Plaintiffs Plausibly Alleged the Elements of Their <u>Consumer</u> Claims**

    **1.    The Cymbalta discontinuation warning is unfair and unlawful**

Plaintiffs plausibly alleged that Lilly's label unfairly and unlawfully misrepresented the frequency, severity, and/or duration of Cymbalta withdrawal. (*See, e.g.,* FAC ¶¶ 1, 2, 44-50). Lilly tries to dismiss these claims by asserting that: (1) the physician is the "consumer" under the consumer protection acts, and (2) Lilly provided an adequate warning because the label was approved by the Food & Drug Administration ("FDA") and complied with FDA guidelines. (MTD at 15-16). Lilly's first issue is simply a misguided attempt to inject the learned intermediary doctrine into these statutory claims, which Plaintiffs refute in Section E, *infra.*

Lilly's second issue is a cloaked preemption argument. To the extent that Lilly claims that FDA-approval of a drug label is *per se* sufficient, the Supreme Court flatly rejected that argument in *Wyeth v. Levine*, 555 U.S. 555, 570-571,129 S.Ct. 1187, 1197-98, 173 L. Ed. 2d 51 (2009). FDA's role in prescription drug

6

1    labeling does not serve as a bar to Plaintiffs' state claims. *Id.* The Supreme Court

2    has explained that irrespective of whether FDA approved the Cymbalta label, "it

3    has remained a central premise of federal drug regulation that ***the manufacturer***

4    ***bears responsibility for the content of its label at all times***," and "***is charged with***

5    ***ensuring that its warnings remain adequate as long as the drug is on the***

6    ***market.***" *Id.* (emphasis added). FDA's approval of a label merely sets the "floor,"

7    not the ceiling, for drug regulation. *Id.* at 573. Regardless of FDA approval,

8    Plaintiffs retain their state-law consumer protection remedies for Lilly's misleading

9    label. *Id.* at 573-574.

10        Indeed, there is no conflict between state consumer protection acts and FDA

11    regulations because Lilly cannot point to any evidence that it tried to give

12    additional warnings about the frequency, severity, and/or duration of Cymbalta

13    withdrawal, but was "prohibited from doing so by the FDA." *Id.* at 572. The FDA

14    regulations that Lilly fails to cite in its brief (*see* MTD at 16) illustrate that FDA

15    would have posed no bar to additional warnings about Cymbalta withdrawal. For

16    example:

17        **Dosage modification to address adverse reactions** Plaintiffs allege Lilly's

18    label was misleading because it failed to inform patients and healthcare providers

19    about the appropriate method for tapering off Cymbalta to avoid significant

20    adverse reactions. (FAC ¶¶ 4, 33, 49). FDA's regulations are in accord, requiring

21

7

labels to describe "clinically significant adverse reactions . . . and steps that should be taken if they occur (*e.g.*, dosage modification)." 21 C.F.R. § 201.57(c)(6)(i).

### **Warnings re: the nature, frequency, and severity of adverse reactions**

Plaintiffs' core contention is that Lilly misled consumers about the nature, frequency, duration, and severity of Cymbalta withdrawal. (*See, e.g.,* FAC ¶¶ 1, 2, 30, 33, 44-50). FDA expressly permits warnings about these issues: "For adverse reactions with significant clinical implications, the listings must be supplemented with additional detail about the ***nature, frequency, and severity of the adverse reaction*** and the relationship of the adverse reaction to drug dose . . ." 21 C.F.R. § 201.57(c)(7)(ii)(A) (emphasis added).

**Drug Dependency** Plaintiffs allege that Lilly had information regarding the potential for dependency on Cymbalta, as well as details regarding the effects of abrupt withdrawal, but acted unlawfully by failing to include adequate information about these issues on the label. (FAC ¶¶ 8, 9, 12, 13, 26, 27, 41, 105). FDA would likewise require disclosures about these matters, as the label should "describe characteristic effects resulting from both psychological and physical dependence that occur with the drug and must identify the quantity of the drug over a period of time that may lead to tolerance or dependence, or both." 21 C.F.R. § 201.57(c)(10)(iii). The guidelines further explain that "[d]etails must be provided on . . . the effects of abrupt withdrawal." *Id.*

8

1   Thus, FDA's approval of Cymbalta's label and Lilly's purported compliance

2   with FDA regulations have no bearing on the sufficiency of Plaintiffs' allegations

3   that the Cymbalta label was prohibited under state consumer protection acts.

### 2.   Plaintiffs sufficiently alleged their exposure to Lilly's unfair and unlawful advertising

Lilly next challenges the sufficiency of Plaintiffs' allegations by asserting

that three of the Plaintiffs – Jacquez, Matthews, and Strafford – did not sufficiently

allege that they "read" the Cymbalta discontinuation warning. (MTD at 16).[1]

However, Plaintiffs' claims require no specific allegation that they "read" the label.

In California, it is sufficient for Plaintiff Jacquez to allege that she "relied"

on Lilly's misstatements and unlawful labeling practices. *Laster v. T-Mobile USA,

Inc.*, 407 F.Supp.2d 1181, 1194 (S.D. Cal. 2005) (California only requires that a

plaintiff "saw, read, *or in any way relied on the advertisements.*" (emphasis

added).) Plaintiff Jacquez met this requirement. (FAC ¶¶ 42, 91, 99, 101, 105).[2]

Regarding the allegations of Plaintiffs Matthews and Strafford, Lilly seeks to

impose a reliance element into the Massachusetts, Missouri, and New York

---

[1] Lilly does not challenge Saavedra's claims on this ground – whether her consumer protection claims or individual claims. (MTD at 16-17).

[2] Lilly's assertion that Plaintiff Jacquez's claims should be dismissed under Rule 9(b) because she made one allegation about reading the label on "information and belief" should also be rejected. Lilly ignores the multiple other places in which Plaintiff Jacquez alleged that she was exposed to and/or relied upon Lilly's misstatements and unfair and lawful practices, as required by California law. (FAC ¶¶ 42, 91, 99, 101, 105). To the extent the Court is inclined to dismiss on this ground, Plaintiffs request leave to amend.

9

consumer protection acts that does not exist. Plaintiffs need only allege that Lilly's unfair and unlawful practices *caused* their injuries. *See Int'l Fidelity Ins. Co. v. Wilson*, 387 Mass. 841, 850, 443 NE.2d 1308, 1314 (1983) (Massachusetts); *Plubell v. Merck & Co., Inc.,* 289 S.W.3d 707, 714 (Mo. Ct. App. 2009) (Missouri); *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511-12 (2d Cir. 2005) (N.Y. Bus. Law § 349); *Leider v. Ralfe*, 387 F. Supp. 2d 283, 297-98 (S.D.N.Y. 2005) (for N.Y. Bus. Law § 350 claims, court will infer reliance where Defendant controls all the information about the transaction). Plaintiffs sufficiently raised such allegations in the Complaint. (FAC ¶¶ 8-13, 26, 51-54, 106, 135, 152, 168).

**D.    Saavedra plausibly alleged her individual claims**

Lilly makes a perfunctory argument on pages 17-18 of its MTD regarding Saavedra's individual claims, devoting approximately one sentence to each claim. As the following sections demonstrate, Saavedra has stated plausible claims. *See In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1116-1117, 1119-1120 (C.D. Cal. 2008) (noting "rather minimal pleading standard" required on a motion to dismiss, and permitting a variety of California class action claims to proceed, including claims for strict liability, negligence, and breach of express and implied warranty).

**<u>Breach of Express Warranty of Merchantability</u>** To plead a cause of action for breach of express warranty, one must allege: (1) the terms of the

10

warranty, (2) plaintiff's reasonable reliance thereon, and (3) breach of that warranty which proximately causes plaintiff injury. *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142, 229 Cal. Rptr. 605, 608-09 (1986) (Allowing express warranty claim to proceed because complaint alleged defendant used advertising to urge the use of the product and expressly warranted to the public that the product was effective, proper and safe, and finding failure to plead reliance acceptable because it could "be reasonably inferred from the tenor and totality of the allegations in the complaint.").

"An exception to the general rule [of breach of express warranty requiring privity] has been recognized in the case of foodstuffs, and has ***been extended to drugs***, on the basis that a drug is intended for human consumption quite as much as is food." *Arnold v. Dow Chem. Co.*, 91 Cal. App. 4th 698, 720, 110 Cal. Rptr. 2d 722, 739 (2001) (emphasis added; citation omitted). Saavedra adequately alleged this in FAC ¶¶ 2, 3, 9-11, 26-33, 37-42, 44-56, 100, 138, 140-144.

**Breach of Implied Warranty** The implied warranty may be found in sale of prescription drugs, particularly where there was "evidence that [the] drug was not properly labeled in that it did not give adequate warning of its inherent dangers." *Toole v. Richardson-Merrell Inc.*, 251 Cal. App. 2d 689, 708-09, 60 Cal. Rptr. 398, 412-13 (1967). Cal. Com. Code § 2314 (warranty that goods are (1) fit for their ordinary purposes, (2) are adequately contained, packaged, and labeled, and (3)

11

conform to the promises or affirmations of fact made on the container or label is implied in a contract for sale). *See* Saavedra's allegations at FAC ¶¶ 2, 3, 9-11, 26-33, 37-42, 44-56, 100, 138.

      **Unjust Enrichment** "Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another." *Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009) *aff'd,* 633 F.3d 1067 (Fed. Cir. 2010) (citing *Peterson v. Cellco P'ship,* 164 Cal.App.4th 1583, 1593, 80 Cal.Rptr.3d 316 (2008)). Saavedra sufficiently alleged these elements at FAC ¶¶ 5, 6, 9, 10, 25, 42, 43, 102-106, 114, 138, 153-160.

**E.**     **The Learned Intermediary Doctrine Does Not Bar Plaintiffs' Claims**

    **1.**     **The "learned intermediary" doctrine does not apply in consumer protection cases**

      With the exception of Saavedra's individual claims, which are addressed in Sections D and E(2) and (3), Plaintiffs only brought ***consumer protection*** claims to recover losses based upon unfair and unlawful statements about a prescription drug that were made ***to consumers***. (*See Id.* ¶¶ 7, 11, 19, 24, 37-43, 76, 82-137). The learned intermediary doctrine does not apply in this statutory, consumer protection context, as it is a ***common law*** doctrine that circumscribes the individuals to whom a defendant owes a duty to warn in a common law products liability/personal injury case. *Plubell v. Merck & Co., Inc.*, No. 04-235817-01, 2008 WL 4771525,

*slip op.* at n. 5 (Mo. Cir. Ct. June 12, 2008) (common law learned intermediary

doctrine does "not apply to a *statutory* claim, particularly one based upon a

remedial statute designed to protect the consuming public.") (attached as Ex. A to

Decl. of Michael D. Woerner); *Griffith v. Blatt*, 334 Or. 456, 468, 51 P.3d 1256,

1262 (2002) (same). Lilly's cases and arguments should not be followed because

they lead to absurd and inequitable results. (*See* Def. Mot. at 8-9).

      First, Lilly's out-of-jurisdiction cases rely on the flawed premise that the

drug manufacturer's warnings and advertising do not go to consumers.[3] In fact, the

Cymbalta warning label is a package insert and is made publicly available on the

websites of both Lilly and FDA. (FAC ¶¶ 1, 2, 8, 9, 12, 13, 24, 42, 43, 55); *see*

*also Prescribing Information*, L<small>ILLY</small>.<small>COM</small>, pi.lilly.com/us/cymbalta-pi.pdf (last

visited Feb. 4, 2013); *Label and Approval History: Cymbalta*, FDA.<small>GOV</small>,

http://www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm?fuseaction=Searc

h.Label_ApprovalHistory#apphist (last visited Feb. 4, 2013). Thus, irrespective of

Lilly's duty to warn doctors under the learned intermediary doctrine, it is still

liable to ***Plaintiffs*** under the consumer protection acts for the ***misleading labels***

---

[3] *Compare with Zafarana v. Pfizer, Inc.*, 724 F.Supp.2d 545, 558 (E.D. Pa. 2010) ("in the present case, any misrepresentations were [only] made to prescribing physicians and not to Plaintiffs"); *Heindel v. Pfizer, Inc.*, 381 F.Supp.2d 364, 384 (D.N.J. 2004) ("the manufacturer of prescription drugs need only direct information and warnings to prescribing physicians"); *Colacicco v. Apotex*, 432 F.Supp.2d 514, 552 (E.D. Pa. 2006) ("all pharmaceutical information is directed at *physicians, not consumer-patients*"), *vacated on other grounds,* 173 L. Ed. 2d 672, 129 S. Ct. 1578 (2009) (emphasis in original).

13

1   ***and advertising that it provided to consumers.*** (FAC ¶¶ 85-137); *see* Cal. Civ.

2   Code § 1750, *et seq.*; Cal. Bus. & Prof. Code § 17200, *et seq.*; Cal. Bus. & Prof.

3   Code § 17500, *et seq.*; Mass. Gen. Laws Ch. 93A; Mo. Rev. Stat. § 407.010, *et*

4   *seq.*; N.Y. Gen. Bus. Law §§ 349 and 350.

5          Second, Lilly's arguments test the limits of reason in asserting that "doctors"

6   are the "consumers." (MTD at 15). In Lilly's tortured efforts to put an intermediary

7   between itself and the consumer, it goes so far as to use a new term for the label at

8   the heart of this case. Repeatedly, Lilly calls the label that accompanies the drug a

9   "physician package insert" (MTD at 1, 2, 22), even though the prescribing doctor

10  does not fill the Cymbalta prescription. *Compare with* 21 C.F.R § 201.57 (referring

11  to "labeling" of prescription drugs).

12         Treating doctors are not "consumers" under the applicable consumer

13  protection acts. Cal. Civ. Code § 1761(d) ("'Consumer' means an individual who

14  seeks or acquires, by purchase or lease, any goods or services for personal, family,

15  or household purposes").[4] Plaintiffs are the only "consumers" under these acts

16

17  _____

18  [4] *See also Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012)
    ("A reasonable consumer is 'the ordinary consumer acting reasonably under the
    circumstances.'"); *Lily Transp. Corp. v. Royal Institutional Servs., Inc.*, 64 Mass.

19  App. Ct. 179, 187, 832 N.E.2d 666, 673 (2005) (Mass. Gen. Laws Ch. 93A was
    enacted to improve relationship between consumers and business people); Mo.

20  Rev. Stat. § 407.025 (to have a private right of action under Missouri
    Merchandising Practices Act, plaintiff must be a person who purchases
    merchandise primarily for personal, family, or household purposes); *Louros v.*

21

14

1    because they purchased and/or paid for Cymbalta, consumed it, and suffered the

2    adverse consequences when the product they purchased was unfairly and

3    unlawfully represented. (FAC ¶¶ 8-14, 85-137); *Kwikset Corp. v. Superior Court*,

4    51 Cal.4th 310, 323, 120 Cal. Rptr.3d 741, 246 P.3d 877 (Cal. 2011) (must have

5    economic injuries to have standing under California consumer protection acts).

6         If, as Lilly proposes, the "prescribing doctor . . . stands in the shoes of the

7    ordinary consumer," *Carlin  v. Superior Court*, 13 Cal. 4th 1104, 920 P.2d 1347

8    (1996) (internal quotations and citation omitted), then ***no one*** has standing to sue

9    Lilly for violating consumer protection act statutes: not the consumer, because the

10   doctor stands in her shoes, and not the doctor, because she cannot be a "consumer"

11   under the statutes. According to this logic, Lilly would be able to market its drug

12   unfairly and unlawfully without accounting for the economic injuries it causes

13   Plaintiffs, as Plaintiffs would be left without a remedy that is guaranteed by state

14   law. The consumer protection acts under which Plaintiffs brought their claims are

15   meant to be read broadly to prevent these unfair results.[5] Thus, the learned

16

17   *Cyr*, 175 F. Supp. 2d 497, 517 (S.D.N.Y. 2001) (gravamen of a complaint "should
     be consumer injury or harm to the public interest").

18   [5] *Plubell*, 2008 WL 4771525, *slip op.* at n. 5 (acknowledging that it would be
     inappropriate to apply the learned intermediary doctrine to claims under the

19   Missouri Merchandising Practices Act); *Keegan v. Am. Honda Motor Co., Inc.*,
     838 F.Supp.2d 929, 938 (C.D. Cal. 2012) ("The CLRA is to be 'liberally

20   construed and applied to promote its underlying purposes, which are to protect
     consumers against unfair and deceptive business practices and to provide efficient

21   and economical procedures to secure such protection.'") (quoting *Colgan v.*

15

1  intermediary doctrine should not apply to Plaintiffs' consumer claims.

2       **2.    Lilly failed to inform physicians <u>and</u> consumers**

3       It is axiomatic that physicians cannot warn of danger of which they are

4  unaware. In order for the doctrine to apply, ***Lilly*** – as the manufacturer of the drug

5  – must provide the physician with sufficient information so that the physician can

6  make a "learned" decision about whether to prescribe the drug.[6] Here, Lilly failed

7

8  *Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 680, 38 Cal. Rptr. 3d 36, 46
   (2006)); *Karlin v. IVF Am., Inc.*, 93 N.Y. 2d 282, 290, 712 N.E.2d 662, 665
9  (1999) ("These statutes [§§ 349 and 350] on their face apply to virtually all
   economic activity, and their application has been correspondingly broad. The
10  reach of these statutes 'provide[s] needed authority to cope with the numerous,
   ever-changing types of false and deceptive business practices which plague
11  consumers in our State.'") (citations omitted); *Scott v. Blue Springs Ford Sales,
   Inc.*, 215 S.W.3d 145, 160 (Mo.Ct.App.2006) (stating that the MMPA was
12  "enacted to preserve fundamental honesty, fair play, and right dealings in public
   transactions."); *Green v. Blue Cross & Blue Shield of Massachusetts, Inc.*, 47
13  Mass. App. Ct 443, 447, 713 N.E.2d 992, 996 (Mass. App. Ct. 1999) (stating that
   there is no binding definition of what constitutes an unfair practice under c. 93A,
14  and that "[p]art of the duty of enforcing consumer protection legislation is to
   discover and make explicit those unexpressed standards of fair dealing which the
15  conscience of the community may progressively develop.") (quotation marks and
   citations omitted).
16  [6] *See Stevens v. Parke, Davis & Co.*, 9 Cal. 3d 51, 65, 107 Cal. Rptr. 45, 53 (Cal.
   1973) (learned intermediary doctrine only applies "if adequate warning of
17  potential dangers of a drug has been given to doctors[.]"); *Bine v. Sterling Drug,
   Inc.*, 422 S.W.2d 623, 626-27 (Mo. 1968) (if manufacturer failed to warn doctors,
18  the "manufacturer is liable regardless of anything the doctors may or may not
   have done."); *MacDonald v. Ortho Pharm. Corp.*, 394 Mass. 131, 136, 475 N.E.
19  2d 65, 69 (Mass. 1985) ("[T]he duty of the ethical drug manufacturer is to warn
   the doctor, rather than the patient, although the manufacturer is directly liable to
20  the patient for a breach of such duty." (internal citation and quotations omitted));
   *Martin v. Hacker*, 83 N.Y. 2d 1, 9, 628 N.E.2d 1308, 1311 (N.Y. 1993) (the
21  learned intermediary doctrine is only available when the drug label "provide[s]

16

1    to provide such information. Therefore, doctors and pharmacists could not serve as

2    "learned intermediaries" and break the causal chain between the drug manufacturer

3    and the patient. *Contrast with Carr-Davis v. Bristol-Myers Squibb Co.,* No. 07-

4    1098, *slip op.* at 17 (D.N.J. Jan. 28, 2013) (granting summary judgment in favor of

5    manufacturer in personal injury action because defendant adequately warned

6    doctors, substantiated by doctor's testimony) (Dkt. 47, Ex. 1).

7        For example, while Lilly listed *some* withdrawal symptoms that occurred at

8    a rate of "1% or greater" (Decl. of M. Imbroscio, Dkt. 46-1, Ex.1 at 11, ¶ 5.6 and

9    Ex. 2 at 39, ¶ 5.6), Lilly did not disclose the following, each of which occurred at a

10   rate greater than 1%: crying (2.7%), depressed mood (2.7%), depression "not

11   otherwise specified" (2.7%), anorexia (2.5%), myalgia (2.4%), and tremor (2.2%).

12   (Decl. of M. Imbroscio, Ex. 3 (David G. Perhia, *et al.*, *Symptoms Following Abrupt*

13   *Discontinuation of Duloxetine Treatment in Patients with Major Depressive*

14   *Disorder*, 89 JOURNAL OF AFFECTIVE DISORDERS 207, 211 (2005).) *See also*

15   *Krueger v. Wyeth*, No. 03-2496, 2011 WL 8971449, at *8 (S.D. Cal. Mar. 30,

16   2011) (granting class certification where defendant allegedly failed to disclose to

17   both physicians and consumers the material fact that its drugs posed an increased

18

19   sufficient information to that category of prescribing physicians who may be
     expected to have the least knowledge and experience with the drug."); *Thom v.*
20   *Bristol-Myers Squibb Co.*, 353 F.3d 848, 853 (10th Cir. 2003) ("[p]hysicians
     become learned intermediaries only when they have received adequate warnings
21   from the drug manufacturer.").

1    risk of several adverse effects).

2         Lilly also failed to adequately warn doctors and patients of the risk of

3    withdrawal symptoms. For example, Lilly's label did not disclose that up to 51%

4    of Cymbalta users would experience withdrawal symptoms or that the majority of

5    those withdrawal symptoms would be moderate to severe. (FAC ¶¶ 30-31). *See*

6    *McNeil v. Wyeth*, 462 F.3d 364, 368 (5th Cir. 2006) (label was "misleading as to

7    the risk level for developing the condition").

8         The fact that Lilly did not adequately disclose the risks of Cymbalta

9    withdrawal to "learned" intermediaries should be obvious, since there is a Plaintiff

10   who is a medical doctor (Dr. Melissa Strafford) who was ***misled*** by Lilly's

11   misrepresentations regarding the minimal risk of discontinuation symptoms. (*See*

12   FAC ¶ 8). Lilly's failure to adequately warn doctors and patients means that the

13   learned intermediary doctrine has no bearing on this case and cannot break the

14   causal chain. *See* cases cited in n. 6, *supra*; (*compare with* MTD at 10-11).

**3.     The learned intermediary doctrine does not bar Saavedra's individual claims**

15

16        Lilly separately asserts that Saavedra's individual claims must be dismissed

17   because (1) "Plaintiff cannot demonstrate that an 'adequate' warning would have

18   changed the prescribing physician's conduct"; and (2) due to the learned

19   intermediary doctrine, Lilly only owed its duties to warn to the physician and

20   therefore liability cannot flow through to the patient. (MTD at 13-14).

21

18

1    Lilly's first proposition should be rejected. Lilly gave **inadequate** warnings

2    to doctors and patients alike, and it was ***those inadequate*** warnings that were the

3    actual and proximate cause of Plaintiffs' injuries. *See Hornisher v. Eli Lilly & Co.*,

4    No. 09-1453, 2010 WL 1957300 (N.D. Cal. May 14, 2010) (triable issues

5    remained as to whether warnings concerning the use of Paxil were adequate or

6    inadequate). Moreover, any issues regarding what Plaintiff's doctor would have

7    done had adequate warnings been given is an issue that is not appropriately

8    resolved at the motion to dismiss stage. *See Motus v. Pfizer, Inc.*, 196 F. Supp. 2d

9    984, 991 (C.D. Cal. 2001) (resolving the issue at summary judgment); *Conte v.*

10   *Wyeth*, 168 Cal. App. 4th 89, 100-101, 85 Cal. Rptr. 3d 299, 308-09 (Cal. Ct. App.

11   2009) (denying summary judgment; court unpersuaded that plaintiff must

12   demonstrate a stronger warning in the physician desk reference would have

13   affected the doctor's decision); *Salyards ex. rel. Salyards v. Metso Minerals*, No.

14   04-05798, 2005 WL 3021959, at *9 (E.D. Cal. Nov. 10, 2005) ("It is impossible

15   (and improper) for the court to speculate what steps" might have been taken if a

16   different set of warnings had been included.).

17       While the law in California is still developing when it comes to hypothetical

18   warnings, to the extent that Lilly asks Saavedra to speculate as to what her doctor

19   would have done had Lilly provided ***adequate*** warnings, then she may reasonably

20   assume that the warning would have been "read and heeded." Restatement

21

19

(Second) of Torts § 402A, cmt. *j* (cited with approval in *Johnson v. American Standard, Inc.*, 43 Cal. 4th 56, 65, 74 Cal. Rptr. 108, 115 (Cal. 2008)); *see also Carmichael v. Reitz*, 17 Cal. App. 3d 958, 991, 95 Cal. Rptr. 381, 402 (Cal. Ct. App. 1971) (acknowledging heeding doctrine in prescription drug context); *Notmeyer v. Stryker Corp.*, 502 F.Supp.2d 1051, 1060 (N.D. Cal. 2007) (Defendant has burden to show adequate warnings were provided to physician).

Lilly's second proposition is also incorrect. Lilly cannot avoid liability to Saavedra on the ground that its "duties" only flowed to the physician. Here, the issue is that Lilly ***did not*** meet its duties to provide adequate warnings to the physician or to the patient, Saavedra. *MacDonald v. Ortho Pharm. Corp.*, 394 Mass. 131, 137, 475 N.E. 2d 65 (Mass. 1985) ("The rule in jurisdictions that have addressed the question of the extent of a manufacturer's duty to warn in cases involving prescription drugs is that the prescribing physician acts as a 'learned intermediary' between the manufacturer and the patient, and 'the duty of the ethical drug manufacturer is to warn the doctor, rather than the patient, ***[although] the manufacturer is directly liable to the patient for a breach of such duty.***") (quoting *McEwen v. Ortho Pharm. Corp.*, 270 Or. 375, 386-87, 528 P.2d 522 (Or. 1974)) (emphasis added); *Notmeyer*, 502 F.Supp.2d at 1060.

### 4.   The learned intermediary doctrine is inapplicable where Lilly advertised directly to consumers

Lilly extensively markets Cymbalta ***directly*** to consumers. (*See, e.g.*, FAC

1    ¶¶ 19, 24, 37-38, 40). In *Perez v. Wyeth Laboratories*, 161 N.J. 1, 18, 734 A.2d

2    1245, 1255 (N.J. 1999), the New Jersey Supreme Court explained that direct-to-

3    consumer advertising made the learned intermediary doctrine no longer applicable.

4          First, the court explained that the law had changed, and that courts now

5    recognize that "[i]nformed consent requires a patient-based decision rather than the

6    paternalistic approach of the 1970s." *Id.* Second, physicians have begun to have

7    less time to inform patients about the risks and benefits of drugs. In particular, the

8    court cited an FDA study which found that only one-third of patients learned

9    information from their doctors about the prescription drug's dangerous side effects.

10   *Id.* (citing Sherly Gay Stolberg, *Faulty Warning Labels Add to Risk in prescription*

11   *Drugs*, N.Y. TIMES, June 4, 1999, at A27). Third, direct-to-consumer advertising

12   itself belies the inability of drug manufacturers to communicate with patients. *Id.*

13   And, finally, consumer-directed advertising "rebuts the notion that prescription

14   drugs and devices and their potential adverse effects are too complex to be

15   effectively communicated to lay consumers." *Id.* at 19.

16         Lilly extensively exercised its power to advertise the benefits of Cymbalta

17   through television ads, print media, and journals (FAC ¶¶ 24-25, 36-43);

18   correspondingly, it had the same ability and power to ensure that these

19   advertisements accurately and adequately conveyed information about the risks of

20   Cymbalta withdrawal. *See Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121, 131

21

21

(9th Cir. 1968) (there are times when warning the prescribing physician is not

enough, and the manufacturer must take action to ensure its warnings reach the

consumer). Lilly should not be permitted to market Cymbalta directly to

consumers and then obtain immunity from such consumers' claims by hiding

behind the doctrine of the "learned intermediary." *Perez*, 734 A.2d at 1264

(learned intermediary doctrine "does not confer on pharmaceutical manufacturers a

license to mislead or deceive consumers when those manufacturers elect to

exercise their right to advertise their product directly to consumers"); *Hill v. Searle

Laboratories*, 884 F.2d 1064, 1070-71 (8th Cir. 1989) (manufacturers of

contraceptives must warn consumers, due in part to over-promotion of drugs);

*Garside v. Osco Drug, Inc.*, 764 F.Supp. 208, 211 n. 4 (D. Mass. 1991)

(recognizing the exception to the direct-to-consumer advertising exception to

learned intermediary doctrine), *rev'd on other grounds*, 976 F.2d 77 (1st Cir.

1992).

## F.     Plaintiffs' Claims are Not Preempted

Lilly wrongly asserts that Plaintiffs' stated consumer protection act claims

are preempted. (MTD at 18-19). There is no "express" preemption because, despite

the "70-year history" of the Food, Drug & Cosmetics Act ("FDCA"), Congress has

never enacted an express pre-emption provision. *Wyeth*, 555 U.S. at 574. As noted

in Section C(1), *supra*, implied conflict preemption does not apply because it is not

22

"impossible" for Lilly to comply with the state law duties underlying Plaintiffs'

consumer protection law claims, as well as federal labeling laws. *Id.* at 568; *In re*

*Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701

F.Supp.2d 356, 370-71 (E.D.N.Y. 2010) (no preemption because false and

deceptive advertising claims were within the province of state law consumer

protection actions, not FDA); *In re Budeprion XL Marketing and Sales Litig.*,

MDL No. 2107, 2010 WL 2135625, at *16 (E.D. Penn. May 26, 2010) (no

preemption of California consumer protection claims). Field preemption is also

inapplicable because the federal regulatory scheme for prescription drugs "is *not* so

pervasive in scope that it occupies the field . . . [t]o the contrary, the FDA [has]

traditionally regarded state law as a complementary form of drug regulation."

*Lefaivre v. KV Pharm. Co.*, 636 F.3d 935, 941 (8th Cir. 2010) (internal citations

and quotations omitted; emphasis in original).

 In addition to the fact that traditional preemption doctrines do not apply,

Plaintiffs did not allege fraud on the FDA and their claims cannot be barred by the

primary jurisdiction doctrine.

**1.    Plaintiffs Did Not Allege Fraud on the FDA**

 Contrary to Lilly's assertion, this case is ***not*** on all fours with *Buckman Co.*

*v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 121 S.Ct. 1012, 148 L. Ed. 2d 854

(2001). (MTD at 19). Plaintiffs are ***not*** alleging that Lilly committed fraud on the

23

FDA. Lilly cites one sentence in Saavedra's *individual* claim for negligence and then attempts to shoehorn the rest of Plaintiffs' complaint into an out-of-context claim of "fraud on the FDA." (MTD at 19, citing FAC ¶ 173(i)). This attempt should be rejected. Lilly does not even try to assert that Saavedra's individual claims are preempted (*see* MTD at 19 n. 9).[7] It therefore cannot use that one sentence to misconstrue all of Plaintiffs' remaining allegations. Plaintiffs alleged ***consumer protection*** claims, which focus on Lilly's misrepresentations to Plaintiffs and consumers, not FDA. *Lefaivre*, 636 F.3d at 944. Plaintiffs have alleged that Lilly misled Plaintiffs and consumers by misrepresenting the frequency, severity, and/or duration of Cymbalta withdrawal in its label. These allegations neither implicate nor rely on any representations made by Lilly to FDA—they simply focus on Lilly's representations to Plaintiffs, their doctors, and the public. *Id.* State-law claims that "focus on harm that is allegedly perpetrated against consumers rather than the FDA" are "not fraud-on-the-FDA" claims. *Id.*

### 2.   Plaintiffs' Claims are not Barred by the Primary Jurisdiction Doctrine

Plaintiffs' claims are not barred by the primary jurisdiction doctrine. (MTD at 20-23). The primary jurisdiction doctrine does ***not*** imply that the Court must defer to FDA every time an issue falls within the agency's ambit; rather, the

---

[7] Should the Court be inclined to dismiss Plaintiffs' entire Complaint on the single sentence Lilly cites, then Plaintiffs respectfully request the Court for leave to amend the pleadings.

24

doctrine only applies where the issue is one "of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Rikos v. Procter & Gamble Co.*, 782 F.Supp.2d 522, 529 (S.D. Ohio 2011) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). Here, Plaintiffs' claims turn on Lilly's unfair and misleading advertising under ***state consumer protection acts***. This area "is not a technical area in which the FDA has greater technical expertise than the courts –[as] every day courts decide whether conduct is misleading." *Rikos*, 782 F.Supp.2d at 530 (quoting *Lockwood v. Conagra Foods, Inc.*, 597 F.Supp.2d 1028, 1035 (N.D. Cal. 2009)). It is also not an area in which FDA can "finally resolv[e]" the issues. *Rikos*, 782 F.Supp.2d at 530. As noted in the preemption analysis above, FDA sets the floor, not the ceiling for these claims, and thus FDA rulings in this area will not dispose of Plaintiffs' state law claims. *Id.* (citing *Lockwood*, 597 F.Supp.2d at 1035).

## IV.   CONCLUSION

For the foregoing reasons, Lilly's Motion to Dismiss should be denied. Plaintiffs have plausibly alleged all the required elements of their claims and have given Lilly fair notice thereof. In the alternative, at a minimum, Plaintiffs should be permitted to amend their FAC in lieu of dismissal with prejudice.

DATED this 4th day of February, 2013.

**KELLER ROHRBACK L.L.P.**

/s/ Michael D. Woerner
By: Michael D. Woerner

Lynn Lincoln Sarko, Esq.
lsarko@kellerrohrback.com
Michael D. Woerner, Esq.
mwoerner@kellerrohrback.com
Juli E. Farris, Esq.
jfarris@kellerrohrback.com
Gretchen Freeman Cappio, Esq.
gcappio@kellerrohrback.com
Havila Unrein, Esq.
hunrein@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384

Juli E. Farris, Esq.
jfarris@kellerrohrback.com
Sharon Hritz, Esq. (CA Bar No. 265105)
shritz@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496 / Fax:(805) 456-1497

Mark D. Samson, Esq.
msamson@kellerrohrback.com
KELLER ROHRBACK P.L.C.
3101 N. Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088 / Fax: (602) 248-2822

26

Samuel S. Deskin, Esq.
sam@deskinlawfirm.com
DESKIN LAW FIRM, PLC
16944 Ventura Blvd
Encino, CA 91316
Tel.:  (800) 709-8978 / Fax: (800) 709-8971

Harris L. Pogust, Esq.
hpogust@pbmattorneys.com
T. Matthew Leckman, Esq.
MLeckman@pbmattorneys.com
POGUST BRASLOW MILLROOD LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel.:  (800) 897-8930 / Fax:  (610) 941-4245

***Counsel for Plaintiffs***

27

**CERTIFICATE OF SERVICE**

I, Cate Brewer, hereby certify that on this 4th day of February, 2013, I caused true and correct copies of the foregoing:

    1.    PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; DECLARATION OF MICHAEL D. WOERNER; PROPOSED ORDER

to be served on the below-listed counsel via email using the court's CM/ECF system.

Clara J. Shin (CA Bar No. 214809)
cshin@cov.com
Mark H. Lynch
mlynch@cov.com
Colleen Kelly
ckelly@cov.com
Michael X. Imbroscio
mimbroscio@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Tel: (415) 591-7058
Fax: (415) 955-6558

Phyllis A. Jones
pajones@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Tel: 202-662-5868
Fax: 202-778-5868

*Attorneys for Defendant Eli Lilly and Company*

/s/ Cate R. Brewer
Cate R. Brewer, Legal Assistant

28