UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|
| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| N/A | N/A | |

**Proceedings:**     IN CHAMBERS ORDER Re MOTION TO DISMISS [46]

### I.     INTRODUCTION

On January 10, 2013 Plaintiffs Jennifer Saavedra, Melissa Strafford, Carol Jacquez, and David Matthews, Jr. (collectively, "Plaintiffs") filed their corrected First Amended Complaint ("FAC") against Defendant Eli Lilly and Company ("Defendant"). (Dckt. 44.) In their FAC, Plaintiffs asserted claims on behalf of themselves and all similarly situated individuals under the consumer protection laws of four different states (the "class claims"): California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*, and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; Massachusetts's Consumer Protection Act ("Ch. 93A"), Mass. Gen. Laws Ch. 93A, §§ 1, *et seq.*; Missouri's Merchandising Practices Act ("MPA"), Mo. Rev. Stat. §§ 407.010, *et seq.*; and New York's Consumer Protection from Deceptive Acts and Practices Law ("NYCPA"), N.Y. Gen. Bus. Law §§ 349, *et seq.*[1]  Plaintiff Saavedra also asserted five individual causes of action for breaches of express and implied warranty, unjust enrichment, strict products liability, and negligence, each arising under California law. Plaintiffs requested monetary damages and declaratory and injunctive relief.

---

[1] Plaintiffs Saavedra and Jacquez are residents of California; Plaintiff Matthews, a resident of Missouri; and Plaintiff Strafford is currently a resident of New York, but was also a resident of Massachusetts during the time period relevant to this suit.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|
| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company | | |

On January 28, 2013, Defendant filed the instant motion to dismiss, arguing 1) that the "learned intermediary doctrine" bars Plaintiffs from stating a claim; 2) that the claims are preempted; 3) that Plaintiffs did not state a claim; and 4) that Plaintiffs do not have standing to pursue declaratory and injunctive relief. (Dckt. 46.) For the reasons put forward in this Order, the Court DENIES the motion to dismiss, except that it GRANTS Defendant's motion to dismiss as to Plaintiffs' request for declaratory and injunctive relief.

II.     FACTUAL BACKGROUND

Defendant developed and manufactures the antidepressant Cymbalta. FAC ¶ 22. Cymbalta is the brand name for duloxetine, which is a type of "Serotonin Norepinephrine Reuptake Inhibitor," or ("SNRI") that increases the amount of serotonin in the brain and increases the amount of norepinephrine in the body. FAC ¶¶ 22. After receiving approval from the FDA in 2004, Defendant has "aggressively" marketed Cymbalta to the public and the medical community through major media outlets, including television, radio, and the internet, and a "large force" of pharmaceutical representatives. FAC. ¶¶ 23-24. Cymbalta is available only by prescription. FAC ¶¶ 22-23, 29.

Users who take Cymbalta are "faced severe physiological and psychological symptoms when the attempt to stop" taking it, including dizziness, nausea, headache, fatigue, paresthesia, vomiting, irritability, nightmares, insomnia, diarrhea, anxiety, hyperhidrosis, and vertigo (the Court refers to these symptoms as "Cymbalta withdrawal"). FAC ¶ 26. Each prescription of Cymbalta includes a label that warns about Cymbalta withdrawal. FAC ¶ 28. The label informed the reader that "[f]ollowing abrupt or tapered discontinuation in placebo-controlled clinical trial, the following symptoms occurred at a rate greater than or equal to 1% and at a significantly higher rate in duloxetine [i.e. Cymbalta]-treated patients compared to those discontinuing from placebo: dizziness, headache, nausea, diarrhea, paresthensia, irritability, vomiting, insomnia, anxiety, hyperhidrosis, and fatigue." FAC ¶ 28. The label further informed the reader that there have been reports of "adverse events" upon discontinuation of *other* SNRIs, including irritability, dizziness, anxiety, headache, and others. FAC ¶ 28.[2]

Plaintiffs allege that this label did not accurately inform consumers "and healthcare professionals" of the "frequency, severity, and/or duration of Cymbalta withdrawal." FAC ¶ 27. According to Plaintiffs, various studies dating back to at least 2005 have found that between 44 and 50 percent of all Cymbalta users experience Cymbalta withdrawal; and of those, approximately half experience "moderate" or "persistent" symptoms, and one in ten will experience "severe" symptoms.

---

[2] This warning has undergone "minor variations" since Cymbalta's approval in 2004. FAC ¶ 2.

|  |  : |  |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|
| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company | | |

FAC ¶¶ 30, 33. Moreover, "nowhere on Cymbalta's label does it indicate the potential duration of withdrawal symptoms." FAC ¶ 32. Each Plaintiff alleges that, had they known the truth about the frequency, severity, and duration of Cymbalta withdrawal, they would not have started taking Cymbalta. FAC ¶¶ 8-13.

### III.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. See Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id.; see also Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1951).

In reviewing a Rule 12(b)(6) motion, the Court must accept all allegations of material fact as true and construe the allegations in the light most favorable to the nonmoving party. Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002). Accordingly, while a court is not required to accept a pleader's legal conclusions as true, the court must "draw all reasonable inferences in favor of the plaintiff, accepting the complaint's [factual] allegations as true." Knievel v. ESPN, 393 F.3d 1068, 1080 (9th Cir. 2005).

The court may grant a plaintiff leave to amend a deficient claim "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his Complaint." Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990) (citing Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)). Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|
| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company | | |

**IV.   DISCUSSION**

    **A.   The Learned Intermediary Doctrine**

        1.   <u>The Class Claims</u>

The learned intermediary doctrine provides that a drug manufacturer has no duty to warn the ultimate consumer of potential side-effects of prescription medication, so long as adequate warnings are given to the prescribing physician.  See <u>Motus v. Pfizer Inc. (Roerig Div.)</u>, 358 F.3d 659, 661 (9th Cir. 2004) ("[Defendant] is obligated to warn doctors, not patients, of potential side-effects associated with its pharmaceutical products[.]").  Each jurisdiction under which Plaintiffs bring their class claims recognizes that the learned intermediary doctrine may preclude recovery for claims sounding in tort (such as strict liability and negligence) against drug manufacturers who have allegedly failed to warn consumers about side effects, should the warning given to doctors be found to be adequate.  See <u>Cottam v. CVS Pharmacy</u>, 436 Mass. 316, 322 (2002) ("This court has already recognized the learned intermediary doctrine in the context of prescription drug manufacturers."); <u>Carlin v. Superior Court</u>, 13 Cal. 4th 1104, 1116, 920 P.2d 1347, 1354 (1996) ("Moreover, in the case of prescription drugs, the duty to warn runs *to the physician,* not to the patient."); <u>Banker v. Hoehn</u>, 278 A.D.2d 720, 721, 718 N.Y.S.2d 438, 440 (2000) ("Under the doctrine of 'learned intermediary', the manufacturer of the [prescription drug] satisfies its duty to warn of potential adverse effects when it adequately warns medical professionals who use the device in the treatment of patients."); <u>Doe v. Alpha Therapeutic Corp.</u>, 3 S.W.3d 404, 419 (Mo. Ct. App. 1999) ("Missouri courts adhere to the learned intermediary doctrine.").

In traditional tort cases (i.e. negligence or strict liability), the learned intermediary doctrine is determined either at summary judgment or at trial: upon proof that the drug manufacturer adequately warned prescribing physicians about potential side-effects, the manufacturer is immune from liability. Defendant urges this Court to take the learned intermediary doctrine a step further and find that it precludes Plaintiffs from *stating a claim* under the various consumer protection laws at issue in this case.  The Court has not found, nor has Defendant identified, cases from the relevant jurisdictions addressing the question of whether the learned intermediary doctrine prevents Plaintiffs from bringing their consumer protection claims altogether.[3]  When a case raises an issue of first impression, a court

---

    [3] As noted below, Defendant may be able to avoid liability for the consumer protection claims at issue in this suit upon proof (at summary judgment or trial) that they adequately warned prescribing physicians of Cymbalta withdrawal.

                                                                                         :

                                                     Initials of Preparer                PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|
| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company | | |

sitting in diversity "must use its best judgment to predict how the [relevant state] Supreme Court would decide the issue." Burlington Ins. Co. v. Oceanic Design & Const., Inc., 383 F.3d 940, 944 (9th Cir. 2004) (internal citations, quotation marks, and alterations omitted). "In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." Id. (internal citations and quotation marks omitted).

In support of its argument, Defendant relies largely upon cases interpreting Pennsylvania's consumer protection law (the Unfair Trade Practices and Consumer Protection law or "UTPCPL"). Defendant is correct that a plaintiff cannot state a claim under the UTPCPL against a drug manufacturer for failing to disclose known side effects of a prescription drug, and that Pennsylvania courts relied upon the learned intermediary doctrine in so finding. However, this holding is grounded in a significant extension of the learned intermediary doctrine, one that has not been applied to any of the consumer protection claims at issue in this case. In Luke v. Am. Home Products Corp., the court found that the learned intermediary doctrine barred Pennsylvania plaintiffs from stating a claim under the UTPCPL, reasoning that under the doctrine, a "manufacturer of prescription drugs must direct information and warnings to *prescribing physicians*, not the patient." No. 1998-C-01977, 1998 WL 1781624, at *8 (Pa. Com. Pl. Nov. 18, 1998). Thus, according to the court, there could be no UTPCPL claim "based on Defendants' alleged omissions" because the defendants "had no duty to disclose any information directly to Plaintiff." Id.

The Luke Court's seemingly elementary conclusion belies a dramatic expansion of the learned intermediary doctrine. *Every* claim susceptible to the learned intermediary doctrine has the chain of relationships described by the court: the duty owed by the manufacturers is to adequately warn physicians, who in turn must warn their patients. Yet most courts that have adopted the learned intermediary doctrine—including some of those cited by Defendant—have not found that it bars a cause of action altogether because of this relationship. Rather, they have held that upon proof (either at summary judgment or trial) that a drug manufacturer adequately warned a doctor, the manufacturer was (or could be) immune from liability. See, e.g. Carlin, 13 Cal. 4th at 1116 (upholding a consumer's cause of action for strict liability for failure to warn but noting that "*if* adequate warning of potential dangers of a drug has been given to doctors, there is no duty by the drug manufacturer to insure that the warning reaches the doctor's patient for whom the drug is prescribed") (emphasis added); Centocor, Inc. v. Hamilton, 372 S.W.3d 140, 170 (Tex. 2012), reh'g denied (Aug. 17, 2012) (noting that "if the warning to the intermediary was inadequate or misleading, then the manufacturer remains liable for injuries sustained by the end user" for various claims); Beale v. Biomet, Inc., 492 F. Supp. 2d 1360, 1374 (S.D. Fla. 2007) (applying the learned intermediary doctrine to a claim brought under Florida's Deceptive and Unfair Trade Practices Act and dismissing the claim upon finding warnings adequate, not for failure to

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|

| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company |
|---|---|

state a claim); In re Norplant Contraceptive Products Liab. Litig., 955 F. Supp. 700, 709 (E.D. Tex. 1997) aff'd sub nom. In re Norplant Contraceptive Products Litig., 165 F.3d 374 (5th Cir. 1999) (applying the learned intermediary doctrine to claims, including one brought under Texas's Deceptive Trade Practices Act, at the summary judgment phase).  Taken to its logical conclusion, Luke's reasoning would bar *every* cause of action by a consumer against a drug manufacturer, *even if the manufacturer had inadequately warned physicians*.[4]

Similarly, Defendant's argument that the learned intermediary doctrine should cut the causal chord between consumers and drug manufacturers would dramatically and unjustifiably expand the doctrine's scope.  As Defendant correctly points out, both the UTPCPL and the consumer protection statutes at issue here include an element of causation (or, in some jurisdictions, "justified reliance.").[5]  Defendant notes that several federal courts interpreting the UTPCPL have reasoned that the

---

[4] Indeed, the case upon which Luke relied in holding that the learned intermediary doctrine barred a UTPCPL claim, Taurino v. Ellen, applied the doctrine in its traditional manner, finding strict liability, negligence, and breach of warranty claims for failure-to-warn barred because, as the plaintiffs there conceded, the warnings given to the prescribing physician were adequate.  397 Pa. Super. 50, 53, 579 A.2d 925, 927 (1990); see also Makripodis by Makripodis v. Merrell-Dow Pharmaceuticals, Inc., 361 Pa. Super. 589, 597, 523 A.2d 374, 378 (1987) ("Thus, in an action against a drug manufacturer based upon inadequate warnings, *the issue to be determined* is whether the warning, if any, that was given to the prescribing physicians was proper and adequate.") (emphasis added).  The jump from Taurino to Luke was dramatic, yet unexplained.

[5] See, e.g. Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 794 (9th Cir. 2012) ("As with the UCL, consumers seeking to recover damages under the CLRA based on a fraud theory must prove actual reliance on the misrepresentation and harm.") (internal citations and quotation marks omitted); Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995) (In order to seek relief under the NYCPA, a plaintiff "must show that the defendant engaged in a material deceptive act or practice that caused actual" harm)  Int'l Fid. Ins. Co. v. Wilson, 387 Mass. 841, 850 (1983) ("[A] plaintiff must show is a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception" in order to establish a claim under Ch. 93A); Plubell v. Merck & Co., Inc., 289 S.W.3d 707, 714 (Mo. Ct. App. 2009)(holding that to establish a claim under the MPA, "a plaintiff's loss should be a result of the defendant's unlawful practice").

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|
| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company | | |

requirements of justifiable reliance and causation "cannot be present when the defendant is a pharmaceutical company that did not sell its product directly to the patient." Kester v. Zimmer Holdings, Inc., No. 210-CV-00523, 2010 WL 2696467, at *14 (W.D. Pa. June 16, 2010); see also White v. Wyeth, 227 W. Va. 131, 140-141 (2010) (holding that a consumer could not state a claim under West Virginia's Consumer and Credit Protection Act because the court was "simply not convinced that a causal connection exists within the context of prescription purchases"). Again, this expansion of the learned intermediary doctrine threatens to swallow up any cause of action brought against a drug manufacturer for failure to warn, as *every* claim—whether derived from statute or common-law tort—includes an element of causation or justified reliance. See, e.g. Motus v. Pfizer Inc., 196 F. Supp. 2d 984, 991 (C.D. Cal. 2001) aff'd sub nom. Motus v. Pfizer Inc. (Roerig Div.), 358 F.3d 659 (9th Cir. 2004) (holding that a plaintiff asserting causes of action based on a failure to warn under California law "must prove not only that no warning was provided or the warning was inadequate, but also that the inadequacy or absence of the warning caused the plaintiff's injury").[6]

      The Court declines Defendant's invitation to hold that the learned intermediary doctrine bars consumer protection claims under the various laws of the states at issue. Indeed, there is good reason to think that, faced with this question, the Supreme Courts of the various jurisdictions would rule that Plaintiffs' consumer protection claims are not barred by the learned intermediary doctrine. By its very terms, the CLRA is to be "liberally construed . . . to protect consumers . . . and provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760; see also Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002) ("The UCL's scope is broad."). Moreover, the FAL, CLRA, and UCL are meant to provide protections to consumers beyond that provided by traditional tort remedies. See Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1162 (9th Cir. 2012) ("[The FAL] has been interpreted

---

[6] Defendant cites one other case in support of its contention that the learned intermediary doctrine bars Plaintiffs from stating a claim. In Pease v. Abbot Laboratories, Inc., a federal district court in Maryland held that the consumer-plaintiffs had not stated a claim under Maryland's Consumer Protection Act (MCPA) in their complaint. No. CIV. JKB-12-1844, 2013 WL 174478, at *2 (D. Md. Jan. 16, 2013). The Pease court found that the plaintiff had not adequately alleged that their injuries were caused by the alleged deceptive trade practices; here, by contrast, each Plaintiff has alleged that they would not have taken Cymbalta were they fully informed of Cymbalta withdrawal. The Pease court also found that, as an "alternative basis" for its conclusion that the MPCA did not cover prescription drugs and that the MPCA exempted professional services from its requirements; the consumer protection statutes at issue in this suit have no similar exemptions.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|
| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company | | |

broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.") (internal citations, quotation marks, and alteration omitted); Olsen v. Breeze, Inc., 48 Cal. App. 4th 608, 618 (1996) ("Fraudulent, as used in the [UCL], does not refer to the common law tort of fraud but only requires a showing members of the public are likely to be deceived.") (internal citations and quotation marks omitted).  Defendant has failed to identify any California case holding that the learned intermediary doctrine bars a tort cause of action, despite the plethora of claims—strict liability, negligence, breach of implied and express warranties, fraudulent misrepresentation—that a failure to warn claim can give rise to.  See Carlin, 13 Cal. 4th at 1117-18 (holding that strict liability and breach of warranty claims predicated on an allegation of failure to warn could not be dismissed for failure to state a claim, but that the claims were subject to the learned intermediary doctrine); Conte v. Wyeth, Inc., 168 Cal. App. 4th 89, 98-99 (2008) (applying the learned intermediary doctrine at the summary judgment stage to claims of fraud and fraudulent concealment against a drug manufacturer).  Barring a cause of action under the FAL, UCL, and CLRA on the basis of the learned intermediary doctrine would *narrow* the scope of each claim vis-à-vis traditional tort remedies, a holding that would run counter to the liberal construction given such claims by California courts.

   Similarly, the consumer protection laws of Massachusetts, Missouri, and New York are given broad construction, and are meant to supplement, rather than replace, traditional tort remedies.  See Sebago, Inc. v. Beazer E., Inc., 18 F. Supp. 2d 70, 104 (D. Mass. 1998) (noting that Ch. 93A is a "'statute of broad impact which creates new substantive rights' and provides relief which is 'in addition to, and not an alternative to, traditional tort ... remedies.'" (quoting Slaney v. Westwood Auto, Inc., 366 Mass. 688, 693 (1975)); Zmuda v. Chesterfield Valley Power Sports, Inc., 267 S.W.3d 712, 716 (Mo. Ct. App. 2008) ("[The MPA] serves as a supplement to the common-law definition of fraud.  Its purpose is to preserve fundamental honesty, fair play and right dealings in public transactions . . . . [and] is intentionally broad to prevent evasion by overly meticulous definitions." (internal citations and quotation marks omitted); Goshen v. Mut. Life Ins. Co. of New York, 98 N.Y.2d 314, 323-24 (2002) (noting that the NYCPA is "intentionally broad," one that "seeks to secure an honest market place where trust, and not deception, prevails") (internal citations and quotation marks omitted).

   Moreover, the cases found by the Court interpreting each state's consumer protection law supports the Court's conclusion that the learned intermediary doctrine does not prevent a plaintiff from stating a claim under each of the relevant consumer protection statutes.  In Linnen v. A.H. Robbins Co., Inc., a superior court of Massachusetts denied a defendant drug manufacturer's motion for summary judgment on the grounds that the learned intermediary doctrine cut off the causal chain based on the court's finding that the defendant had not demonstrated that its warning to the prescribing physicians

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|
| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company | | |

was adequate. No. CIV.A. 97-2307, 2000 WL 89379, at *6 (Mass. Super. Dec. 14, 1999). Similarly, a federal district court in New Jersey interpreting the MPA granted the defendant's motion for summary judgment because it found the warning given to the plaintiff's physician adequate, *not* because the learned intermediary doctrine prevented plaintiff from stating an MPA claim. Carr-Davis v. Bristol-Myers Squibb Co., CIV.A. 07-1098 FLW, 2013 WL 322616, at *10 (D.N.J. Jan. 28, 2013).[7]

The Court stresses the limited nature of its holding: that the learned intermediary doctrine does not bar Plaintiffs from stating a claim under each consumer protection law at issue in this suit. This does *not* mean, however, that the learned intermediary doctrine *does not apply* to these claims: indeed, based on the above-cited authority, there is a good argument to be made that it does. See Norplant, 955 F. Supp. at 709 ("The gravamen of all of Plaintiffs' causes of action, including misrepresentation and violation of [Texas's Deceptive Trade Practices Act, "DTPA"], is that [the defendant drug manufacturer] failed to adequately warn of or disclose the severity of Norplant's side effects. Therefore, the learned intermediary doctrine applies to all of Plaintiffs' causes of action. Additionally, whether the failure to warn is couched as an affirmative misrepresentation or a misrepresentation by concealment, the allegation collapses into a charge that the drug manufacturer failed to warn. If the doctrine could be avoided by casting what is essentially a failure to warn claim under a different cause of action such as violation of the DTPA or a claim for misrepresentation, then the doctrine would be rendered meaningless."). A showing at summary judgment that Defendant adequately warned the prescribing physicians *may* preclude Plaintiffs from recovering on their consumer protection claims—assuming, of course, that the relevant jurisdictions would apply this doctrine to the consumer protection claims at issue in this suit.

        2.        Saveedra's Claims

Defendant argues that the learned intermediary doctrine bars Saveedra's individual claims against it. In the FAC, Saveedra alleges breaches of express and implied warranties of merchantability, unjust enrichment, strict products liability, and negligence under California law, arising out of Defendant's alleged failure to warn her about Cymbalta withdrawal. This argument is plainly wrong: California courts have expressly held that, while the learned intermediary *applies* to these causes of action, it does not prevent a plaintiff from *stating a claim* for each cause of action. See, e.g. Carlin, 13 Cal. 4th at 1117-18 (holding that strict liability and breach of warranty claims predicated on an allegation of failure to warn could not be dismissed for failure to state a claim, but that the claims were subject to the learned intermediary doctrine).

---

[7] The Court has not found any cases applying the learned intermediary doctrine to the NYCPA.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|
| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company | | |

    **B.**    **Preemption**

    Defendant argues that each of the class causes of action are preempted by the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq*. Defendant contends first, that these claims are barred under the Supreme Court's decision in Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341 (2001); and second, that they are barred by the primary jurisdiction doctrine. The Court addresses each contention in turn.

    1.    *Buckman*-Preemption

    "There is a presumption against federal preemption of state laws that operate in traditional state domains." Stengel v. Medtronic Inc., 704 F.3d 1224 (9th Cir. 2013); see also Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) ("In all preemption cases, and particularly those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (internal citations, quotation marks, and alterations omitted). Thus, "[p]arties seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state law.'" Stengel, 704 F.3d 1224 (quoting De Buono v. NYSA–ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 814 (1997)).

    Here, Defendant attempts to carry its "considerable" burden by attempting to characterize Plaintiffs' claims as "fraud on the FDA" claims of the type the Supreme Court found were preempted in Buckman. Yet Defendant inexplicably ignores the Supreme Court's subsequent, and more relevant decision in Wyeth v. Levine, 555 U.S. 555 (2007). In Levine, the Supreme Court held that a state-law failure-to-warn claim premised on an allegedly inadequate prescription drug label was not preempted "simply because the FDA had approved the label." Marsh v. Genentech, Inc., 693 F.3d 546, 552 (6th Cir. 2012). Rather, "[t]he manufacturer could still be liable under state law for failing to update the drug's label based on newly acquired information." Id. Defendant apparently concedes that Levine controls in this case: it avoids mentioning Levine altogether in its preemption argument, despite its obvious applicability to the allegations in Plaintiffs' FAC.[8]

---

    [8] In Buckman, as one court has described it, "the Supreme Court reaffirmed the longstanding principle that a private plaintiff cannot bring suit for a fraud upon the FDA." In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig., 701 F. Supp. 2d 356, 369 (E.D.N.Y. 2010). Buckman found that certain state-law negligence claims were preempted by the Medical Device

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|
| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company | | |

2. <u>The Primary Jurisdiction Doctrine</u>

The primary jurisdiction doctrine "applies in a limited set of circumstances." <u>Clark v. Time Warner Cable</u>, 523 F.3d 1110, 1114 (9th Cir. 2008). It allows courts to "stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue with the special competence of an administrative agency." <u>Id.</u> It is to be used "only if a claim requires resolution of an issue of first

---

Amendments (MDA) to federal Food, Drug, and Cosmetics Act. The MDA (and its implementing regulations) prescribe a "rigorous" pre-market approval process of "Class III" medical devices, devices that are "marketed as a life-supporting device or may cause an unreasonable risk of illness or injury[.]" <u>Stengel v. Medtronic Inc.</u>, 704 F.3d 1224 (9th Cir. 2013). The plaintiffs in <u>Buckman</u> brought a state-law negligence claim arising out of injuries resulting from orthopedic screws (a Class III medical device) against the *consulting* company that had helped the manufacturer steer through the pre-market approval process, alleging that the company had made fraudulent misrepresentations to the FDA in order to secure approval for its client. <u>Buckman</u>, 531 U.S. at 343-44. There was no allegation that the defendant had defrauded the plaintiffs or other consumers, only the agency. The Court characterized this as a "fraud-on-the-FDA claim" that were in "conflict with, and [were] therefore impliedly preempted by, [the MDA]." <u>Id.</u> at 348. As the Ninth Circuit has subsequently observed, the <u>Buckman</u> plaintiffs "alleged no state-law claim and were concerned exclusively with alleged fraud on the FDA that had occurred as part of that approval process," a process that it found to be "wholly federal" as it "'originates from, is governed by, and terminates according to federal law.'" <u>Stengel</u>, 704 F.3d 1224 (quoting <u>Buckman</u>, 531 U.S. at 347-48). In other words, the fraud claim in <u>Buckman</u> existed "solely by virtue of the FDCA disclosure requirements . . . . were [the] plaintiffs to maintain their fraud-on-the-agency claims here, they would not be relying on traditional state tort law . . . ." <u>Buckman</u>, 531 U.S. at 352-53.

Defendant's attempt to analogize the claims at issue here to those in <u>Buckman</u> is puzzling, at best. First, the items at issue here—prescription drugs—are not regulated by the MDA. Although Defendant correctly points out that prescription drugs go through a pre-market approval process of their own governed by another provision of the FDCA, 21 U.S.C. § 355, the Supreme Court in <u>Levine</u> explicitly held that this provision does *not* preempt state-law failure-to-warn claims. See <u>Levine</u>, 555 U.S. at 573. Second, unlike the <u>Buckman</u> plaintiffs, Plaintiffs' consumer protection claims plainly rely on "traditional state" law—the claims do not exists "solely by virtue of the FDCA disclosure requirements." This is not a case where private plaintiffs are trying to bring suit for fraud against an agency; it is a suit for fraud against Plaintiffs themselves.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|
| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company | | |

impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." Id. (internal citations and quotation marks omitted). The claims at issue here present neither "an issue of first impression" nor a "particularly complicated issue." As noted above, several courts—including the Supreme Court—have ruled on cases alleging that a prescription drug's label failed to adequately warn consumers about the drug's side effects. See Levine, 555 U.S. 555. Nor is this issue a "particularly complicated" one that "Congress has committed to a regulatory agency"—the issue here is whether the labels misled a reasonable consumer, a straightforward question that does not require the "special competence of an administrative agency."

      **C.**      **Failure to State a Claim**

Defendant further argues that Plaintiffs' consumer protection claims should be dismissed because they have not adequately alleged that a reasonable consumer would be misled by the prescription labels.[9] As Defendant avers, each consumer protection claim is governed by a "reasonable consumer" test. See Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008) (noting that claims under the CLRA, FAL, and UCL "are governed by the 'reasonable consumer' test."); Aspinall v. Philip Morris Companies, Inc., 442 Mass. 381, 395-96 (2004) (applying the reasonable consumer test to claims arising under Ch. 93A); Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 773 (Mo. 2007) (noting that the MPA "bars a variety of conduct, including concealment, suppression or omission of nay material fact in connection with the sale of merchandise" and that a "material fact" under the MPA is defined as "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision.") (internal citations and quotations marks omitted); Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995) (holding that the reasonable consumer test applies to claims brought under the NYCPA).

Defendant argues that Plaintiffs have not stated a claim for two reasons. Defendant argues, first, that a reasonable consumer would not be misled by the prescription label because the warning on its label complied with FDA regulations. As discussed above, the Supreme Court's decision in Levine clearly holds the opposite. Second, Defendant argues that a "reasonable consumer" in this context is actually the doctors who prescribed the medication. This is nothing more than a different articulation of Defendant's learned intermediary doctrine argument, which, as discussed above, does not bar Plaintiffs' claims at a motion to dismiss stage.

---

[9] Defendant also argues that Saavedra's individual claims should be dismissed based on a series of one-sentence, conclusory statements that she has not adequately pled her claims. Without further analysis and reasoning, the Court refuses to dismiss Saavedra's individual claims on this basis.

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9366-SVW-MAN | Date | February 26, 2013 |
|---|---|---|---|
| Title | Jennifer L. Saavedra, et al. v. Eli Lily and Company | | |

### D. Standing

Defendant argues that Plaintiffs lack standing to seek injunctive and declaratory relief. In order to have standing to assert injunctive and declaratory relief, Plaintiffs must "demonstrate that they are 'realistically threatened by a *repetition* of the violation.'" Gest v. Bradbury, 443 F.3d 1177, 1181 (9th Cir. 2006) (quoting Armstrong v. Davis, 275 F.3d 849, 860-61 (9th Cir. 2001)). Here, Plaintiffs have failed to allege that they intend to purchase Cymbalta in the future. Moreover, even if they did, they now know about the possibility of the side-effects. Several courts have found similar allegations insufficient to establish standing for declaratory and injunctive relief. See Castagnola v. Hewlett-Packard Co., C 11-05772 JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012) (holding that plaintiffs did not have standing to pursue declaratory and injunctive relief for violations of the CLRA and UCL where they did not allege that they intended to purchase products from the defendant in the future and, even if they had, they knew the "terms and conditions" of the program at issue); Campion v. Old Republic Home Prot. Co., Inc., 861 F. Supp. 2d 1139, 1150 (S.D. Cal. 2012) (holding that defendant did not have standing to pursue declaratory relief under the CUL because he did not intend to purchase another warranty plan and, even if he did, he "now has knowledge of Defendant's alleged misconduct").

### V. CONCLUSION

For the reasons put forward in this Order, the Court DENIES the motion to dismiss, except that it GRANTS Defendant's motion to dismiss as to Plaintiffs' request for declaratory and injunctive relief.

|  | : |  |
|---|---|---|
| Initials of Preparer | PMC | |