1   Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
    lsarko@kellerrohrback.com
2   Michael D. Woerner, Esq., *admitted pro hac vice*
    mwoerner@kellerrohrback.com
3   Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
    gcappio@kellerrohrback.com
4   Havila Unrein, Esq., *admitted pro hac vice*
    hunrein@kellerrohrback.com
5   **KELLER ROHRBACK L.L.P.**
    1201 Third Avenue, Suite 3200
6   Seattle, WA 98101
    Telephone: (206) 623-1900 / Fax: (206) 623-3384
7
    Juli E. Farris, Esq. (CA Bar No. 141716)
8   jfarris@kellerrohrback.com
    Sharon Hritz, Esq. (CA Bar No. 265105)
9   shritz@kellerrohrback.com
    **KELLER ROHRBACK L.L.P.**
10  1129 State Street, Suite 8
    Santa Barbara, CA 93101
11  Tel: (805) 456-1496 / Fax: (805) 456-1497

12  Mark D. Samson, Esq., *admitted pro hac vice*
    msamson@kellerrohrback.com
13  **KELLER ROHRBACK P.L.C.**
    3101 N. Central Avenue, Suite 1400
14  Phoenix, AZ 85012
    Tel: (602) 248-0088 / Fax: (602) 248-2822
15

16  ***Additional Counsel for Plaintiffs on following page***

17              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
18

| | |
|---|---|
| 19 JENNIFER L. SAAVEDRA, DR. MELISSA STRAFFORD, CAROL JACQUEZ, and DAVID MATTHEWS, JR., on behalf of themselves and all other persons similarly situated, | **No. 2:12-CV-09366-SVW(MANx)** |
| 20 | **CLASS ACTION** |
| 21               Plaintiffs, | **NOTICE OF MOTION AND** |
| 22        vs. | **MOTION PURSUANT TO RULE 56(d)** |
| 23 ELI LILLY AND COMPANY, an Indiana corporation, | **Date:  April 29, 2013** |
| 24 | **Time:  1:30 p.m.** |
| 25               Defendant. | **Location:  Courtroom 6** |
|    | **Judge:  Hon. Stephen V. Wilson** |
| 26 | |

27

28

1  Samuel S. Deskin, Esq.
   sam@deskinlawfirm.com
2  DESKIN LAW FIRM, PLC
3  16944 Ventura Blvd
   Encino, CA 91316
4  Tel.:  (800) 709-8978 / Fax: (800) 709-8971

5  Harris L. Pogust, Esq.
   hpogust@pbmattorneys.com
6  T. Matthew Leckman, Esq.
7  MLeckman@pbmattorneys.com
   POGUST BRASLOW MILLROOD LLC
8  161 Washington Street, Suite 1520
   Conshohocken, PA 19428
9  Tel.:  (800) 897-8930 / Fax:  (610) 941-4245

10  *Additional Counsel for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 29, 2013, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 6 of the United States District Court, Central District of California, Western District, located at 312 N. Spring Street, Los Angeles, California 90012, Plaintiffs will move the Court for a deferral or denial of Defendant's summary judgment motion, as well as for discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Declaration of Michael D. Woerner, the pleadings, records, and files in this action, and such other further evidence and argument as may be presented at the time of the hearing.

This motion is made following conference of counsel pursuant to L.R. 7-3, which took place on March 25, 2013.

DATED:  April 3, 2013

Respectfully submitted,

**KELLER ROHRBACK L.L.P.**

By:  \s\ Michael D. Woerner
Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
Juli E. Farris, Esq. (CA Bar No. 141716)
jfarris@kellerrohrback.com
Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com
Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384

# **Table of Contents**

I.     MEMORANDUM OF POINTS AND AUTHORITIES............................1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY .................1

III.   ARGUMENT ......................................................................4

     **A.**   Federal Rule of Civil Procedure 56(d) Standards .............................4

     **B.**   Discovery Plaintiffs Need to Justify Their Opposition ....................5

          **1.**   Whom does Lilly treat as the consumer?................................5

          **2.**   Were Lilly's representations about Cymbalta
               misleading to a reasonable lay consumer?...........................7

          **3.**   Without conceding that the learned intermediary
               doctrine applies, did Lilly adequately warn
               medical professionals of Cymbalta withdrawal? .................10

          **4.**   Does Lilly's extensive direct-to-consumer
               advertising render the learned intermediary
               doctrine inapplicable to Plaintiffs' claims? ..........................16

IV.    CONCLUSION ........................................................................19

i

1

## **Table of Authorities**

2

3   **Cases**

4   *Anderson v. Liberty Lobby, Inc.*,
5       477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .....................................4

6   *Bine v. Sterling Drug, Inc.*,
7       422 S.W.2d 623 (Mo. 1968).........................................................................16

8   *Burling v. Windsor Equity Group*,
        No. 12-05371, 2012 WL 5330916 (C.D. Cal. Oct. 18, 2012) ..........................4
9

10  *Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes
        of Fort Peck Reservation*,
11      323 F.3d 767 (9th Cir. 2003)...........................................................................4

12  *Colgan v. Leatherman Tool Group, Inc.*,
13      135 Cal.App.4th 663, 38 Cal. Rptr. 3d 36 (2006)..........................................10

14  *Davis v. HSBC Bank Nevada, N.A.*,
15      691 F.3d 1152 (9th Cir. 2012)........................................................................7

16  *Davis v. Wyeth Laboratories, Inc.*,
17      399 F.2d 121 (9th Cir. 1968).........................................................................18

18  *Garside v. Osco Drug, Inc.*,
        764 F.Supp. 208 (D. Mass. 1991)..................................................................18
19

20  *Green v. Blue Cross & Blue Shield of Massachusetts, Inc.*,
        47 Mass. App. Ct 443, 713 N.E.2d 992 (Mass. App. Ct. 1999).....................10
21

22  *Hill v. Searle Laboratories*,
        884 F.2d 1064 (8th Cir. 1989)........................................................................18

23  *Hornisher v. Eli Lilly & Co.*,
24      No. 09-1453, 2010 WL 1957300 (N.D. Cal. May 14, 2010) ..........................16

25  *Karlin v. IVF Am., Inc.*,
26      93 N.Y. 2d 282, 712 N.E.2d 662 (1999).........................................................10

27

28

*Keegan v. Am. Honda Motor Co., Inc.,*
    838 F.Supp.2d 929 (C.D. Cal. 2012)............................................................10

*Krueger v. Wyeth,*
    No. 03-2496, 2011 WL 8971449 (S.D. Cal. Mar. 30, 2011)..........................10

*Kwikset Corp. v. Superior Court,*
    51 Cal.4th 310, 120 Cal. Rptr.3d 741, 246 P.3d 877 (Cal. 2011).....................7

*Lily Transp. Corp. v. Royal Institutional Servs., Inc.,*
    64 Mass. App. Ct. 179, 832 N.E.2d 666 (2005) ..............................................7

*Louros v. Cyr,*
    175 F. Supp. 2d 497 (S.D.N.Y. 2001) ..............................................................7

*MacDonald v. Ortho Pharm. Corp.,*
    394 Mass. 131, 475 N.E. 2d 65 (Mass. 1985)................................................16

*Martin v. Hacker,*
    83 N.Y. 2d 1, 628 N.E.2d 1308 (N.Y. 1993)..................................................16

*McNeil v. Wyeth,*
    462 F.3d 364 (5th Cir. 2006)..........................................................................16

*Perez v. Wyeth Laboratories,*
    161 N.J. 1, 734 A.2d 1245 (N.J. 1999)...........................................................18

*Plubell v. Merck & Co., Inc.,*
    No. 04-235817-01, 2008 WL 4771525 (Mo. Cir. Ct. June 12,
    2008) ...............................................................................................................10

*Scott v. Blue Springs Ford Sales, Inc.,*
    215 S.W.3d 145 (Mo.Ct.App.2006) ...............................................................10

*Stevens v. Parke, Davis & Co.,*
    9 Cal. 3d 51, 107 Cal. Rptr. 45 (Cal. 1973)...................................................16

*Thom v. Bristol-Myers Squibb Co.,*
    353 F.3d 848 (10th Cir. 2003).........................................................................16

*VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.,*
    784 F.2d 1472 (9th Cir. 1986).....................................................................4, 5

*Wyeth v. Levine*,
    555 U.S. 555, 129 S.Ct. 1187, 173 L. Ed. 2d 51 (2009) .................................13

**Other Authorities**

21 C.F.R. § 201.57 ....................................................................................13

Cal. Bus. & Prof. Code § 17200 .................................................................1

Cal. Bus. & Prof. Code § 17500 .................................................................1

Cal. Civ. Code § 1761(d) ...........................................................................7

Cal. Civ. Code. § 1750 ...............................................................................1

DealBook, *Quintiles Expands Stake in Big Pharma*,
    NY TIMES (Feb. 16, 2010),
    http://dealbook.nytimes.com/2010/02/16/quintiles-expands-stake-
    in-big-pharma/ ......................................................................................12

Eli Lilly & Co., *Lilly Announces Support of Drug Industry Principles
    on Consumer Advertising of Prescription Medicines*,
    LILLY.COM (Aug. 2, 2005),
    http://newsroom.lilly.com/releasedetail.cfm?releaseid=170208 ......................6

Fava, Maurizio, *Prospective Studies of Adverse Events Related to
    Antidepressant Discontinuation*,
    67 J. Clin. Psychiatry, suppl. 4 (2006).....................................................15

Fed. R. Civ. P. 56(d) ...................................................................1, 4, 19

Kravitz, Richard L., *et al.*, *Influence of Patients' Requests for Direct-
    to-Consumer Advertised Antidepressants: A Randomized
    Controlled Trial*,
    THE JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION, at 7
    (April 27, 2005),
    http://jama.jamanetwork.com/article.aspx?articleid=200780.........................18

Mass. Gen. Laws Ch. 93A § 1.....................................................................1

Mo. Rev. Stat. § 407.010 ............................................................................1

Mo. Rev. Stat. § 407.025 ............................................................................7

1

N.Y. Gen. Bus. Law § 349 ....................................................................1

2

Perahia, David G., *et al.*, *Symptoms Following Abrupt*
    *Discontinuation of Duloxetine Treatment in Patients with Major*
    *Depressive Disorder*,
    89 J. Affective Disorders 207-12 (2005) ...................................... 11, 13, 14, 15

3

4

5

Staton, Tracy, *Lilly Takes the Lead in DTC Ad Spending, Surpassing*
    *Pfizer*,
    FiercePharma (Aug. 16, 2012),
    http://www.fiercepharma.com/story/lilly-takes-lead-dtc-ad-
    spending-surpassing-pfizer/2012-08-16 ....................................................9, 17

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

v

## I. MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure ("Rule") 56(d) and this Court's direction to the parties during the February 25, 2013 hearing, Plaintiffs respectfully request that Defendant Eli Lilly & Company's ("Lilly") motion for summary judgment be denied or deferred.  Plaintiffs need time to conduct discovery in order to present facts essential to justify their opposition to Lilly's 249-page motion and exhibits.  Fed. R. Civ. P. 56(d).  Denial or deferral of Lilly's motion for summary judgment is particularly warranted at this early stage of the litigation because (1) Lilly has not answered Plaintiffs' Complaint, even though, under Rule 12(a)(4), such a response was due March 12, 2013; (2) Plaintiffs have been precluded from obtaining any discovery to date; and (3) Lilly has not yet served its initial disclosures.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs filed their corrected First Amended Complaint ("FAC"), the operative complaint in this matter, on January 10, 2013.  (Dkt. 44.)  In the FAC, Plaintiffs alleged that Lilly misled consumers as to the frequency, severity, and duration of Cymbalta withdrawal, in violation of the consumer protection laws of four different states: California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; Massachusetts's Consumer Protection Act, Mass. Gen. Laws Ch. 93A §§ 1, *et seq.*; Missouri's Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.*; and New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law §§ 349, *et seq.* (FAC ¶¶ 85-137.)  Plaintiff Saavedra, in her individual capacity, also brought claims for personal injuries that she suffered from taking Cymbalta.  (FAC ¶¶ 138-176.)

1

On January 28, 2013, Lilly filed a motion to dismiss.  (Dkt. 46.)  The primary thrust of Lilly's dismissal motion was that the "learned intermediary doctrine," a concept based in products liability law, should be extended to the consumer protection context in order to bar Plaintiffs' claims.  (Dkt. 46 at 7-14.) Plaintiffs opposed that motion on February 4, 2013, arguing that (1) the learned intermediary doctrine has no place in the consumer protection context; and (2) even if it did, the doctrine could not bar Plaintiffs' claims because Lilly also misrepresented and omitted material information regarding the frequency, severity, and duration of Cymbalta withdrawal to medical professionals.  (Dkt. 48.)  On February 26, 2013, the Court denied Lilly's motion to dismiss, with the exception of Plaintiffs' request for declaratory and injunctive relief.  (Dkt. 52.)

In the Order, the Court reserved judgment as to whether "the relevant jurisdictions would apply [the learned intermediary] doctrine to the consumer protection claims at issue in this suit."  (Dkt. 52 at 9.)  The Court permitted Lilly the opportunity to defend itself by introducing proof at summary judgment that it "adequately warned prescribing physicians of Cymbalta withdrawal."  (Dkt. 52 at 1 n.3.)  For example, the Court invited Lilly to introduce proof that, notwithstanding the fact that the label said withdrawal symptoms occurred at a rate of 1% or greater, Lilly told doctors that the rate was "more like 40 or 50 percent."  (Tr. at 5:5-10 (Feb. 25, 2013).)

During the hearing on the motion to dismiss, the Court also gave Plaintiffs permission to file this application under Rule 56(d) if they needed "more time to respond" to the summary judgment "by way of discovery."  (Tr. 6:13-7:4.) However, the Court instructed Plaintiffs' counsel not to request discovery until Plaintiffs received Lilly's summary judgment motion.  (*Id.* at 7:5-9.)

Lilly thereafter filed its summary judgment motion on March 27, 2013. (Dkt. 54 ("MSJ").)  Including exhibits, Lilly's summary judgment motion is 249

pages.  It includes declarations (each with numerous exhibits) from three different individuals: Sarah L. Helgeson, director of Global Medical Information at Lilly (Decl. of Sarah L. Helgeson, Dkt. 55); Sharon Hoog, M.D., a medical advisor in Global Patient Safety at Lilly (Decl. of Sharon Hoog, Dkt. 56); and David Perahia, M.D., a medical fellow at Lilly and the author of the 2005 article which detailed the incidence of withdrawal symptoms in patients who discontinued Cymbalta treatment (*see* FAC ¶ 30 and Decl. of David M. Perahia, Dkt. 57).

Lilly filed its summary judgment motion (1) before answering Plaintiffs' FAC (even though such answer was due March 12, 2103); (2) before filing any initial disclosures pursuant to Rule 26(a); and (3) before any discovery has taken place (*see* Tr. at 7:5-9 (Feb. 25, 2013)).  As a result, Plaintiffs are now in the impossible position of having to oppose summary judgment, (1) without knowing which allegations in the FAC Lilly admits or denies; (2) without being informed of Lilly's affirmative defenses; (3) having been precluded from obtaining discovery on issues relevant to summary judgment; and (4) having no information from Lilly as to which individuals have discoverable information that Lilly may use to support its defenses.

Therefore, Plaintiffs respectfully request that Lilly's motion be denied or deferred in accordance with Rule 56(d) and this Court's direction to the parties during the February 25, 2013 hearing.  As set forth in more detail herein and in the supporting Declaration of Michael D. Woerner ("Woerner Decl."), while Plaintiffs will need more robust discovery later, Plaintiffs now need time to discover facts essential to their summary judgment opposition, including (but not limited to) taking the depositions of (1) all the individuals who submitted Declarations in support of Lilly's summary judgment motion; (2) the former chief executive officer of Lilly, Sidney Taurel; and (3) other witnesses who are identified in the course of written discovery.

3

### III.   ARGUMENT

**A.   Federal Rule of Civil Procedure 56(d) Standards**

The purpose of Rule 56(d) (formerly Rule 56(f)) is to enable "litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (internal quotations and citation omitted).  According to this Rule, if a non-moving party at summary judgment is able to show that it "cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to . . . take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).

Rule 56(d) motions are to be granted "as a matter of course." *Burlington*, 323 F.3d at 774 (internal quotations and citations omitted).  Indeed, the United States Supreme Court has said that the Rule ***requires*** (rather than permits) discovery where, as here, "the non-moving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When discovery has not yet been conducted, the party seeking relief under Rule 56(d) "cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." *Burlington*, 323 F.3d at 774.  Thus, in order for the motion to be granted, the party opposing summary judgment generally only needs to (1) make a timely application; (2) identify relevant information; and (3) demonstrate "some basis for believing that the information sought actually exists." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986); *see also Burling v. Windsor Equity Group*, No. 12-05371, 2012 WL 5330916, at *6 (C.D. Cal. Oct. 18, 2012) (party requesting additional time for

4

discovery must show "(1) . . . the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."). Only where it is "clear that the evidence sought [is] almost certainly nonexistent or [is] the object of pure speculation" may the Rule 56(d) motion be denied. *VISA*, 784 F.2d at 1475.

In this instance, Plaintiffs' Rule 56(d) motion is timely and was invited by the Court. The information that Plaintiffs seek is highly relevant, and essential, to preparing their opposition. Moreover, Plaintiffs have a basis for believing that the information sought actually exists, as the discovery requested in this motion pertains to evidence that Lilly identified in its summary judgment motion. The next sections address each of these issues in detail with respect to each category of discovery that the Plaintiffs request.

**B. Discovery Plaintiffs Need to Justify Their Opposition**

Plaintiffs need discovery in several broad topic areas to justify their opposition to summary judgment.[1] Plaintiffs need discovery relating to: (1) whom Lilly treats as the "consumer" of Cymbalta; (2) whether the Cymbalta label was misleading to a reasonable lay consumer; (3) without conceding that the learned intermediary doctrine applies, whether Lilly adequately warned medical professionals of the frequency, severity, or duration of Cymbalta withdrawal; and (4) whether Lilly's extensive direct-to-consumer advertising renders the learned intermediary doctrine inapplicable to Plaintiffs' claims. Each of these issues is detailed below.

**1. Whom does Lilly treat as the consumer?**

**Information requested/facts to be elicited.** Plaintiffs first need discovery regarding whom Lilly treats as the "consumer" of Cymbalta. In its summary

---

[1] Plaintiffs will require discovery on other matters in order to prepare their claims for trial.

5

judgment brief, Lilly renewed the same tortured argument that it raised at the motion to dismiss stage, which is that the medical professional who prescribes Cymbalta is the "reasonable consumer" within the context of the consumer protection statutes at issue here.  (MSJ at 11-12.)  In order to oppose this argument, Plaintiffs require discovery regarding how Lilly defines and uses the term "consumer" outside the litigation context, including in its sales, marketing, and advertising of Cymbalta.  (*See* Woerner Decl. at ¶¶ 7(A)-(C).)

   **The facts sought exist.**  Plaintiffs believe that Lilly possesses evidence relevant to this request.  Lilly is a major pharmaceutical company that generates billions of dollars each year from the sale and marketing of Cymbalta to individual consumers.  (FAC ¶ 25.)  Indeed, in publicly-filed documents with the Securities and Exchange Commission ("SEC"), Lilly admits – and event touts – that it advertises products "directly to consumers in the U.S."  (Woerner Decl. at ¶ 7(A), Ex. 1 at 3 (Lilly's Form 10-K filing with the SEC for the fiscal year ended December 31, 2011).)  Lilly's former chairman, president, and chief executive officer, Sidney Taurel, has also said: "More than ever, we know that patients are actively seeking information about diseases and treatments, asking questions, evaluating information, and making choices . . . . [W]e understand it is our duty to provide advertising that is truthful, accurate and balanced surrounding these products . . . . Moving forward, Lilly will strive for even higher standards for our consumer advertising campaigns."  Eli Lilly & Co., *Lilly Announces Support of Drug Industry Principles on Consumer Advertising of Prescription Medicines*, LILLY.COM (Aug. 2, 2005), http://newsroom.lilly.com/releasedetail.cfm?releaseid=170208 (Woerner Decl. ¶ 7(B), Ex. 2.)  Thus, Lilly's own public statements reveal that it defines "consumer" to mean the patient who purchases and/or pays for Cymbalta, and ***not*** medical professionals.

6

**The sought-after facts are essential to oppose summary judgment.**
Discovery regarding Lilly's own definition and use of the term "consumer" is essential to Plaintiffs' opposition because it will reveal that, in its day-to-day business, Lilly does not view medical professionals as the "consumers" of Cymbalta.  That argument was contrived solely for the purposes of litigation. Instead, Lilly uses "consumer" in its ordinary context and consistently with the consumer protection statutes at issue here – *i.e.*, Lilly views the patients to whom it directly markets Cymbalta as the "consumers."  *See, e.g.*, Cal. Civ. Code § 1761(d) ("'Consumer' means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."); *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 323, 120 Cal. Rptr.3d 741, 246 P.3d 877 (Cal. 2011) (economic injuries required to have standing under California consumer protection acts)*; Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) ("A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'"); *Lily Transp. Corp. v. Royal Institutional Servs., Inc.*, 64 Mass. App. Ct. 179, 187, 832 N.E.2d 666, 673 (2005) (Mass. Gen. Laws Ch. 93A was enacted to improve relationship between consumers and business people); Mo. Rev. Stat. § 407.025 (to have a private right of action under Missouri Merchandising Practices Act, plaintiff must be a person who purchases merchandise primarily for personal, family, or household purposes); *Louros v. Cyr*, 175 F. Supp. 2d 497, 517 (S.D.N.Y. 2001) (requiring "consumer injury or harm to the public interest").

2. **Were Lilly's representations about Cymbalta misleading to a reasonable lay consumer?**

**Information requested/facts to be elicited.**  While Lilly devotes pages and pages to its contorted argument that medical professionals are "consumers," Lilly devotes a mere footnote to the issue at the heart of Plaintiffs' class action claims –

7

whether Lilly's misrepresentations or omissions regarding the frequency, duration, and severity of Cymbalta withdrawal were unlawful and/or unfair to a reasonable lay consumer.  (*See* MSJ at 11 n. 5.)[2]  In order to oppose summary judgment on these issues, Plaintiffs need discovery of, among other things: (1) oral and written communications from Lilly to consumers regarding Cymbalta, including advertisements, labeling, pamphlets, and other materials; (2) oral and written communications from consumers to Lilly regarding Cymbalta, including any complaints, reviews, or requests for additional information; (3) actions that Lilly took in response to communications from consumers regarding Cymbalta withdrawal; (4) Lilly's decision-making and strategy with respect to the advertising, marketing, and labeling of Cymbalta; (5) evidence regarding what information Lilly chose to disclose or not to disclose to consumers regarding the frequency, severity, or duration of Cymbalta withdrawal, including (a) how and why the Cymbalta label changed from 2004 to present, (b) how Lilly determined which Cymbalta withdrawal symptoms it would list, and how to describe them, (c) how Lilly decided what information should be disclosed to consumers regarding the rate at which withdrawal symptoms occurred in Cymbalta-treated patients, and (d) how Lilly determined what information to disclose regarding the process for tapering off of Cymbalta; and (6) evidence relating to any regulatory investigations into the marketing or advertising of Cymbalta.  (Woerner Decl. at ¶¶ 8(A)-(P).)

    **The facts sought exist.**  Lilly aggressively markets Cymbalta directly to consumers through all major media outlets, including television, radio, internet, and print.  (FAC ¶ 24.)  During the first three months of 2012 alone, Lilly spent $46.7 million marketing Cymbalta directly to consumers.  Tracy Staton, *Lilly Takes the Lead in DTC Ad Spending, Surpassing Pfizer*, FiercePharma (Aug. 16,

---

[2] Plaintiffs need discovery pursuant to Rule 56(d) as to both Plaintiffs' class action consumer claims and Plaintiff Saavedra's individual claims.

2012), http://www.fiercepharma.com/story/lilly-takes-lead-dtc-ad-spending-surpassing-pfizer/2012-08-16 (Woerner Decl. ¶ 14, Ex. 8).  Consequently, Lilly possesses ample discoverable information regarding statements that it made, or information it chose not to disclose, to consumers regarding the frequency, severity, or duration of Cymbalta withdrawal.

Lilly's communication with consumers about Cymbalta was not a one-way street.  Instead, Lilly offered opportunities for consumers to contact it directly in order to obtain more information about Cymbalta.  (Woerner Decl. at ¶ 8(I).)  For example, Lilly provides a toll-free number that consumers may call in order to obtain more information about Cymbalta.  (*Id.*)  Accordingly, Plaintiffs reasonably believe that Lilly has facts in its possession regarding communications from consumers to Lilly about Cymbalta withdrawal.

Plaintiffs also have a reasonable basis for believing that Lilly has discoverable information related to regulatory investigations of Lilly's marketing of Cymbalta.  As alleged in the FAC, Lilly has received at least four letters from the FDA stating that its Cymbalta ads are false, misleading, and/or fail to disclose important risks and information regarding the drug.  (FAC ¶¶ 36-40.)

**The sought-after facts are essential to oppose summary judgment.**  All of the facts identified above are essential to Plaintiffs' opposition because they reach the heart of the matter, which is whether (1) Lilly's warning label was "clear to a reasonable lay consumer," as Lilly contends in its summary judgment motion (MSJ at 11 n.5); or (2) whether Lilly misled consumers regarding the frequency, severity, and duration of Cymbalta withdrawal, as Plaintiffs contend in their FAC.  (FAC ¶¶ 1, 26-43.)  Because Lilly has not answered Plaintiffs' FAC, Plaintiffs have been precluded from taking discovery, and Lilly has not provided initial disclosures, Plaintiffs must be given an opportunity to conduct discovery on these issues in order to respond to Lilly's summary judgment motion.

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     **3.**     **Without conceding that the learned intermediary doctrine applies, did Lilly adequately warn medical professionals of Cymbalta withdrawal?**

     <u>**Information requested/facts to be elicited.**</u>  Plaintiffs vigorously disagree that the learned intermediary doctrine applies in this consumer protection context. *See Plubell v. Merck & Co., Inc.*, No. 04-235817-01, 2008 WL 4771525, *slip op.* at n. 5 (Mo. Cir. Ct. June 12, 2008) (common law learned intermediary doctrine does "not apply to a *statutory* claim, particularly one based upon a remedial statute designed to protect the consuming public.").[3]  Nevertheless, in order to oppose Lilly's summary judgment brief, Plaintiffs need discovery on the issue that Lilly raised: whether Lilly adequately warned medical professionals of the frequency, severity, and duration of Cymbalta withdrawal.

     To this end, Plaintiffs request discovery relating to three broad categories: (1) the Cymbalta label; (2) Lilly's "Medical Information Letters," website, toll-free number, and statements made by its sales representatives and medical

---

[3] *See also Keegan v. Am. Honda Motor Co., Inc.*, 838 F.Supp.2d 929, 938 (C.D. Cal. 2012) ("The CLRA is to be 'liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'") (quoting *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 680, 38 Cal. Rptr. 3d 36, 46 (2006)); *Karlin v. IVF Am., Inc.*, 93 N.Y. 2d 282, 290, 712 N.E.2d 662, 665 (1999) ("These statutes [§§ 349 and 350] on their face apply to virtually all economic activity, and their application has been correspondingly broad. The reach of these statutes 'provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State.'") (citations omitted); *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 160 (Mo.Ct.App.2006) (stating that the MMPA was "enacted to preserve fundamental honesty, fair play, and right dealings in public transactions."); *Green v. Blue Cross & Blue Shield of Massachusetts, Inc.*, 47 Mass. App. Ct 443, 447, 713 N.E.2d 992, 996 (Mass. App. Ct. 1999) (stating that there is no binding definition of what constitutes an unfair practice under c. 93A, and that "[p]art of the duty of enforcing consumer protection legislation is to discover and make explicit those unexpressed standards of fair dealing which the conscience of the community may progressively develop.") (quotation marks and citations omitted); *Krueger v. Wyeth*, No. 03-2496, 2011 WL 8971449, at *8 (S.D. Cal. Mar. 30, 2011) (granting class certification where drug manufacturer "failed to disclose to both physicians and consumers the material fact" that a drug posed increased risks of disease).

professionals, all of which Lilly referenced in its summary judgment motion; and (3) journal articles and published studies, including David G. Perahia, *et al.*, *Symptoms Following Abrupt Discontinuation of Duloxetine Treatment in Patients with Major Depressive Disorder*, 89 J. Affective Disorders 207-12 (2005) ("Perahia Article").

   ***Cymbalta label.***   In its summary judgment motion, Lilly asserts that the Cymbalta label "clearly communicates to physicians the risk" of Cymbalta withdrawal, and that the label "would not mislead a reasonable medical professional."  (MSJ at 1.)  In order to oppose such assertions, Plaintiffs need discovery on the following issues, among others: (1) how Lilly decided what information should be contained in the Cymbalta label from 2004 to the present, including, but not limited to: (a) Lilly's decisions to omit certain information, such as the fact that at least 44% of Cymbalta-treated patients experienced at least one withdrawal symptom; (b) why Lilly noted that patients taking ***other*** SSRIs (selective serotonin reuptake inhibitors) and SNRIs (serotonin and norepinephrine reuptake inhibitors) had reported some withdrawal symptoms as severe, but chose not to provide information regarding the severity of withdrawal symptoms experienced by Cymbalta-treated patients; (c) how and why Lilly chose to omit data showing that between 60.2-63.5% of Cymbalta consumers experienced moderate to severe withdrawal symptoms; and (d) why Lilly chose not to provide information on the Cymbalta label regarding the duration of withdrawal symptoms. (Woerner Decl. at ¶¶ 9(A)-(F).)  Additionally, the same issues identified in Section B(2), *supra*, are also relevant here because Plaintiffs have alleged that Lilly misled ***both*** consumers and medical professionals regarding the frequency, severity, and duration of Cymbalta withdrawal.  (*See, e.g.*, FAC ¶¶ 1, 5, 27, 29, 31, 33.)

   ***Lilly's "Medical Information Letters," toll-free number, website, and statements made by its sales representatives and medical professionals.***  Lilly

11

contends that it provides "Medical Information Letters" to healthcare professionals when they request such information.  (MSJ at 5.)  Purportedly, Lilly provides these Medical Information Letters to doctors in the following ways: (1) via Lilly's toll-free information line, 1-800-LillyRx; (2) through Lilly's "medical professionals who respond to questions addressed to Lilly sales representatives"; (3) via professional conferences and meetings; and (4) online at www.LillyMedical.com.  (*Id.*)  Lilly asserts that these Medical Information Letters "advised" medical professionals of the risk of Cymbalta withdrawal, "discussed the relevant medical literature," and "explicitly identif[ied] and describe[d] the data at issue here."  (*Id.*)

Lilly's citation to these sources raises a host of factual issues on which Plaintiffs need discovery.  First, Plaintiffs need information regarding (1) how many requests were made for information through these sources; (2) who requested the information; and (3) what information Lilly provided in response to the requests – *e.g.*, whether it was limited to the Medical Information Letters or whether Lilly also provided additional information.  (*See* Woerner Decl. at ¶¶ 11(C)-(F).)

Second, Plaintiffs need information pertaining to Lilly's relationship with Quintiles Transnational, a third-party company that receives royalties for marketing Cymbalta for Lilly.  According to a report by the *New York Times*, the relationship between Quintiles and Lilly dates back to 2002, when Quintiles invested $125 million in cash, as well as $400 million on a sales force of more than 550 people, in order to launch Cymbalta.  DealBook, *Quintiles Expands Stake in Big Pharma*, NY TIMES (Feb. 16, 2010), http://dealbook.nytimes.com/2010/02/16/quintiles-expands-stake-in-big-pharma/ (Woerner Decl. ¶ 12(C)(n.2), Ex. 4.)  Accordingly, Plaintiffs need discovery regarding what representatives of Quintiles Transnational said to medical professionals about Cymbalta.  (Woerner Decl. at ¶ 12(C).)

Third, Plaintiffs need discovery pertaining to the extent to which the Medical Information Letters, as well as any other information that Lilly provided in response to requests, differed from other information that Lilly had regarding the frequency, severity, and duration of Cymbalta withdrawal.  (Woerner Decl. at ¶ 11(G).)  For example, why are statements in the Medical Information Letters and the Cymbalta label inconsistent with Lilly's own studies and the information contained in the Perahia Article?

Fourth, Plaintiffs need discovery as to why Lilly placed the onus of obtaining information about Cymbalta withdrawal on medical professionals, when it is actually Lilly's burden to make accurate and complete disclosures about the frequency, severity, and duration of Cymbalta withdrawal.  *See* 21 C.F.R. § 201.57; *Wyeth v. Levine*, 555 U.S. 555, 570-571,129 S.Ct. 1187, 1197-98, 173 L. Ed. 2d 51 (2009) ("[I]t has remained a central premise of federal drug regulation that *the manufacturer bears responsibility for the content of its label at all times*," and "*is charged both with drafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market*.").  For example, why must medical professionals request Medical Information Letters from Lilly, when Lilly simply could have placed that information in the Cymbalta label itself?  Moreover, why do the Medical Information Letters differ from the Cymbalta label?  (Woerner Decl. at ¶¶ 11(H)-(I).)

Fifth, Plaintiffs require information as to why, in February 2013, *around the same time as the hearing on the motion to dismiss in this case*, Lilly dramatically and suddenly revised the Medical Information Letter.  (Woerner Decl. at ¶¶ 11(A)-(B).)  Among other changes, Lilly added information about the "need to taper medication" and stated that "[s]witching to an agent with an extended half-life, such as fluoxetine can help reduce the incidence of antidepressant syndrome." (*Id.* at ¶ 10.)  Although these disclosures were new, Lilly based its statements on

13

studies that had been published *five and seven years prior.*  (*Id.*)  Plaintiffs need

information about why Lilly made these changes, and why it took Lilly so long –

*i.e.*, until litigation was on file –to revise the Medical Information Letter, when it

appears that Lilly has had access to the relevant information for years.  (*Id.* at ¶¶

11(A)-(B).)  Moreover, Plaintiffs need discovery as to why Lilly revised the

Medical Information Letter, but did not similarly revise the Cymbalta label.  (*Id.* at

¶ 11(J).)  To this end, Plaintiffs request, along with other discovery, the deposition

of Sarah L. Helgeson, Director of Global Medical Information at Lilly.  (*Id.* at ¶

11(B).)

   *Journal articles and published studies.*  Lilly posits that publicly-available

information, in particular, the Perahia Article, adequately warned physicians of the

risks of Cymbalta withdrawal.  (*See, e.g.*, MSJ at 5-6, 20-21.)  In order to oppose

this argument, Plaintiffs need discovery regarding how many doctors read or

subscribe to the *Journal of Affective Disorders* (in which the Perahia Article was

published); how many doctors read the Perahia Article; and all documents that

Lilly relies upon to support its assertion that, "[f]or decades, the medical literature

has reflected the clinical understanding that '[d]iscontinuation symptoms are

common following antidepressant treatment.'"  (MSJ at 21; Woerner Decl. ¶

13(E).)  In order to obtain such information, Plaintiffs may need to seek third-party

discovery and obtain expert declarations.

   Second, Plaintiffs need discovery in order to probe the Perahia Article and

Perahia's Declaration.  (Woerner Decl. at ¶¶ 13(A)(i)-(xvi).)  Plaintiffs need to

review the raw data from the clinical trials, and to obtain documents showing how

the studies cited in the Perahia Article were designed and executed.  (Woerner

Decl. at ¶¶ 13(A)(ii)-(ix).)  For example, the Perahia Article states that withdrawal

symptoms were "assessed by means of spontaneous reports rather than a symptom

checklist."  Perahia at 211 (Dkt. 57 at 12).  However, Lilly's Medical Information

14

Letters cite to Maurizio Fava, *Prospective Studies of Adverse Events Related to Antidepressant Discontinuation*, 67 J. Clin. Psychiatry suppl 4, 14 (2006), which observes that a symptom checklist, or a "systematic inquiry method," is the "superior" method for conducting such studies. *Id.* at 15 (Woerner Decl. ¶ 13(A)(v)(n.3), Ex. 6; *see also* Declaration of Sarah L. Helgeson, Dkt. 55 at Exs. 3, 4, and 5 (Medical Information Letters citing to the Fava article)). Thus, Plaintiffs need discovery as to why Lilly used inferior methods during its clinical trials in order to determine the incidence of Cymbalta withdrawal symptoms. (Woerner Decl. at ¶ 13(A)(v).)

Besides the clinical trials discussed in the Perahia Article, Plaintiffs need discovery regarding ***all*** clinical trials that Lilly conducted with respect to the frequency, severity, and duration of Cymbalta withdrawal. (Woerner Decl. ¶ 13(C).) Such discovery is relevant to Plaintiffs' contention that Lilly engaged in "selective and biased publication of its clinical trials." (*See* FAC ¶ 34.)

Plaintiffs also need to determine whether Lilly had actual or constructive knowledge, including through journals, publications, or any other communications, that its Cymbalta warnings and instructions were inadequate. (Woerner Decl. ¶ 13(D).) For example, Plaintiffs cited a report in their FAC by the Institute for Safe Medication Practices, which "identified a serious breakdown . . . in providing adequate warnings and instructions about how to manage" withdrawal symptoms in Cymbalta. (FAC ¶ 33.)

**The facts sought exist.** Plaintiffs have a reasonable basis for believing that Lilly possesses discoverable information on all the issues listed above. Plaintiffs base this belief on the fact that (a) Lilly identified these issues, sources, and information in its own summary judgment briefing; and/or (b) the information was identified in publicly-available documents, such as the report by the Institute for Safe Medication Practices (*see* FAC ¶ 33) and information regarding the

15

relationship between Lilly and Quintiles Transnational.  (Woerner Decl. ¶ 12(C)(n.2), Exs. 4 and 5.)

**The sought-after facts are essential to oppose summary judgment.**  As previously noted, Plaintiffs do not concede that the learned intermediary doctrine is applicable to Plaintiffs' consumer protection claims.  Nevertheless, assuming it did apply (and to the extent that it is relevant to Plaintiff Saavedra's individual claims), the facts and discovery identified above are essential to Plaintiffs' opposition. Plaintiffs need this discovery in order to refute Lilly's argument that it adequately warned medical professionals of the frequency, severity, and duration of Cymbalta withdrawal.  *See, e.g., McNeil v. Wyeth*, 462 F.3d 364, 368 (5th Cir. 2006) (the issue of whether warnings are adequate cannot be resolved as a matter of law, and must go to the jury); *Hornisher v. Eli Lilly & Co.*, No. 09-1453, 2010 WL 1957300 (N.D. Cal. May 14, 2010) (triable issues remained as to whether warnings concerning the use of Paxil were adequate or inadequate).[4]

**4.    Does Lilly's extensive direct-to-consumer advertising render the learned intermediary doctrine inapplicable to Plaintiffs' claims?**

**Information requested/facts to be elicited.**  In order to refute Lilly's argument that the learned intermediary doctrine applies to Plaintiffs' claims (MSJ

---

[4] *See also Stevens v. Parke, Davis & Co.*, 9 Cal. 3d 51, 65, 107 Cal. Rptr. 45, 53 (Cal. 1973) (learned intermediary doctrine only applies "if adequate warning of potential dangers of a drug has been given to doctors[.]"); *Bine v. Sterling Drug, Inc.*, 422 S.W.2d 623, 627 (Mo. 1968) (if manufacturer failed to warn doctors, "it is liable regardless of anything the doctors may or may not have done."); *MacDonald v. Ortho Pharm. Corp.*, 394 Mass. 131, 136, 475 N.E. 2d 65, 69 (Mass. 1985) ("[T]he duty of the ethical drug manufacturer is to warn the doctor, rather than the patient, although the manufacturer is directly liable to the patient for a breach of such duty." (internal citation and quotations omitted)); *Martin v. Hacker*, 83 N.Y. 2d 1, 9, 628 N.E.2d 1308, 1311 (N.Y. 1993) (the learned intermediary doctrine is only available when the drug label "provide[s] sufficient information to that category of prescribing physicians who may be expected to have the least knowledge and experience with the drug."); *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 853 (10th Cir. 2003) ("[p]hysicians become learned intermediaries only when they have received adequate warnings from the drug manufacturer.").

at 1), Plaintiffs need discovery regarding Lilly's extensive direct-to-consumer advertising.  In this regard, Plaintiffs seek to elicit facts on the following topics, among others: (1) discovery indicating the total dollars spent by Lilly, per year, on direct-to-consumer advertising of Cymbalta; (2) discovery indicating the total dollars spent by Lilly, per year, on the promotion of Cymbalta to medical professionals; (3) discovery indicating the total dollars spent by Lilly, per year, on free samples of Cymbalta provided to prescribing physicians to be given to consumers; (4) any studies or other analyses performed by (or on behalf of) Lilly as to whether (a) direct-to-consumer advertising by Lilly increased sales of Cymbalta, (b) direct-to-consumer advertising increased the number of prescriptions written for Cymbalta by prompting consumers to request Cymbalta from their physicians, and (c) prescribing physicians are responsive to consumers who request that Cymbalta be prescribed to them; (5) all advertising for Cymbalta, in any form; (6) all draft advertising materials for Cymbalta; and (7) all communications with the FDA regarding the advertising and marketing of Cymbalta.  (Woerner Decl. ¶¶ 14(A)-(O).)

   **The facts sought exist.**  As noted previously, Lilly aggressively markets Cymbalta directly to consumers through the television, radio, internet, and printed publications.  (FAC ¶ 24.)  In 2012, Lilly actually led the pack in direct-to-consumer advertising.  Staton, *supra* (Woerner Decl. ¶ 14, Ex. 8.).  For example, Lilly paid more than $46 million marketing Cymbalta directly to consumers during the first quarter of 2012 alone.  (*Id.*)  Lilly's marketing of Cymbalta pays off – Cymbalta sales have generated billions of dollars in revenue for Lilly.  (FAC ¶ 13.) Because of Lilly's extensive investment in direct-to-consumer advertising, Plaintiffs have a reasonable basis for believing that Lilly possesses discoverable information on all the topics identified above.

**The sought-after facts are essential to oppose summary judgment.**

Information regarding Lilly's extensive direct-to-consumer advertising efforts is essential to Plaintiffs' summary judgment opposition because it will show that, contrary to Lilly's arguments, the learned intermediary doctrine has no bearing on Plaintiffs' claims in this case. *Perez v. Wyeth Laboratories*, 161 N.J. 1, 18, 734 A.2d 1245, 1255 (N.J. 1999) (direct-to-consumer advertising makes the learned intermediary doctrine inapplicable); *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121, 131 (9th Cir. 1968); *Hill v. Searle Laboratories*, 884 F.2d 1064, 1070-71 (8th Cir. 1989) (manufacturers of contraceptives must warn consumers, due in part to over-promotion of drugs); *Garside v. Osco Drug, Inc.*, 764 F.Supp. 208, 211 n. 4 (D. Mass. 1991) (recognizing the exception to the direct-to-consumer advertising exception to learned intermediary doctrine), *rev'd on other grounds*, 976 F.2d 77 (1st Cir. 1992).

The days have long since passed when doctors served as "paternalistic" figures who made decisions for patients. *Perez*, 161 N.J. at 18, 734 A.2d at 1255. As a result of the growth in direct-to-consumer advertising, it is now ***patients*** who request prescriptions. This transformation is having a "profound effect on physician prescribing in major depression and adjustment disorder." Richard L. Kravitz, *et al.*, *Influence of Patients' Requests for Direct-to-Consumer Advertised Antidepressants: A Randomized Controlled Trial*, THE JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION, at 7 (April 27, 2005), http://jama.jamanetwork.com/article.aspx?articleid=200780 (Woerner Decl. ¶ 14, Ex. 9.). In fact, direct-to-consumer advertising has caused an increase in prescriptions of drugs such as Cymbalta. *Id.* As the medical professionals who wrote this article recognize, these changed dynamics between physicians and patients "pose a possible challenge to the 'learned intermediary rule'" because, "[i]f patients can sway physicians to prescribe drugs they would otherwise not

18

consider, physicians may not be the stalwart intermediary that the law assumes." *Id.* at 8.

Due to the fact that direct-to-consumer advertising has dramatically altered the traditional doctor-patient relationship, Plaintiffs intend to oppose Lilly's summary judgment motion on the grounds that the "learned intermediary" doctrine is irrelevant to both Plaintiffs' class action consumer claims and Plaintiff Saavedra's individual claims.  Accordingly, Plaintiffs need discovery on all the matters identified above.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Lilly's motion for summary judgment be denied or deferred, and that Plaintiffs be allowed the opportunity and sufficient time to conduct discovery on issues that are essential to their summary judgment opposition.  Fed. R. Civ. P. 56(d).

DATED this 3rd day of April, 2013.

**KELLER ROHRBACK L.L.P.**

By:\s\ Michael D. Woerner
Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com
Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384

Juli E. Farris, Esq. (CA Bar No. 141716)
jfarris@kellerrohrback.com

19

1     Sharon Hritz, Esq. (CA Bar No. 265105)
       shritz@kellerrohrback.com
2     **KELLER ROHRBACK L.L.P.**
       1129 State Street, Suite 8
3     Santa Barbara, CA 93101
       Tel: (805) 456-1496 / Fax:(805) 456-1497
4

5     Mark D. Samson, Esq., *admitted pro hac vice*
6     msamson@kellerrohrback.com
       **KELLER ROHRBACK P.L.C.**
7     3101 N. Central Avenue, Suite 1400
       Phoenix, AZ 85012
8     Tel.: (602) 248-0088 / Fax: (602) 248-2822
9

10    Samuel S. Deskin, Esq.
11    sam@deskinlawfirm.com
      **DESKIN LAW FIRM, PLC**
12    16944 Ventura Blvd, Office
13    Encino, CA 91316
      Tel.:  (800) 709-8978 / Fax: (800) 709-8971
14

15    Harris L. Pogust, Esq.
16    hpogust@pbmattorneys.com
      T. Matthew Leckman, Esq.
17    MLeckman@pbmattorneys.com
      **POGUST BRASLOW MILLROOD LLC**
18    161 Washington Street, Suite 1520
19    Conshohocken, PA 19428
      Tel.:  (800) 897-8930 / Fax:  (610) 941-4245
20

21    ***Counsel for Plaintiffs***

22

23

24

25

26

27

28

20

# CERTIFICATE OF SERVICE

I, Cate R. Brewer, hereby certify that on this 3rd day of April, 2013, I caused true and correct copies of the foregoing:

1. **NOTICE OF MOTION AND MOTION PURSUANT TO RULE 56(d)**; **DECLARATION OF MICHAEL D. WOERNER IN SUPPORT OF MOTION PURSUANT TO RULE 56(d); [PROPOSED] ORDER**

to be served on the below-listed counsel via the court's CM/ECF system electronically.

Clara J. Shin (CA Bar No. 214809)
cshin@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Tel: (415) 591-7058
Fax: (415) 955-6558

Phyllis A. Jones
pajones@cov.com
Mark H. Lynch
mlynch@cov.com
Colleen Kelly
ckelly@cov.com
Michael X. Imbroscio
mimbroscio@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Tel: 202-662-5868
Fax: 202-778-5868

*Attorneys for Defendant Eli Lilly and Company*

\s\ Cate R. Brewer
Cate R. Brewer, Legal Assistant

21