Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com
Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900 / Fax: (206) 623-3384

Juli E. Farris, Esq. (CA Bar No. 141716)
jfarris@kellerrohrback.com
Sharon Hritz, Esq. (CA Bar No. 265105)
shritz@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496 / Fax: (805) 456-1497

Mark D. Samson, Esq., *admitted pro hac vice*
msamson@kellerrohrback.com
**KELLER ROHRBACK P.L.C.**
3101 N. Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088 / Fax: (602) 248-2822

*Additional Counsel for Plaintiffs on following page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER L. SAAVEDRA, DR. MELISSA STRAFFORD, CAROL JACQUEZ, and DAVID MATTHEWS, JR., on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>Defendant. | **NO. 2:12-CV-09366-SVW(MANx)**<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' RESPONSE TO THE COURT'S ORDER OF MAY 1, 2013 PERTAINING TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Date: June 17, 2013**<br>**Time: 1:30 p.m.**<br>**Location: Courtroom 6**<br>**Judge: Hon. Stephen V. Wilson** |

Samuel S. Deskin, Esq.
sam@deskinlawfirm.com
**DESKIN LAW FIRM, PLC**
16944 Ventura Blvd
Encino, CA 91316
Tel.:  (800) 709-8978 / Fax: (800) 709-8971

Harris L. Pogust, Esq.
hpogust@pbmattorneys.com
T. Matthew Leckman, Esq.
MLeckman@pbmattorneys.com
**POGUST BRASLOW MILLROOD LLC**
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel.:  (800) 897-8930 / Fax:  (610) 941-4245

*Additional Counsel for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................1

II.    FACTS AND PROCEDURAL HISTORY .................................2

III.   SUMMARY JUDGMENT STANDARD ...................................5

IV.   THE LEARNED INTERMEDIARY DEFENSE DOES NOT APPLY TO PLAINTIFFS' CONSUMER PROTECTION CLAIMS ...................................................................................6

     A.    The origins and nature of the learned intermediary defense ...............................................................6

     B.    Plaintiffs' consumer protection claims are distinct from products liability "failure to warn" claims, and thus the learned intermediary defense does not apply .....................7

     C.    The state legislatures have not adopted the learned intermediary defense in their consumer protection statutes ...............................................................10

     D.    Applying the learned intermediary defense would conflict with the express terms and purposes of the consumer protection statutes ..................................11

     E.    Lilly cites no authority in these jurisdictions in which the learned intermediary defense was adopted in a consumer protection case .................................................13

          1.    The consumer protection statutes are not dependent on traditional tort or contract law concepts for definition .........................................13

          2.    California ...............................................14

          3.    Massachusetts.........................................15

          4.    Missouri ................................................16

          5.    New York ...............................................17

1
2
3

V.     THE EXCEPTIONS TO THE LEARNED INTERMEDIARY
       DEFENSE, INCLUDING DIRECT-TO-CONSUMER
       ADVERTISING, FURTHER RENDER THE LEARNED
       INTERMEDIARY DEFENSE INAPPLICABLE........................................18

VI.    LILLY DID NOT MEET ITS BURDEN TO ESTABLISH
       THE LEARNED INTERMEDIARY DEFENSE.........................................22

VII.   CONCLUSION...............................................................................24

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Anderson v. Liberty Lobby,*
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)........................................5

*Anderson v. Owens-Corning Fiberglas Corp.,*
   53 Cal. 3d 987, 291 Cal. Rptr. 528 (1991) ........................................6

*Bank of the W. v. Superior Court of Contra Costa County,*
   2 Cal. 4th 1254, 833 P.2d 545 (1992)........................................13

*Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co.,*
   404 Mass. 103, 533 N.E.2d 1350 (1989)........................................9

*Bean v. Baxter Healthcare Corp.,*
   965 S.W.2d 656 (Tex. App. 1998)........................................19

*Bocre Leasing Corp. v. Gen. Motors Corp.* (*Allison Gas Turbine
   Div.*),
   84 N.Y.2d 685, 645 N.E.2d 1195 (1995)........................................9

*Carey v. Lynn Ladder & Scaffolding Co.,*
   427 Mass. 1003, 691 N.E.2d 223 (1998)........................................7

*Connecticut Nat'l Bank v. Germain,*
   503 U.S. 249, 112 S.Ct. 1146 (1992)........................................11

*Cooper v. Zimmer Holdings, Inc.,*
   320 F.Supp.2d 1154 (D. Kan. 2004)........................................8

*Darviris v. Petros,*
   442 Mass. 274, 812 N.E.2d 1188 (2004)........................................15

*Davis v. Wyeth Laboratories, Inc.,*
   399 F.2d 121 (9th Cir. 1968) ........................................19

*DeAngelis v. Timberpeg E., Inc.,*
   51 A.D.3d 1175, 858 N.Y.S.2d 410 (N.Y. Sup. Ct. App. Div. May
   8, 2008) ........................................13

*Edwards v. Basel Pharmaceuticals*,
    933 P.2d 298 (Okla. 1997)..................................................................20

*Fathi v. Pfizer Inc.*,
    24 Misc.3d 1249(A), 901 N.Y.S.2d 899 (Sup. Ct. 2009)................................10

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    94 N.Y.2d 330, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999) ...........................13

*Garside v. Osco Drug, Inc.*,
    764 F.Supp. 208 (D. Mass. 1991)........................................................21

*Garside v. Osco Drug, Inc., reversed on other grounds*,
    976 F.2d 77 (1st Cir. 1992)................................................................21

*Goldych v. Eli Lilly & Co.*,
    No. 04-1477, 2006 WL 2038436 (N.D.N.Y. July 19, 2006)...........................18

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314, 774 N.E.2d 1190 (2002)................................................14

*Grand Pacific Finance Corp v. Brauer*,
    57 Mass.App.Ct. 407 (2003)..............................................................14

*Griffith v. Blatt*,
    334 Or. 456, 51 P.3d 1256 (2002) .......................................................11

*Heller v. Silverbranch Const. Corp.*,
    376 Mass. 621, 382 N.E.2d 1065 (1978)............................................10, 14

*Hill v. Air Shields, Inc.*,
    721 S.W.2d 112 (Mo. Ct. App. 1986) .........................................7, 8, 16

*Hill v. Searle Laboratories, a Div. of Searle Pharmaceuticals, Inc.*,
    884 F.2d 1064 (8th Cir. 1989) ...........................................................20

*Hogan v. Novartis Pharmaceuticals Corp.*,
    No. 06-0260, 2011 WL 1533467 (E.D.N.Y. Apr. 24, 2011)...........................20

*Hornisher v. Eli Lilly & Co.*,
    No. 09-1453, 2010 WL 1957300 (N.D. Cal. May 14, 2010) ..........................23

*In re Chantix (Varenicline) Prods. Liab. Litig.*,
    811 F. Supp. 2d 1333 (N.D. Ala. 2012).................................................12

*In re Fosamax Prods. Liab. Litig.*, -- F.Supp.2d --, No. 08-4119, 2013
WL 76140 (S.D.N.Y. Jan. 7, 2013) ....................................................8

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
491 F.Supp.2d 20 (D. Mass. 2007)................................................15

*In re Shelton*,
481 B.R. 22 (Bankr. W.D. Mo. 2012) ...........................................14

*In re Tobacco II Cases*,
46 Cal.4th 298, 93 Cal.Rptr.3d 559 (2009) ..................................14

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales
Practices, and Products Liability Litigation*,
754 F.Supp.2d 1145 (C.D. Cal. 2010) ...........................................8

*In re Zyprexa Prods. Liab. Litig.*,
489 F.Supp.2d 230 (E.D.N.Y. 2007) .............................................23

*Karlin v. IVF Am., Inc.*,
93 N.Y.2d 282, 712 N.E.2d 662 (1999)....................................17, 18

*Keegan v. Am. Honda Motor Co., Inc.*,
838 F.Supp.2d 929 (C.D. Cal. 2012) .........................................13, 14

*Krueger v. Wyeth*,
No. 03-2496, 2011 WL 8971449 (S.D. Cal. March 30, 2011).........15

*Kwikset Corp. v. Superior Court of Orange Cty.*,
51 Cal. 4th 310, 246 P.3d 877 (2011) ..........................................11

*Lily Transp. Corp. v. Royal Institutional Services, Inc.*,
64 Mass.App.Ct. 179, 832 N.E.2d 666 (2005) ..............................12

*Linnen v. A.H. Robins Co., Inc.*,
No. 97-2307, 2000 WL 89379 (Mass. Super. Ct. Dec. 14, 1999)..............15, 22

*MacDonald v. Ortho Pharmaceutical Corp.*,
394 Mass. 131, 475 N.E.2d 65 (1985).........................................7, 19

*Marcus v. Specific Pharmaceuticals, Inc.*,
191 Misc. 285, 77 N.Y.S.2d 508 (N.Y.Sup.Ct. 1948)...................19, 22

iv

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
    552 F.3d 47 (1st Cir. 2009)...................................................................9

*Mattos v. Eli Lilly & Co.*,
    No. 12-1014, 2012 WL 1893551 (D. Kan. May 23, 2012) ............................10

*McEwen v. Ortho Pharmaceutical Corp.*,
    270 Or. 375, 528 P.2d 522 (1974) ......................................................7

*Notmeyer v. Stryker Corp.*,
    502 F.Supp.2d 1051 (N.D. Cal. 2007)...........................................15, 23

*Pelman v. McDonald's Corp.*,
    237 F.Supp.2d 512 (S.D.N.Y. 2003) ...................................................10

*Perez v. Wyeth Laboratories Inc.*,
    734 A.2d 1245 (N.J. 1999) ............................................................20

*Pittman v. Upjohn Co.*,
    890 S.W.2d 425 (Tenn.1994) ...........................................................22

*Plubell v. Merck & Co., Inc.*,
    289 S.W.3d 707 (Mo. Ct. App. 2009) ..................................................16

*Plubell v. Merck & Co., Inc.*,
    No. 04-235817-01, 2008 WL 4771525 (Mo. Cir. Ct. June 12,
    2008) .............................................................................16, 21

*Rastelli v. Goodyear Tire & Rubber Co.*,
    79 N.Y.2d 289, 591 N.E.2d 222 (1992)..................................................7

*Rimbert v. Eli Lilly & Co.*,
    577 F. Supp. 2d 1174 (D.N.M. 2008).................................................21

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
    756 F. Supp. 732 (S.D.N.Y. 1990) ....................................................18

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
    977 F.2d 47 (2d Cir. 1992) ...........................................................18

*Sebago, Inc. v. Beazer E., Inc.*,
    18 F.Supp.2d 70 (D. Mass. 1998)......................................................10

v

*Seely v. White Motor Co.*,
    45 Cal. Rptr. 17, 63 Cal. 2d 9 (1965) ................................................................9

*Sharp Brothers Contracting Co. v. American Hoist & Derrick Co.*,
    703 S.W.2d 901 (Mo. 1986) ............................................................................9

*Slaney v. Westwood Auto, Inc.*,
    366 Mass. 688, 322 N.E.2d 768 (1975) ......................................................13, 14

*Spa De Soleil, Inc. v. Gen. Star Indem. Co.*,
    787 F.Supp.2d 1091 (C.D. Cal. 2011) ..............................................................5

*State ex rel. Johnson & Johnson Corp. v. Karl*,
    647 S.E.2d 899 (W. Va. 2007)........................................................................21

*Sterling Drug Inc. v. Cornish*,
    370 F.2d 82 (8th Cir. 1966) ...........................................................................19

*Stevens v. Parke, Davis & Co.*,
    9 Cal.3d 51, 507 P.2d 653 (1973)................................................ 7, 19, 21, 22

*Tatum v. Takeda Pharmaceuticals N. Am., Inc.*,
    No. 12-1114, 2012 WL 5182895 (E.D. Pa. Oct. 19, 2012)............................10

*Walton v. Bayer Corp.*,
    643 F.3d 994 (7th Cir. 2011) ....................................................................22, 24

*Witczak v. Pfizer, Inc.*,
    377 F.Supp.2d 726 (D. Minn. 2005)...............................................................20

*Zmuda v. Chesterfield Valley Power Sports, Inc.*,
    267 S.W.3d 712 (Mo. Ct. App. 2008) ............................................................13

**Other Authorities**

Amicus Curiae Brief of the New York State Attorney General,
    *Karlin v. IVF Am., Inc.*, 1999 WL 33659990 (Jan. 19, 1999) ........................18

Cal. Bus. & Prof. Code § 17200 ................................................................................2

Cal. Bus. & Prof. Code § 17500 ............................................................................2, 9

Cal. Civ. Code. § 1750...............................................................................................2

Cal. Civ. Code § 1760 ................................................................14

Cal. Civ. Code § 1761(d) ...........................................................11

Cal. Civ. Code § 1780 ..................................................................9

Casey, Susan A., Comment, *Laying an Old Doctrine to Rest:*
    *Challenging the Wisdom of the Learned Intermediary Doctrine*,
    19 Wm. Mitchell L. Rev. 931, 933 (1993) ......................................19

Kane, Diane Schmauder, Annotation,
    *Construction and Application of the Learned-Intermediary*
    *Doctrine*,
    57 A.L.R. 5th 1 at § 2(a) (1998) ...................................................7

Mass. Gen. Laws Ch. 93A § 1 .........................................2, 9, 15

Mo. Rev. Stat. § 407.010 ...............................................................2

Mo. Rev. Stat. § 407.020.1 ..........................................................11

Mo. Rev. Stat. § 407.025 ...............................................................9

Moldovan, Joseph Thomas, *New York Creates A Private Right of*
    *Action to Combat Consumer Fraud: Caveat Venditor*,
    48 Brook. L. Rev. 509, 544 (1982)...............................................12

N.Y. Gen. Bus. Law § 349.................................................2, 9, 18

N.Y. Gen. Bus. Law § 350-e ..........................................................9

## I.   INTRODUCTION

Per the Court's order, this brief addresses "solely the question of whether the learned intermediary doctrine is an affirmative defense to Plaintiffs' consumer protection claims, and, if so, whether the relevant jurisdictions have adopted a 'direct to consumer advertising' exception that might render the defense inapplicable."  (Order, Dkt. 65 (May 1, 2013).)

As set forth herein, the learned intermediary defense fails to apply to Plaintiffs' consumer protection claims.  Lilly attempts an end-run around consumer protection statutes by applying a defense borrowed from product liability law, the learned intermediary defense, to the consumer protection context.  While the learned intermediary defense may be applied in product liability law when the manufacturer adequately informs the prescribing doctor about a drug, the duty of a manufacturer to be honest in advertising and marketing to consumers flows from the four states' consumer protection statutes.

Even if this Court were to predict that the courts in the four states at issue would apply the learned intermediary defense to consumer claims, the defense would still be of no avail to Lilly.  Lilly cannot hide behind the defense when the intermediaries here were not "learned," and Lilly misled doctors as well as consumers.  Moreover, exceptions to the defense, including where the manufacturer has engaged in extensive direct-to-consumer advertising, render the defense inapplicable to Plaintiffs' claims in any event.  For these reasons, Plaintiffs respectfully request that Lilly's motion be denied and that this case proceed to discovery.

## II.   FACTS AND PROCEDURAL HISTORY

Plaintiffs filed their corrected First Amended Complaint ("FAC"), the operative complaint in this matter, on January 10, 2013.  (Dkt. 44.)  In the FAC, Plaintiffs alleged that Lilly misled consumers as to the frequency, severity, and duration of Cymbalta withdrawal, in violation of the consumer protection laws of four different states: California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code. §§ 1750, *et seq.*, California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; Massachusetts's Consumer Protection Act, Mass. Gen. Laws Ch. 93A §§ 1, *et seq.*; Missouri's Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, *et seq.*; and New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law §§ 349, *et seq.*  (FAC ¶¶ 85-137.)  Plaintiff Saavedra also brought claims for personal injuries she sustained from taking Cymbalta.  (FAC ¶¶ 138-176.)

On January 28, 2013, Lilly filed a motion to dismiss.  (Dkt. 46.)  The primary thrust of Lilly's dismissal motion was that the "learned intermediary doctrine," a defense based in products liability law, should be extended to the consumer protection context in order to bar Plaintiffs' claims.  (Dkt. 46 at 7-14.)  Plaintiffs opposed that motion on February 4, 2013, arguing that (1) the learned intermediary defense has no application to consumer protection claims; and (2) even if it did, the defense could not bar Plaintiffs' claims because Lilly also misrepresented and omitted material information regarding the frequency, severity, and duration of Cymbalta withdrawal to medical professionals.  (Dkt. 48.)  On

February 26, 2013, the Court denied Lilly's motion to dismiss, with the exception of Plaintiffs' request for declaratory and injunctive relief.  (Dkt. 52.)

In the Order, the Court reserved judgment as to whether "the relevant jurisdictions would apply [the learned intermediary] doctrine to the consumer protection claims at issue in this suit."  (Dkt. 52 at 9.)  The Court permitted Lilly the opportunity to introduce proof at summary judgment that it "adequately warned prescribing physicians of Cymbalta withdrawal" (Dkt. 52 at 4 n.3) by establishing that, notwithstanding the fact that the label said withdrawal symptoms occurred at a rate of 1% or greater, Lilly told doctors that the rate was "more like 40 or 50 percent."  (Tr. at 5:5-10 (Feb. 25, 2013).)

During the hearing, the Court said that Plaintiffs could file an application under Rule 56(d) if they needed "more time to respond" to the summary judgment motion "by way of discovery."  (Tr. 6:13-7:4 (Feb. 25, 2013.)  However, the Court instructed Plaintiffs' counsel not to request discovery until Plaintiffs received Lilly's summary judgment motion.  (*Id.* at 7:5-9.)

Lilly thereafter filed its summary judgment motion on March 27, 2013 (Dkt. 54 ("MSJ")) (1) having not answered Plaintiffs' FAC; (2) having not filed initial disclosures pursuant to Rule 26(a); and (3) before any discovery had (or has) taken place (*see* Tr. at 7:5-9 (Feb. 25, 2013)).

Significantly, Lilly's summary judgment motion ***failed to introduce any evidence*** that it warned doctors that the risk of withdrawal was "more like 40 or 50 percent."  (Tr. at 5:5-10 (Feb. 25, 2013).)  The 11 different "Medical Information Letters," that were purportedly "made available" to doctors upon their request

3

(MSJ at 2; Declaration of Sarah L. Helgeson ("Helgeson Decl."), Dkt. 55, Exs. 1-11.), did not address the "more like 40 or 50 percent" issue, and Lilly provided no evidence that it sent any of those 11 letters to any doctor, let alone all doctors.

 In response, Plaintiffs filed a Rule 56(d) Motion and supporting Declaration on April 3, 2013.  (Dkt. 59.)  Defendant filed an Opposition to Plaintiffs' Motion Purusant to Rule 56(d) on April 10, 2013. (Dkt. 61.)

 On April 29, 2013, the Court held a hearing, during which Lilly's counsel admitted that its own study, which revealed that 44% or more of Cymbalta users experienced at least one withdrawal symptom, "was ***not*** part of the package sent to the doctors."  (Tr. at 23:20-22 (April 29, 2013) (emphasis added) ("SJ Tr.").)  Also at the hearing, Lilly told the Court that the package insert (the label) containing the misleading 1% language was only directed to doctors.  (SJ Tr. at 10:25-11:4.)  However, the Cymbalta label is not just for doctors; Lilly directs consumers to it via its website and abundant advertising.  (SJ Tr. at 22:1-10; Declaration of Michael D. Woerner filed herewith ("Woerner Decl.") ¶¶ 11-13.)

 On May 1, 2013, this Court issued an Order requesting Plaintiffs to file an opposition to Defendant's motion for summary judgment "addressing solely the question of whether the learned intermediary doctrine is an affirmative defense to Plaintiffs' consumer protection claims, and, if so, whether the relevant jurisdictions have adopted a 'direct to consumer advertising' exception that might render the defense inapplicable."  (Dkt. 65 at 3-4.)[1]

 Pursuant to that Order, Plaintiffs submit this Opposition to Lilly's motion.

---

[1] At the hearing, the Court did not address Plaintiffs' Motion Pursuant to Rule 56(d).  (Dkt. 59.)

As detailed herein, the learned intermediary defense does not apply to Plaintiffs' consumer protection claims because these statutes create their own rights and remedies. These claims cannot be evaluated by borrowing inapplicable defenses from products liability law. Even if the court were to predict that courts in the four states would apply the learned intermediary defense, Lilly still could not escape liability because Lilly misled both doctors and consumers. Moreover, exceptions to the defense – particularly in the context of direct-to-consumer advertising and zealous promotion – render the doctrine inapplicable here. Plaintiffs accordingly request that Lilly's summary judgment motion be denied and that this case proceed toward discovery.

## III.   SUMMARY JUDGMENT STANDARD

As the moving party, Lilly bears the burden to come forward with admissible evidence demonstrating that there are *no* genuine issues of material fact for trial. *Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Spa De Soleil, Inc. v. Gen. Star Indem. Co.*, 787 F.Supp.2d 1091, 1095 (C.D. Cal. 2011). To address that burden, this Court invited Lilly to introduce evidence that it had "adequately warned prescribing physicians of Cymbalta withdrawal." (Dkt. 52 at 4 n.3.)

Lilly failed to meet this burden as a matter of law, because it *has not cited any binding authority in any of the relevant jurisdictions* showing that the learned intermediary defense applies to Plaintiffs' consumer protection claims.

Lilly has also failed to meet its burden as a factual matter, as it has failed to introduce proof that, notwithstanding that the label said withdrawal symptoms

occurred at a rate of 1% or greater, Lilly told doctors the truth — that the rate was "more like 40 or 50%." (Tr. at 5:5-10 (Feb. 25, 2013).) Instead, Lilly's counsel *admitted* at the hearing held on April 29, 2013, that the study which revealed that 44% or more of Cymbalta users experienced at least one withdrawal symptom "was *not* part of the package sent to the doctors." (SJ Tr. at 23:20-22 (emphasis added).) Lilly's other misrepresentations and material omissions are set forth in more detail in Section VI, *infra*.

## IV. THE LEARNED INTERMEDIARY DEFENSE DOES NOT APPLY TO PLAINTIFFS' CONSUMER PROTECTION CLAIMS

The learned intermediary defense has not been codified in any of the consumer protection statutes at issue here, and it conflicts with the express terms and purposes of those statutes. Moreover, despite having the burden on summary judgment, Lilly cannot cite to any binding authority in any of the relevant jurisdictions (California, Massachusetts, Missouri, or New York) where courts have applied this defense to consumer protection claims. Instead of being the "universally" accepted defense to each of Plaintiffs' claims that Lilly posits, (MSJ at 9), the learned intermediary defense is narrow and available only in the separate and distinct area of products liability "failure to warn" claims.

### A.   The origins and nature of the learned intermediary defense

The learned intermediary defense is specific to products liability failure-to-warn claims. A failure-to-warn claim may be brought under a negligence theory (for breach of the duty to warn of hazards) and/or under strict liability (failure to provide adequate warnings renders the product defective). *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 996-1003, 291 Cal. Rptr. 528 (1991);

*Carey v. Lynn Ladder & Scaffolding Co.*, 427 Mass. 1003, 691 N.E.2d 223, 224 (1998); *Hill v. Air Shields, Inc.*, 721 S.W.2d 112, 117 (Mo. Ct. App. 1986); *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 297, 591 N.E.2d 222, 225 (1992).

The general rule in these products liability actions is that a manufacturer has a duty to warn the ultimate user of dangers in its products.  Diane Schmauder Kane, Annotation, *Construction and Application of the Learned-Intermediary Doctrine*, 57 A.L.R. 5th 1 at § 2(a) (1998).  The learned intermediary defense is a limited exception to this general rule.  *Id.*  It provides that a prescription drug manufacturer may satisfy its duty to warn in the products liability context ***if it provides adequate warnings to doctors.***  *Stevens v. Parke, Davis & Co.*, 9 Cal.3d 51, 65, 507 P.2d 653, 661 (1973).  Thus, ***if*** the prescription drug manufacturer provides adequate warnings to doctors, ***then*** the manufacturer has no duty to warn the patient.  *Id.*  As a corollary, if the manufacturer ***fails*** to satisfy its duty to adequately warn the doctors, then ***liability flows through from the manufacturer to the patient.***  *MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. 131, 136, 475 N.E.2d 65, 69 (1985); *McEwen v. Ortho Pharmaceutical Corp.*, 270 Or. 375, 386-87, 528 P.2d 522, 529 (1974).

**B.    Plaintiffs' consumer protection claims are distinct from products liability "failure to warn" claims, and thus the learned intermediary defense does not apply**

To assert that the learned intermediary defense applies in the consumer protection context, Lilly misleadingly lumps Plaintiffs' claims under the umbrella of "failure to warn."  However, "failure to warn" has a technical meaning – it

refers to the specific types of actions that are cognizable under products liability law and discussed in Section IV(A) above.  Because products liability law and consumer protection law differ in a myriad of ways, placing Plaintiffs' claims in the same category as "failure to warn" fundamentally distorts the consumer claims.

First, consumer protection statutes and products liability law target separate conduct.  The consumer protection statutes target acts of deception and unfair business practices that cause economic injuries to consumers.  *Cooper v. Zimmer Holdings, Inc.*, 320 F.Supp.2d 1154, 1163-64 (D. Kan. 2004); *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 754 F.Supp.2d 1145, 1164-65 and 1172-77 (C.D. Cal. 2010).  By contrast, products liability law provides remedies when a defendant places defective products into the stream of commerce that cause physical injuries to users and bystanders.  *In re Toyota*, 754 F.Supp.2d at 1164.

Second, the elements of consumer protection claims and products liability failure-to-warn claims are different.  As an example, a failure-to-warn claim based on negligence requires that a plaintiff prove a duty to warn; breach of that duty; causation; and damages.  *See, e.g., Hill,* 721 S.W.2d at 118; *In re Fosamax Prods. Liab. Litig.*, -- F.Supp.2d --, No. 08-4119, 2013 WL 76140, at *3 (S.D.N.Y. Jan. 7, 2013).  By contrast, to establish a claim under Massachusetts General Law Ch. 93A for unfair or deceptive acts or practices, for example, a Plaintiff must show that the practice falls into "the penumbra of some common-law, statutory, or other established concept of unfairness" and that it caused "substantial injury to consumers."  *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,

552 F.3d 47, 69 (1st Cir. 2009).

Third, consumer protection law redresses a different type of injury than products liability law.  The consumer protection statutes at issue here provide remedies for economic injuries.  Cal. Civ. Code § 1780; Mass. Gen. Laws Ch. 93A §9(1); Mo. Rev. Stat. § 407.025; N.Y. Gen. Bus. Law § 349(h); N.Y. Gen. Bus. Law § 350-e.  By contrast, when "economic loss is the only damage claimed, recovery is not allowed" in products liability theories of strict liability or negligence; a plaintiff must have suffered physical injuries.  *Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 107, 533 N.E.2d 1350, 1353 (1989); *Seely v. White Motor Co.*, 45 Cal. Rptr. 17, 18, 63 Cal. 2d 9 (1965); *Sharp Brothers Contracting Co. v. American Hoist & Derrick Co.*, 703 S.W.2d 901, 902-903 (Mo. 1986); *Bocre Leasing Corp. v. Gen. Motors Corp.* (*Allison Gas Turbine Div.*), 84 N.Y.2d 685, 685-694, 645 N.E.2d 1195 (1995).

Fourth, the remedies that consumer protection statutes provide are distinct from the remedies available in products liability actions.  Consumer protection statutes provide for such remedies as monetary penalties, *see, e.g.* Cal. Civ. Code § 1780(a)(1), Cal. Bus. & Prof. Code § 17500; N.Y. Gen. Bus. Law § 349(h); N.Y. Gen. Bus. Law § 350-e, which are not available under products liability law.

Because of the numerous differences between products liability law and consumer protection law, it is wrong to characterize Plaintiffs' claims as "failure to warn."  Correspondingly, defenses that are unique to the failure-to-warn products liability context, such as the learned intermediary defense, cannot be mapped over into the consumer protection context.  *Heller v. Silverbranch Const. Corp.*, 376

Mass. 621, 625-26, 382 N.E.2d 1065, 1069-1070 (1978) (refusing to look to defenses that are available in other bodies of law, such as common law, in order to interpret consumer protection act).

Courts routinely evaluate products liability and consumer protection claims as independent causes of action arising from the same set of facts, *see, e.g.*, *Sebago, Inc. v. Beazer E., Inc.*, 18 F.Supp.2d 70, 89-93 and 103-104 (D. Mass. 1998), *Pelman v. McDonald's Corp.*, 237 F.Supp.2d 512 (S.D.N.Y. 2003) — including in the prescription drug context.  *See Fathi v. Pfizer Inc.*, 24 Misc.3d 1249(A), at *4, 901 N.Y.S.2d 899 (Sup. Ct. 2009) (rejecting Pfizer's contention that § 349 claim was merely incidental to product liability claim because the claims contain different legal elements); *Mattos v. Eli Lilly & Co.*, No. 12-1014, 2012 WL 1893551, at *2-3 (D. Kan. May 23, 2012) (finding that consumer protection act claim was not subsumed by product liability claim); *Tatum v. Takeda Pharmaceuticals N. Am., Inc.*, No. 12-1114, 2012 WL 5182895, at *2 and *4 (E.D. Pa. Oct. 19, 2012) (dismissing failure-to-warn claim, but denying motion to dismiss with respect to violation of consumer protection statute).

**C.    The state legislatures have not adopted the learned intermediary defense in their consumer protection statutes**

One of the most important reasons why the learned intermediary defense does not apply to Plaintiffs' consumer protection claims is that the state legislatures in these jurisdictions have not adopted it.  They certainly could have codified a defense that would allow prescription drug manufacturers, such as Lilly, to market their wares to consumers free from the oversight of consumer protection statutes as long as prescribing physicians were adequately informed, *i.e.* of the

frequency, severity, or duration of Cymbalta withdrawal.  However, they did not do so.  Thus, as a matter of statutory interpretation and in deference to these states' legislative branches, this Court should decline to create such a defense now. *Kwikset Corp. v. Superior Court of Orange Cty.,* 51 Cal. 4th 310, 334-35, 246 P.3d 877, 894 (2011); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *Griffith v. Blatt*, 334 Or. 456, 466, 51 P.3d 1256, 1261 (2002) (refusing to apply learned intermediary defense where "Oregon statutes, not the common law, govern," and stating that the court's consideration of the defense "begins and ends with our construction of the pertinent product liability statutes.").

**D.    Applying the learned intermediary defense would conflict with the express terms and purposes of the consumer protection statutes**

Perhaps the most obvious example of this conflict is Lilly's suggestion that the learned intermediary defense makes the doctor the "consumer" for purposes of these statutes.  (*See* MSJ at 12.)  This proposition is directly at odds with the express language of such statutes as the CLRA and the MMPA, both of which define "consumer" to mean a person who purchases a product for "personal, family or household purposes."  Cal. Civ. Code § 1761(d); Mo. Rev. Stat. § 407.020.1.

The learned intermediary defense also conflicts with the fundamental purpose of the consumer protection statutes, which were intended to ***equalize*** the playing field between consumers and businessmen "[b]y requiring proper disclosure of relevant information and proscribing unfair or deceptive acts or practices."  *Lily Transp. Corp. v. Royal Institutional Services, Inc.*, 64

Mass.App.Ct. 179, 187, 832 N.E.2d 666 (2005).

Finally, if Lilly really thought that "only health-care professionals are in a position to understand . . . the relative advantages and disadvantages" of prescription drugs, then it would not spend tens of millions of dollars every year marketing Cymbalta directly to consumers.  (MSJ at 9 (quoting *In re Chantix (Varenicline) Prods. Liab. Litig.*, 811 F. Supp. 2d 1333, 1342 (N.D. Ala. 2012)).  To avoid liability for misleading consumers, Lilly invokes the learned intermediary defense and claims that consumers are not sophisticated enough to understand the risks and benefits of Cymbalta.  On the other hand, Lilly drives sales by touting Cymbalta's benefits to consumers without disclosing the true risks of Cymbalta withdrawal.  *See, e.g.*, FAC ¶ 24 ("Depression Hurts. Cymbalta can help.").

This is precisely the type of power imbalance that the consumer protection statutes were designed to remedy.  Although Lilly could have chosen to limit its communications about Cymbalta to doctors, it did not do so.  Instead, it chose to communicate directly with consumers.  Since prescription drug companies advertise directly to consumers, "it would be anomalous for them to be relieved of the attendant liability for false advertising and deceptive practices — with the benefit must go the burden." Joseph Thomas Moldovan, *New York Creates A Private Right of Action to Combat Consumer Fraud: Caveat Venditor*, 48 Brook. L. Rev. 509, 544 (1982).  Consequently, Lilly must ensure that its statements are not misleading to "the ordinary consumer . . . who is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture."  *Keegan v. Am. Honda Motor Co., Inc.*, 838 F.Supp.2d 929, 938

(C.D. Cal. 2012); *DeAngelis v. Timberpeg E., Inc.*, 51 A.D.3d 1175, 1178, 858 N.Y.S.2d 410, 415 (N.Y. Sup. Ct. App. Div. May 8, 2008).  Thus, the learned intermediary defense has no place in the consumer protection context.

**E.   Lilly cites no authority in these jurisdictions in which the learned intermediary defense was adopted in a consumer protection case**

Lilly fails to meet its burden at the summary judgment stage because it does not cite to a single case decided in any of the four jurisdictions at issue here in which the learned intermediary defense has been applied to consumer protection claims.  By contrast, cases decided in each of these four jurisdictions – California, Massachusetts, Missouri, and New York – demonstrate that the learned intermediary defense has no place in this consumer protection context.

**1.   The consumer protection statutes are not dependent on traditional tort or contract law concepts for definition**

When the consumer protection statutes were adopted in each of these jurisdictions, they created new causes of action that were not previously recognized at common law, and therefore they are "not limited by traditional tort and contract law requirements."  *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 693, 322 N.E.2d 768, 772-73 (1975); *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999) ("In contrast to common-law fraud, General Business Law § 349 is a creature of statute based on broad consumer protection concerns"); *Zmuda v. Chesterfield Valley Power Sports, Inc.*, 267 S.W.3d 712, 716 (Mo. Ct. App. 2008) ("The [MMPA] serves as a supplement to the common-law definition of fraud."); *Bank of the W. v. Superior Court of Contra Costa County*, 2 Cal. 4th 1254, 1267, 833 P.2d 545 (1992) ("[T]o

state a claim under the [UCL] one need not plead and prove the elements of a tort. Instead, one need only show that "members of the public are likely to be deceived.").  The scope of these consumer protection statutes is intended to be broad, and to cover a wide range of conduct.  *See, e.g.,* Cal. Civ. Code § 1760; *In re Tobacco II Cases*, 46 Cal.4th 298, 312, 93 Cal.Rptr.3d 559, 570 (2009) (UCL's broad purpose is "protecting the general public against unscrupulous business practices"); *Keegan*, 838 F.Supp.2d at 938-39; *Slaney*, 366 Mass. at 693; *In re Shelton*, 481 B.R. 22, 31 (Bankr. W.D. Mo. 2012); *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 323-24, 774 N.E.2d 1190 (2002).

Because these statutes create "new substantive rights and provide[] new procedural devices for the enforcement of those rights," *Grand Pacific Finance Corp v. Brauer*, 57 Mass.App.Ct. 407, 420 n.9 (2003), the statutes are "not dependent on traditional tort or contract law concepts" — such as the learned intermediary defense — for their definitions.  *Heller*, 376 Mass. at 626. Accordingly, determinations of whether Lilly is liable under the consumer protection acts "are not aided by defendant's review of the various common law theories under which it might have escaped liability," such as the learned intermediary defense.  *Id.*  Rather, to determine whether an act or practice is unfair or deceptive within the meaning of these statutes, courts must look to the policies and purposes of the acts, as well as "the circumstances inhering in each case."  *Id.*

### 2.    California

This is not the first case in California in which a pharmaceutical company has been sued for violating consumer protection statutes.  Indeed, in *Krueger v.*

14

*Wyeth*, No. 03-2496, 2011 WL 8971449 (S.D. Cal. March 30, 2011), the court permitted consumer protection claims to proceed against prescription drug manufacturers without any mention, let alone adoption of, the learned intermediary defense, despite defendants' vigorous arguments to the contrary invoking the learned intermediary defense. Thus, this case indicates that the learned intermediary defense is not applicable to California's consumer protection laws. *See also Notmeyer v. Stryker Corp.*, 502 F.Supp.2d 1051 (N.D. Cal. 2007).

### 3.    Massachusetts

The Massachusetts Supreme Judicial Court, interpreting Ch. 93A, has stated, "[C]onsumer protection statutes may be applied to the entrepreneurial and business aspects of providing medical services." *Darviris v. Petros*, 442 Mass. 274, 279, 812 N.E.2d 1188, 1193 (2004). In *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 491 F.Supp.2d 20, 34-38 and 80-85 (D. Mass. 2007), the plaintiffs pursued consumer protection claims against pharmaceutical companies for misleading the public as to the true cost of prescription drugs. The court held that defendants caused injuries under Ch. 93A by not reporting a true average wholesale price, stating, "[t]his is exactly the sort of false and misleading information for which Chapter 93A is intended to provide relief." *Id.* at 95. Thus, under the Massachusetts Consumer Protection Act, a drug company such as Lilly can be liable to consumers for unfair and deceptive practices if it tells the truth to doctors, but misleads the public. *See also Linnen v. A.H. Robins Co., Inc.*, No. 97-2307, 2000 WL 89379 (Mass. Super. Ct. Dec. 14, 1999) (denying summary judgment as to 93A claims and personal injury claims related to fenfluramine). In

addition, the cases cited in Section IV(E)(1), *supra*, show that courts in Massachusetts would not apply the learned intermediary defense to its consumer protection statute.

### 4.   Missouri

In considering alleged violations of the MMPA regarding the sale, marketing, and distribution of the prescription drug Vioxx, the Missouri Circuit Court noted that the common law learned intermediary defense does "not apply to a *statutory* claim, particularly one based upon a remedial statute designed to protect the consuming public."   *Plubell v. Merck & Co., Inc.*, No. 04-235817-01, 2008 WL 4771525, *slip op.* at n. 5 (Mo. Cir. Ct. June 12, 2008) (attached as Ex. 6 to Woerner Decl.).   In that case, the court rejected the argument that Lilly makes here — that Plaintiffs must allege that their doctors would have acted differently had Lilly provided an adequate warning regarding Cymbalta.   (MSJ at 22); *Plubell*, 2008 WL 4771525, *slip op.* at n.5.   On appeal, the Missouri Court of Appeals explained that because a consumer's reliance on an unlawful practice is not required under the MMPA, plaintiffs are "not required to prove they or their physicians relied on [defendant's] alleged misrepresentations about [the prescription drug], and consequently, they are not required to offer individualized proof that the misrepresentation colored the decision to take [the prescription drug]."   *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009). *See also Hill*, 721 S.W.2d at 119 (even in a failure-to-warn products liability action, plaintiff did not need to prove warnings would have been seen and heeded).

It is therefore clear in Missouri that the learned intermediary defense has

absolutely no bearing on Plaintiffs' consumer protection claims.

**5.    New York**

In *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 291-92, 712 N.E.2d 662, 665 (1999), the New York Court of Appeals held that providers of medical services and products could not receive special exemptions from the reach of New York's consumer protection statutes, and that their dissemination of information to the public would be governed by New York's consumer protection laws.  Specifically, the court held:

> A blanket exemption for providers of medical services and products is contrary to the plain language of the statutes. Such an exemption is also contrary to legislative history, as supporters of the consumer protection bills recognized that consumers of medical services and products might be particularly vulnerable to unscrupulous business practices….Defendants' alleged multi-media dissemination of information to the public is precisely the sort of consumer-oriented conduct that is targeted by General Business Law §§ 349 and 350.

*Id.* at 291-92 (citations omitted).  Arguing against an exemption for medical services and products in an amicus brief, New York's Attorney General wrote, "As with other businesses, the scope of consumer protection enforcement in the health care and medical services areas includes advertising and promotional materials, representations made directly to consumers and marketing practices," adding that "material omissions of risks clearly fall within the traditional purview of consumer protection law."  *See* Amicus Curiae Brief of the New York State Attorney

General, *Karlin v. IVF Am., Inc.*, 1999 WL 33659990 at *11 (Jan. 19, 1999) (attached as Ex. 5 to Woerner Decl.).

Prior to *Karlin*, the Second Circuit upheld the broad application of New York's consumer protection statutes, holding that "[b]y its own terms…GBL § 349 applies to the acts or practices of every business operating in New York." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 52 (2d Cir. 1992).  In so holding, the Second Circuit sustained the district court's finding that "there is every indication that the legislature intended the statute to apply to any business so as to effect its broad remedial purpose, notwithstanding the applicability of any other laws, so long as the elements of a claim under its provisions are satisfied." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F. Supp. 732, 740 (S.D.N.Y. 1990).

These cases demonstrate that New York's consumer protection laws expressly apply to Lilly's dissemination of information about Cymbalta to consumers.  Moreover, it shows that Lilly should not be granted any special exemptions just because it is a provider of prescription drugs.  *See also Goldych v. Eli Lilly & Co.*, No. 04-1477, 2006 WL 2038436, at *6-8 (N.D.N.Y. July 19, 2006) (drug manufacturers subject to N.Y. Gen. Bus. Law §§ 349 and 350 under *Karlin*, 93 N.Y.2d at 282; denying consumer claim only because defendant did not manufacture the drug, which is not at issue here).  Thus, the learned intermediary defense is not applicable to New York's consumer protection statutes, either.

## V.   THE EXCEPTIONS TO THE LEARNED INTERMEDIARY DEFENSE, INCLUDING DIRECT-TO-CONSUMER ADVERTISING, FURTHER RENDER THE LEARNED INTERMEDIARY DEFENSE INAPPLICABLE

The learned intermediary defense came into being in a bygone era — before drug manufacturers published products' labels on websites, and before companies

18

spent billions of dollars in advertising to promote their medications directly to consumers.  The earliest reported case to hold that a manufacturer's duty to warn was fulfilled by warnings given to the prescribing physician is *Marcus v. Specific Pharmaceuticals, Inc.*, 191 Misc. 285, 287, 77 N.Y.S.2d 508 (N.Y.Sup.Ct. 1948).  The New York trial court, formulating this rule in 1948, based it on a scenario in which the drug manufacturer had no communications with the consumer, stating, "[I]t is difficult to see on what basis this defendant can be liable to plaintiff. It made no representation to plaintiff, nor did it hold out its product to plaintiff as having any properties whatsover." *Id*. at 287.  This rationale has been echoed by courts over the years.  *See*, *e.g.*, *Bean v. Baxter Healthcare Corp.*, 965 S.W.2d 656, 662 (Tex. App. 1998) ("The learned intermediary doctrine arises when a product manufacturer has little or no contact with the ultimate user.").

The term "learned intermediary" was first applied in 1966.  *Sterling Drug Inc. v. Cornish*, 370 F.2d 82 (8th Cir. 1966).  "Almost as soon as the Eighth Circuit Court of Appeals first articulated the learned intermediary doctrine in 1966, courts began limiting its effect by exempting claims arising from specific medical products."  Susan A. Casey, Comment, *Laying an Old Doctrine to Rest: Challenging the Wisdom of the Learned Intermediary Doctrine*, 19 Wm. Mitchell L. Rev. 931, 933 (1993).  The first exception to be recognized was in the case of mass immunizations, *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir. 1968), and other exceptions followed. *See, e.g., Stevens*, 507 P.2d at 661 (overpromotion of the drug; even "Dear Doctor" letters could have been disregarded by doctors); *MacDonald*, 394 Mass. at 131 (oral contraceptives); *Hill*

*v. Searle Laboratories, a Div. of Searle Pharmaceuticals, Inc.*, 884 F.2d 1064, 1071 (8th Cir. 1989) (intrauterine devices, and finding that one factor that interfered with an "individualized medical judgment" was that "Searle marketed the product with the idea of convincing women to choose the CU-7"); *Edwards v. Basel Pharmaceuticals*, 933 P.2d 298 (Okla. 1997) (defense not applicable where the FDA has mandated that warnings go directly to the consumer); *Perez v. Wyeth Laboratories Inc.*, 734 A.2d 1245 (N.J. 1999) (direct-to-consumer advertising).

The learned intermediary defense is a relic from another time. "Our medical-legal jurisprudence is based on images of health care that no longer exist." *Perez*, 734 A.2d at 1246. "Today…pill-rolling apothecaries and the mortar and pestle have . . . been replaced by drug manufacturers who urge the use of their drugs in mass-market print and television advertisements targeted directly at the public." *Witczak v. Pfizer, Inc.*, 377 F.Supp.2d 726, 732 (D. Minn. 2005).

Given these changes, "[m]uch ink has been spilled by commentators and courts alike debating the soundness of the [learned intermediary] doctrine." *Hogan v. Novartis Pharmaceuticals Corp.*, No. 06-0260, 2011 WL 1533467, at *9 (E.D.N.Y. Apr. 24, 2011). In 2007, the Supreme Court of West Virginia rejected the learned intermediary defense completely, explaining, "Significant changes in the drug industry have post-dated the adoption of the learned intermediary doctrine in the majority of states in which it is followed. We refer specifically to the initiation and intense proliferation of direct-to-consumer advertising, along with its impact on the physician/patient relationship, and the development of the internet as a common method of dispensing and obtaining prescription drug information."

20

*State ex rel. Johnson & Johnson Corp. v. Karl*, 647 S.E.2d 899, 907 (W. Va. 2007).  In 2008, the District of New Mexico predicted that the Supreme Court of New Mexico would not adopt the learned intermediary defense, citing "the advent of DTC advertising and the trend of people self-diagnosing and, based on that diagnosis, requesting particular prescription drugs."  *Rimbert v. Eli Lilly & Co.*, 577 F. Supp. 2d 1174, 1218 (D.N.M. 2008) ("While the Court does not in any way minimize the importance of doctors in the prescription-drug claim, neither the drug manufacturers nor the patient totally relies on the intermediary. The manufacturer and the patient are communicating directly and the consumer is relying on that direct communication.").

In the states at issue in this litigation, courts have recognized that the learned intermediary defense has limits when manufacturers advertise to consumers and/or zealously promote their drugs.  *Stevens*, 9 Cal.3d at 65 ("an adequate warning to the profession may be eroded or even nullified by overpromotion of the drug through a vigorous sales program which may have the effect of persuading the prescribing doctor to disregard the warnings given"); *Plubell*, 2008 WL 4771525, *slip op.* at n. 5 ("[G]iven the massive direct-to-consumer advertising alleged here, the fundamental justification for the doctrine — that patients rely solely on their doctors to choose which prescription drugs they take — simply may not exist in this case."); *Garside v. Osco Drug, Inc.*, 764 F.Supp. 208, 211 n. 4 (D. Mass. 1991), *reversed on other grounds,* 976 F.2d 77 (1st Cir. 1992) ("By advertising directly to the consuming public, the manufacturer bypasses the traditional patient-physician relationship, thus lessening the role of the 'learned intermediary.'");

*Marcus*, 191 Misc. at 287 (reasoning that the learned intermediary defense is appropriate where manufacturers have made no representations to patients whatsoever).

To the extent the Court wishes to apply the learned intermediary defense to this case, the direct-to-consumer analyses conducted by the courts of New Jersey, West Virginia, and New Mexico are particularly relevant.  Here, however, Plaintiffs are not asking the Court to consider the soundness of the learned intermediary defense to actions based in tort.  Rather, Plaintiffs ask the Court to reject Defendant's invitation to apply this common law affirmative defense where it has no place — the consumer protection statutes of four states.

## VI.   LILLY DID NOT MEET ITS BURDEN TO ESTABLISH THE LEARNED INTERMEDIARY DEFENSE

Even if the Court were to apply the learned intermediary defense to Plaintiffs' consumer claims, the defense will not shield Lilly because Lilly cannot demonstrate that it adequately warned doctors.  *See, e.g., Walton v. Bayer Corp.*, 643 F.3d 994, 1000 (7th Cir. 2011) ("a manufacturer . . . must warn a customer of dangers known to it of which physicians have not been warned"); *Stevens*, 9 Cal.3d at 65; *Linnen*, 2000 WL 89379 at *4-6; *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 429 (Tenn.1994) ("[T]he learned intermediary doctrine does not shield a drug manufacturer from liability for inadequate warnings to the physician.").

Whether a warning to doctors is adequate, and thereby a manufacturer has discharged its duty to warn in the products liability context, is a question of fact inappropriate for summary judgment.  *In re Zyprexa Prods. Liab. Litig.*, 489 F.Supp.2d 230, 280 (E.D.N.Y. 2007) ("The adequacy of the [] warning label . . . is

a question of fact for the jury."); *Hornisher v. Eli Lilly & Co.*, No. 09-1453, 2010 WL 1957300, at *2 (N.D. Cal. May 14, 2010) ("triable issues remain as to whether the warnings concerning the use of Paxil were adequate or inadequate"); *Notmeyer*, 502 F.Supp.2d at 1060.  Courts are particularly reluctant to grant summary judgment where, as here, a defendant raises an "undisputed" fact that it provided warnings to doctors, and yet proffers no evidence that it actually did.  *Id.*

The inadequacy of Lilly's warnings to doctors was clear at oral argument when Lilly admitted that the information showing that 44% or more of Cymbalta users experienced at least one withdrawal symptom "was ***not*** part of the package sent to the doctors."  (SJ Tr. at 23:20-22 (emphasis added).)

In addition to misstating the risk of Cymbalta withdrawal, Lilly also misled doctors and consumers by failing to adequately disclose the types of withdrawal symptoms that they might experience, as well as by misrepresenting the duration and severity of the symptoms.  For example, Lilly posits that it adequately warned doctors of the severity of Cymbalta withdrawal because the Cymbalta label stated that "[d]uring marketing of other SSRIs and SNRIs (Serotonin and Norepinephrine Reuptake Inhibitors)," reports of some withdrawal symptoms "have been reported to be severe."  (*See, e.g.,* Declaration of Sharon Hoog, Dkt. 56 at ¶ 7, SJ Tr. at 13:12-17.)  However, the key word in this section is "other."  Lilly provides no information in this section about its own product (Cymbalta), and instead offered a vague comparison to other prescription drugs in the SSRI and SNRI class.  This is especially misleading because the most well-known example of this class, Prozac (also Lilly's product), does not commonly cause withdrawal because of its

23

extended half-life, and in fact Prozac may be taken to alleviate Cymbalta withdrawal.  (*See* Helgeson Decl., Dkt. 55, Ex. 11 at 75.)

Furthermore, Lilly's failure to disclose information relating to the severity of Cymbalta withdrawal was particularly misleading because Lilly's studies showed that 17.2% of Cymbalta users reported that their withdrawal symptoms were severe.  Yet Lilly never put that statistic on the Cymbalta label, either.  Nor did it ever tell doctors or consumers that the majority — 63.5% — of Cymbalta users reported that their Cymbalta withdrawal symptoms were moderate to severe. (Declaration of David M. Perahia, Dkt. 57, Ex. 1 at 11.)

"The learned-intermediary doctrine doesn't permit distributors to conceal a drug's adverse side effects from physicians, pharmacies, and consumers."  *Walton*, 643 F.3d at 1001.  Because Lilly never honestly represented the facts from its own study regarding the frequency, severity, or duration of Cymbalta withdrawal, the learned intermediary defense has absolutely no place in this case.

## VII.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be denied and Plaintiffs should be allowed to proceed with discovery.

DATED this 13th day of May, 2013.

**KELLER ROHRBACK L.L.P.**

*/s/ Michael D. Woerner*
Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com

24

Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384

Juli E. Farris, Esq. (CA Bar No. 141716)
jfarris@kellerrohrback.com
Sharon Hritz, Esq. (CA Bar No. 265105)
shritz@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496 / Fax:(805) 456-1497

Mark D. Samson, Esq., *admitted pro hac vice*
msamson@kellerrohrback.com
**KELLER ROHRBACK P.L.C.**
3101 N. Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088 / Fax: (602) 248-2822

Samuel S. Deskin, Esq.
sam@deskinlawfirm.com
**DESKIN LAW FIRM, PLC**
16944 Ventura Blvd, Office
Encino, CA 91316
Tel.:  (800) 709-8978 / Fax: (800) 709-8971

Harris L. Pogust, Esq.
hpogust@pbmattorneys.com
T. Matthew Leckman, Esq.
MLeckman@pbmattorneys.com
**POGUST BRASLOW MILLROOD LLC**
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel.:  (800) 897-8930 / Fax:  (610) 941-4245
***Counsel for Plaintiffs***

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Cate R. Brewer, hereby certify that on this 13th day of May, 2013, I caused true and correct copies of the foregoing:

1.   **Plaintiffs' Response to the Court's Order of May 1, 2013 Pertaining to Defendant's Motion for Summary Judgment;**

2.   **Declaration of Michael D. Woerner**

to be served on the below-listed counsel via the Court's CM/ECF website.

Clara J. Shin (CA Bar No. 214809)
cshin@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Tel: (415) 591-7058
Fax: (415) 955-6558

Phyllis A. Jones
pajones@cov.com
Mark H. Lynch
mlynch@cov.com
Colleen Kelly
ckelly@cov.com
Michael X. Imbroscio
mimbroscio@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Tel: 202-662-5868
Fax: 202-778-5868

*Attorneys for Defendant Eli Lilly and Company*

*/s/ Cate R. Brewer*
Cate R. Brewer, Legal Assistant