Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com
Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900 / Fax: (206) 623-3384

Juli E. Farris, Esq. (CA Bar No. 141716)
jfarris@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496 / Fax: (805) 456-1497

Mark D. Samson, Esq., *admitted pro hac vice*
msamson@kellerrohrback.com
**KELLER ROHRBACK P.L.C.**
3101 N. Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088 / Fax: (602) 248-2822

***Additional Counsel for Plaintiffs on following page***

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER L. SAAVEDRA, DR. MELISSA STRAFFORD, CAROL JACQUEZ, and DAVID MATTHEWS, JR., on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>Defendant. | **No. 2:12-CV-09366-SVW(MANX)** <u>**CLASS ACTION**</u><br><br>**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23(b)(3)**<br><br>**Date:  September 17, 2013**<br>**Time:  1:30 p.m.**<br>**Location:  Courtroom 6**<br>**Judge:  Hon. Stephen V. Wilson** |

Samuel S. Deskin, Esq.
sam@deskinlawfirm.com
DESKIN LAW FIRM, PLC
16944 Ventura Blvd
Encino, CA 91316
Tel.:  (800) 709-8978 / Fax: (800) 709-8971

Harris L. Pogust, Esq.
hpogust@pbmattorneys.com
T. Matthew Leckman, Esq.
MLeckman@pbmattorneys.com
POGUST BRASLOW MILLROOD LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel.:  (800) 897-8930 / Fax:  (610) 941-4245

*Additional Counsel for Plaintiffs*

**NOTICE OF MOTION**

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 17, 2013, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 6 of the United States District Court, Central District of California, Western District, located at 312 N. Spring Street, Los Angeles, California 90012, Plaintiffs will move the Court for a Class Certification Pursuant to Rule 23(b)(3).

The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Declaration of Michael D. Woerner; the Declarations of the Named Plaintiffs Jennifer L. Saavedra, Dr. Melissa Strafford, Carol Jacquez, and David Matthews, Jr.; the Declaration of Joseph Glenmullen, M.D.; the Declaration of Joel W. Hay, PhD; and the Declaration of William F. Kitzes, J.D., as well as the pleadings, records, and files in this action, and such other further evidence and argument as may be presented at the time of the hearing.

This motion is made following conference of counsel pursuant to L.R. 7-3, which took place on July 30, 2013.

DATED:  August 19, 2013

Respectfully submitted,

**KELLER ROHRBACK L.L.P.**

By:  \s\ Michael D. Woerner
Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
Juli E. Farris, Esq. (CA Bar No. 141716)
jfarris@kellerrohrback.com
Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com
Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384

# **Table of Contents**

I.   BACKGROUND .................................................................................1

II.  CLASS CERTIFICATION STANDARD.......................................2

III. CLASS DEFINITIONS ...................................................................2

IV.  ARGUMENT....................................................................................3

    A.   Plaintiffs' Proposed Class and Subclasses are
        Ascertainable ........................................................................3

    B.   Rule 23(a) Requirements:  Numerosity, Commonality,
        Typicality, and Adequacy Requirements Are Satisfied ....................4

        1.   *Numerosity*:  There are Hundreds of Thousands of
            Subclass Members....................................................................4

        2.   *Commonality*: Subclasses Share Common
            Questions of Law and Fact ....................................................4

        3.   *Typicality*:  Plaintiffs Are Typical of Subclass
            Members Because They Sustained the *Same* Injury
            Arising Out of the *Same* Course of Conduct ...........................5

        4.   *Adequacy*:  Plaintiffs and Counsel Are Adequate
            Because There Are No Conflicts and They Will
            Vigorously Prosecute the Case ...............................................6

    C.   Rule 23(b)(3) Requirements:  Predominance and
        Superiority Are Satisfied .......................................................7

        1.   *Predominance*:  Common Issues of Fact
            Predominate Over Individual Issues Because Lilly
            Made Common Material Omissions to the
            Subclasses Which Caused the Subclasses to
            Sustain Injuries......................................................................7

            a.   *All subclasses*:  Because the four states'
                laws do not require proof of reliance in this
                context, common issues of causation
                predominate over individual ones .................................8

            b.   *The Missouri, New York, and Massachusetts
                Consumer Subclasses*:  Common Issues of
                How Lilly's Deceptive Conduct Inflated the
                Value of Cymbalta Predominate Over
                Individual Issues of Causation....................................10

            c.   *The California Consumer Subclass*:
                Plaintiffs can establish causation because

i

Lilly's omissions were universal, long-term, and material ...........................................................13

    (i)    *Exposure*:  The California Consumer Subclass was exposed to common omissions regarding the frequency, severity, and duration of Cymbalta withdrawal ......................................................15

    (ii)    *Materiality*:  Lilly's omissions about Cymbalta withdrawal were material because reasonable consumers and physicians would attach importance to such information...............................18

    d.    *Subclass Damages*:  Using conjoint analysis, Plaintiffs will be able to ascertain how much consumers overpaid for their Cymbalta prescriptions / how many additional prescriptions were issued because of Lilly's unlawful conduct .........................................20

    2.    *Superiority*:  Class Actions are Superior to Other Available Methods of Adjudication, Because Absent Classwide Relief Consumer Rights Will Not Be Vindicated.............................................23

V.    CONCLUSION.............................................................24

# Table of Authorities

## **Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) .............................2, 7

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013)........................................................7

*Aspinall v. Philip Morris Companies, Inc.*,
   442 Mass. 381, 813 N.E.2d 476 (2004)......................................................9, 11

*Astiana v. Kashi Co.*,
   --- F.R.D. ---, No. 11-1967, 2013 WL 3943265 (S.D. Cal. July 30,
   2013) ................................................................................................................3

*Ballard v. Equifax Check Servs., Inc.*,
   186 F.R.D. 589 (E.D. Cal.1999) ......................................................................2

*Casavant v. Norwegian Cruise Line, Ltd.*,
   460 Mass. 500, 952 N.E.2d 908 (2011).........................................................11

*Casavant v. Norwegian Cruise Line, Ltd.*,
   76 Mass. App. Ct. 73, 919 N.E.2d 165 (Mass. App. Ct. 2009).....................11

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005) ..........................................................................18

*Charlebois v. Angels Baseball, LP*,
   No. 10-0853, 2011 WL 2610122 (C.D. Cal. June 30, 2011)...........................4

*Chavez v. Blue Sky Natural Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010)....................................................................13

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)...............................................20, 22

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................................................6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179, 180 L. Ed. 2d 24 (2011)........................................................8

*Falk v. General Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D.Cal. 2007)...........................................................20

*Grair v. GlaxoSmithKline, Inc.*,
   No. BC288536 (Cal. Super. Ct., L.A., Dec. 17, 2009)............................14, 15

*Guido v. L'Oreal, USA, Inc.*,
   Nos. 11-1067, 11-5465, 2013 WL 3353857 (C.D. Cal. July 1,
   2013) ..............................................................................................................23

iii

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .................................................... 2, 5, 7, 23

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ...........................................................5

*Herrera v. LCS Fin. Servs. Corp.,*
    274 F.R.D. 666 (N.D. Cal. 2011).....................................................24

*Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.,*
    445 Mass. 790, 840 N.E.2d 526 (2006) ...........................................10

*Hunt v. Check Recovery Sys., Inc.,*
    241 F.R.D. 505 (N.D. Cal. 2007).......................................................2

*In re Baycol Products Litig.,*
    218 F.R.D. 197 (D. Minn. 2003) .....................................................10

*In re Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.,*
    No. MDL 05-1699, 2007 WL 2028408 (N.D. Cal. July 10, 2007) .................15

*In re Budeprion XL Mktg. & Sales Litig.,*
    No. 09-md-2107, 2012 WL 2527021 (E.D. Pa. 2012) ......................................12

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.,*
    751 F. Supp. 2d 277 (D. Mass. 2010)...............................................11

*In re Live Concert Antitrust Litig.,*
    247 F.R.D. 98 (C.D. Cal. 2007)......................................................24

*In re Lupron Mktg. & Sales Practices Litig.,*
    345 F. Supp. 2d 135 (D. Mass. 2004)..............................................13

*In re Paxil Litig.,*
    212 F.R.D. 539 (C.D. Cal. 2003) ....................................................10

*In re Steroid Hormone Prod. Cases,*
    181 Cal. App. 4th 145, 104 Cal. Rptr. 3d 329 (Cal. Ct. App. 2010)......9, 19, 20

*In re Tobacco II Cases,*
    207 P.3d 20, 46 Cal. 4th 298 (Cal. 2009) .....................................13, 16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*
    *Practices, & Prods. Liab. Litig.,*
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ...........................................20

*In re Vioxx Prods. Liability Litig.,*
    No. 05-md-1657 (E.D. La. Aug. 2, 2013)..........................................12

*Keegan v. Am. Honda Motor Co., Inc.,*
    284 F.R.D. 504 (C.D. Cal. 2012)................................................16, 18

*Klay v. Humana, Inc.,*
    382 F.3d 1241 (11th Cir. 2004) ......................................................24

iv

*Kohl v. Silver Lake Motors, Inc.*,
  369 Mass. 795, 343 N.E.2d 375 (1976) ........................................................10

*Konik v. Time Warner Cable*,
  No. 07-0763, 2010 WL 8471923 (C.D. Cal. Nov. 24, 2010) ........................13

*Krueger v. Wyeth, Inc.*,
  No. 03-2496, 2011 WL 8971449 (S.D. Cal. Mar. 30, 2011) .................. passim

*Mass. Mut. Life Ins. Co. v. Superior Court*,
  97 Cal. App. 4th 1282, 119 Cal. Rptr. 2d 190 (Cal. Ct. App. 2002) ..........13, 19

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................ passim

*McAdams v. Monier, Inc.*,
  182 Cal. App. 4th 174, 105 Cal. Rptr. 3d 704 (Cal. Ct. App. 2010)13, 15, 16, 18

*Microsoft Corp. v. Motorola, Inc.*,
  904 F. Supp. 2d 1109 (W.D. Wash. 2012) ..................................................22

*Morelock Enters., Inc. v. Weyerhaeuser Co.*,
  No. 04-0583, 2004 WL 2997526 (D. Or. Dec. 16, 2004) ............................24

*Nat'l Fed'n of Blind v. Target Corp.*,
  582 F. Supp. 2d 1185 (N.D. Cal. 2007) ........................................................4

*O'Connor v. Boeing N. Am., Inc.*,
  184 F.R.D. 311 (C.D. Cal. 1998) ....................................................................3

*Oracle Am., Inc. v. Google Inc.*,
  No. 10-3561, 2012 WL 850705 (N.D. Cal. Mar. 13, 2012) ..........................22

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20, 647 N.E.2d 741 (N.Y. 1995) ................................................10

*Peel v. BrooksAmerica Mortg. Corp.*,
  No. 11-0079, 2012 WL 3808591 (C.D. Cal. Aug. 30, 2012) ..........................4

*Plubell v. Merck & Co.*,
  289 S.W.3d 707 (Mo. Ct. App. 2009) ....................................... 9, 10, 11, 12

*Schoenlein v. Routt Homes, Inc.*,
  260 S.W.3d 852 (Mo. Ct. App. 2008) ..........................................................11

*Small v. Lorillard Tobacco Co., Inc.*,
  94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999).............................................9, 11

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ..................................................................13, 19

*Sweet v. Pfizer*,
  232 F.R.D. 360 (C.D. Cal. 2005)..................................................................10

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives &*
    *Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002)...........................................................3

*TV Interactive Data Corp. v. Sony Corp.*,
    No. 10-0475, 2013 WL 942473 (N.D. Cal. Mar. 11, 2013) ...........22

*Vasquez v. Superior Court*,
    484 P.2d 964, 94 Cal. Rptr. 796 (Cal. 1971) ...............................19

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).....................................5

*Westways World Travel, Inc. v. AMR Corp.*,
    218 F.R.D. 223 (C.D. Cal. 2003)......................................................4

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir.2010) .........................................................18

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .....................................................2, 23

**<u>Federal Rules</u>**

Fed R. Civ. P. 23(g)(1)(A) .....................................................................7

Fed. R. Civ. P. 12(a)(1)(A) ...................................................................1

Fed. R. Civ. P. 16 ..................................................................................1

Fed. R. Civ. P. 23(a)(1) .........................................................................4

Fed. R. Civ. P. 23(a)(2) .........................................................................5

Fed. R. Civ. P. 23(a)(3) .........................................................................5

Fed. R. Civ. P. 23(a)(4) .........................................................................6

Fed. R. Civ. P. 23(b)(3)......................................................................1, 2

Fed. R. Civ. P. 23(b)(3)(D).................................................................24

Fed. R. Civ. P. 23(c)(5)..........................................................................2

Fed. R. Civ. P. 26 ..................................................................................1

**<u>State Rules</u>**

Cal. Bus. & Prof. Code §§ 17200 ........................................................8

Cal. Bus. & Prof. Code §§ 17500 ........................................................8

Cal. Civ. Code §§ 1770..........................................................................8

Mass. Gen. Laws Ann. Ch. 93A, § 9 ...................................................8, 22

Mo. Rev. Stat. §§ 407.020 ...............................................................8, 10

Mo. Rev. Stat. §§ 407.025 ......................................................................8

N.Y. Gen. Bus. Law § 349...........................................................8, 10, 23

**Other Authorities**

Arnold, Matthew,
  *MM&M All-Stars Large Pharma Marketing Team of the Year:
  Cymbalta (Eli Lilly)*,
  Medical Marketing & Media, Jan. 1, 2008 .......................................17

Davidson, Cathy N.,
  *Now You See It, How the Brain Science of Attention Will
  Transform the Way We Live, Work, and Learn*, 2011 ......................17

Long-Standing DTC National Advertising Awards Honor Diverse
  Group of DTC Marketing Campaigns, PRWeb (Mar. 1, 2013) .......17

Staton, Tracy,
  *Lilly takes the lead in DTC ad spending, surpassing Pfizer*,
  FiercePharma (Aug. 16, 2012).........................................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

"Half a truth is often a great lie."  That statement is as true now as when Benjamin Franklin first uttered it.  In marketing and advertising its drug Cymbalta, Lilly concealed that out of all the people who take and then cease taking the drug, at least 44% experience withdrawal symptoms, including but not limited to dizziness, nausea, headache, fatigue, "brain zaps," vomiting, irritability, nightmares, and insomnia.  By concealing this information, Lilly was able to sell its blockbuster drug for a premium.  This action seeks to vindicate the rights of those consumers who purchased Cymbalta without knowing the whole story, and to hold Lilly accountable for omitting important information in its marketing and advertising of Cymbalta.  In this motion, Plaintiffs seek to certify four consumer state subclasses in California, Massachusetts, Missouri, and New York pursuant to Rule 23(b)(3).

## I.    BACKGROUND

On January 10, 2013, Plaintiffs filed their corrected First Amended Complaint ("FAC"), bringing claims on behalf of themselves and all similarly situated individuals under the consumer protection laws of four different states.  While Lilly filed Motions to Dismiss and for Summary Judgment, it never served an Answer or initial disclosures, and neither party has yet had discovery.  *See* Fed. R. Civ. P. 12(a)(1)(A), 16, 26.  On February 26, 2013, the Court denied Lilly's Motion to Dismiss with the exception of Plaintiffs' claims for injunctive and declaratory relief.  (Dkt. 52.)  On June 13, 2013, the Court denied Lilly's Motion for Summary Judgment and directed Plaintiffs to brief class certification.  (Dkt. 72.)  For the full procedural history, Plaintiffs refer to their briefing of May 13, 2013.  (Dkt. 66 at 2-4.)[1]

---

[1] In accordance with the Court's June 13th Order, Plaintiffs follow the Court's instruction to "assume that [they] will be able to prevail on their contention that the warnings given to physicians were inadequate as alleged in the FAC."  (Dkt. 72 at 8.)

## II.   CLASS CERTIFICATION STANDARD

Rule 23 governs class certification.  A party seeking to certify a class or subclass must demonstrate that it has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001); *see* Fed. R. Civ. P. 23(c)(5).  Rule 23(a) provides that a putative class must have sufficient numerosity, commonality, typicality, and adequacy before being certified.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)).  Here, Plaintiffs seek to certify classes of California, Massachusetts, Missouri, and New York consumers defined *infra* at Part III pursuant to Rule 23(b)(3), which requires a court to find that common questions of law or fact predominate over individual questions and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

As a general rule, "[c]lass action certifications to encourage compliance with consumer protection laws are 'desirable and should be encouraged.'"  *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007) (quoting *Ballard v. Equifax Check Servs., Inc.,* 186 F.R.D. 589, 600 (E.D. Cal.1999)).

## III.   CLASS DEFINITIONS

Plaintiffs move to certify the following consumer class and subclasses:

All natural persons within the Commonwealth of Massachusetts and the States of Missouri, New York, and California who purchased and/or paid for Cymbalta manufactured, distributed, and/or marketed by Lilly from Cymbalta's August 2004 launch until the present, divided into the following four subclasses:

(1) A California UCL/FAL/CLRA class of consumers who purchased and/or paid for Cymbalta in California between August 2004 and the present;

(2) A Missouri Merchandising Practices Act class of consumers who purchased and/or paid for Cymbalta in Missouri between August 2004 and the present;

(3) A New York General Business Law §§ 349-350 class of consumers who purchased and/or paid for Cymbalta in New York between August 2004 and the present;

(4) A Massachusetts General Law Chapter 93A class of consumers who purchased and/or paid for Cymbalta in Massachusetts between August 2004 and the present.

## IV.  ARGUMENT

**A.**   Plaintiffs' Proposed Class and Subclasses are Ascertainable

Courts have held that an implied prerequisite to class certification is that a class must be adequately defined and clearly ascertainable.  *See, e.g.*, *Astiana v. Kashi Co.*, --- F.R.D. ---, No. 11-1967, 2013 WL 3943265, at *3 (S.D. Cal. July 30, 2013); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002).  A class is sufficiently defined and ascertainable if it "is administratively feasible for the court to ascertain whether an individual is a member."  *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  Here, Plaintiffs' proposed class and subclasses are defined based on an objective criterion, the purchase of Cymbalta.  Records of purchase may be obtained primarily through pharmacy records; records could also be obtained through health insurers or through consumers' medical records and payment receipts.  "Because a review of the records and an application of objective criteria" will determine membership in the class, Plaintiffs' proposed class and

3

subclasses are sufficiently ascertainable. *Peel v. BrooksAmerica Mortg. Corp.*, No. 11-0079, 2012 WL 3808591, at *3 (C.D. Cal. Aug. 30, 2012).

**B.    Rule 23(a) Requirements:  Numerosity, Commonality, Typicality, and Adequacy Requirements Are Satisfied**

**1.    *Numerosity*:  There are Hundreds of Thousands of Subclass Members**

Rule 23(a)(1) requires there be sufficient class members that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  That requirement is satisfied here.  It would be entirely impracticable to join all members of the proposed classes, which included hundreds of thousands of members.  While Plaintiffs have not yet obtained any discovery in this case, Lilly itself published advertisements in 2008 boasting that nine million consumers had taken Cymbalta.  (*See* Declaration of Michael D. Woerner ("Woerner Decl."), Ex. 3)  Assuming that Lilly sold Cymbalta at roughly equal rates from state to state, extrapolation from 2008 Census data yields an estimate of 1,087,977 consumers of Cymbalta in California, 576,902 consumers of Cymbalta in New York, 192,336 consumers of Cymbalta in Massachusetts, and 174,980 consumers of Cymbalta in Missouri.  (*Id.*, Ex. 4)  Statistical census data is routinely used to substantiate numerosity.  *Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1199 (N.D. Cal. 2007).  While these numbers are only an approximation in the absence of discovery, "general knowledge and common sense" indicate that the numerosity requirement is met. *Charlebois v. Angels Baseball, LP*, No. 10-0853, 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011); *accord Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 233-34 (C.D. Cal. 2003) ("Plaintiffs are not required to quantify with precision the number of class members[.] ... Plaintiffs may rely on reasonable inferences drawn from the available facts in estimating the size of the class.").

**2.    *Commonality*: Subclasses Share Common Questions of Law and Fact**

Rule 23(a)(2) requires that there be "questions of law or fact common to the

class." Fed. R. Civ. P. 23(a)(2).  As articulated by the Supreme Court, a class

claim "must depend upon a common contention . . . of such a nature that it is

capable of classwide resolution—which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims

in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed.

2d 374 (2011).  Specifically, the Court explained, "What matters to class

certification ... is not the raising of common 'questions'—even in droves—but,

rather the capacity of a classwide proceeding to generate common *answers* apt to

drive the resolution of the litigation." *Id*. (emphasis in original).

Here, there are common answers: in each of the four states a violation of the

relevant consumer protection act is "governed by a 'reasonable consumer' test."

(Order on Motion To Dismiss, Dkt. 52, 12.)  Because an objective standard

governs, the common question of whether Lilly violated consumer protection law

can be answered by common proof.  Moreover, as discussed below, there are

common issues relating to causation and damages that are likewise subject to

common proof.  The commonality requirement is satisfied.

> **3.**    ***Typicality*: Plaintiffs Are Typical of Subclass Members Because They Sustained the *Same* Injury Arising Out of the *Same* Course of Conduct**

The typicality inquiry under Rule 23(a)(3) requires Plaintiff to establish that

"the claims or defenses of the representative parties are typical of the claims or

defenses of the class." Fed. R. Civ. P. 23(a)(3).  The representative claims do not

need to be "substantially identical" to those of absent class members, just

"reasonably co-extensive." *Hanlon*, 150 F.3d at 1020.  "The test of typicality is

whether other members have the same or similar injury, whether the action is

based on conduct which is not unique to the named plaintiffs, and whether other

class members have been injured by the same course of conduct." *Hanon v.

Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and

citation omitted).

Typicality is satisfied because this case is about a universal omission.  No one, neither consumers nor doctors, received the material information that the risk of Cymbalta withdrawal was at least as high as 44%.[2]  Lilly's consumer advertising campaigns did not provide any information about withdrawal symptoms.  (*See, e.g.*, Declaration of Jennifer L. Saavedra ("Saavedra Decl."), Ex. B; Declaration of Carol Jacquez ("Jacquez Decl."), Ex. A.)  The Cymbalta label itself, which is accessible at www.Cymbalta.com, states only that withdrawal symptoms occur at a rate of "1% or greater."  (*See* Dkt. 56, Hoog Decl., ¶ 13.)

Because of this universal omission, the Plaintiffs and all members of the proposed classes sustained the *same* injury: they each paid for a drug whose value was inflated by the omission of material information about the true frequency, severity, and duration of withdrawal.  (*See* Declaration of David Matthews, Jr. ("Matthews Decl.") at ¶¶ 5-8; Saavedra Decl. at ¶¶ 5-8; Declaration of Dr. Melissa Strafford ("Strafford Decl.") at ¶¶ 5-8; Jacquez Decl. at ¶¶ 5-8.)  Accordingly, Plaintiffs share an injury with the putative subclasses "which [are] not unique to" them and which occurred out of the same "course of [deceptive] conduct[.]"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).  The typicality requirement is met.

### 4.   *Adequacy*:  Plaintiffs and Counsel Are Adequate Because There Are No Conflicts and They Will Vigorously Prosecute the Case

The adequacy requirement requires that the "representative parties . . . fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members

---

[2] Other clinical trials funded by Lilly place the risk at 50.8%, *see* Dkt. 57, Perahia Decl., Ex. 1 at 12, and Cymbalta's pharmacokinetic properties suggest that the risk could be as high as 78%.  (*See* Declaration of Dr. Joseph Glenmullen ("Glenmullen Decl.") at ¶ 9.)

and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, there are no conflicts of interest between the various class representatives and the absent class members, and Plaintiffs are active participants in this lawsuit. (*See* Decls. of Matthews, Saavedra, Strafford, and Jacquez at ¶¶ 11-17.) Moreover, counsel for Plaintiffs, Keller Rohrback, LLP, are well versed in litigating complex pharmaceutical cases, including class actions, and have demonstrated competence and a willingness to vigorously prosecute this matter on behalf the putative classes. *See* Fed R. Civ. P. 23(g)(1)(A); Woerner Decl., Ex. 5. The adequacy requirement is satisfied.

## C.  Rule 23(b)(3) Requirements:  Predominance and Superiority Are Satisfied

### 1.  *Predominance*:  Common Issues of Fact Predominate Over Individual Issues Because Lilly Made Common Material Omissions to the Subclasses Which Caused the Subclasses to Sustain Injuries

Predominance under Rule 23(b)(3) exists when "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . ." *Hanlon,* 150 F.3d at 1022. "Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' What the rule does require is that common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196, 185 L. Ed. 2d 308 (2013) (citing dissent at 1210 and Fed. R. Civ. P. 23(b)(3)) (emphasis and alterations in original). Here, common questions governed by objective standards under the consumer protection laws of Plaintiffs' states represent a significant aspect of the case and predominate over any individual issues. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the

antitrust laws.").

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184, 180 L. Ed. 2d 24 (2011). There are essentially three basic elements to a consumer protection claim: (1) a statute violation, (2) some ascertainable form of injury or loss, and (3) a causal connection between the violation and that injury or loss. *See* Mo. Rev. Stat. §§ 407.020 (1), 407.025 (MPA); Cal. Civ. Code §§ 1770, 1780(a) (CLRA); Cal. Bus. & Prof. Code §§ 17200, 17203, 17204, 17500 (UCL and FAL); Mass. Gen. Laws Ann. Ch. 93A, § 9 (Ch. 93A); N.Y. Gen. Bus. Law §§ 349(a)(h), 350 (NYCPA). Since the first element of each state's consumer protection statute focuses on the defendant's conduct and whether that conduct violated the law, it is necessarily subject to common proof and individual questions are not at issue.[3] Accordingly, the predominance inquiry for these state consumer subclasses focuses on the elements of *causation* and *damages*.

     a.     ***All subclasses*: Because the four states' laws do not require proof of reliance in this context, common issues of causation predominate over individual ones**

The Court's June 13, 2013 Order expressed concerns that individual causation inquiries might make it difficult to certify a class. (*See* Order, Dkt. 72 at 6-8.) The Court suggested that it would be impossible to determine on a classwide basis "whether: 1) if the individual plaintiff had known about the severity, duration, and extent of Cymbalta withdrawal, would she or he still have taken the medication?; 2) if the individual plaintiff's physician had known about the relevant side-effects, would the physician still have recommended and prescribed Cymbalta?" (*Id.* at 7.)

Respectfully, under the four states' consumer protection laws, these

---

[3] Indeed, this common issue is the subject of Plaintiff's Motion for Class Certification Pursuant to Rule 23(c)(4), filed herewith.

questions are not necessary or relevant.  (*See* Declaration of William F. Kitzes ("Kitzes Decl.") at ¶16.)  Each person of the class was injured because Lilly's omission of information about Cymbalta caused each to spend excess money to purchase Cymbalta.  That some members of the subclasses would have still purchased Cymbalta if they had known the truth about Cymbalta withdrawal is not material in this context, because the purchase *itself* is not the injury. Rather, the injury is the economic loss incurred by consumers who overpaid for a product that was represented as having characteristics it did not.  Under the consumer protection statutes of the four states, that kind of injury does not require proof that each plaintiff would not have taken Cymbalta if he or she had known the truth.  *See In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 156, 104 Cal. Rptr. 3d 329, 338 (Cal. Ct. App. 2010) (under California consumer protection law, class certification proper "even if [defendant] might be able to show that some class members would have bought the products even if they had known"); *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 395-97, 813 N.E.2d 476, 488 (2004) (under Ch. 93A, individual inquiries into class member motivation irrelevant when misrepresentations were material); *Plubell v. Merck & Co.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009) ("[T]he class members are not individually required to show what they would or would not have done had the product not been misrepresented and the risks known."); *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 55, 720 N.E.2d 892, 897 (N.Y. 1999) (individual "justifiable reliance" not required); *see also, e.g.*, *Krueger v. Wyeth, Inc.*, No. 03-2496, 2011 WL 8971449, at *9 (S.D. Cal. Mar. 30, 2011) (rejecting drug manufacturer's argument that some consumers may have still purchased the drug knowing the truth and certifying a class of consumers).

Because the remedy for Cymbalta's inflated value is a partial refund, this case is different from a products liability failure-to-warn case, which seeks

damages for personal injury.  The Court's citations to *In re Baycol Products Litig.*, 218 F.R.D. 197 (D. Minn. 2003), *Sweet v. Pfizer*, 232 F.R.D. 360, 372 (C.D. Cal. 2005), and *In re Paxil Litig.*, 212 F.R.D. 539 (C.D. Cal. 2003) illustrate this point. Those cases were brought as class actions for *personal injuries* arising from failure-to-warn claims.  Those courts, therefore, could not find predominance because each patient took different dosages, at different times, and concomitantly with other drugs, and there was no way to show how the defendant's failure to warn caused the specific personal injuries of each class member.  *See In re Baycol*, 218 F.R.D. at 205; *Sweet*, 232 F.R.D. at 369; *In re Paxil*, 212 F.R.D. at 548.  In contrast, this case is based on consumer law, so the injury is one of deception and economic loss.  As such, it is an injury the Subclass members uniformly share, regardless of whether some of the injured Subclass members would still purchase the drug had Lilly not omitted information regarding Cymbalta's withdrawal risk.

          **b.**    ***The Missouri, New York, and Massachusetts Consumer Subclasses*:  Common Issues of How Lilly's Deceptive Conduct Inflated the Value of Cymbalta Predominate Over Individual Issues of Causation**

At its heart, each of the consumer protection acts of Missouri, Massachusetts and New York prohibits deceptive acts in the sales and marketing of products to consumers in their state.  *See* Mo. Rev. Stat. §§ 407.020 (1), 407.025; Mass. Gen. Laws Ann. Ch. 93A, § 9; N.Y. Gen. Bus. Law § 349(a).  Under each statute, a plaintiff must show that the defendant's deceptive conduct caused a loss.  *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 647 N.E.2d 741, 744 (N.Y. 1995); *Plubell*, 289 S.W.3d at 714 ("a plaintiff's *loss* should be a result of the defendant's unlawful practice, but the statute does not require that the *purchase* be caused by the unlawful practice."); *Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 797, 840 N.E.2d 526, 532 (2006) (quoting *Kohl v. Silver Lake Motors, Inc.*, 369 Mass. 795, 800-801, 343 N.E.2d 375 (1976)) ("[T]here must be a 'causal connection between

the seller's deception and the buyer's loss.'");[4] *see also In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 751 F. Supp. 2d 277, 295 (D. Mass. 2010) (applying *Plubell* to Missouri MPA claim).

The injury or ascertainable loss at issue here is the additional money spent by consumers on Cymbalta because Lilly omitted the frequency, severity, and duration of Cymbalta withdrawal. Had this material information been disclosed, consumers and physicians would have valued Cymbalta much less. *See Small*, 720 N.E.2d at 898 n.5 (noting that plaintiff may have a "claim for the higher price the consumer paid for the product as a result of the misrepresentation[.]"); *Plubell*, 289 S.W.3d at 715 (endorsing benefit-of-the-bargain rule, whereby a loss is determined by comparing "the actual value of the item to the value of the item if it had been as represented at the time of the transaction.") (citing *Schoenlein v. Routt Homes, Inc.*, 260 S.W.3d 852, 854 (Mo. Ct. App. 2008)); *Aspinall*, 813 N.E.2d at 485 n. 17 (describing plaintiffs' economic harm as "the difference in market value between [product] that purchasers actually received and [product] as represented"). Thus, the central question for the Missouri, New York, and Massachusetts subclasses is not whether Lilly's conduct caused each individual consumer to purchase Cymbalta, but rather, whether Lilly's conduct in depriving consumers of material information about Cymbalta withdrawal resulted in a financial loss to consumers. How much consumers overpaid for Cymbalta because of Lilly's deception is discussed at length in Section II(A)(2) below. (*See also* Declaration of Dr. Joel W. Hay ("Hay Decl.") at ¶¶ 20-25 (explaining how conjoint analysis can be used to ascertain the monetary value of omitted risk information).) Thus, with regard to causation and injury, common issues predominate because causation for the Missouri, New York, and Massachusetts Subclass members is established by

---

[4] In the context of an omission in Massachusetts, "[c]ausation can also be established by determining whether the nondisclosure was of a material fact." *Casavant v. Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 77, 919 N.E.2d 165, 169 (Mass. App. Ct. 2009) *aff'd*, 460 Mass. 500, 952 N.E.2d 908 (2011).

ascertaining how Lilly's deceptive conduct caused an inflation of Cymbalta's value.

Indeed, other courts have concluded that common issues predominate in consumer class actions involving prescription drugs. In *Plubell*, for example, the Missouri Court of Appeals upheld class certification on behalf of those who purchased the drug Vioxx, reasoning that "the central issue in plaintiffs' suit is whether Merck violated the MMPA by failing to disclose and concealing Vioxx's safety risks. Because that issue—the legality of Merck's conduct—is common to all the Missouri class members, and because that issue is at the core of the case, the court did not abuse its discretion in finding the predominance requirement satisfied." *Plubell*, 289 S.W.3d at 713.[5]

In its failed appeal, Merck argued that, since each individual class member was exposed to varying misrepresentations about Vioxx, individual issues of what unlawful conduct each class member was exposed to prevented a finding of predominance. The *Plubell* Court rejected the argument, stating that, "[b]ecause Plaintiffs alleged Merck misrepresented Vioxx throughout the entire class period, individualized evidence as to the company's representation at the time of each class member's purchase will not be required." *Id.* at 714. The *Plubell* Court's conclusions were echoed by the Eastern District of Louisiana in the certification of a national settlement class of Vioxx consumers based on the same claims (excluding Missouri consumers covered by the *Plubell* litigation). *See* Order Approving Preliminary Settlement *In re Vioxx Prods. Liability Litig.*, No. 05-md-1657 (E.D. La. Aug. 2, 2013) (J. Fallon) (Woerner Decl., Ex. 6). *See also In re Budeprion XL Mktg. & Sales Litig.*, No. 09-md-2107, 2012 WL 2527021 (E.D. Pa. 2012) (certifying a nationwide settlement class regarding claims of

---

[5] Missouri's Rule of Civil Procedure governing class actions is similar in all material respects to Federal Rule 23. *Compare* Mo. R. Civ. P. 52.08 *and* Fed. R. Civ. P. 23.

misrepresentation and omission of risks of antidepressant); *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135 (D. Mass. 2004) (certifying a nationwide settlement class of consumers and third-party payors regarding claims of deceptive practices related to price of prescription drug).

> ### c. *The California Consumer Subclass*: **Plaintiffs can establish causation because Lilly's omissions were universal, long-term, and material**

Unlike the MPA, NYCPA, and Ch. 93A, California's CLRA, UCL, and FAL require reliance. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011); *In re Tobacco II Cases*, 207 P.3d 20, 39, 46 Cal. 4th 298 (Cal. 2009). However, under California law, Plaintiffs can establish classwide reliance through a showing of exposure and materiality. *See Stearns*, 655 F.3d at 1022. If the court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class. *Id.*; *see also Tobacco II*, 207 P.3d at 39 (same). "[T]he causation required by the [CLRA] does not make plaintiffs' claims unsuitable for class treatment" because "[c]ausation as to each class member is commonly proved more likely than not by materiality." *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292, 119 Cal. Rptr. 2d 190 (Cal. Ct. App. 2002)). This rule also applies to material omissions. *Stearns*, 655 F.3d at 1022; *see McAdams v. Monier, Inc.,* 182 Cal. App. 4th 174, 184, 105 Cal. Rptr. 3d 704, 711 (Cal. Ct. App. 2010) (defendant's failure to disclose information which "would have been material to any reasonable person" warranted a presumption of reliance). Thus, reliance is presumed for the putative class if the plaintiff can demonstrate (a) that the putative class was exposed to the misrepresentations or omissions,[6] and (b) the misrepresentations or omissions were material.

---

[6] This issue of class exposure is often discussed as an issue of typicality as well. *Compare Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012) (discussing exposure to misleading statements under predominance) *with Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) *and Konik v. Time Warner Cable*, No. 07-0763, 2010 WL 8471923 (C.D. Cal. Nov. 24, 2010) (J. Wilson) (discussing exposure to misleading statements as a

This Court should follow the example set by *Grair v. GlaxoSmithKline*, in which a California Superior Court Judge certified a California Consumer Class that is nearly identical to this case. *See* Minute Order, *Grair v. GlaxoSmithKline, Inc.*, No. BC288536 (Cal. Super. Ct., L.A., Dec. 17, 2009) (J. Lichtman) (Woerner Decl., Ex. 7.) In *Grair*, the plaintiff brought a class action against drug manufacturer GlaxoSmithKine, Inc. ("GSK") for misrepresenting the frequency and severity of withdrawal symptoms associated with the antidepressant Paxil. *Id.* at 1-2. In evaluating whether the plaintiff could certify a California consumer class, the *Grair* court stated that "[i]n the case at bar, the gravamen of the action is the alleged systematic and deceptive marketing campaign promoting Paxil as non-habit forming. The merits-based question at trial will be whether defendant's advertising campaign was likely to deceive the proposed class." *Id.* at 6. The court then determined that since the same omission about Paxil withdrawal was directed to all consumers in California, common issues of GSK's conduct predominated over any individual issues. *Id.* The Court further explained that "Plaintiff has demonstrated, for purposes of certification, that GSK made uniform representations to the class as a whole including learned intermediaries that Paxil was non-habit forming or non addictive; and that GSK omitted Paxil's risks and unique frequency and severity of symptoms on withdrawal." *Id.* at 8. This act of uniformly misrepresenting Paxil's frequency and severity of withdrawal was sufficient to certify a California consumer class. With nearly identical facts here—that Lilly uniformly misrepresented the frequency, severity, and duration of Cymbalta withdrawal to consumers and physicians in California—certification of the California subclass is also appropriate.

Similarly, in *Krueger*, the Southern District of California certified a class of

typicality issue). However, regardless of whether the Court examines the issue of class exposure through the lens of typicality or predominance, the result is the same—Plaintiffs were exposed to the same deceptive conduct as the California Consumer Subclass.

consumers who had purchased prescription hormone replacement therapy products, finding that a reasonable consumer contemplating purchase of a prescription drug would attach importance to undisclosed health risks of the drug, that Wyeth's failure to disclose was the same for all class members, and, accordingly, materiality was subject to common proof.  *Krueger,* 2011 WL 8971449 at *10.

As in *Grair* and *Krueger*, Plaintiffs can demonstrate both the exposure and materiality of Lilly's omissions, and are therefore entitled to a presumption of reliance as to the class.

> **(i)    Exposure:  The California Consumer Subclass was exposed to common omissions regarding the frequency, severity, and duration of Cymbalta withdrawal**

By omitting the actual frequency, severity, and duration of Cymbalta withdrawal in all of its communications with consumers and physicians, Lilly exposed every consumer and every physician to the *same* material omission.[7]

*McAdams*, 105 Cal. Rptr. 3d 704, is instructive.  There, plaintiffs brought consumer protection claims against a roof tile manufacturer who "failed to disclose" that the defendant's roof tiles degraded long before the end of their warranted lifespan.  *Id.* at 707.  The trial court denied class certification, reasoning that each individual class member would have to prove reliance on a particular representation.  *Id.* at 708.  The California Court of Appeal reversed, because "properly viewed" the misrepresentation did not "encompass an array of varying transactions and misrepresentations, but a single failure to disclose a particular

---

[7] Every putative subclass member was exposed to Lilly's universal *omissions* regarding Cymbalta withdrawal—a fact that by itself means that common questions of fact predominate in this action. Independently of that fact, however, every putative subclass member was exposed to Lilly's affirmative *misrepresentations* on Cymbalta's drug label as well.  Lilly's uniform dissemination of the misrepresentations on the Cymbalta drug label to physicians indirectly exposed every consumer to those misrepresentations.  *See In re Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.*, No. MDL 05-1699, 2007 WL 2028408, at *3 (N.D. Cal. July 10, 2007) ("[A] consumer may suffer actual damages from deceptive advertising if the consumer purchased a product as a result of the advertisements' deception of another.")

known fact." *Id*. at 712.  Thus, regardless of which representation class members had been exposed to, each had been exposed to the same omission—"that single, specific failure to disclose." *Id*.  Here, as in *McAdams*, individual questions of causation do not arise, since each class member was subject to the *same* failure to disclose the *same* facts about Cymbalta's withdrawal symptoms.

Because of Lilly's "across-the-board failure to disclose," this case also parallels *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 529, 533  (C.D. Cal. 2012).  In *Keegan*, the plaintiffs alleged violations of the UCL and CLRA based on failure to disclose a material defect in defendant's vehicles.  The court certified a class of consumers divided into subclasses of California, New York, and Florida purchasers, based on the consumer protection statutes of these states.  *Id*. at 552.  In finding predominance with respect to the CLRA claim, the *Keegan* court stated, "Defendants allegedly provided the same information to the entire class, i.e., *no information*. . . As long as plaintiffs can prove that this omission was material, therefore, they will have met their burden of proving causation as to the entire class." *Id*. at 531 (emphasis added).  Here, as in *Keegan*, Lilly provided *no information* regarding the *actual* frequency, severity, and duration of Cymbalta withdrawal.  (*See* Decls. of Saavedra, Jacquez at ¶¶ 6-7.)

In *Mazza*, by contrast, the Ninth Circuit vacated the district court's certification of a class of consumers because the class included persons who had *not* been exposed to the defendant's allegedly misleading representations, and therefore, the court could not presume classwide reliance under the CLRA.  666 F.3d at 596.  The *Mazza* court distinguished *Tobacco II* based on the duration and extent of Honda's advertising campaign, stating that "Honda's product brochures and TV commercials fall short of the 'extensive and long-term [fraudulent] advertising campaign' at issue in *Tobacco II*, and this difference is meaningful." *Id*. (citing *Tobacco II*, 207 P.3d 20).  Honda only conducted mass advertising

16

(television and magazine ads) for the particular product feature at issue, a Collision Mitigation Braking System, between November 2005 to September 2006.  *Id*. at 586.  While Honda continued to conduct "smaller-scale marketing efforts," *id*. at 587, *Mazza* held that "the small scale of the advertising campaign does not support a presumption of reliance" for a nationwide class.  *Id*. at 594.

In contrast, since Cymbalta's launch almost a decade ago, Lilly has conducted a massive marketing campaign for the drug.  *See* Kitzes Decl. at ¶¶13, 15.  In fact, Lilly's Cymbalta marketing team was named the "Large Pharma Marketing Team of the Year" in 2007 based on its ad campaign which generated a "virtually unheard of" six-to-one return on investment.[8]  This ad campaign has been described as "the single most successful prescription drug campaign on television, the gold standard in the competitive direct-to-consumer marketing industry."[9]  By 2012, Lilly surpassed all other pharmaceutical manufacturers to become the single biggest spender on direct-to-consumer advertising.[10]  At the 2013 DTC National Advertising Awards, "a celebration of the creativity and effectiveness of DTC consumer promotion," Lilly's Cymbalta campaign was a finalist in the Best Digital Media Campaign, Best Website, Best Branded Print Campaign, Best Branded TV Campaign, and Best Multicultural Campaign categories.[11]  In sum, Lilly conducted "a pervasive, strategically orchestrated, widespread, multi-year advertising campaign."  *Krueger*, 2011 WL 8971449 at *12.  Advertising for Cymbalta has reached Plaintiffs and class members through television, magazine advertisements, and internet content.  (*See* Decls. of Saavedra,

---

[8] Matthew Arnold, *MM&M All-Stars Large Pharma Marketing Team of the Year: Cymbalta (Eli Lilly)*, Medical Marketing & Media, Jan. 1, 2008 (Woerner Decl., Ex. 1.)
[9] Cathy N. Davidson, *Now You See It, How the Brain Science of Attention Will Transform the Way We Live, Work, and Learn*, 2011, at 23-4 (Woerner Decl., Ex. 8.)
[10] Tracy Staton, *Lilly takes the lead in DTC ad spending, surpassing Pfizer*, FiercePharma (Aug. 16, 2012) (Woerner Decl., Ex. 9.)
[11] Long-Standing DTC National Advertising Awards Honor Diverse Group of DTC Marketing Campaigns, PRWeb (Mar. 1, 2013) (Woerner Decl., Ex. 10.)

Jacquez at ¶ 6.)

Because nothing about Lilly's extensive nationwide advertising campaign for Cymbalta is "small scale," this case is distinguishable from *Mazza*. In fact, the *Keegan* court, while "mindful" of the Ninth Circuit's holding in *Mazza*, found the case to "be on all fours" with *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir.2010). *Keegan*, 284 F.R.D. at 524. In *Wolin*, the plaintiffs brought claims under the consumer protection statutes of Michigan and Florida based on a failure to disclose.[12] *Wolin*, 617 F.3d at 1171. The Ninth Circuit reversed the district court's denial of class certification, concluding that "[c]ommon issues predominate such as whether Land Rover was aware of the existence of the alleged defect, whether Land Rover had a duty to disclose its knowledge and whether it violated consumer protection laws when it failed to do so." *Id*. at 1173 (citing *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005) (per curiam)). These same common questions exist under the UCL and the CLRA, as well as the consumer protection statutes of Missouri, New York, and Massachusetts, *see* discussion *supra* Part IV.C.1.b, and as the Ninth Circuit found in *Wolin*, these common questions predominate over any individual issues related to Plaintiffs' claims.

Here, Lilly omitted from its communications with consumers and physicians that the risk of withdrawal was at least 44%. Just as in *McAdams*, *Keegan*, and *Wolin*, all members of the putative subclasses were exposed to the same across-the-board omissions.

### (ii) *Materiality*: Lilly's omissions about Cymbalta withdrawal were material because reasonable consumers and physicians would attach importance to such information

Because all members of the California subclass were exposed to the same

---

[12] While *Wolin* thus applied substantive law from states not relevant to Plaintiffs' claims, the application of Rule 23(b) did not turn on the substantive law at issue.

omission, "causation, on a classwide basis, may be established by *materiality*." *Stearns*, 655 F.3d at 1022 (alteration omitted).  Under California law, a misrepresentation or omission is material "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question[.]"  *Stearns*, 655 F.3d at 1022 (quoting *Steroid*, 104 Cal. Rptr. 3d at 338-39); *see Vasquez v. Superior Court*, 484 P.2d 964, 973 n.9, 94 Cal. Rptr. 796 (Cal. 1971).  Materiality, however, "is not decided by determining whether the misrepresentation or omission was the sole reason behind a particular action."  *Krueger*, 2011 WL 8971449 at *9; *Steroid*, 104 Cal. Rptr. 3d at 339. Regardless of whether that deprivation of information would have ultimately changed that particular consumer's conduct, if the information is such that a reasonable consumer would consider it important prior to making the purchase, then the information is material.  *Steroid*, 104 Cal. Rptr. 3d at 339; *Mass. Mut.*, 119 Cal. Rptr. 2d at 197.  Thus, under the facts of this case, whether or not a consumer would ultimately choose to take Cymbalta with full knowledge of the withdrawal risk is irrelevant; the question is whether a reasonable person would attach importance to a withdrawal risk of 44% or higher prior to taking a medication.  *See Krueger*, 2011 WL 8971449 at *4; *Steroid*, 104 Cal. Rptr. 3d at 339.

As Dr. Joseph Glenmullen, clinical instructor in psychiatry at Harvard Medical School, explains, "a drug's propensity to cause withdrawal symptoms and, ultimately, physical dependency is an important factor to consider in deciding whether to prescribe a particular antidepressant to *any* patient." (Glenmullen Decl. at ¶ 10 (emphasis added).)  Indeed, after reviewing Cymbalta's labels and relevant clinical data, Dr. Glenmullen concluded that "Lilly's misrepresentations and omissions made it impossible for *any* patient or physician to make an informed decision about the appropriateness of taking or prescribing Cymbalta." (*Id.* at ¶ 26 (emphasis added).)  As Dr. Glenmullen's declaration makes clear, a medication's

19

propensity to cause physical dependency and to leave the consumer feeling "hooked" is critical information, material to a reasonable consumer.  (*Id.*)  *See also Krueger*, 2011 WL 8971449 at *9 (finding materiality for class certification purposes by failing to disclose specific drug risks that physicians would consider important); *Steroid,* 104 Cal. Rptr. 3d at 338–39 (finding materiality when drug manufacturer failed to disclose that product contained a steroid).  Furthermore, under California law, "[n]ondisclosures about safety considerations of consumer products are material."  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1173 (C.D. Cal. 2010) (citing *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007)).  A medication's propensity to cause withdrawal is a safety consideration and thus material to any consumer or doctor.

At the class certification stage, Plaintiffs do not need to prove that Lilly's omissions regarding Cymbalta withdrawal were *in fact* material.  Rather, "[t]he proper inquiry for class certification purposes is whether plaintiff can *use common proof* to prove whether a misrepresentation or nondisclosure is material."  *Krueger*, 2011 WL 8971449 at *6 (emphasis added).  Materiality is an objective standard— whether a reasonable person would attach importance to the information—and thus Plaintiffs can use common proof to demonstrate at trial the materiality of Cymbalta's significant withdrawal risk.

        **d.**    ***Subclass Damages*: Using conjoint analysis, Plaintiffs will be able to ascertain how much consumers overpaid for their Cymbalta prescriptions / how many additional prescriptions were issued because of Lilly's unlawful conduct**

In *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433, 185 L. Ed. 2d 515 (2013), the Supreme Court held that to meet the predominance prong for class certification, plaintiff must establish that "damages are capable of measurement on a classwide basis."  The Court stated that "[c]alculations need not be exact, but at

1  the class-certification stage (as at trial), any model supporting a 'plaintiff's

2  damages case must be consistent with its liability case[.]'" *Id.*

3  Here, Plaintiffs allege that they and the rest of the proposed class sustained

4  injuries by purchasing Cymbalta when Lilly omitted material information

5  regarding the frequency, severity, and duration of Cymbalta withdrawal. Because

6  of Lilly's omissions, Plaintiffs, class members, and physicians were all misled

7  about a material attribute of Cymbalta which caused Cymbalta's value in the

8  marketplace to be inflated. Glenmullen Decl. at ¶¶ 10, 26. In this way, "class

9  members were relieved of their money by [Lilly's] deceptive conduct." *Mazza*,

10  666 F.3d at 595.

11  Because it is that kind of injury which plaintiffs allege, damages can be

12  calculated on a classwide basis by ascertaining the amount of money consumers

13  overpaid for Cymbalta because Cymbalta was represented as having characteristics

14  it did not (sometimes referred to as the "price premium").[13] According to Dr. Joel

15  Hay, a tenured Professor and Founding Chair of Pharmaceutical Economics and

16  Policy in the School of Pharmacy at the University of Southern California, this

17  value can be ascertained on a classwide basis using an advanced survey and

18  statistical technique known as conjoint analysis. (Hay Decl. at ¶ 15.) "Conjoint

19  ("***con***sider ***joint***ly") analysis is a type of survey market research that has been used

20  by researchers for over four decades to determine how consumers place value on

21  specific attributes of products, often called the market's willingness to pay." (*Id.* at

22  ¶ 16.) "[C]onjoint analysis conceptualizes products as bundles of attributes,

23  treating price as an attribute, to compare how a consumer values particular aspects

24  of a product over others. Using specialized consumer surveys, conjoint analysis

25  

---

26  [13] As an alternative, Plaintiffs could use an analytically independent methodology
to determine how many additional prescriptions of Cymbalta were issued and

27  filled because consumers and physicians were unaware of Cymbalta's actual
frequency, severity, and duration of withdrawal. This methodology would not

28  require individual inquiry because this figure can be determined through the use
of statistics. (Hay Decl. at ¶ 25.)

forces consumers to make *trade-offs* over attributes, which allows researchers to see how consumers comparatively value a particular aspect of a product." (*Id.* at ¶ 17.) Conjoint analysis is an accepted technique for calculating damages and has been used to calculate damages in various federal courts. *See, e.g.*, *TV Interactive Data Corp. v. Sony Corp.*, No. 10-0475, 2013 WL 942473, at *11-18 (N.D. Cal. Mar. 11, 2013) (conjoint analysis is a valid a method for ascertaining how consumers value specific attributes); *Oracle Am., Inc. v. Google Inc.*, No. 10-3561, 2012 WL 850705 (N.D. Cal. Mar. 13, 2012); *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1120 (W.D. Wash. 2012). In fact, Lilly itself uses conjoint analysis.[14]

Through use of advanced statistics, conjoint analysis provides a mechanism to ascertain classwide damages without need to examine individual issues. Specifically, "[s]ince conjoint analysis uses advanced quantitative statistics to predict and dissect market behavior, it avoids the problem of what individual consumers 'would have done' and, instead, uses statistics to evaluate *common market behavior.*" (Hay Decl. at ¶ 18.) Thus, using conjoint analysis, Dr. Hay will be able to measure how much the consumer subclasses overvalued Cymbalta because of the concealed withdrawal information and how many additional prescriptions for Cymbalta were issued as result of Lilly's deceptive conduct. Accordingly, Plaintiffs have satisfied *Comcast* and provided a scientifically valid method for ascertaining damages associated with Lilly's misleading and deceptive conduct in omitting the frequency, severity, and duration of Cymbalta withdrawal.[15]

---

[14] *See, e.g.*, Kitzes Decl., Ex. C, at 12, 24-25 (describing Lilly's use of conjoint analysis to determine the relative value of Cymbalta's attributes); SKIM webpage at http://www.skimgroup.com/healthcare, stating "global healthcare companies such as Bayer HealthCare, Eli Lilly, Pfizer and Sanofi-Aventis come to SKIM for conjoint analysis, maximum differential scaling, qualitative research and more." (Woerner Decl., Ex. 11.)

[15] In Massachusetts, if damages are not ascertainable, then Ch. 93A provides that the putative class receive the statutorily prescribed minimum of $25 each. G. L.

### 2. *Superiority*: Class Actions are Superior to Other Available Methods of Adjudication, Because Absent Classwide Relief Consumer Rights Will Not Be Vindicated

Rule 23(b)(3) evaluates whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The superiority inquiry "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon,* 150 F.3d at 1023. The factors considered in assessing superiority are (1) the class members' interests in individually controlling the litigation, (2) the extent and nature of any litigation already begun, (3) the desirability of concentrating the litigation in the particular forum, and (4) and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). The superiority inquiry focuses "on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser,* 253 F.3d at 1190.

Here, use of the class action device is superior to other available methods of adjudication. The "damages suffered by each putative class member are not large," so the class action provides an efficient mechanism to vindicate the consumer interests of the putative subclasses. *Id.* Members of the putative subclasses have little interest in individually controlling this litigation because the potential recovery of their Cymbalta purchase expenditures is slight compared to the cost of litigation. Moreover, a class action is superior when, as here, many members of the putative subclasses are unaware that their consumer rights are being violated. *See Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 682 (N.D.

---

Ch. 93A § 9(3). Similarly, in New York, a plaintiff can recover statutory damages in the amount of $50 upon a finding that the plaintiff has suffered injury. G.B.L. § 349(h). *See, e.g.*, *Guido v. L'Oreal, USA, Inc.*, Nos. 11-1067, 11-5465, 2013 WL 3353857, *16-17 (C.D. Cal. July 1, 2013) (certifying a New York consumer class seeking statutory damages based on omission of a product's risk).

Cal. 2011) (quotation omitted).

The second and third factors weigh in favor of class certification.  While individual litigants have filed personal injury claims against Lilly, none, to Plaintiffs' knowledge, have filed consumer protection claims.  In addition, because this Court has already ruled in several preliminary matters, concentration of the litigation in this forum is desirable.  *See, e.g.*, *Morelock Enters., Inc. v. Weyerhaeuser Co.*, No. 04-0583, 2004 WL 2997526, at *5 (D. Or. Dec. 16, 2004) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004)).

Finally, the Court should consider "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(D).  This class action, involving only four states of the union, should not pose any manageability challenges beyond those typically present in a consumer class action—challenges that federal courts are well versed in managing.  Moreover, denial of certification on the sole ground of unmanageability is disfavored and should be considered the exception rather than the rule.  *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 148 (C.D. Cal. 2007).

## V.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed California, Massachusetts, Missouri, and New York Consumer Subclasses pursuant to Fed. R. Civ. P. 23 (b)(3), appoint Plaintiffs as the representatives of the proposed classes, and appoint Plaintiffs' Counsel as class counsel to represent the interests of the California, Massachusetts, Missouri, and New York Consumer Subclasses.

DATED this 19th day of August, 2013.

KELLER ROHRBACK L.L.P.

\s\ Michael D. Woener

Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com
Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384

Juli E. Farris, Esq. (CA Bar No. 141716)
jfarris@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496 / Fax:(805) 456-1497

Mark D. Samson, Esq., *admitted pro hac vice*
msamson@kellerrohrback.com
**KELLER ROHRBACK P.L.C.**
3101 N. Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088 / Fax: (602) 248-2822

Samuel S. Deskin, Esq.
sam@deskinlawfirm.com
**DESKIN LAW FIRM, PLC**
16944 Ventura Blvd, Office
Encino, CA 91316
Tel.:  (800) 709-8978 / Fax: (800) 709-8971

Harris L. Pogust, Esq.
hpogust@pbmattorneys.com
T. Matthew Leckman, Esq.
MLeckman@pbmattorneys.com
**POGUST BRASLOW MILLROOD LLC**
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel.:  (800) 897-8930 / Fax:  (610) 941-4245

***Counsel for Plaintiffs***

# CERTIFICATE OF SERVICE

I, Cate R. Brewer, hereby certify that on this 19th day of August, 2013, I caused true and correct copies of the foregoing:

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23(b)(3); PROPOSED ORDER; DECLARATION OF MICHAEL D. WOERNER, NAMED PLAINTIFF DECLARATIONS; DECLARATION OF JOSEPH GLENMULLEN, M.D.; DECLARATION OF JOEL W. HAY, PHD; AND DECLARATION OF WILLIAM F. KITZES, J.D.**

to be served on the below-listed counsel via the court's CM/ECF system electronically.

Clara J. Shin (CA Bar No. 214809)
cshin@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Tel: (415) 591-7058
Fax: (415) 955-6558

Phyllis A. Jones
pajones@cov.com
Mark H. Lynch
mlynch@cov.com
Colleen Kelly
ckelly@cov.com
Michael X. Imbroscio
mimbroscio@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Tel: 202-662-5868
Fax: 202-778-5868

*Attorneys for Defendant Eli Lilly and Company*

\s\ Cate R. Brewer
Cate R. Brewer, Legal Assistant