1 | Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
2 | Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
3 | Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com
4 | Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
5 | **KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
6 | Seattle, WA 98101
Telephone: (206) 623-1900 / Fax: (206) 623-3384
7 |
8 | Juli E. Farris, Esq. (CA Bar No. 141716)
jfarris@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
9 | 1129 State Street, Suite 8
Santa Barbara, CA 93101
10 | Tel: (805) 456-1496 / Fax: (805) 456-1497

11 | Mark D. Samson, Esq., *admitted pro hac vice*
msamson@kellerrohrback.com
12 | **KELLER ROHRBACK P.L.C.**
3101 N. Central Avenue, Suite 1400
13 | Phoenix, AZ 85012
Tel: (602) 248-0088 / Fax: (602) 248-2822
14 |
15 | ***Additional Counsel for Plaintiffs on following page***

16 | **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
17 | JENNIFER L. SAAVEDRA, DR.
MELISSA STRAFFORD, CAROL
18 | JACQUEZ, and DAVID MATTHEWS,
JR., on behalf of themselves and all other
19 | persons similarly situated,

20 | Plaintiffs,

21 | vs.

22 | ELI LILLY AND COMPANY, an Indiana
corporation,
23 |
24 | Defendant.

**No. 2:12-cv-09366-SVW(MANx)**
**CLASS ACTION**

**NOTICE OF MOTION AND
MOTION FOR CLASS
CERTIFICATION PURSUANT TO
RULE 23(c)(4)**

**Date:  September 17, 2013**
**Time:  1:30 p.m.**
**Location:  Courtroom 6**
**Judge:  Hon. Stephen V. Wilson**

25 |
26 |
27 |
28 |

Samuel S. Deskin, Esq.
sam@deskinlawfirm.com
DESKIN LAW FIRM, PLC
16944 Ventura Blvd
Encino, CA 91316
Tel.:  (800) 709-8978 / Fax: (800) 709-8971

Harris L. Pogust, Esq.
hpogust@pbmattorneys.com
T. Matthew Leckman, Esq.
MLeckman@pbmattorneys.com
POGUST BRASLOW MILLROOD LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel.:  (800) 897-8930 / Fax:  (610) 941-4245

*Additional Counsel for Plaintiffs*

# NOTICE OF MOTION

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 17, 2013, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 6 of the United States District Court, Central District of California, Western District, located at 312 N. Spring Street, Los Angeles, California 90012, Plaintiffs will move the Court for a Class Certification Pursuant to Rule 23(c)(4).

The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Declaration of Michael D. Woerner; the Declarations of the Named Plaintiffs Jennifer L. Saavedra, Dr. Melissa Strafford, Carol Jacquez, and David Matthews, Jr.; the Declaration of Joseph Glenmullen, M.D.; the Declaration of Alexandra D. Lahav, J.D.; and the Declaration of William F. Kitzes, J.D., as well as the pleadings, records, and files in this action, and such other further evidence and argument as may be presented at the time of the hearing.

This motion is made following conference of counsel pursuant to L.R. 7-3, which took place on July 30, 2013.

DATED:  August 19, 2013

Respectfully submitted,

**KELLER ROHRBACK L.L.P.**

By:  \s\ Michael D. Woerner
Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
Juli E. Farris, Esq. (CA Bar No. 141716)
jfarris@kellerrohrback.com
Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com
Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384

# **Table of Contents**

I.   BACKGROUND ...........................................................................................1

A.   Introduction and Facts......................................................................1

B.   Statement of Facts ............................................................................2

C.   Procedural History............................................................................3

D.   Proposed Class Definition and Issue Plaintiffs Seek to
     Have Certified ..................................................................................3

II.  ARGUMENT.................................................................................................4

A.   The Court Should Certify an Issue Class Under Rule
     23(c)(4) .............................................................................................4

     1.   Use of Rule 23(c)(4)  to Promote Just and Efficient
          Adjudication Is Encouraged by the Federal Rules
          and Approved by Appellate Courts. ......................................5

     2.   Certification of an Issue Class is Appropriate Here. ............7

          a.   Issue Classes are Particularly Appropriate in
               the Consumer Context. ...........................................7

          b.   The Proposed Issue Class Satisfies the
               Requirements of Rule 23(a) .................................11

               (i)    Numerosity is satisfied because the
                      class consists of approximately 2
                      million Cymbalta purchasers..................11

               (ii)   There is a common question regarding
                      Lilly's omissions about Cymbalta.................12

               (iii)  Because class members were injured
                      by the same course of conduct, the
                      typicality requirement is met...................14

               (iv)   Plaintiffs are adequate representatives
                      because they share interests with class
                      members and are committed to
                      vigorous litigation. ...............................15

          c.   The Proposed Issue Class Satisfies Both
               Rule 23(b)(3)  and (b)(2). ......................................16

               (i)    The Proposed Issue Class Satisfies the
                      Requirements of Rule 23(b)(3) .................17

               (a)    The issue of Lilly's material
                      omissions predominates by definition...............17

i

          (b)     This issue class is superior because it is the only means for consumers to obtain redress .................................................................18

          (ii)    The Proposed Issue Class Satisfies the Requirements of Rule 23(b)(2) because it applies to the class as a whole .....................................................................21

    d.     Certification of an Issue Class Will Materially Advance the Litigation..............................22

    e.     Plaintiffs' Suggested Trial Plan ....................................23

III.     CONCLUSION.........................................................................23

# Table of Authorities

## Cases

*Amchem Prods, Inc. v. Windsor*,
521 U.S. 591 n.20, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ...............16, 19

*Aspinall v. Philip Morris Companies, Inc.*,
442 Mass. 381, 813 N.E.2d 476 (Mass. 2004) ....................................8

*Barnes v. District of Columbia*,
278 F.R.D. 14 (D.D.C. 2011)....................................................23

*Breeden v. Benchmark Lending Group, Inc.*,
229 F.R.D. 623 (N.D. Cal. 2005)................................................15

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ....................................................6

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
6 F.3d 177 (4th Cir. 1993) .....................................................19

*Charlebois v. Angels Baseball, LP*,
No. 10-0853, 2011 WL 2610122 (C.D. Cal. June 30, 2011)........................12

*Charron v. Pinnacle Grp. N.Y. LLC*,
269 F.R.D. 221 (S.D.N.Y. 2010) .......................................8, 10, 17

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 n.3, 185 L. Ed. 2d 515 (2013)................................20

*County of Los Angeles v. Jordan*,
459 U.S. 810, 103 S. Ct. 35, 74 L. Ed. 2d 48 (1982) .........................11

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 n.8 (9th Cir. 2011) ................................................5

*Fine v. ConAgra Foods, Inc.*,
No. 10-1848, 2010 WL 3632469 (C.D. Cal. Aug. 26, 2010)........................13

*Guido v. L'Oreal, USA, Inc.*,
Nos. 11-1067, 11-5465, 2013 WL 3353857 (C.D. Cal. July 1,
2013) .....................................................................12, 14

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) .................................................7, 19

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...........................................13, 14, 15

*Hess v. Chase Manhattan Bank, USA, N.A.*,
220 S.W.3d 758 (Mo. Banc 2007)................................................8

iii

*In re Allstate Ins. Co.*,
    400 F.3d 505 (7th Cir. 2005) ....................................................................22

*In re Copley Pharm., Inc.*,
    158 F.R.D. 485 (D. Wy. 1994) ..................................................................19

*In re Motor Fuel Temperature Sales Practices Litig.*,
    2013 WL 1397125 (D. Kan. 2013) ........................................................9, 22

*In re Nassau Cnty. Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006) ................................................................6, 11

*In re Tetracycline Cases*,
    107 F.R.D. 719 (W.D. Mo. 1985) ..............................................................4

*In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*,
    --- F.3d ----, No. 10-4188, 2013 WL 3746205 (6th Cir. 2013) ........................6

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012), ............................................................13

*Jordan v. County of Los Angeles*,
    669 F.2d 1311 & n.10 (9th Cir. 1982), ......................................................11

*Keegan v. Am. Honda Motor Co., Inc.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ............................................................14

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ..............................................................20

*Konik v. Time Warner Cable*,
    No. 07-0763, 2010 WL 8471923 (C.D. Cal. Nov. 24, 2010) ........................13

*Lehocky v. Tidel Technologies, Inc.*,
    220 F.R.D. 491 (S.D. Tex. 2004) ............................................................20

*Leib v. Rex Energy Operating Corp.*,
    2008 WL 5377792 (S.D. Ill. Dec. 19, 2008) ..............................................17

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    672 F.3d 482 (7th Cir. 2012) ....................................................................6

*Miri v. Dillon*,
    --- F.R.D. ----, No. 11-15248, 2013 WL 2034310 (E.D. Mich. May
    14, 2013) ..............................................................................................19

*Nat'l Fed. of the Blind v. Target*,
    582 F. Supp. 2d 1185 (N.D. Cal. 2007) ....................................................12

*Orantes-Hernandez v. Smith*,
    541 F. Supp. 351 (C.D. Cal. 1982) ..........................................................12

iv

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*
*N.A.,*
   85 N.Y.2d 20, 647 N.E.2d 741 (1995)................................................8

*Pella Corp. v. Saltzman,*
   606 F.3d 391 (7th Cir. 2010) ...............................................6, 7

*Pelman v. McDonald's Corp.,*
   272 F.R.D. 82 (S.D.N.Y. 2010) ...........................................10, 11

*Robinson v. Metro-North Commuter R.R.,*
   267 F.3d 147 n.12 (2d Cir. 2001) ........................................4, 7

*Sosna v. Iowa,*
   419 U.S. 393, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975) ...................16

*Stearns v. Ticketmaster Corp.,*
   655 F.3d 1013 (9th Cir. 2011) ...............................................8

*Stutman v. Chem. Bank,*
   95 N.Y.2d 24, 731 N.E.2d 608 (N.Y. 2000)................................10

*Sweet v. Pfizer,*
   232 F.R.D. 360 (C.D. Cal. 2005)............................................18

*U.S. Parole Comm'n v. Geraghty,*
   445 U.S. 388, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980) ..................6

*Valentino v. Carter-Wallace, Inc.,*
   97 F.3d 1227 (9th Cir. 1996) .................................... passim

*Vinole v. Countrywide Home Loans, Inc.,*
   571 F.3d 935 (9th Cir. 2009) ................................................5

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)...........................5, 12, 13

*Williams v. Gerber Products Co.,*
   552 F.3d 934 (9th Cir. 2008) ................................................8

*Wolph v. Acer Am. Corp.,*
   272 F.R.D. 477 (N.D. Cal. 2011)............................................20

## **Statutes**

N.Y. Gen. Bus. L. § 349(a) ....................................................10

## **Rules**

Fed. R. Civ. P. 1 .................................................................24

Fed. R. Civ. P. 12(a)(1)(A) .....................................................3

Fed. R. Civ. P. 23(a)............................................................4, 5, 11

Fed. R. Civ. P. 23(a)(1)..................................................................11

Fed. R. Civ. P. 23(a)(2)..................................................................12

Fed. R. Civ. P. 23(a)(3)..................................................................14

Fed. R. Civ. P. 23(a)(4)..................................................................15

Fed. R. Civ. P. 23(b)........................................................................4

Fed. R. Civ. P. 23(b)(2)..................................................................21

Fed. R. Civ. P. 23(b)(3)............................................................. passim

Fed. R. Civ. P. 23(b)(3)(A)..............................................................18

Fed. R. Civ. P. 23(b)(3)(B)..............................................................18

Fed. R. Civ. P. 23(b)(3)(C)..............................................................18

Fed. R. Civ. P. 23(b)(3)(D)..............................................................18

Fed. R. Civ. P. 23(c)(4).............................................................. passim

Fed. R. Civ. P. 23(c)(4)(A)..........................................................6, 23

**Other Authorities**

1 Newberg on Class Actions § 2094......................................................12

2 Newberg on Class Actions § 4:23......................................................17

5 Moore's Federal Practice § 23.48[1] ..................................................18

7A Wright & Miller, Federal Practice and Procedure 187 (1972) .........................6

ALI, Principles of the Law of Aggregate Litigation § 2.02...............................6

Eli Lilly and Co., Annual Report (Form 10-K) (Feb. 21, 2013) ...........................2

Manual for Complex Litigation 4th Sec. 21.24 .........................................22

Matthew Arnold, MM&M All-Stars Large Pharma Marketing Team
   of the Year: Cymbalta (Eli Lilly)..................................................2

Medical Marketing & Media, Jan. 1, 2008 ..............................................2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   BACKGROUND

## A.   Introduction and Facts

Rule 23(c)(4) provides that, in appropriate actions, courts may certify issue-specific classes—classes that are certified to try one issue rather than all the issues in an action.  Here, the core issue that binds together all class members is whether Eli Lilly made a material omission when it failed to advertise that its drug Cymbalta has at least a 44% chance of causing withdrawal symptoms.  Because that core issue is common to all class members—and because its resolution will streamline this litigation—an issue class should be certified under Rule 23(c)(4).

Following the Court's summary judgment order, plaintiffs have moved for certification of four state subclasses pursuant to Rule 23(b)(3).  For the reasons presented in detail in Plaintiffs' Rule 23(b)(3) brief, certification pursuant to Rule 23(b)(3) is appropriate now.  However, should the Court determine, at this pre-discovery stage, that individual issues outweigh common issues for each of Plaintiffs' four subclasses, Plaintiffs respectfully request in the alternative that the Court defer ruling on Plaintiffs' motion to certify these subclasses and instead certify an issue class pursuant to Rule 23(c)(4).  That issue class will be limited to the fundamental common question of whether Lilly's omissions about Cymbalta's withdrawal symptoms were materially misleading to a reasonable consumer.

The practical effect of issue certification would be to streamline the litigation by determining this central issue on a binding, classwide basis.  If the Court certifies an issue class and Plaintiffs prevail, Plaintiffs will then present evidence of class members' damages in a time-efficient and concise manner.  If the Court rules in Defendant's favor following issue class certification, the litigation would be ended altogether.

**B.     Statement of Facts**

Lilly spent hundreds of millions promoting Cymbalta directly to patients but intentionally omitted information about a crucial aspect of any antidepressant or pain reliever: the risk of withdrawal.  (Declaration of Joseph Glenmullen, M.D. ("Glenmullen Decl.") at ¶ 18; Declaration of William Kitzes ("Kitzes Decl.") at ¶ 13.)  In advertising materials, Lilly omitted that Cymbalta can cause physical dependence or that consumers might experience potentially debilitating symptoms upon discontinuing Cymbalta, such as "brain zaps."  On the Cymbalta label, Lilly stated that the risk of withdrawal symptoms is "1% or greater."  (*See* Declaration of Sharon Hoog, M.D. ("Hoog Decl."), Dkt. 56, at ¶ 13; Plaintiffs' Corrected First Amended Complaint ("FAC"), Dkt. 44 at ¶ 12.)  The actual risk, according to Lilly's own clinical trials, was at least 44%.[1]  (*See* FAC ¶ 30; Declaration of David M. Perahia ("Perahia Decl."), Dkt. 57, Ex. 1 at 9.)  Nowhere did Lilly communicate to consumers or physicians this material information about Cymbalta's approximately 50% risk of withdrawal.  In the absence of this material information, reasonable consumers bought Cymbalta under the mistaken belief that the chance of experiencing withdrawal was minimal or nonexistent.

Lilly made these omissions for a reason: huge profits.  In 2006, Lilly's consumer advertising campaign generated a six-to-one return on investment, "virtually unheard of among top drug advertisers."[2]  By 2012, sales of Cymbalta generated just under $5 billion worldwide ($3.9 billion in the United States), or 22% of Lilly's total revenue.[3]  Simply put, telling the truth would have cost Lilly

---

[1] Other clinical trials funded by Lilly place the risk at 50.8% (*see* Dkt. 57, Perahia Decl., Ex. 1 at 12), and Cymbalta's pharmacokinetic properties suggest that the risk could be as high as 78%.  (*See* Glenmullen Decl. ¶ 9.)

[2] Matthew Arnold, *MM&M All-Stars Large Pharma Marketing Team of the Year: Cymbalta (Eli Lilly)*, Medical Marketing & Media, Jan. 1, 2008 (attached as Ex. 1 to the Declaration of Michael Woerner ("Woerner Decl.").)

[3] Eli Lilly and Co., Annual Report (Form 10-K), at 17, 28 (Feb. 21, 2013) (Woerner Decl. Ex. 2.)

too much.  Cymbalta was a blockbuster drug because Lilly omitted material facts regarding the frequency, severity, and duration of Cymbalta withdrawal.  (*See* Kitzes Decl. at ¶ 20.)  Plaintiffs and class members would not have purchased Cymbalta or have been willing to pay as much for it had they known the truth. (*See* Declaration of David Matthews, Jr. ("Matthews Decl.") ¶ 8; Declaration of Jennifer L. Saavedra ("Saavedra Decl.") ¶ 8; Declaration of Dr. Melissa Strafford "Strafford Decl.") ¶ 8; Declaration of Carol Jacquez ("Jacquez Decl.") ¶ 8.)

**C.    Procedural History**

On January 10, 2013, Plaintiffs filed their corrected First Amended Complaint, bringing claims on behalf of themselves and all similarly situated individuals under the consumer protection laws of four different states.  While Lilly filed a Motion to Dismiss and for Summary Judgment, it never served an Answer or provided initial disclosures, and neither party has yet had discovery. *See* Fed. R. Civ. P. 12(a)(1)(A), 16, 26.  On February 26, 2013, the Court denied Lilly's Motion to Dismiss with the exception of Plaintiffs' claims for injunctive and declaratory relief.  (Dkt. 52.)  On June 13, 2013, the Court denied Lilly's Motion for Summary Judgment and directed Plaintiffs to brief class certification. (Dkt. 72.)  For the full procedural history, Plaintiffs refer to their briefing of May 13, 2013.  (Dkt. 66 at 2-4.)[4]

**D.    Proposed Class Definition and Issue Plaintiffs Seek to Have Certified**

Pursuant to Rule 23, Plaintiffs move for the certification of the following class:

> All natural persons within the Commonwealth of Massachusetts and
> the States of Missouri, New York, and California who purchased

---

[4] In accordance with the Court's June 13th Order, Plaintiffs follow the Court's instruction to "assume that [they] will be able to prevail on their contention that the warnings given to physicians were inadequate as alleged in the FAC."  (Dkt. 72 at 8.)

and/or paid for Cymbalta manufactured, distributed, and/or marketed by Lilly from Cymbalta's August 2004 launch until the present.

Pursuant to Rule 23(c)(4) , Plaintiffs seek to certify this class **with respect to the particular issue of whether Lilly's omissions regarding Cymbalta were materially misleading under the state laws of Missouri, New York, Massachusetts, and California.**

## II.   ARGUMENT

**A.   The Court Should Certify an Issue Class Under Rule 23(c)(4) .**

Plaintiffs move for certification of an Issue Class pursuant to Fed. R. Civ. P. Rule 23(c)(4) .  The Court has already identified the issue at the heart of this litigation: "the question of whether or not the warnings given to doctors, and consumers, were inadequate or misleading."  (*See* Order, Dkt. 72 at 7.)  As the Court observed, this question "may be capable of resolution on a class-wide basis." (*Id.*)  This is precisely the sort of issue envisioned by the drafters of Rule 23(c)(4), which allows a court to certify a class action limited to particular issues if the action is not suitable for class certification as a whole.

To be certified as a class action, the proposed Issue Class must meet the threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.  Plaintiffs must also satisfy at least one or more subsections of Rule 23(b), with respect to the particular issue identified.  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  In addition, while the Ninth Circuit has not spoken to the issue, other courts have held that issue certification is appropriate only if "the issues covered by the request be such that their resolution (as a class matter) will materially advance a disposition of the litigation as a whole." *Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 167 n.12 (2d Cir. 2001) (citing *In re Tetracycline Cases*, 107 F.R.D. 719, 727 (W.D. Mo. 1985)), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 180 L. Ed.

2d 374 (2011); *see also* Declaration of Professor Alexandra D. Lahav ("Lahav Decl.") ¶ 11.  Here, Plaintiffs' proposed Issue Class satisfies the prerequisites of Rule 23(a)  and the requirements of Rule 23(b)(2)  and (b)(3).  In addition, resolving whether Lilly's omissions regarding Cymbalta were misleading would materially advance the litigation by allowing the Court to answer the fundamental question underlying all of Plaintiffs' claims.  For these reasons and as discussed more thoroughly below, the Court should certify an Issue Class pursuant to Rule 23(c)(4) .

Given the procedural posture of this case—where no discovery has yet occurred—it is particularly important to note that this motion is one for class certification alone, not a ruling on the merits.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) ("The district court is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims.") (citing *Dukes*, 131 S. Ct. at 2552 n.6).  To the extent that the Court needs to look "beyond the pleadings," Plaintiffs should be given an opportunity for reasonable discovery to establish the facts predicate to class certification.  *See, e.g.*, *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted.").

### 1.    Use of Rule 23(c)(4)  to Promote Just and Efficient Adjudication Is Encouraged by the Federal Rules and Approved by Appellate Courts.

Rule 23(c)(4), permitting class actions "with respect to particular issues," provides judges with the flexibility to structure a class action to realize the economies of the class device—even where the action as a whole is not suitable for class treatment.  Underpinning Rule 23(c)(4) is the philosophy that "the advantages

1 and economies of adjudicating issues that are common to the entire class on a
2 representative basis should be secured even though other issues in the case may
3 have to be litigated separately by each class member." 7A Wright & Miller,
4 *Federal Practice and Procedure* 187 (1972); *see also U.S. Parole Comm'n v.*
5 *Geraghty*, 445 U.S. 388, 395, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980)
6 (confirming the district court's inherent power to certify as to particular issues and
7 subclasses sua sponte); ALI, *Principles of the Law of Aggregate Litigation* § 2.02
8 cmt. a ("In exercising [their] discretion, courts should consider whether aggregate
9 treatment of a common issue by way of a class action will materially advance the
10 resolution of multiple civil claims . . . .").

11    In the Ninth Circuit as well as other circuits, Rule 23(c)(4)  can be used to
12 isolate certain issues even when a cause of action as a whole is not suitable for
13 certification. "Even if the common questions do not predominate over the
14 individual questions so that class certification of the entire action is warranted,
15 Rule 23 authorizes the district court in appropriate cases to isolate the common
16 issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular
17 issues." *Valentino*, 97 F.3d at 1234; *see also* Lahav Decl. ¶ 6.  The Second Circuit
18 has followed the Ninth Circuit in this holding, *In re Nassau Cnty. Strip Search*
19 *Cases*, 461 F.3d 219, 227 (2d Cir. 2006), and the Seventh Circuit has repeatedly
20 approved the use of issue class certification, *see Pella Corp. v. Saltzman*, 606 F.3d
21 391, 394 (7th Cir. 2010) ("A district court has the discretion to split a case by
22 certifying a class for some issues, but not others, or by certifying a class for
23 liability alone where damages or causation may require individualized
24 assessments."); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672
25 F.3d 482, 491-92 (7th Cir. 2012); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656,
26 661 (7th Cir. 2004).  *See also In re Whirlpool Corp. Front-Loading Washer Prods.*
27 *Liability Litig.*, --- F.3d ----, No. 10-4188, 2013 WL 3746205, at *18-19 (6th Cir.

28

2013) (affirming certification of a liability class under Rule 23(b)(3)  and (c)(4)).
Indeed, district courts should "take full advantage of the provision in Rule 23(c)(4)
permitting class treatment of separate issues to reduce the range of disputed issues
in complex litigation."  *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 426 (4th
Cir. 2003) (internal quotations, alterations, and citation omitted).

As discussed below, issue class certification is especially appropriate in the
context of consumer fraud and with the facts presented by Plaintiffs' claims.

**2.    Certification of an Issue Class is Appropriate Here.**

When one issue permeates all claims in the litigation, it is particularly well
suited to certification pursuant to Rule 23(c)(4) .  In its most recent Order, the
Court identified this case's core issue: "whether or not the warnings given to
doctors, and consumers, were inadequate or misleading."  (Order, Dkt. 72 at 7.)
This issue is "the essence of the dispute and is better resolved by class treatment."
*Pella Corp.*, 606 F.3d at 393.  Whether individually or on aggregate, each class
member needs to prove that the omission was misleading in order for his claim to
proceed.  Because resolution of this issue "would both reduce the range of issues in
dispute and promote judicial economy," this case readily presents an issue
appropriate for classwide determination pursuant to Rule 23(c)(4) .  *Robinson*, 267
F.3d at 168.

**a.    Issue Classes are Particularly Appropriate in the Consumer
Context.**

Plaintiffs have stated claims for deceptive practices regarding the labeling
and advertisement of Cymbalta under four states' consumer protection statutes.
(*See* Order on Motion to Dismiss, Dkt. 52.)  As the drafters of Rule 23 noted,
certification of an issue class under Rule 23(c)(4)  may be especially appropriate in
this context, i.e., litigation of class claims based on a defendant's alleged
deception: "For example, in a fraud or similar case the action may retain its 'class'
character only through the adjudication of liability to the class; the members of the

class may thereafter be required to come in individually and prove the amounts of their respective claims." Fed. R. Civ. P. 23(c)(4)  Advisory Committee's Note. Issue certification works in this context because because consumer protection law "keys on the wrongdoing of [defendants]," *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011) (discussing the UCL), thereby allowing a defendant's liability to "be determined once, on a class-wide basis, through common evidence." *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 242 (S.D.N.Y. 2010) (certifying issue class with respect to claims under NYCPA).  Where, as here, a defendant engaged in a uniform, national advertising campaign, evidence of the defendant's conduct is common to all class members.

Furthermore, under the consumer protection laws in each of the four states, this common evidence of deceptive conduct is evaluated under an objective standard.[5]  As the Court has noted, "the issue here is whether the labels misled *a reasonable consumer*." (Dkt. 52 at 12 (emphasis added).)  This objective standard makes deceptiveness a question that can be answered once on a classwide basis, because it does not depend on the characteristics of any individual class member. Deceptiveness, the issue that certification under Rule 23(c)(4)  will isolate, is instead measured by the hypothetical reasonable consumer, a construct that applies

---

[5] New York: *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 647 N.E.2d 741 (1995) (establishing the "adoption of an objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances"); California: *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (noting that the CLRA, UCL, and FAL are "governed by the 'reasonable consumer' test"); Massachusetts: *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 813 N.E.2d 476 (Mass. 2004) ("Whether conduct is deceptive is initially a question of fact, to be answered on an objective basis and not by the subjective measure argued by the defendants."); Missouri: *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. Banc 2007) (stating that "Section 407.020 bars a variety of conduct, including concealment, suppression or omission of any material fact in connection with the sale of merchandise" and that "MPA regulations define 'material fact,' in pertinent part, as 'any fact which *a reasonable consumer* would likely consider to be important in making a purchasing decision ...'.") (citing 15 C.S.R. 60–9.010(1)(C)) (emphasis added).

to the whole class.  Accordingly, Plaintiffs' consumer claims are particularly appropriate for issue class certification.

What Plaintiffs propose—certification of a class action with respect to the particular issue of whether Lilly's omissions were materially misleading to a reasonable consumer—is a course already charted by numerous federal courts. Each case discussed below shows that Plaintiffs' proposed issue class is eminently certifiable under Rule 23(c)(4) .

For example, a district court recently certified issue classes in a case where plaintiffs brought claims under California's UCL and CLRA, alleging that by omitting material information regarding fuel temperature, which affects the energy content of the fuel, Chevron had deprived consumers of the ability to make informed choices regarding their fuel transactions.  *In re Motor Fuel Temperature Sales Practices Litig.*, --- F.R.D. ----, MDL No. 1840, 2013 WL 1397125 (D. Kan. 2013). The *Motor Fuel* court identified the "basic 'liability' elements" of plaintiffs' UCL claims[6] and CLRA claims[7] as the issues suitable for classwide determination. *Id.* at *8-9.  Chevron, the court noted, had engaged in common conduct by selling fuel by the gallon without disclosing that differences in temperature affected the fuel's energy content: "Because plaintiffs allege that Chevron treated all class members the same in all material respects . . . individual inquiries are unnecessary." *Id.* at *18.  Here, Lilly treated all class members the same in all

---

[6] Under the UCL, the "basic 'liability' elements" are "that (1) plaintiffs and Chevron are 'persons' under the UCL; (2) Chevron engaged in unfair competition (i.e. unlawful, unfair and/or fraudulent business acts or practices); (3) named plaintiffs suffered economic injury as a result of Chevron's acts or practices; and (4) members of the public were likely deceived." *In re Motor Fuel*, 2013 WL 1397125 at *8.

[7] Under the CLRA, the "basic 'liability' elements" are "that (1) plaintiffs were 'consumers' under the CLRA; (2) Chevron was a 'person' under the CLRA; (3) plaintiffs and Chevron engaged in a transaction intended to result or which resulted in the sale or lease of goods or services; (4) Chevron used unfair methods of competition, or unfair or deceptive acts or practices, in violation of the CLRA; (5) as a result, plaintiffs suffered damage." *Id.* at *9.

9

material respects, by universally omitting the material information of Cymbalta's
44% or higher withdrawal risk.  Thus, as in the *Motor Fuel* case, the "basic
liability elements" of Plaintiffs' claims are issues appropriately isolated pursuant to
Rule 23(c)(4).

In *Charron*, the plaintiffs alleged that the defendant landlord had engaged in
a scheme of lying to tenants about the legally chargeable rent and filing meritless
eviction suits.  Despite finding that individual issues of causation and injury
predominated, the court concluded that the defendant's unitary course of conduct
meant that all class members shared the common issues of "whether Defendants
engaged in '[d]eceptive acts or practices in the conduct of [their] business, trade or
commerce or in the furnishing of any service,'" and "whether 'the challenged act
or practice was consumer-oriented.'"  *Charron*, 269 F.R.D. at 239 (citing N.Y.
Gen. Bus. L. § 349(a) and *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 731 N.E.2d 608,
611 (N.Y. 2000)) (alterations in original).  The court certified a Rule 23(c)(4)  class
limited to common issues of misleading conduct under the NYCPA and RICO.
While this consumer case is more amenable to class treatment than the landlord-
tenant claims in *Charron*, here, as in *Charron*, the deceptive conduct—Lilly's
omission of material information about Cymbalta's withdrawal symptoms—was
uniform. Just as in *Charron*, certifying a class with respect to the deceptiveness of
that conduct will materially advance the litigation by resolving its core issue.  *See
id.* at 242.

In *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 98 (S.D.N.Y. 2010), the
plaintiffs asserted that the defendant had deceptively labeled and marketed its food.
The court, analyzing the appropriateness of issue certification, focused on the
objective nature of the inquiries under the NYCPA, concluding that "questions of
the consumer-orientation and material deceptiveness of Defendant's acts and
omissions are evaluated on the basis of objective standards, and are therefore

subject to proof based on evidence common to the class." *Pelman*, 272 F.R.D. at 97. The court found that commonality, typicality, adequacy, predominance, and superiority were met with respect to the limited issue of liability under the NYCPA, observing that "resolving the issues common to this putative class of plaintiffs, on the basis of common evidence in one set of class-wide determinations, is clearly a more efficient use of judicial resources than litigating exactly the same issues, on precisely the same set of facts, with respect to each individual plaintiff." *Id*. at 98. While—unlike here—the numerosity prerequisite was not satisfied, the *Pelman* court's analysis is otherwise on point. As in that case, the objective standard governing whether Lilly's omissions were materially misleading makes that question appropriate for issue certification.

### b. The Proposed Issue Class Satisfies the Requirements of Rule 23(a).

For an issue class to be certified pursuant to Rule 23(c)(4), the requirements of Rule 23(a) must be satisfied only with respect to those issues. *See Valentino*, 97 F.3d at 1234; *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 226-27. Here, the proposed Issue Class satisfies the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.

### (i) Numerosity is satisfied because the class consists of approximately 2 million Cymbalta purchasers

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Ninth Circuit, the numerosity requirement is generally satisfied when the proposed class exceeds 40 members. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982), *vacated on other grounds by County of Los Angeles v. Jordan*, 459 U.S. 810, 103 S. Ct. 35, 74 L. Ed. 2d 48 (1982). The exact size of the class need not be known as long as "general knowledge and common sense" indicate that the class is sufficiently numerous. *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D.

Cal. 1982) (citing 1 Newberg on Class Actions § 2094, at 596 (1977)).

Here, the proposed Issue Class satisfies the numerosity requirement. Although Plaintiffs have not conducted any discovery and Lilly has not yet answered, Lilly itself published advertisements in 2008 boasting that 9 million consumers had taken Cymbalta (and 28 million prescriptions had been sold). (Woerner Decl., Ex. 3.)  According to census data, New York, California, Massachusetts, and Missouri, put together, make up about one-fourth of the total U.S. population—meaning that the issue class contains over two million members. (*See* Woerner Decl., Ex. 4.)  This type of data is commonly used to determine whether numerosity is satisfied.  *See Guido v. L'Oreal, USA, Inc.*, Nos. 11-1067, 11-5465, 2013 WL 3353857, at *4 (C.D. Cal. July 1, 2013) (extrapolating from census data in order to find numerosity); *Charlebois v. Angels Baseball, LP*, No. 10-0853, 2011 WL 2610122, at *5 (C.D. Cal. June 30, 2011) ("These types of data are frequently relied upon in finding that there is numerosity for class certification.") (citing *Nat'l Fed. of the Blind v. Target*, 582 F. Supp. 2d 1185 (N.D. Cal. 2007)).  While discovery related to Cymbalta sales in these four states would definitively prove numerosity, here general knowledge and common sense indicate that numerosity cannot reasonably be disputed.

### (ii)   There is a common question regarding Lilly's omissions about Cymbalta

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2) .  To satisfy the commonality requirement, a class claim "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.  However, "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts

coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

The issue proposed for classwide determination is whether Lilly's omissions regarding Cymbalta were materially misleading. All the class members' claims stem from the same source: Lilly's universal omission in its marketing and labeling that at least 44% of Cymbalta users will experience withdrawal symptoms upon ceasing treatment. Because *all* class members received this *same* omission, classwide proceedings in this case will provide a "common answer" regarding Lilly's omissions that will "drive the resolution of the litigation." *Dukes*, 131 S.Ct. at 2551. Resolving this issue will determine the validity of the class' [consumer] "claims in one stroke." *Id.*; *see also Konik v. Time Warner Cable*, No. 07-0763, 2010 WL 8471923, at *5 (C.D. Cal. Nov. 24, 2010) ("The fact that each consumer purchase was an independent act has no bearing on the common nucleus of facts in issue here: Defendant's conduct.") (citing *Fine v. ConAgra Foods, Inc.*, No. 10-1848, 2010 WL 3632469, at *3 (C.D. Cal. Aug. 26, 2010)).

What also makes a "common answer" possible here is that the objective "reasonable consumer" standard governs whether Lilly's universal omission of Cymbalta's withdrawal risks was materially misleading. *See* note 3, *supra*. By omitting information about the frequency, severity, and duration of Cymbalta withdrawal, Lilly withheld information material to a reasonable consumer. *See* Glenmullen Decl. ¶ 10 ("A drug's propensity to cause withdrawal symptoms and, ultimately, physical dependency is an important factor to consider in deciding whether to prescribe a particular antidepressant to *any* patient.") (emphasis added).

Therefore, Lilly's common conduct, evaluated by a common, objective standard, will "generate common answers to the primary questions presented in this lawsuit." *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012), *appeal dismissed* (Apr. 12, 2012).

1

2
    **(iii)**  **Because class members were injured by the same**
         **course of conduct, the typicality requirement is met**

3

4
   The typicality inquiry under Rule 23(a)(3) requires Plaintiffs to establish that

5
"the claims or defenses of the representative parties are typical of the claims or

6
defenses of the class."  Fed. R. Civ. P. 23(a)(3) .  "Under the rule's permissive

7
standards, representative claims are 'typical' if they are reasonably co-extensive

8
with those of absent class members; they need not be substantially identical."

9
*Hanlon*, 150 F.3d at 1020.

10
   Here, class members were injured in exactly the same way—by Lilly's

11
universal omission of the frequency, severity, and duration of Cymbalta

12
withdrawal.  Like all class members, plaintiffs reasonably believed they were

13
purchasing a drug for which the risk of withdrawal was minimal—but that is not

14
what they received.  (Decls. of Saavedra, Jacquez, Strafford, Matthews at ¶¶ 6-7.)

15
Instead, they purchased a drug with a risk of withdrawal as possibly as high as

16
78% (*see* Glenmullen Decl. at ¶ 9) and at least as high as 44% (*see* Perahia Decl.,

17
Dkt. 57, Ex. 1 at 9).  *See also Guido*, 2013 WL 3353857, at *6 (finding the

18
requirement of typicality "*prima facie* met" when each named plaintiff purchased

19
the product within the class period and testified that she would not have purchased

20
the product at the market price had she known of the nondisclosed characteristic).

21
   This case "involves an alleged across-the-board failure to disclose."  *Keegan*

22
*v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 533 (C.D. Cal. 2012).  In its

23
communications with consumers and doctors, Lilly omitted Cymbalta's 44% or

24
higher withdrawal risk, which would be material to any doctor or consumer.

25
(Glenmullen Decl. ¶¶ 10, 26.)  In fact, in Lilly's extensive national advertising

26
campaigns, withdrawal symptoms are not even mentioned; even in the long litany

27
of warnings, the ads simply state, "Talk to your doctor before stopping Cymbalta,"

28
or "Talk with your healthcare provider before stopping Cymbalta."  (*See, e.g.*,

Saavedra Decl., Ex. B; Jacquez Decl., Ex. A.)  Plaintiffs, despite exposure to Cymbalta advertising on television, in magazines, and online, were not aware that of the significant risk of withdrawal.  (*See* Decls. of Saavedra, Matthews, Jacquez, Strafford ¶ 6.)  On the Cymbalta label, Lilly states only that withdrawal symptoms occur at a risk of "1% or greater."  (*See* Dkt. 56, Hoog Decl., ¶ 13.)  As the Court noted during the hearing on Plaintiffs' 56(d) motion, this language does not allow the consumer to infer a rate of 40% or 50%; instead, "1% or greater" means "greater than one percent but not 40 times or 50 times that."  (Tr. at 18:13-15 (Apr. 29, 2013).)  Furthermore, Lilly has provided no evidence to show that it adequately warned prescribing physicians of the withdrawal risks, despite the Court's express invitation to do so.  Dkt. 52; Tr. at 19:1-4 (Apr. 29, 2013) ("Why didn't the company just say in the warnings and precautions section, We did a study three, four, five years ago, that showed that the percentage of side-effects was 44.3 percent?").  Lilly's omission was indeed "across-the-board" and not unique to the named plaintiffs.  Because class members were injured by the same course of conduct, the typicality requirement is met.

> **(iv)  Plaintiffs are adequate representatives because they share interests with class members and are committed to vigorous litigation.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.  Class representatives fail to meet the adequacy standard when the "conflicts between the class members are serious and irreconcilable." *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 629 (N.D. Cal. 2005) (citing *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S. Ct. 553, 42 L. Ed.

15

2d 532 (1975)).

As to the issue of whether or not Lilly's omissions regarding Cymbalta were materially misleading under the state laws of Missouri, New York, Massachusetts, and California, the named plaintiffs and the rest of the class are precisely alike, such that their interests as to that issue cannot possibly diverge.  "The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a) . . . ." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 626 n.20, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) (citation omitted).  Plaintiffs' and class members' shared interest is uniform: to prove Lilly omitted material information regarding Cymbalta withdrawal.  In addition, Plaintiffs are active participants in the litigation and are fully committed to vindicating their consumer rights and those of the class.  (Decls. of Saavedra, Jacquez, Matthews, Strafford ¶¶ 14-17.)

Precisely because Plaintiffs and their Counsel are committed to prosecuting this action vigorously, Plaintiffs move for issue certification under Rule 23(c)(4) in the alternative.  Plaintiffs and their Counsel are committed to advancing the issue at the heart of the issue class for the good of all Cymbalta consumers in the four states, even if it means the case would not advance as a 23(b)(3) class action.  Moreover, counsel for Plaintiffs, Keller Rohrback L.L.P., are experienced in successfully litigating federal class action cases.  (Woerner Decl., Ex. 5.)

As there are no conflicts between the proposed Issue Class members and the class representatives, and Plaintiffs and Plaintiffs' counsel have demonstrated their willingness and ability to litigate this matter on behalf of the Issue Class, the adequacy requirement is satisfied.

### c.   The Proposed Issue Class Satisfies Both Rule 23(b)(3) and (b)(2).

Under Rule 23(c)(4), the Ninth Circuit requires only that Plaintiffs meet the 23(b) requirements as to the *issue* for which they seek classwide treatment under

Rule 23(c)(4).  *Valentino*, 97 F.3d at 1234.  The proposed Issue Class satisfies the requirements of both 23(b)(3)  and (b)(2) because common issues necessarily predominate when the action is limited to particular issues, issue class certification is superior to individual adjudication or no adjudication of the matter at all, and injunctive relief is appropriate respecting the class as a whole.

### (i)   The Proposed Issue Class Satisfies the Requirements of Rule 23(b)(3)

Plaintiffs' proposed issue class satisfies Rule 23(b)(3) 's requirements of predominance and superiority because (a) it narrows the Court's focus to the common issue of whether Lilly's omissions regarding Cymbalta were materially misleading to reasonable consumers, and (b) classwide adjudication of this issue will promote judicial efficiency and allow consumers' claims to be heard.[8]

### (a)   The issue of Lilly's material omissions predominates by definition.

"[W]hen a Court chooses to limit class certification only to certain common issues under Rule 23(c)(4), those issues necessarily predominate and satisfy the first element of Rule 23(b)(3)." *Leib v. Rex Energy Operating Corp.*, 2008 WL 5377792, at *10 (S.D. Ill. Dec. 19, 2008) (certifying an issue class on the questions of whether the defendants polluted excessively and, if so, whether the pollution reached the class members' property); *accord Charron*, 269 F.R.D. at 241 (agreeing with *Leib* that a class certified under 23(c)(4) will necessarily satisfy the predominance requirement); 2 Newberg on Class Actions § 4:23 ("When a court decides to limit a class action with respect to particular common issues only, such limitation will necessarily afford predominance as to those issues.").  Here, because the proposed class is restricted to the common and core issue of whether

---

[8] Plaintiffs' burden under Rule 23(c)(4) requiring the issue class to satisfy the components of Rule 23(b)(3) is thus more easily met compared to the requirements under Rule 23(b) that the action as a whole meet the 23(b)(3) requirements.

Lilly's material omissions were misleading to a reasonable consumer, that issue necessarily predominates.

**(b)** **This issue class is superior because it is the only means for consumers to obtain redress**

In this consumer case, a class action is superior because "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234.  It is also superior because "no realistic alternative" to a class action exists.  *Id.* at 1234–35.  In deciding whether a class action would be a superior method for resolving the controversy, the Court will consider whether: (1) the class members' interests in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

*1. Interests in individually controlling separate actions*.  Class members' interests in individually controlling separate actions are limited.  This is a consumer class action, not a personal injury action.  In personal injury actions, plaintiffs allege severe injuries from pharmaceutical drugs and have correspondingly "large stakes in the litigation." *Sweet v. Pfizer*, 232 F.R.D. 360, 373 (C.D. Cal. 2005).  Here, though, the economic losses suffered by individual class members are not sufficient to warrant individual litigation, since the dollar amount spent by individual class members on Cymbalta is slight compared to the cost of litigating their claims in federal court.  (*See* Decls. of Saavedra, Jacquez, Matthews, and Strafford at ¶ 5, stating payments of $455.00, $165.00, $363.68, and $330.00.)  Realistically, the alternative to this class action is "no adjudication of the matter at all."  *See* 5 Moore's Federal Practice § 23.48[1] (1997).  As the

18

Supreme Court has stated, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (citation omitted).

Forcing claimants to individually litigate the misleading nature of Lilly's omissions would be costly, inefficient and effectively immunize Lilly from suit. "Scores of plaintiffs' attorneys would have to prepare largely duplicative trial materials and the Defendant would likely book expert witnesses for years to come." *In re Copley Pharm., Inc.*, 158 F.R.D. 485, 492 (D. Wy. 1994) (stating that "partial class certification is a better way"); *see also Miri v. Dillon*, --- F.R.D. ----, No. 11-15248, 2013 WL 2034310, at *11 (E.D. Mich. May 14, 2013) ("[T]his Court finds that a class action for liability purposes only is both a superior and manageable method of adjudication. It will provide significant economies of time, effort, and expense for the litigants and the Court in light of the predominance of common questions of fact and law regarding liability."). As the Fourth Circuit observed in *Gunnells*, "class certification in this case seems likely to reduce litigation costs through the 'consolidation of recurring common issues.'" *Gunnells*, 348 F.3d at 426 (quoting *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993)). When "[s]uch recurring common issues make up the heart of Plaintiffs' case," and "[p]roving these issues in individual trials would require enormous redundancy of effort, including duplicative discovery, testimony by the same witnesses in potentially hundreds of actions, and relitigation of many similar, and even identical, legal issues," issue class certification pursuant to Rule 23(c)(4) is superior to individual adjudication of all of the issues in Plaintiffs' claims. *Id*. Here, if all class members were to bring individual consumer suits, they would need to prove the same thing: that Lilly made material omissions regarding the withdrawal risk of its blockbuster drug to increase sales.

***2. Extent and nature of any litigation already begun.*** Plaintiffs are not aware of any other litigation involving consumer protection claims based on Lilly's marketing and labeling of Cymbalta.  While there exist personal injury cases related to Cymbalta, this consumer class action states separate theories of liability and will only bind class members with respect to claims brought under the states' consumer protection statutes.  *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1430 n.3, 185 L. Ed. 2d 515 (2013).  This factor also weighs in favor of certification.  *See, e.g.*, *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 489 (N.D. Cal. 2011).[9]

***3. Desirability of concentrating the litigation.***  Concentrating litigation of claims in this forum is appropriate because the Court has already made several preliminary rulings.  *See, e.g.*, *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004) (stating "it is desirable to concentrate claims in a particular forum when that forum has already handled several preliminary matters"); *Lehocky v. Tidel Technologies, Inc.*, 220 F.R.D. 491, 510–11 (S.D. Tex. 2004) (finding superiority requirement met in part because "the value of concentrating litigation in this forum is great as this Court has already made several rulings in this case thus far.").

***4. Likely difficulties in management.***  Certifying a class on only one issue necessarily pares down the class's complexity. And as Plaintiffs explain below, issue certification will streamline not only the class aspect of this action, but the action as a whole.  Rule 23(c)(4) exists precisely to allow judges the flexibility to make classwide adjudication more manageable while at the same time preserving its efficiencies—and that is its role here.

For all of these reasons, class certification with respect to particular issues pursuant to Rule 23(c)(4) represents a superior method of adjudication.

---

[9] Resolution of the issue Plaintiffs seek to certify could potentially facilitate the efficient adjudication of alternative theories of liability, but would not be controlling in other, unrelated litigation.

20

**(ii)    The Proposed Issue Class Satisfies the Requirements of Rule 23(b)(2) because it applies to the class as a whole**

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Here, Plaintiffs seek injunctive and declaratory relief for a nationwide class, namely that the Court declare Lilly's Cymbalta label misleading and enjoin Lilly from continuing to omit material information regarding withdrawal in its marketing and labeling.  (FAC ¶¶ 60-65.)  Since the labeling and advertising of Cymbalta was universally misleading as to withdrawal, correcting Lilly's omissions could likewise be achieved on a universal, classwide basis.

In the case of Cymbalta, there are numerous consumers who continue to purchase Cymbalta even though they have been deceived, precisely because of the material information Lilly omitted: Cymbalta causes physical dependence. Therefore, Plaintiffs respectfully request that the Court grant Plaintiffs leave to amend the Corrected First Amended Complaint to join a plaintiff who is currently still purchasing Cymbalta.  A plaintiff still purchasing Cymbalta would inherently have standing to address appropriate injunctive and declaratory relief since his or her interest in the labeling and advertising of Cymbalta would be ongoing. Plaintiffs continue to believe that their claims for declaratory and injunctive relief are suitable for class treatment pursuant to Rule 23(b)(2), because the labeling and advertising of Cymbalta can be corrected as to withdrawal risks on a classwide basis to prevent future patients from suffering the same fate.  (Order on Motion To Dismiss, Dkt. 52 at 13.)

Accordingly, certification of an Issue Class is appropriate here pursuant to either Rule 23(b)(3) or (b)(2).

### d.   Certification of an Issue Class Will Materially Advance the Litigation.

Although the Ninth Circuit has not held that certification of an Issue Class must be shown to materially advance the litigation, here there is no doubt that determination of whether Lilly's omission was material to a reasonable consumer will go far toward resolving this case.  If the Court were to determine that the warnings given to doctors, and consumers, were inadequate or misleading, the Court would resolve the substantive issue at the heart of each of the four subclasses' consumer protection claims.  "By quantum leaps, this approach will advance the resolution of plaintiffs' core claims on a class-wide basis."  *In re Motor Fuel*, 2013 WL 1397125, at *9.

If the Court certifies an issue class and Lilly prevails on a subsequent dispositive motion on that issue, the class action—and indeed the class's claims—will end.  Lilly should welcome issue certification.

If Plaintiffs prevail, the Court can determine the appropriate next step, which could involve certification of a (b)(3) class, or subsequent individual determinations of causation and damages.  Such subsequent individual determinations would be short and to the point, since the class action would already have settled the materiality and deceptiveness of Lilly's omissions. Claimants would testify that they were exposed to Lilly's marketing, be subject to cross-examination, and present evidence such as pharmacy receipts documenting out-of-pocket Cymbalta expenses.  This approach would "enable [the C]ourt to achieve the economies of class action treatment for a portion of the case," and would achieve just what Rule 23(c)(4) intends: whittling down class actions to manageability without sacrificing the efficiencies of the class device.  Manual for Complex Litigation 4th Sec. 21.24; *see also, e.g.*, *In re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005) ("This issue could be decided first and then individual hearings conducted," which would "be a more efficient procedure than litigating

the class-wide issue of Allstate's policy anew in more than a thousand separate lawsuits.") (citing Fed. R. Civ. P. 23(c)(4)(A)).

### e. Plaintiffs' Suggested Trial Plan

If, based on the limited record to date, the Court believes that individual issues outweigh common issues for each of Plaintiffs' four subclasses, Plaintiffs respectfully request in the alternative that the Court defer ruling on Plaintiffs' motion to certify these subclasses and certify a class pursuant to Rule 23(c)(4) limited to the fundamental common question of whether Lilly's representations regarding Cymbalta were materially misleading to a reasonable consumer.

If the Court certifies an Issue Class to resolve the fundamental question of whether Lilly's omissions were materially misleading to a reasonable consumer, subsequent proceedings will be limited.  Resolving the issue of Lilly's misleading conduct requires the resources to engage in significant factual development.  Once the facts are developed by class counsel and this core issue resolved, subsequent trials for causation and damages will be very short and may even be conducted by a magistrate.  Each plaintiff's trial need not take more than a day, during which the plaintiff would testify and be cross-examined regarding his or her exposure to Lilly's representations and total out-of-pocket Cymbalta expenditures.  The Court could, alternatively, schedule exemplary trials of randomly selected individual cases to inform settlement.  *See, e.g.*, *Barnes v. District of Columbia*, 278 F.R.D. 14 (D.D.C. 2011); *see also* Lahav Decl. ¶ 15.

### III.   CONCLUSION

The issue of whether Lilly's omissions were materially misleading to a reasonable consumer is fundamental to the resolution of Plaintiffs' consumer claims.  Moreover, an issue class would materially advance the litigation and promote judicial efficiency by resolving critical questions regarding Lilly's conduct, which is uniform across the classes.   Using an issue class action in a case

like this is practically mandated by the Federal Rules of Civil Procedure, which require "the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. Rule 1.  As Judge Friendly explained in *Weinberger v. Kendrick*, "The hallmark of Rule 23 is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the affected parties and to promote judicial efficiencies."  698 F.2d 61, 72 (2d Cir.1982) (citation omitted).  The best way to achieve justice for Plaintiffs and Defendant in this suit is to determine, on the merits, whether or not Lilly omitted the significant withdrawal risk of its blockbuster drug from its communications with consumers and physicians in order to increase sales.

Should the Court wish to defer certifying California, Missouri, New York, and Massachusetts Subclasses pursuant to Rule 23(b)(3) , the Court should take advantage of the flexibility and efficiency provided by Rule 23(c)(4) and certify a class limited with respect to the particular issue of whether Lilly's omissions regarding Cymbalta were materially misleading to a reasonable consumer.

DATED this 19th day of August, 2013.

KELLER ROHRBACK L.L.P.

\s\ Michael D. Woerner

Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com
Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384

Juli E. Farris, Esq. (CA Bar No. 141716)
jfarris@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496 / Fax:(805) 456-1497

Mark D. Samson, Esq., *admitted pro hac vice*
msamson@kellerrohrback.com
**KELLER ROHRBACK P.L.C.**
3101 N. Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088 / Fax: (602) 248-2822

Samuel S. Deskin, Esq.
sam@deskinlawfirm.com
**DESKIN LAW FIRM, PLC**
16944 Ventura Blvd, Office
Encino, CA 91316
Tel.:  (800) 709-8978 / Fax: (800) 709-8971

Harris L. Pogust, Esq.
hpogust@pbmattorneys.com
T. Matthew Leckman, Esq.
MLeckman@pbmattorneys.com
**POGUST BRASLOW MILLROOD LLC**
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel.:  (800) 897-8930 / Fax:  (610) 941-4245

*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I, Cate R. Brewer, hereby certify that on this 19th day of August, 2013, I caused true and correct copies of the foregoing:

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23(b)(3); PROPOSED ORDER; DECLARATION OF MICHAEL D. WOERNER, NAMED PLAINTIFF DECLARATIONS; DECLARATION OF JOSEPH GLENMULLEN, M.D.; DECLARATION OF ALEXANDRA D. LAHAV, J.D.; AND DECLARATION OF WILLIAM F. KITZES, J.D.**

to be served on the below-listed counsel via the court's CM/ECF system electronically.

Clara J. Shin (CA Bar No. 214809)
cshin@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Tel: (415) 591-7058
Fax: (415) 955-6558

Phyllis A. Jones
pajones@cov.com
Mark H. Lynch
mlynch@cov.com
Colleen Kelly
ckelly@cov.com
Michael X. Imbroscio
mimbroscio@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Tel: 202-662-5868
Fax: 202-778-5868

*Attorneys for Defendant Eli Lilly and Company*

\s\ Cate R. Brewer
Cate R. Brewer, Legal Assistant