**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNIFER L. SAAVEDRA, DR. MELISSA STRAFFORD, CAROL JACQUEZ, and DAVID MATTHEWS, JR., on behalf of themselves and all other persons similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>        Defendant. | No. 2:12-cv-09366-SVW(MANx)<br><br>**CLASS ACTION**<br><br>**THE HONORABLE STEPHEN V. WILSON** |

## DECLARATION OF ALEXANDRA D. LAHAV

## IN SUPPORT OF CLASS CERTIFICATION

1. I am the Joel Barlow Professor at the University of Connecticut School of Law where I teach Civil Procedure, Complex Litigation and related courses. I am submitting this declaration in support of plaintiff's motion for certification of a 23(C)(4) issue class action. I am offering my opinions and analysis for the Court's consideration based on my background and experience, recognizing that my role is limited and the Court will make the ultimate decision.

**Qualifications**

2. I joined the University of Connecticut in 2004. Prior to that I was a teaching fellow at Stanford Law School from 2002-2004, and before then was associated

with a small firm now called Emery Celli Brinckerhoff & Abady, LLC and clerked for Justice Alan Handler of the New Jersey Supreme Court. I have also been a visiting professor at Columbia, Fordham and Tel Aviv University Law Schools. In my academic career I have focused on the study of class actions and aggregate litigation. My articles on these topics have been published in high ranking law reviews, including most recently Vanderbilt Law Review, Texas Law Review and UCLA Law Review. My work has been cited in a number of United States District Court Opinions. *See, e.g.,* D.S. ex rel. S.S. v. New York City Dept. of Educ., 255 F.R.D. 59, 64 (E.D.N.Y. 2008); Malibu Media, LLC v. John Does 1-16, 2012 WL 4717893, *12, 2012 Copr.L.Dec. P 30, 324 (E.D.Pa. 2012); Mwani v. Laden, 2013 WL 2325166, at *5 (D.D.C. 2013); In re Heartland Admin. Payment Systems Customer Data Sec. Breach Litig., 2012 WL 948365, at *39 (S.D.Tex. Mar 20, 2012) (NO. MDL 09-2046)). I have been cited in the ALI *Principles of the Law of Aggregate Litigation* § 2.02 (2012) and Wright & Miller's *Federal Practice and Procedure* treatise. I am the co-author (with Martha Minow, Steve Subrin, Mark Brodin and Thomas Main) of a casebook currently used in 36 law schools by over 50 law professors: *Civil Procedure, Doctrine, Practice and Context* (Aspen, 4th ed. 2012). I also co-author a yearly review of class action developments with John C. Coffee, Jr., Adolf A. Berle Professor of Law at Columbia Law School, which

keeps me up to date on the latest developments in class action jurisprudence. I frequently present to lawyers and legal academics on class action topics. For example, I am slated to present at the ABA's 17th Annual Class Action Institute in October 2013 in Boston, MA. Additional information regarding my qualifications and experience—including a complete list of my publications—can be found in my curriculum vitae, attached hereto as Exhibit A.

3. I offer this report solely in my capacity as a class action scholar, not in my capacity as an employee of the State of Connecticut.

4. I have reviewed numerous pleadings, orders, briefs, and exhibits in this case, which form the basis of this declaration.

**Assessment of Issue Class Certification**

5. Plaintiffs seek to certify this case as an issue class action under Rule 23(c)(4). This section of the Class Action Rule allows the court to certify certain issues for class treatment although the case as a whole may be unsuitable for a class action. It is my opinion that the question of whether the defendants' omissions regarding the drug Cymbalta were misleading is appropriate for issue class certification based on existing precedent in this Circuit as well as the recommendations and analysis of the American Law Institute's *Principles of*

*the Law of Aggregate Litigation* §§2.02-05 (2012) and the Federal Judicial

Center's *Manual on Complex Litigation* (4th) §21.24.

6. Rule 23(c)(4) is the subject of a circuit split concerning whether an issue class

action can be certified if the underlying action could not be certified as a whole.

The Ninth Circuit has squarely held that the court need only look at whether the

issue itself may be certified. Valentino v. Carter-Wallace, 97 F.3d 1227 (9th

Cir. 1996). This is a sensible approach because if an issue class action could

not be certified absent certification of the entire action, 23(c)(4) would be a

superfluous provision. The general principle of statutory interpretation to avoid

surplusage supports the Ninth Circuit's interpretation. Board of Trustees of

Leland Stanford Junior Univ. v. Roche Molecular Systems, Inc., 131 S.Ct.

2188, 2196, (2011) (describing the Court's reluctance to "treat statutory terms

as surplusage.") At least three other Circuits are in agreement. *See* In re

Nassau County Strip Search Cases, 461 F.3d 219 (2d Cir. 2006); Gunnells v.

Healthplan Servs., Inc., 348 F.3d 417 (4th Cir. 2003); McReynolds v. Merrill

Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482 (7th Cir. 2012). For

contrary authority see Castano v. Am. Tobacco Co., 84 F.3d 734 (5th Cir.

1996).

7. Accordingly, the Court should apply the requirements of Rule 23(a) and (b) to

the issue class proposed: "whether or not Eli Lilly's omissions regarding

Cymbalta were materially misleading under the state laws of Missouri, New York, Massachusetts, and California." *See* Valentino v. Carter-Wallace, 97 F.3d 1227, 1234 (9th Cir. 1996) (applying both 23(a) and (b)(3) requirements). That is, a Court certifying an issue class action ought to determine whether, with respect to this issue, the class is sufficiently numerous, presents a question of fact or law common to all class members, whether the representatives are typical of class members and will adequately represent them. The Rule 23 (a) and (b)(3) requirements are squarely met for this proposed class action.

8. **23(b)(3) predominance.** In cases such as this one there is no real predominance analysis to do because only one issue is presented. The single issue to be certified must predominate over other issues as a logical matter because it is the only issue. However, there may be cases where the concerns to which the predominance requirement of 23(b)(3) are geared become relevant. This will be the case in, for example, a liability-only class action where proof of causation may present individual issues that predominate over common questions. Such concerns have been raised in the products liability or damages context, but are not relevant in consumer suits where individualized damages are not at issue. *See* In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation, --- F.3d ----, 2013 WL 3746205, *17-18 (6th Cir. 2013) (explaining inapplicability of predominance concerns over damages issues to a

liability-only consumer class action).  Because this is a consumer action where the single class-wide issue concerns the defendant's uniform conduct toward the plaintiff class, the predominance requirement is easily met.

9. This action aims to determine a question that is based solely on defendants' conduct and for this reason is particularly well suited to class treatment.  The only question here concerns the nature of the omissions that the defendant made to patient-consumers.  When the issue to be decided involves the defendant's uniform conduct, most commentators agree it is appropriate for class treatment. For example, the Reporters for the ALI *Principles of the Law of Aggregate Litigation* explain: "accumulated experience with the class-action device suggests that aggregate treatment of a common issue will materially advance the resolution of multiple civil claims more frequently when the issue concerns 'upstream' matters focused on the generally applicable conduct of those opposing the claimants in the litigation, as distinct from 'downstream' matters focused on those claimants themselves." Reporter's Notes, §2.02.  This case presents a classic "upstream" matter: what did defendant know, what did it disclose and what would a reasonable consumer understand based on those disclosures?

10. **23(b)(3) superiority.**  A second relevant question in this context is whether the class action is superior to other forms of litigation.   Superiority in the issue

class context can be split into two inquiries. First, whether the issue class proposed will "materially advance the litigation." Second, whether the plaintiff class has a viable alternative to the class action.

11. **Materially advances the litigation.** In the *Principles of the Law of Aggregate Litigation*, the ALI suggests that "In exercising this discretion, courts should consider whether aggregate treatment of a common issue by way of a class action will *materially advance* the resolution of multiple civil claims by addressing the *core of the dispute*...." §202, Comment a (emphasis added). The *Manual on Complex Litigation* similarly suggests that issues class should be permitted "only if it permits fair presentation of the claims and defenses and *materially advances* the disposition of the litigation as a whole." *Manual for Complex Litigation* (4th) § 21.24, at 273 (2004) (emphasis added).     Thus although the rule does not expressly require that the issue class materially advance the litigation, some courts have undertaken this analysis. This approach fits in with the general idea of superiority in that a class action that  does not materially advance the litigation is likely to be a waste of the court's resources and therefore not superior to proceeding individually.

12. This issue class action will materially advance the litigation because it concerns a core issue in the litigation: the question of whether the defendants' omission was misleading to the reasonable consumer.  This question will need to be

answered in every single consumer suit and, importantly, will be dispositive of those suits. Neither the class action rule nor case law requires that an issue class action must be dispositive to be certified. *See, e.g.,* ALI, *Principles of the Law of Aggregate Litigation* §203, Comment b ("Liability issues suitable for class-action treatment under subsection (a) might encompass the entire range of elements necessary to establish the defendant's liability to all claimants or only particular elements of claims.") This class action presents only one element of the claim, but that element is dispositive and is therefore material to the resolution of the litigation.

13. Also relevant to the question of whether the issue class materially advances the litigation is what happens once the issues presented are decided. Would the determination have a preclusive effect on future litigation, for example? While this court cannot make a definitive determination regarding the preclusive effect of its own rulings, this is a consideration in determining the usefulness and efficiency of certifying an issue class action. *See* ALI, *Principles of the Law of Aggregate Litigation*, §2.02, Comment e ("The decision to pursue aggregate treatment accordingly must take place with close attention to both the potential claim-preclusive and issue-preclusive effects of determinations made in the aggregate proceeding."). If an issue class is certified, the determination regarding the defendant's representations will be binding on all members of the

plaintiff class who did not opt out. Taylor v. Sturgell, 553 U.S. 880, 897-98 (2008) (affirming that non-party may be precluded where adequately represented, as in a class action certified pursuant to Fed. R. Civ. P. 23).

14. Should the court make class-wide determination that the defendant's omissions were misleading, individual plaintiff class members will still be required to prove that they purchased Cymbalta and how much they ought to be reimbursed for that purchase. If a money damages class is not certified, the plaintiff class members will need to file individual suits. To the extent these suits are consolidated before this court, the most efficient way to resolve them will be to schedule bellwether trials of randomly chosen cases in order to inform settlement. *See* Alvin K. Hellerstein, et al., *Managerial Judging: The 9/11 Responders' Tort Litigation*, 98 Cornell L. Rev. 127, 179 (2012) (describing use of bellwether trials to resolve aggregate litigation); Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2367 (2008) (advocating bellwether trials for informational purposes); Alexandra D. Lahav, *Bellwether Trials*, 76 Geo. Wash. L. Rev. 576 (2008) (advocating use of bellwether trials in binding class action litigation). As the titles of these articles indicate, bellwether trials have largely been used in the mass tort or products liability context because these large, aggregative cases have had difficulty settling absent more information about the value of the litigation, which can be

obtained by holding some number of trials. By contrast, consumer suits where the damages are more easily calculated (even in cases where the suit as a whole cannot be certified as a class action) are much easier to settle once liability has been determined. For this reason we have not seen bellwether trials used in the consumer context; these cases tend to settle before a trial plan can be established. Although it has not been done before, a bellwether trial plan for a consumer case would be expeditious and relatively easy to set up. District judges, with judicious management, have been able to use bellwether trials to resolve complex and sprawling mass tort litigation such as the 9/11 First Responders litigation or the Vioxx litigation. A consumer litigation arising out of overpayment for a drug is straightforward by comparison.

15. **Realistic alternatives.** In approving certification of an issue class action for the determination of liability in a consumer law case, the Sixth Circuit explained that importance of whether there is a realistic alternative to litigation for the plaintiff class. This is an important component of the superiority inquiry. In any consumer class action there is not likely to be a realistic alternative to class treatment, and that appears true in this case as well. The cost of litigating the question of whether the defendant's omission was misleading will likely greatly exceed any possible recovery. "Use of the class method is warranted particularly because class members are not likely to file

individual actions-the cost of litigation would dwarf any potential recovery." In re Whirlpool, 2013 WL 3746205 at \*18.  The Ninth Circuit has taken a similar position. *See* Levya v. Medline Indus., 716 F3d 510, 515 (9th Cir. 2013) (when considering superiority and manageability, the court should consider alternatives available to plaintiffs).  The Supreme Court has again and again underscored the use of the class action device for consumers who would otherwise find themselves without a means of vindicating their rights.   *See, e.g.,* Amgen Inc. v. Connecticut Retirement Plans and Trust Funds, 133 S. Ct. 1184, 1202 (2013) (recognizing the importance of private securities suits as a complement to governmental action); Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 617 (1997) ("'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" (*quoting* Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)).  A consumer case is unlike products liability cases where plaintiffs can allege significant damages and if they win recover enough to be able to pay a sizable contingency fee.  Consumer cases were the reason that money damages class actions were adopted. Benjamin Kaplan, Reporter to the Rules Committee that drafted the class action rule, explained that a chief purpose of class action rule was "to provide means of vindicating the rights of groups of people who

individually would be without effective strength to bring their opponents into court at all." *See* Benjamin Kaplan, *A Prefatory Note*, 10 B.C. Indus. & Com. L. Rev. 497, 497 (1968). In the absence of issue class certification, consumers who took Cymbalta will not have a realistic opportunity to litigate their claim that the defendant's omission regarding the withdrawal effects of the drug was misleading because pursuing a lawsuit would be too costly.

16. In conclusion, this 23(c)(4) class is safely within what the language Rule 23 permits and is consistent with what the class action procedure was intended to achieve.

17. I declare the foregoing is based on information known to me and that it is true and accurate to  the best of my knowledge, subject to the laws against perjury pursuant to 28 U.S.C. § 1746.

Alexandra D. Lahav

August 2013