Clara J. Shin, SB #214809
E-mail:cshin@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-7058
Facsimile: (415) 591-6091

Mark H. Lynch (*admitted pro hac vice*)
E-mail:mlynch@cov.com
Michael X. Imbroscio (*admitted pro hac vice*)
E-mail:mimbroscio@cov.com
Phyllis A. Jones (*admitted pro hac vice*)
E-mail:pajones@cov.com
Colleen A. Kelly (*admitted pro hac vice*)
E-mail:ckelly@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Attorneys for Defendant
ELI LILLY AND COMPANY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER L. SAAVEDRA, et al., on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>Defendant. | No. 2:12-cv-09366-SVW-MAN<br><br>DEFENDANT ELI LILLY AND COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION FOR ISSUE CERTIFICATION PURSUANT TO RULE 23(c)(4)<br><br>Date:     September 17, 2013<br>Time:     1:30 p.m.<br>Location: Courtroom 6<br>Judge:    Hon. Stephen V. Wilson |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 3

I.    PLAINTIFFS BEAR A HEAVY BURDEN TO DEMONSTRATE THAT ISSUE CERTIFICATION UNDER RULE 23(C)(4) IS APPROPRIATE. ................................................................................... 3

II.   ISSUE CERTIFICATION UNDER RULE 23(C)(4) IS NOT APPROPRIATE HERE. ........................................................................... 4

    A.   Rule 23(b)(3)'s superiority requirement is not satisfied because an issue class would not materially advance the litigation. ................... 4

    B.   Plaintiffs' request for certification of an issue class under Rule 23(b)(2) is an attempt to circumvent the Court's earlier dismissal of their claims for injunctive and declaratory relief .............. 8

III.  THE COURT SHOULD DISREGARD THE DECLARATION OF ALEXANDRA D. LAHAV. ................................................................... 9

CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Aguilar v. Int'l Longshoremen's Union Local # 10,
 966 F.2d 443 (9th Cir. 1992) ............................................................................ 9

Aronson v. McKesson HBOC, Inc.,
 79 F. Supp. 2d 1146 (N.D. Cal. 1999) ............................................................. 2

Cattie v. Wal-Mart Stores, Inc.,
 504 F. Supp. 2d 939 (S.D. Cal. 2007) .............................................................. 8

Clark v. Experian Info. Solutions, Inc.,
 256 F. App'x 818 (7th Cir. 2007) ..................................................................... 6

Dhamer v. Bristol-Myers Squibb Co.,
 183 F.R.D. 520 (N.D. Ill. 1998) ....................................................................... 6

Fisher v. Bristol-Myers Squibb Co.,
 181 F.R.D. 365 (N.D. Ill. 1998) ....................................................................... 6

Gable v. Nat'l Broad. Co.,
 727 F. Supp. 2d 815 (C.D. Cal. 2010) .................................................... 2, 9, 10

Haley v. Medtronic, Inc.,
 169 F.R.D. 643 (C.D. Cal. 1996) ..................................................................... 6

Hodgers-Durgin v. de la Vina,
 199 F.3d 1037 (9th Cir. 1999) .......................................................................... 8

In re Baycol Prods. Litig.,
 218 F.R.D. 197 (D. Minn. 2003) .................................................................. 5, 6

In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.,
 MDL No. 1967, 2011 WL 6740338 (W.D. Mo. Dec. 22, 2011) ...................... 5

In re McKesson HBOC, Inc. Sec. Litig.,
 126 F. Supp. 2d 1239 (N.D. Cal. 2000) ......................................................... 10

In re Paxil Litig.,
 212 F.R.D. 539 (C.D. Cal. 2003) .................................................................. 3, 5

In re St. Jude Med. Inc. Silzone Heart Valve Prods. Liab. Litig.,
   522 F.3d 836 (8th Cir. 2008)...................................................................5

In re Tetracycline Cases,
   107 F.R.D. 719 (W.D. Mo. 1985)............................................................5

McLaughlin v. American Tobacco Co.,
   522 F.3d 215 (2d Cir. 2008)..................................................................6, 7

Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,
   523 F.3d 1051 (9th Cir. 2008)..................................................................9

Pinal Creek Grp. v. Newmont Mining Corp.,
   352 F. Supp. 2d 1037 (D. Ariz. 2005).....................................................10

United States v. Weitzenhoff,
   35 F.3d 1275 (9th Cir. 1993).....................................................................9

Valentino v. Carter-Wallace, Inc.,
   97 F.3d 1227 (9th Cir. 1996)..................................................................2, 3

Waterman v. Experian Info. Solutions, Inc.,
   No. CV 12-01400 SJO, 2013 WL 675764 (C.D. Cal. Feb. 25, 2013).......2

Zinser v. Accufix Research Inst., Inc.,
   253 F.3d 1180 (9th Cir. 2001)...................................................................3

Other Authorities

Fed. R. Civ. P. 23(b)(2)....................................................................................8

Fed. R. Civ. P. 23(b)(3).........................................................................1, 2, 4

Fed. R. Civ. P. 23(c)(4)............................................................................*passim*

7AA Wright, et al., Fed. Prac. & Proc. Civ. § 1790 (3d ed.)...........................4

Joseph M. McLaughlin, McLaughlin on Class Actions § 4:43 (2012)........4, 5

# INTRODUCTION

Plaintiffs' second motion for "issue certification" anticipates that the Court might likely conclude that their four proposed subclasses do not meet the predominance requirement under Rule 23(b)(3). To head off such a case-ending ruling, Plaintiffs propose that the Court defer resolving the Rule 23(b)(3) issues and certify an issue class under Rule 23(c)(4) on whether Lilly's alleged misrepresentations are material. (Dkt. #74, at 1, 24.)

The Court should decline to consider Plaintiffs' second Rule 23 class certification motion on two threshold grounds, without reaching its dubious merits. First, it is superfluous. In its June 13 Order, the Court directed the parties to brief class certification on the assumption that Lilly's warnings to doctors were inadequate. (Dkt. # 72, at 8 ("For the purposes of the class certification motion, the parties should assume that Plaintiffs will be able to prevail on their contention that the warnings given to physicians were inadequate.").)[1] Given this direction, Plaintiffs' motion for issue certification under Rule 23(c)(4) is puzzling because, at best, it would advance the litigation only to a stage that this Court has instructed the parties to assume exists.

Second, Plaintiffs' Rule 23(c)(4) motion facially violates the Central District of California Local Rules and this Court's standing order limiting briefs to 25 pages. See L.R. 11-6 ("No memorandum of points and authorities . . . shall exceed 25 pages in length, . . . unless permitted by order of the judge."); (Dkt. # 10, New Case Order, at 2 ("Memoranda of Points and Authorities in support of or in opposition to motions shall not exceed 25 pages. . . . These are maximum page limits.").) Without seeking leave of Court, Plaintiffs have unilaterally

---

[1] Lilly recognizes that this assumption is an effective case management technique to efficiently resolve the issues raised on class certification but is confident that it can demonstrate that the Cymbalta discontinuation warning is adequate.

1

increased their briefing on class certification to 50 pages simply by dividing their motion into two parts. Waterman v. Experian Info. Solutions, Inc., No. CV 12-01400 SJO (PLAx), 2013 WL 675764, at *1 n.1 (C.D. Cal. Feb. 25, 2013) (declining to read brief beyond page limitation). Additionally, Plaintiffs have filed a 12-page memorandum written by law professor Alexandra D. Lahav. (Dkt. # 82.) Although cast as an expert declaration, Professor Lahav's submission is effectively an unauthorized *amicus curiae* brief opining on legal issues squarely within the province of the Court. See Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1158 n.13 (N.D. Cal. 1999) (characterizing a law professor's "declaration" as an improper *amicus curiae* brief). As this Court has previously held, "an expert may not state his or her opinion as to legal standards, nor may he or she state legal conclusions drawn by applying the law to the facts." Gable v. Nat'l Broad. Co., 727 F. Supp. 2d 815, 835 (C.D. Cal. 2010) (J. Wilson) (citations and internal quotation marks omitted). The Court should not tolerate Plaintiffs' audacious attempt to file 62 pages of briefing in support of class certification.[2]

Even if the Court chooses to look past these procedural violations, issue certification under Rule 23(c)(4) is nevertheless inappropriate. An issue class is not the superior method of litigating Plaintiffs' claims because determining whether Lilly's warnings were misleading would not materially advance the litigation. See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1229 (9th Cir. 1996). Even if the warnings were deemed misleading through such a separate adjudication, class members would still be required to prove causation through the "individualized assessments" necessary under the learned intermediary doctrine, as the Court has already held. (June 13 Order, Dkt. # 72, at 6-7.) Such a drawn-

---

[2] This brief is limited to opposing Plaintiffs' second, unauthorized motion, and Lilly does not use this brief to improperly expand the page limits on its opposition to Plaintiffs' Rule 23(b)(3) motion.

out undertaking on the issue of whether the label is misleading, even if unfavorable to Lilly, would do nothing more than put the parties exactly where they are today: back to square one grappling with the fact that individualized determinations will drive the outcome of this litigation. Delaying that result through a lengthy issue class proceeding makes no procedural or case management sense.

Plaintiffs' suggested "trial plan" betrays the costly inefficiency of their proposal. In Plaintiffs' view, once an issue class is certified, there will be simply a "mini-trial" process to resolve each class member's claims. By Plaintiffs' own admission, the proposed class could include over one million plaintiffs. (Dkt. # 73, at 4.) The prospect of hundreds of thousands of "mini-trials" on causation, injury, and damages renders the action unsuitable for class certification. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001) ("If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'"). Certifying an issue class would impose dramatic administrative burdens upon the Court and render the case unmanageable.

## ARGUMENT

### I. PLAINTIFFS BEAR A HEAVY BURDEN TO DEMONSTRATE THAT ISSUE CERTIFICATION UNDER RULE 23(C)(4) IS APPROPRIATE.

Plaintiffs bear the burden of demonstrating that issue certification will "significantly advance the resolution of the underlying case, thereby achieving judicial economy and efficiency." Valentino, 97 F.3d at 1229; see also In re Paxil Litig., 212 F.R.D. 539, 543 (C.D. Cal. 2003) (noting that "courts have refused to apply Rule 23(c)(4) when such application would not significantly advance the litigation"). Courts have generally rejected issue certification "where the common issues are inextricably tied to the individual issues" or "where the individual issues still make the case unmanageable." In re Paxil Litig., 212 F.R.D. at 543 (citations

omitted); see 7AA Wright, et al., Fed. Prac. & Proc. Civ. § 1790 (3d ed.) (noting that certification is improper if "noncommon issues are inextricably entangled with the common issues, or . . . the noncommon issues are too unwieldy or predominant" to be handled adequately on a class action basis). Here, Plaintiffs are unable to meet their heavy burden of establishing that issue certification will significantly advance resolution of the underlying cases given that individual assessments on causation permeate.

II. **ISSUE CERTIFICATION UNDER RULE 23(C)(4) IS NOT APPROPRIATE HERE.**

Under Rule 23(c)(4), Plaintiffs seek to certify the issue of whether Lilly's warnings regarding Cymbalta discontinuation symptoms were misleading. (Dkt. # 74, at 4.) Plaintiffs assert that the proposed issue class satisfies the requirements of Rule 23 and will materially advance the litigation as a whole. (Id. at 11-23.) Plaintiffs are mistaken. Issue certification will not advance the litigation because, even if the process results in a determination that Lilly's warnings were inadequate, the Court and the parties will still face the overwhelming individualized inquiries required to determine causation and injury for each of thousands (or potentially millions) of class members in this case.

A. Rule 23(b)(3)'s superiority requirement is not satisfied because an issue class would not materially advance the litigation.

"[I]ssue certification should never be undertaken lightly, or used to 'fix' manifest Rule 23(b)(3) predominance problems presented where key issues going to liability require individualized proof." Joseph M. McLaughlin, McLaughlin on Class Actions § 4:43 (2012). As demonstrated in Lilly's opposition to class certification under Rule 23(b)(3), establishing liability under the six consumer protection statutes requires individualized evidence. Under these statutes, Plaintiffs must demonstrate not only that Lilly's warnings were misleading, but also that the alleged omissions caused their economic injuries. To prove causation

under the learned intermediary doctrine, Plaintiffs must demonstrate that Lilly's alleged omissions caused their treating physicians to prescribe Cymbalta. Put differently, Plaintiffs must demonstrate that but for Lilly's alleged omissions, their treating physicians would not have prescribed Cymbalta. Specifically, as the Court stated in its June 13 order, each Plaintiff must prove that his or her treating physician was misled by the warnings, had no independent knowledge of discontinuation symptoms, and would have changed his or her prescribing decision had the warnings been adequate. (Dkt. #72, at 6-7.) Thus, numerous individualized assessments are necessary to demonstrate causation in this case.

These issues will remain after the proposed adjudication of the adequacy of Lilly's warnings, and they will continue to predominate and make this case unmanageable as a class action. See In re Paxil Litig., 212 F.R.D. at 543 (noting that Rule 23(c)(4) issue classes are rejected "where the individual issues still make the case unmanageable"); McLaughlin on Class Actions § 4:43 ("Issue certification is inappropriate if the issues left behind for individual determinations are so significant that common proceedings will not materially advance the conclusion of the litigation.").

Faced with similar requests, numerous courts have concluded that Rule 23(c)(4) issue classes are inappropriate where "the existence of a large number of individual issues would remain for resolution despite a trial on the common issues." In re Tetracycline Cases, 107 F.R.D. 719, 733, 735 (W.D. Mo. 1985).[3]

---

[3] See, e.g., In re St. Jude Med. Inc. Silzone Heart Valve Prods. Liab. Litig., 522 F.3d 836, 841 (8th Cir. 2008) (noting that courts have declined to certify issue classes "where the predominance of individual issues is such that limited class certification would do little to increase the efficiency of the litigation"); In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig., MDL No. 1967, 2011 WL 6740338, at *9 (W.D. Mo. Dec. 22, 2011) (stating that "[i]ssue certification would do little to increase the efficiency of this litigation" because "key questions regarding liability . . . will be left unanswered . . ."); In re Baycol Prods. Litig., 218 F.R.D. 197, 209 (D. Minn. 2003) ("[C]ertification under (c)(4) will not make the case more manageable, as . . . individual trials will still be (continued...)

For instance, in a closely analogous case, plaintiff brought suit against a pharmaceutical manufacturer, alleging that it deceptively omitted the dangers of its prescription drug Stadol. Fisher v. Bristol-Myers Squibb Co., 181 F.R.D. 365, 367 (N.D. Ill. 1998). Plaintiff asserted a claim under the Illinois Consumer Fraud Act, as well as other product liability claims. The court determined that the causation inquiry under the consumer fraud claim would "involve innumerable individual questions." Id. at 372. The court declined to certify an issue class as to "whether the defendants' conduct was deceptive." Id. at 372-73. The court explained that "each prospective plaintiff is going to be involved in extensive individualized proceedings regardless of whether we certify a class on the consumer fraud liability questions or not." Id. at 373. "Each plaintiff will have to prove causation and damages for their [consumer] fraud claim in a separate proceeding[.] . . . In this setting, little efficiency is gained by singling out one or two discrete issues for class treatment." Id. The court concluded that an issue class was not a superior method of resolving the controversy. See also Dhamer v. Bristol-Myers Squibb Co., 183 F.R.D. 520, 533 (N.D. Ill. 1998) (quoting Fisher's reasoning and refusing to certify a Rule 23(c)(4) issue class).

Additionally, in McLaughlin v. American Tobacco Co., 522 F.3d 215 (2d Cir. 2008), plaintiffs brought RICO claims against cigarette manufacturers, alleging that the deceptive advertising of "light" cigarettes caused their economic injuries. Id. at 220. The Second Circuit declined plaintiffs' request for issue

---

required to determine issues of causation, damages, and applicable defenses."); Haley v. Medtronic, Inc., 169 F.R.D. 643, 656 (C.D. Cal. 1996) (declining to certify an issue class because an approach where "only certain elements of some causes of actions are heard, seems inherently complicated and incredibly inefficient"); see also Clark v. Experian Info. Solutions, Inc., 256 F. App'x 818, 822 (7th Cir. 2007) ("Because of the need for individualized findings in such a large class, little efficiency would be gained by certifying a class for only particular issues.").

certification, because "given the number of questions that would remain for individual adjudication, issue certification would not reduce the range of issues in dispute and promote judicial economy." Id. at 234 (citation and internal quotation marks omitted). The court noted, for example, that certifying "the issue of defendants' scheme to defraud[] would not materially advance the litigation because it would not dispose of larger issues such as reliance, injury, and damages." Id.

Similarly, in the instant case, issue certification is not a superior method of adjudicating Plaintiffs' claims. If an issue class is certified with respect to whether Lilly's warnings were misleading, numerous individualized issues of causation, injury, and damages would be left unresolved. According to Plaintiffs' proposed trial plan, after the adjudication of the warnings issue, the case would degenerate into thousands of mini-trials on individual issues — or hundreds of thousands if Plaintiffs' numerosity claims are to be believed.[4] Each class member and each class member's treating physicians would need to testify and be cross-examined. Plaintiffs seek to assure the Court that "[e]ach plaintiff's trial need not take more than a day" (Dkt. # 74, at 23), an ambitious prediction given the complex medical issues at the heart of these claims. Even assuming that this is true, it would take years to adjudicate all of the class member's claims. Issue certification would thus not increase efficiency and would make the case unmanageable, creating significant burdens for the Court.

---

[4] Plaintiffs acknowledge that "subsequent individual determinations of causation and damages" would need to be made after the resolution of the warnings issue. (Dkt. # 74, at 22.)

B. **Plaintiffs' request for certification of an issue class under Rule 23(b)(2) is an attempt to circumvent the Court's earlier dismissal of their claims for injunctive and declaratory relief.**

Plaintiffs also assert that certification of an issue class under Rule 23(b)(2) is appropriate because "the labeling and advertising of Cymbalta was universally misleading," and this Court could "[correct] Lilly's omissions" by granting injunctive and declaratory relief for the class as a whole. (Dkt. # 74, at 21.) Plaintiffs' argument relating to Rule 23(b)(2) contravenes this Court's February 26, 2013 Order, where the Court dismissed Plaintiffs' request for declaratory and injunctive relief due to lack of standing. (Dkt. # 52, at 13.) The Court explained that "Plaintiffs have failed to allege that they intend to purchase Cymbalta in the future," and, "even if they did, they now know about the possibility of the side-effects." (Id.) Because Plaintiffs themselves cannot seek declaratory and injunctive relief, Plaintiffs cannot represent a class seeking that relief. See Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999).

Furthermore, the Court should reject Plaintiffs' request for leave to amend the Corrected First Amended Complaint to join a plaintiff who is still purchasing Cymbalta. (Dkt. # 74, at 21.) A new plaintiff could not join the litigation and serve as an adequate class representative without learning about the details of Plaintiffs' allegations. That individual could not then realistically assert that he or she would be harmed in the future. See Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) (stating that "it is unclear how prospective relief will redress [plaintiff's] injury, since she is now fully aware of the [defendant's alleged false advertising]"). Therefore, such a new plaintiff would likewise lack standing to sue for declaratory and injunctive relief.

## III. THE COURT SHOULD DISREGARD THE DECLARATION OF ALEXANDRA D. LAHAV.

In support of their Rule 23(c)(4) motion, Plaintiffs submit the expert declaration of Alexandra D. Lahav, a Professor at the University of Connecticut School of Law, who focuses "on the study of class actions and aggregate litigation." (Lahav Decl. at 1-2.) In her declaration, Professor Lahav purports to apply the legal standards for Rule 23(c)(4) issue certification to the facts before the Court. (Id. at 2-12.) Based on this analysis, Professor Lahav concludes that "the question of whether the defendants' omissions regarding the drug Cymbalta were misleading is appropriate for issue class certification based on existing precedent in this Circuit." (Id. at 3.)

This Court should decline to consider Professor Lahav's declaration. It is well established that experts cannot provide their opinions on issues of law. As many courts have explained, the articulation of legal standards and legal conclusions is the exclusive province of the trial judge, and therefore expert opinions on questions of law are inadmissible. See, e.g., Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1058 (9th Cir. 2008) (stating that "an expert witness cannot give an opinion as to her legal conclusion") (emphasis, citation, and internal quotation marks omitted); United States v. Weitzenhoff, 35 F.3d 1275, 1287 (9th Cir. 1993) ("Resolving doubtful questions of law is the distinct and exclusive province of the trial judge.") (citation and internal quotation marks omitted); Aguilar v. Int'l Longshoremen's Union Local # 10, 966 F.2d 443, 447 (9th Cir. 1992). Because Professor Lahav's declaration consists solely of her legal opinions as to the applicable law and the viability of Plaintiffs' Rule 23(c)(4) motion, the Court should conclude that her declaration is inadmissible. See Gable,

9

727 F. Supp. 2d at 835-36 (concluding that portions of a law professor's expert report on Ninth Circuit law constituted inadmissible legal conclusions).[5]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for issue certification should be denied.

DATED: August 26, 2013

Respectfully submitted,

COVINGTON & BURLING LLP

By: /s/ Clara J. Shin
Clara J. Shin
Mark H. Lynch
Michael X. Imbroscio
Phyllis A. Jones
Colleen A. Kelly
Attorneys for Defendant
ELI LILLY AND COMPANY

---

[5] See also Pinal Creek Grp. v. Newmont Mining Corp., 352 F. Supp. 2d 1037, 1044 (D. Ariz. 2005) (determining that the professor's expert report "offers nothing other than a discussion of the law and an application of the law," "reads more like a legal brief," and therefore "constitutes inadmissible legal opinion"); In re McKesson HBOC, Inc. Sec. Litig., 126 F. Supp. 2d 1239, 1246-47 (N.D. Cal. 2000) (striking three declarations from law professors because "expert affidavits on questions of law are improper").