DECLARATION OF JOSEPH GLENMULLEN, M.D.

I, Joseph Glenmullen, M.D., do hereby declare and state:

1. My credentials and background are contained in my previous declaration submitted in support of Plaintiffs' Motion for Class Certification and, therefore, will not be repeated in this declaration.

2. I am providing this declaration in response to Lilly's Supplemental Submission in Support of its Opposition to Plaintiff's Motion for Class Certification.

Withdrawal Matters

3. Lilly's expert, Douglas Jacobs states that antidepressant withdrawal "does not figure prominently into most physicians' individualized risk-benefit calculus." Jacobs, ¶¶ 55-56. Yet that statement is contradicted by the article he cites discussing how interest in antidepressant withdrawal has escalated over the years. *See* Schatzberg et al., "Antidepressant Discontinuation Syndrome: Consensus Panel Recommendations for Clinical Management and Additional Research," J. Clin Psych 2006;67 (suppl 4). According to the 2006 Schatzberg article: "Since the original panel met in 1997, interest in SRI discontinuation syndrome has greatly increased ... more than 30 review articles on SRI discontinuation syndrome have been published since 1997." In fact, as I explained in my previous declaration, it was Lilly that orchestrated a campaign to raise

1

awareness about antidepressant withdrawal in order to gain a competitive advantage for its drug Prozac over Paxil.

4.  If the risk of withdrawal were so unimportant, why has there been attention paid to the phenomenon at all? Clearly, physicians and patients care about whether and to what extent antidepressants cause withdrawal. In my opinion, any reasonable physician would think the frequency, severity and duration of withdrawal effects for a given antidepressant are important to consider in the prescription decision making process.

Everybody Does Not Already Know About Antidepressant Withdrawal

5.  Dr. Jacobs suggests that the risk of withdrawal is common knowledge in the medical community (Jacobs, ¶¶ 25-37) and that both psychiatrists and healthcare professionals have been aware of antidepressant withdrawal for 15 years. *Id.*, ¶ 25.

6.  In an attempt to illustrate his point, Dr. Jacobs points to medical sources of information available to physicians that, according to Dr. Jacobs, fully disclose the risk of antidepressant withdrawal (suggesting that, notwithstanding Lilly's concealment of Cymbalta's withdrawal effects, doctors could find out on their own about Cymbalta withdrawal).

7.  In fact, none of the references cited by Dr. Jacobs provide any information about the frequency, severity or duration of Cymbalta withdrawal.

And, none of the publications Dr. Jacobs cites state that Cymbalta has one of the worst withdrawal profiles.

8.  Moreover, all of the sources of information (other than websites) are from psychiatric journals.

9.  This is important because, in the United States, nearly four out of every five antidepressant prescriptions are written by non-psychiatric physicians. *See* Mojtabai and Olfson, "Proportion of Antidepressants Prescribed Without A Psychiatric Diagnosis Is Growing," Health Affairs, August 2011.

10.  Dr. Jacobs identifies two psychiatric journal articles and two psychiatric treatises/guidelines to support the proposition that "everyone knows about Cymbalta withdrawal" as follows:

- A medical journal article by Rosenbaum and Zajecka, *both Lilly consultants*, titled "Clinical Management of Antidepressant Discontinuation, J. Clin Psychiatry 1997; 58 (suppl7), which was published before Cymbalta came on the market, thus there is no information provided concerning the frequency, severity or duration of *Cymbalta withdrawal*.

- Alan F. Schatzberg, *also a Lilly consultant*, et al., "Antidepressant Discontinuation Syndrome: Consensus Panel Recommendations for Clinical Management and Additional Research," J. Clin Psychiatry, 2006; 67 (suppl 4), which was published two years after Cymbalta came on the market but makes no mention of Cymbalta withdrawal.

    However, the authors did see fit to point out:

    > … discontinuation of paroxetine [Paxil] is also associated with a higher incidence of SRI discontinuation syndrome than is discontinuation of fluoxetine [Prozac, manufactured by Lilly] … The higher frequency of discontinuation effects with paroxetine, in

3

> contrast with other selective SRIs, may be attributable to its ... short half-life.

Given Cymbalta's half life is even shorter than Paxil's, it is curious why there is no mention of it here.

- The American Psychiatric Publishing Textbook of Psychiatry, Fifth Edition with Foreword by *Lilly consultant*, Alan F. Schatzberg, published in 2008, makes no mention of Cymbalta nor the frequency, severity or duration of Cymbalta withdrawal.

  Indeed, the text states:

  > Discontinuation symptoms appear to occur most commonly after discontinuation of short-half-life serotonergic drugs (Coupland et al. 1996), such as fluvoxamine [Luvox], paroxetine [Paxil], and venlafaxine [Effexor].

  There is no mention of Cymbalta although it had been on the market for four years and has a shorter-half than either Luvox or Paxil. Indeed, it had the second shortest half life next to Effexor.

- The Practice Guideline for the Treatment of Patients With Major Depressive Disorder, Third Edition, published in 2010 (and which lists at least *three Lilly consultants* as being on the working group and review panel for the guideline, only mentions Cymbalta as causing less withdrawal than Effexor.

  The practice guideline states, inter alia:

  > i. Discontinuation syndrome
  >
  > ... discontinuation-emergent symptoms are more likely with paroxetine [Paxil] than sertraline [Zoloft], citalopram [Celexa], or escitalopram [Lexapro] and least likely to occur with fluoxetine [Prozac, manufactured by Lilly] (due to the long elimination half-life of its primary metabolite, norfluoxetine) ... some patients do experience more protracted discontinuation syndromes, particularly those treated with paroxetine [Paxil, the drug Lilly targeted to differentiate from Prozac as causing more withdrawal than Prozac]..."

The guideline goes on to state:

> As with SSRIs, abrupt discontinuation of SNRIs should be avoided whenever possible. Discontinuation symptoms, which are sometimes protracted, are more likely to occur with venlafaxine [Effexor] (and, by implication devenlafaxine [Pristiq]) than duloxetine [Cymbalta] (100) and may necessitate a slower downward titration regimen or change to fluoxetine.

Cymbalta withdrawal is downplayed. It is worth noting here that, in recent years, industry influence on clinical practice guidelines has drawn increasing attention and criticism. *See, e.g.*, Lenzer, "Why we can't trust clinical guidelines," *Brit. Med. J.*, June 2013; Healy, "Manufacturing Consensus," *Culture, Medicine and Psychiatry*, June 2006; Abramson et al., "The Effect of Conflict of Interest on Biomedical Research and Clinical Practice Guidelines: Can We Trust the Evidence in Evidence-Based Medicine? *JABFP*, September-October 2005; Cosgrove, "Conflicts of Interest and Disclosure in the American Psychiatric Association's Clinical Practice Guidelines," *Psychotherapy and Psychosomatics*, 2009.

11. In making prescribing decisions, physicians need to know the truth in order to serve their patients' best health care interests.

12. Having some vague general awareness that antidepressants generally may induce withdrawal in some patients does not constitute understanding there is a high frequency of withdrawal that can be severe and protracted with a specific antidepressant, in this case, Cymbalta.

13. This case is about Cymbalta, not all antidepressants. In fact, Cymbalta likely has the second most frequent and severe withdrawal reactions of any of the antidepressants and none of the sources Dr. Jacobs cites for his "everybody knows" assertion specifically inform doctors of this fact.

14. Data concerning the frequency, severity and duration of a drug's propensity to induce withdrawal is even more essential to the prescribing decision because of the differing rates of withdrawal amongst the various antidepressants.

15. Lilly's misleading label and concealment of the frequency, severity and duration of Cymbalta withdrawal, particularly when comparing to other antidepressants, renders doctors unable to do their job and conduct the necessary risk/benefit analysis.

16. While some *psychiatrists* in the medical community may have become aware of *antidepressant withdrawal generally* from sources such as those cited by Dr. Jacobs, a general understanding that antidepressants can cause withdrawal reactions is not the same as understanding that, amongst all the antidepressants, Cymbalta causes withdrawal more frequently than any other antidepressant other than Effexor. All Dr. Jacobs has established is that Lilly and several of its paid consultants knew about Cymbalta's withdrawal profile. Again, majority of Cymbalta prescriptions are written by non-psychiatrists who are far less likely than psychiatrists to be familiar with antidepressant withdrawal.

17. Dr. Jacobs states that the Journal of Affective Disorders, in which the Perahia (about Cymbalta withdrawal) article was published, is "a prominent medical journal that is widely read by many psychiatrists and healthcare professionals." Jacobs Decl., ¶ 39. Dr. Jacobs provides no support for this statement. As I stated in my first declaration (see ¶ 8, footnote 1), based on my research, the Journal is not a prominent journal. For comparison, the impact factor of the Journal of Affective Disorders is 3.295, whereas the New England Journal of Medicine's is 51.658, and the Journal of the American Medical Association (JAMA) is 30.

## The Label Does Not Adequately Describe Cymbalta Withdrawal

18. Dr. Jacobs also states the label adequately describes Cymbalta withdrawal. As I outlined in my previous declaration, it is my opinion that the label is woefully inadequate to apprise doctors and consumers of the true risk of experiencing withdrawal upon discontinuation of Cymbalta and, in fact, it is plainly misleading.

19. Dr. Jacobs suggests that a reasonable physician would not read the 1% figure to mean that discontinuation symptoms occur only in 1% of Cymbalta-treated patients. Jacobs Decl., ¶ 46. He states that, instead, a reasonable physician would understand that the 1% figure reflects the reporting threshold for listing each of the specified symptoms and does not represent the frequency of discontinuation

symptoms. *Id.* I disagree. There is no way for physicians to understand from the language in the Cymbalta label that the frequency of withdrawal upon discontinuation of Cymbalta is between 44 and 78%.

20. Dr. Jacobs points to the Paxil label which is similarly misleading as the Cymbalta label. Jacobs Decl., ¶ 49. The fact that another company's label is also misleading does not excuse Lilly from its duty to ensure physicians are provided with truthful, non-misleading data about the drug it markets, Cymbalta.

21. Dr. Jacobs also cites an FDA guidance document, <u>Guidance for Industry: Adverse Reactions Section of Labeling for Human Prescription Drug Biological Products-Content and Format</u> (Jan. 2006) to suggest that Lilly's 1% figure somehow complies with FDA recommendations of listing adverse reactions "that occurred at or above a specified rate that is appropriate to the drug's safety database." *Id.*

22. The Guidance does nothing to support Lilly's position. In fact, it lends further support to Plaintiffs' position. The Guidance provides in relevant part (*see* Section III, beginning on page 2, Adverse Reactions Section – Content and Format), which states:

> **A. Making the Most Clinically Important Information Accessible**
>
> … The ADVERSE REACTIONS section should make it easier for health care practitioners to recognize and retain the adverse reactions information that is most important to prescribing decisions. **The beginning of the ADVERSE REACTIONS section should identify the most clinically**

significant adverse reactions *and direct practitioners to more detailed information about those reactions*, if any. For example, the section should first:

- Identify and cross-reference all serious and otherwise important adverse reactions …

- **Identify the most *commonly occurring* adverse reactions (e.g., all adverse reactions occurring at a rate of 10 percent or greater in the treatment group and at a rate at least twice the placebo rate)**

- Identify adverse reactions, if any, that resulted in a significant rate of discontinuation or other clinical intervention …

**B. Adverse Reactions From Clinical Trials**

The presentation of adverse reactions identified from clinical trials is the major component of the ADVERSE REACTIONS section. **The ADVERSE REACTIONS section must include a listing of all such reactions that occurred at or above a specified rate that is appropriate to the drug's safety database (see III.B.3) … and, to the extent information is available and relevant,** *additional detail about the nature, frequency, severity, duration* **… of those adverse reactions with significant clinical implications …**

*See* Exhibit L to Dr. Jacobs's Declaration, p. 2 (emphasis added).

    23.    Section III.B.3 states:

        3.    Presentation of Common Adverse Reactions (the Adverse Reactions Table)

        The ADVERSE REACTIONS section next should list the **adverse reactions identified from clinical trials that occurred at or above a specified rate appropriate to the database** (for purposes of this guidance, "common" adverse reactions). **The listing must include the rate of occurrence of an adverse reaction for the drug and any comparators (active- or placebo-controls)**, unless such data cannot be determined or presenting the rates for a comparator would be misleading …

*Id.*, p. 4, emphasis added.

24. The Guidance further states:

> 5. *Commentary on Listings of Common and Less Common Adverse Reactions*
>
> **For adverse reactions with significant clinical implications (e.g., those that are most commonly occurring**, that result in discontinuation or dose modification, **or that require monitoring), the listings of common** and less common **adverse reactions must be supplemented with additional details about the nature, frequency, severity**, dose-response, and demographic characteristics of the adverse reaction, to the extent data are available and important §201.57(c)(7)(ii)(A)). **It is more likely that supplemental information will be needed for the more commonly occurring adverse reactions.**

*Id.*, p. 6, emphasis added.

25. The FDA Guidance further instructs companies to avoid nonspecific terms and states: "Specific frequency ranges (e.g., adverse reactions occurring in <1/500) provide more precise information about incidence." *Id.*, p. 9.

26. Given that Cymbalta's rate of withdrawal is nowhere near 1%, there is no excuse for Lilly's use of the figure and the FDA Guidance document neither supports nor exonerates Lilly for doing so.

27. Dr. Jacobs also suggests that, because the label contains a statement in the pharmacokinetics section about Cymbalta's short half life, physicians would understand that discontinuation symptoms are relatively common in Cymbalta-treated patients. Jacobs Decl., ¶ 51. However, to the extent this separate section of

the label is even read, not all physicians are familiar with the correlation between half life and a drug's propensity to induce withdrawal reactions, especially non-psychiatrists who write a majority of prescriptions.

### A Physician's Decision to Prescribe is Distinctly Driven by the Risk/Benefit Profile of the Drug

28. Dr. Jacobs also asserts that a physician's decision to prescribe a particular antidepressant in the first instance is distinctly driven by the individual characteristics of the patient. Jacobs Decl., ¶ 13. Of course, every doctor has to evaluate the particular patient and every patient is different, however, in every instance, which antidepressant is chosen for a patient is distinctly driven by the risk/benefit profile of the specific drug being considered. The doctor must consider in each instance the data on the drug's risk/benefit profile.

29. A physician trying to make a prescribing decision without accurate information about the frequency, severity and duration of withdrawal symptoms is not able to balance the benefits versus risks and make an informed decision about whether Cymbalta is the best choice for his/her patient. Since the doctor cannot adequately inform the patient, the patient cannot give true informed consent.

### Ernst R. Berndt, Ph.D. is Not Qualified to Opine About Physicians' Decision-Making Processes

30. On a final note, I would like to point out that, with regard to the declaration of Ernst R. Berndt, Ph.D., paragraphs 15 to 18, Dr. Berndt makes a number of assertions which, as an economist, he simply is not qualified to make.

I declare, under penalty of perjury, that the information contained herein is true and correct to the best of my knowledge, information, and belief.

Dated this 22nd day of October, 2013.

_____
Joseph Glenmullen, M. D.