```
 1                    UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3                          WESTERN DIVISION

 4


 5    THE HONORABLE STEPHEN V. WILSON, U.S. DISTRICT JUDGE PRESIDING

 6


 7   JENNIFER L. SAAVEDRA, ET AL.,  )
                                    )
 8             Plaintiff,           )
                                    )
 9      vs.                         )     No. CV 12-9366-SVW
                                    )
10                                  )
     ELI LILLY AND COMPANY, ET AL., )
11                                  )
               Defendants.          )
12   _____)

13


14


15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    LOS ANGELES, CALIFORNIA

17                   MONDAY, NOVEMBER 4, 2013

18


19


20


21


22   _____

23               DEBORAH K. GACKLE, CSR, RPR
                     United States Courthouse
24             312 North Spring Street, Room 402A
                  Los Angeles, California 90012
25                     (213) 620-1149
```

```
 1   APPEARANCES OF COUNSEL:

 2

 3

 4       For the Plaintiff:

 5

 6           Michael D Woerner
             Gretchen Freeman Cappio
 7           Keller Rohrback LLP
             1201 Third Avenue Suite 3200
 8           Seattle, WA 98101
             206-623-1900
 9           Fax: 206-623-3384
             Email: gcappio@kellerrohrback.com
10           Email: mwoerner@kellerrohrback.com

11

12       For the Defendant:

13

14           Mark H Lynch
             Colleen A Kelly
15           Covington and Burling LLP
             1201 Pennsylvania Avenue NW
16           Washington, DC 20004
             202-662-5533
17           Fax: 202-778-5533
             Email: ckelly@cov.com
18

19                   - - - - -

20

21

22

23

24

25
```

```
 1    LOS ANGELES, CALIFORNIA; MONDAY, NOVEMBER 4, 2013; 2:20 P.M.
 2                              - - - - -
 3
 4              THE CLERK:  Item 6, CV 12-9366-SVW, Jennifer L.
 5    Saavedra versus Eli Lilly and Company.
 6              Counsel, please state your appearances.
 7              MR. WOERNER:  Good afternoon, Your Honor.  Michael
 8    Woerner of Keller Rohrback for plaintiffs, along with Gretchen
 9    Cappio.
10              MR. LYNCH:  Good afternoon, Your Honor.  Mark Lynch
11    and Colleen Kelly for the defendant.
12              THE COURT:  First, let me ask you some questions,
13    Mr. Lynch.
14              MR. LYNCH:  Okay.
15              THE COURT:  You indicated in your pleadings that
16    there was some arguments you didn't make because you didn't
17    think they were necessary to be made, in your view, in the
18    overall record; but I did observe that you didn't make a motion
19    regarding the conjoint theory of Dr. Hay, and I'm interested in
20    why you didn't and not that I have a basis at this point for
21    deciding whether that report passes the *Daubert* test or not,
22    but when I was preparing for the hearing, it did occur to me
23    that one of plaintiff's arguments was that -- and I'm not sure
24    I fully understand the conjoint theory at this point.  I know
25    it's some regression-type analysis, but I don't pretend to
```

1  fully understand it.  So when I use the term, I don't want to
2  mislead you to think that I fully comprehend it because I
3  don't; but we'll talk about it by name because that's all we
4  can do at this point.
5          But there was some argument in the plaintiff's briefs
6  that the conjoint theory was, in fact, used by Eli Lilly in its
7  pricing of drugs.  I don't know if it was that particular drug,
8  maybe it was a diabetes drug or something, but it was used, and
9  so I was thinking, well, maybe you didn't make the motion
10 because, you know, you were *hoisted by your own petard*, as the
11 expression goes.  I don't know.  So maybe you can tell me why.
12         MR. LYNCH:  Okay.  First of all, Your Honor, I'll
13 assure you we don't think we've been *hoisted by our own petard*.
14 The court's order on September 17th directed us to submit the
15 facts that tie this case into the body of law that we've cited
16 in our briefs --
17         THE COURT:  No, I'm only interrupting to tell you
18 that I do believe, in rereading some of my earlier orders, I'm
19 somewhat critical of some of the language I used because it
20 could be interpreted as limiting the issues to the learned
21 intermediary defense; and what the plaintiff is attempting to
22 do -- recognizing the reach of that defense -- is find a theory
23 that legitimately skirts it, and so they've termed it a pricing
24 or value issue.  In other words, that the price of Cymbalta
25 would have been less, Eli Lilly would have priced the drug less

1  at a lower price if it had truthfully revealed the extent of
2  the withdrawal side-effects.
3          And so what the case is not about now -- I think we
4  should at the outset make that clear -- it's not about whether
5  the plaintiff would have bought Cymbalta knowing about the
6  side-effects and percentage of side-effects; that's not what
7  the plaintiff's theory is now, it is that the price of the drug
8  would have been different, and in that regard, it has this
9  conjoint theory which surveyed consumers -- as I understand
10 it -- and I have some initial question about whether that's the
11 right group to survey.  But leaving that aside, getting -- I
12 just wanted to refocus, getting back to your -- the question:
13 Why didn't you address Dr. Hay in the conjoint theory?
14          MR. LYNCH:  Because we understood the court to ask us
15 to submit facts, not mount a *Daubert* challenge to Dr. Hay at
16 this point.
17          THE COURT:  I see.  I'm not agreeing or disagreeing,
18 I just wanted to know why.
19          Now, moving forward, if you had that opportunity,
20 would you accept it?
21          MR. LYNCH:  Absolutely.
22          THE COURT:  And what would it be, generally?  In
23 other words, what would be the -- what would be the outline --
24 without going through it in detail, how would you approach it?
25          MR. LYNCH:  With the caveat that I'm not going to go

```
 1   through it in detail because I'm almost as confused as you are,
 2   Judge, about what they're actually getting at, but the real --
 3              THE COURT:  My confusion may be just a lack of
 4   ability to grasp the interstices of the argument.  I can't say
 5   now, you know, whether it's bogus or not, but I want to hear
 6   what you would say.
 7              MR. LYNCH:  Here's the main problem with it:  In
 8   paragraph 25 of the second Hey declaration -- and he repeats
 9   what he said in paragraph six of the first declaration -- he
10   said, "I will estimate on average what the market was willing
11   to pay."
12              Now, averages -- there are a host of cases that hold
13   that averages are not an acceptable way to calculate loss or
14   damages on a class-wide basis.  A wise man would not cross --
15   would not attempt to wade across a river with a sign that said,
16   Average depth five feet.  Averages sweep under the rug a whole
17   range of issues.
18              THE COURT:  The important takeaway here is that you
19   would, if given the opportunity, make such a motion.
20              MR. LYNCH:  Your Honor, may I point out one other
21   thing?
22              THE COURT:  Yes.
23              MR. LYNCH:  It does seem clear that conjoint analysis
24   is an accepted means of market research and determining
25   consumer preferences, and it's in that context that Lilly has
```

```
 1   used this technique in the past -- and many others have -- but
 2   it's a huge leap to go from conducting consumer surveys to
 3   determine consumer preferences, to calculating loss and damages
 4   on a class-wide basis.
 5              THE COURT:  Just one moment.
 6              Let me ask the plaintiff some questions.
 7   Mr. Woerner.
 8              MR. WOERNER:  Yes, Your Honor.
 9              THE COURT:  I don't want to get into a debate now
10   about the conjoint theory because you'll -- I'm going to invite
11   a motion from defendant, and then you'll respond, we'll have
12   another hearing, and then I'll hear you fully.  So I don't want
13   to waste time without my having a better background.  But I
14   want to ask you this:  Your claim is, as I summarized it, isn't
15   it?  Or if I didn't, tell me why.  In other words, what I
16   understood your -- understand your claim to be now is it isn't
17   that a plaintiff would decide not to buy -- not to use Cymbalta
18   because of the high percentage of side-effects, it's that the
19   price of Cymbalta was higher than it should be if the
20   withdrawals, side-effects had been disclosed.
21              MR. WOERNER:  Almost.
22              THE COURT:  Fill it in for me.
23              MR. WOERNER:  We agree that the whole issue of
24   whether someone would have purchased the drug or not is not at
25   issue.
```

1    THE COURT:  Yes.

2    MR. WOERNER:  The issue, though, does come down to
3    distinguishing between price and value.

4    THE COURT:  We talked about price and value at the
5    last hearing, and I actually took the pains to look at the
6    transcript; and I must tell you that either you confused me or
7    I confused myself, but I couldn't -- it almost seemed like, you
8    know, like the Marx brothers.  It was just -- aren't they the
9    guys "Who's on First," or was that somebody else?

10   MR. WOERNER:  Who'd on second --

11   THE COURT:  Sort of, you know, just hard to follow.
12   It was almost amoeba like.  You know, press it here and it
13   keeps changing shape, and so I would consider it to be an
14   amoeba-like argument.  So let me -- tell me why price is
15   different than value, and let's try to again, okay?

16   MR. WOERNER:  All right.

17   THE COURT:  I'm all ears, by the way.  Go ahead.

18   MR. WOERNER:  Let me just say that Dr. Hay attempted
19   to explain that better --

20   THE COURT:  You explain it.

21   MR. WOERNER:  I'm just saying it is in his
22   supplemental declaration.

23   THE COURT:  Yes.

24   MR. WOERNER:  The fundamental difference is that
25   price is something that is seen through the eyes of the seller,

```
 1   whereas value is something that is seen by the purchaser, and
 2   in markets that are nearly perfect, price and value are
 3   basically one in the same or very close to each other.
 4           Where you don't have a perfect market, as Dr. Hay
 5   acknowledged, with respect to the pharmaceutical industry,
 6   price and value can end up being much different things, and so
 7   the purpose of the conjoint analysis is to determine how much
 8   value consumers put on this withdrawal risk warning or lack
 9   thereof --
10           THE COURT:  Let me interrupt you a minute.  You're
11   recognizing that -- or you're acknowledging that your theory is
12   not the -- something akin to the efficient market theory in
13   securities law.
14           MR. WOERNER:  Right.
15           THE COURT:  Because this isn't an efficient market --
16   correct -- and it's not an efficient market because --
17   obviously, the defendant has pricing power because, in effect,
18   it's near a monopoly because it has a patent, correct?
19           MR. WOERNER:  Correct.
20           THE COURT:  Okay.  So the defendant can essentially,
21   with some limits, set the price anywhere it wants, correct?
22           MR. WOERNER:  Correct.
23           THE COURT:  So you're saying I can't approach it from
24   price because defendant has all the power, but now I'm
25   approaching it from the consumer, and the consumer says, Well,
```

1  if I had known about the 44 or 50 percent level of withdrawal
2  symptoms as opposed to the one percent or so that they
3  mentioned, then I'm not saying I wouldn't have not bought
4  product, but I -- it would be of less value to me, or are you
5  saying -- what do you mean by "value"?
6              MR. WOERNER:  You paid for something that you didn't
7  get, and so if through the survey Dr. Hay is going to look at
8  all different attributes of a drug, whether it causes
9  side-effects and all sorts of the things, that whether or not
10 it works or not, he's going to -- he's the expert in that, and
11 so he is going to determine what the various attributes are
12 that he is going look at, and he said in his papers that you
13 could end up in a situation where the lack of complete
14 information about withdrawal was worth, say, 30 percent of the
15 entire package or value of Cymbalta, so the economic loss that
16 any individual consumer suffered is 30 percent of what they
17 paid out of pocket.
18             THE COURT:  How does he come up with the 30 percent?
19             MR. WOERNER:  He computes what the whole conjoint
20 analysis will tell him --
21             THE COURT:  In other words, he's serving all the
22 consumers of Cymbalta.
23             MR. WOERNER:  Exactly.
24             THE COURT:  And these consumers are saying, Well, had
25 I known the truth about the withdrawals, it would have been 30

1   percent less valuable to me.
2            MR. WOERNER: He ends up --
3            THE COURT: Is that right? You have to answer my
4   questions. It's not a talk show. You know, on the talk shows,
5   people just -- questions go, and no one answers, and this is
6   not a political event, so you must answer the question.
7            What was the answer?
8            MR. WOERNER: He is not going to say that a consumer
9   tells him 30 percent, he's going to determine that 30 percent
10  based on the results of the surveys he gets of consumers.
11           THE COURT: But how is he going to make the
12  determination?
13           MR. WOERNER: Through his survey technique.
14           THE COURT: I see. Okay. I understand that a little
15  better now.
16           All right. I'm going to ask you some questions in a
17  while but be seated if you will for a moment.
18           Mr. Lynch.
19           MR. LYNCH: Your Honor, could I take the --
20           THE COURT: No, no, no. Ask you a specific question.
21           MR. LYNCH: Okay.
22           THE COURT: In light of what the plaintiff has just
23  said -- and this is not -- don't read too much into what I'm
24  saying because it's a question -- how does this notion of value
25  square with the learned intermediary defense? I mean, does it

```
 1  rub up against it in some way?
 2          MR. LYNCH:  Either -- both the learned intermediary
 3  defense and also waited complex way in which pharmaceuticals
 4  are paid for, and even if Dr. Hay passes Daubert and he can
 5  establish this value that signifies the loss that the class
 6  members allegedly suffered, you're still going to have a myriad
 7  of individual questions that predominate over common questions
 8  for the following reasons --
 9          THE COURT:  I'm not there yet.  You're jumping ahead
10  of me.  I'm not into commonality.
11          MR. LYNCH:  I hope we can get there, though.
12          THE COURT:  I'm focusing on a -- but the plaintiff's
13  position is sort of like a -- well, it's a an issue-based class
14  action, correct?  In other words, you're saying that the --
15  forgetting how damages will be apportioned, just looking at the
16  structure of the class action, the plaintiff's position is that
17  if the value was less than what it should have been to the
18  consumer, then that's the bellwether of the class action,
19  correct?
20          MR. WOERNER:  Not exactly because --
21          THE COURT:  Stand up.
22          MR. WOERNER:  There are two issues, liability and
23  damages and liability, and liability, which is whether or not
24  there was a misrepresentation, could be certified as a C4 issue
25  class.  We believe you can certify the damages because there
```

```
 1   are not individual damage issues, the damages can be calculated
 2   class wide, and so the entire matter can be certified under
 3   Rule B3.
 4             THE COURT:  I see.
 5             Now, while I'm on the subject, there seems to be a
 6   difference in the approach that the three jurisdictions,
 7   Missouri, Massachusetts and New York, take in consumer
 8   misrepresentation cases.  Actually, California is the fourth,
 9   and the California law seems to require some materiality.
10             How do you see the differences between the
11   jurisdictions in -- on class certification?
12             MR. WOERNER:  I see Missouri, Massachusetts and New
13   York, the three of them all being very similar:  No reliance is
14   required, no butt-for causation is necessary.  You need to
15   establish that there was a violation of the statute by
16   misrepresentation, and then there was an ascertainable loss
17   that the plaintiff suffered, which would be a established
18   through the conjoint analysis.
19             California is different in that reliance has to be
20   shown by the class representative, and it's based on a
21   reasonable consumer test and materiality, and those elements
22   are there in California which are not there in the other three
23   states.
24             THE COURT:  I see.  Thank you.
25             Do you want to weigh in just on that.
```

```
 1            MR. LYNCH:  I disagree quite strenuously, Your Honor.
 2   In Missouri, New York and Massachusetts, a mere violation of
 3   the statute does not indicate a -- you have to show that the
 4   violation of the statute caused an injury, and there is -- it's
 5   got to be by reason of -- it's got to be -- got to be direct
 6   causal relationship.  Just because you show a statutory
 7   violation, you don't collect damages except in Massachusetts;
 8   you can get $25.
 9            THE COURT:  I've gone as far as we can go.  What I'm
10   going to do, just to make sure that the briefing is on point,
11   at least as I see it, I'm going to issue a brief order
12   directing the briefing, and I'll give you a time frame.
13            Thank you.
14            MR. LYNCH:  Your Honor, may we depose Dr. Hay as part
15   of this or --
16            THE COURT:  Yes.  I'm going to set that out and some
17   other issues, too.
18            MR. WOERNER:  Whether or not we get discovery of Eli
19   Lilly's conjoint analysis that they have done?
20            THE COURT:  Well, you may -- in your opposition, you
21   may request that.  In other words --
22            MR. WOERNER:  Request they produce --
23            THE COURT:  Yes, yes.
24            Do you have objections to producing that?
25            MR. LYNCH:  He already has the -- the article that --
```

```
 1              THE COURT:  Something else you want?
 2              MR. WOERNER:  We don't know.  Obviously, they appear
 3   to spend a great deal time and effort doing some sort of
 4   conjoint analysis within their company.  We happen to find an
 5   article that they supported that dealt with the issue, but
 6   we --
 7              THE COURT:  Meet and confer and if you can't reach a
 8   resolution, you can put that matter on the court's calendar on
 9   shortened notice.
10              MR. WOERNER:  Okay.
11              THE COURT:  Thank you.
12              MR. LYNCH:  Your Honor, I don't want to wear out your
13   patience, but could I make the argument that even if Dr. Hay
14   passes *Daubert*, individual issues are still going to
15   predominate?
16              THE COURT:  Yes, I'll set that out.
17              MR. LYNCH:  Okay.  Thank you.
18                  (Proceedings concluded at 2:45 p.m.)
19                               - - - - -
20
21
22
23
24
25
```

# C E R T I F I C A T E

I hereby certify that the foregoing is a true and correct transcript from the stenographic record of the proceedings in the foregoing matter.

November 15, 2013

/S/_____          _____

Deborah K. Gackle                                                   Date
Official Court Reporter
CSR No. 7106

## $

**$25 [1]** 14/8

## /

**/S [1]** 16/8

## 1

**1149 [1]** 1/25
**12-9366-SVW [2]** 1/9 3/4
**1201 [2]** 2/7 2/15
**15 [1]** 16/7
**17th [1]** 4/14
**1900 [1]** 2/8

## 2

**20004 [1]** 2/16
**2013 [3]** 1/17 3/1 16/7
**202-662-5533 [1]** 2/16
**202-778-5533 [1]** 2/17
**206-623-1900 [1]** 2/8
**206-623-3384 [1]** 2/9
**213 [1]** 1/25
**25 [1]** 6/8
**2:20 P.M [1]** 3/1
**2:45 [1]** 15/18

## 3

**30 [6]** 10/14 10/16 10/18 10/25 11/9 11/9
**312 [1]** 1/24
**3200 [1]** 2/7
**3384 [1]** 2/9

## 4

**402A [1]** 1/24
**44 [1]** 10/1

## 5

**50 [1]** 10/1
**5533 [2]** 2/16 2/17

## 6

**620-1149 [1]** 1/25

## 7

**7106 [1]** 16/10

## 9

**90012 [1]** 1/24
**98101 [1]** 2/8

## A

**ability [1]** 6/4
**about [11]** 4/3 5/3 5/4 5/5 5/10 6/2 7/10 8/4 10/1 10/14 10/25
**Absolutely [1]** 5/21
**accept [1]** 5/20
**acceptable [1]** 6/13
**accepted [1]** 6/24
**acknowledged [1]** 9/5
**acknowledging [1]** 9/11
**across [1]** 6/15
**action [3]** 12/14 12/16 12/18
**actually [3]** 6/2 8/5 13/8
**address [1]** 5/13
**afternoon [2]** 3/7 3/10
**again [1]** 8/15
**against [1]** 12/1
**agree [1]** 7/23
**agreeing [1]** 5/17
**ahead [2]** 8/17 12/9
**akin [1]** 9/12
**AL [2]** 1/7 1/10
**all [10]** 4/3 4/12 8/16 8/17 9/24 10/8 10/9 10/21 11/16 13/13
**allegedly [1]** 12/6
**almost [4]** 6/1 7/22 8/7 8/12
**along [1]** 3/8
**already [1]** 14/25
**also [1]** 12/3
**amoeba [2]** 8/12 8/14
**amoeba-like [1]** 8/14
**analysis [7]** 3/25 6/23 9/7 10/20 13/18 14/19 15/4
**ANGELES [3]** 1/16 1/24 3/1
**another [1]** 7/12
**answer [3]** 11/3 11/6 11/7
**answers [1]** 11/5
**any [1]** 10/16
**anywhere [1]** 9/21
**appear [1]** 15/2
**appearances [2]** 2/1 3/6
**apportioned [1]** 12/15
**approach [3]** 5/24 9/23 13/6
**approaching [1]** 9/25
**are [14]** 6/1 6/12 6/13 9/2 9/2 10/4 10/11 10/24 12/4 12/22 13/1 13/22 13/22 15/14
**aren't [1]** 8/8
**argument [4]** 4/5 6/4 8/14 15/13
**arguments [2]** 3/16 3/23
**article [2]** 14/25 15/5
**as [13]** 4/10 4/20 5/9 6/1 6/1 7/14 9/4 10/2 12/24 14/9 14/11 14/14
**ascertainable [1]** 13/16
**aside [1]** 5/11
**ask [6]** 3/12 5/14 7/6 7/14 11/16 11/20
**assure [1]** 4/13
**at [15]** 3/20 3/24 4/4 5/1 5/4 5/15 6/2 7/24 8/4 8/5 10/7 10/12 12/15 14/11 15/18
**attempt [1]** 6/15
**attempted [1]** 8/18
**attempting [1]** 4/21
**attributes [2]** 10/8 10/11
**Avenue [2]** 2/7 2/15
**average [2]** 6/10 6/16
**averages [3]** 6/12 6/13 6/16

## B

**B3 [1]** 13/3
**back [1]** 5/12
**background [1]** 7/13
**based [3]** 11/10 12/13 13/20
**basically [1]** 9/3
**basis [3]** 3/20 6/14 7/4
**be [21]**
**because [18]**
**been [6]** 4/13 4/25 5/8 7/20 10/25 12/17
**being [2]** 9/6 13/13
**believe [2]** 4/18 12/25
**bellwether [1]** 12/18
**better [3]** 7/13 8/19 11/15
**between [2]** 8/3 13/10
**body [1]** 4/15
**bogus [1]** 6/5
**both [1]** 12/2
**bought [2]** 5/5 10/3
**brief [1]** 14/11
**briefing [2]** 14/10 14/12
**briefs [2]** 4/5 4/16
**brothers [1]** 8/8
**Burling [1]** 2/15
**but [19]**
**butt [1]** 13/14
**butt-for [1]** 13/14
**buy [1]** 7/17

## C

**C4 [1]** 12/24
**calculate [1]** 6/13
**calculated [1]** 13/1
**calculating [1]** 7/3
**calendar [1]** 15/8
**CALIFORNIA [8]** 1/2 1/16 1/24 3/1 13/8 13/9 13/19 13/22
**can [12]** 4/4 4/11 9/6 9/20 12/4 12/11 12/25 13/1 13/2 14/8 14/9 15/8
**can't [3]** 6/4 9/23 15/7
**Cappio [2]** 2/6 3/9
**case [2]** 4/15 5/3
**cases [2]** 6/12 13/8
**causal [1]** 14/6
**causation [1]** 13/14
**caused [1]** 14/4
**causes [1]** 10/8
**caveat [1]** 5/25
**CENTRAL [1]** 1/2
**certification [1]** 13/11
**certified [2]** 12/24 13/2
**certify [2]** 12/25 16/3
**challenge [1]** 5/15
**changing [1]** 8/13
**cited [1]** 4/15
**ckelly [1]** 2/17
**claim [2]** 7/14 7/16
**class [10]** 6/14 7/4 12/5 12/13 12/16 12/18 12/25 13/2 13/11 13/20
**class-wide [2]** 6/14 7/4
**clear [2]** 5/4 6/23
**close [1]** 9/3
**collect [1]** 14/7
**Colleen [2]** 2/14 3/11
**come [2]** 8/2 10/18
**common [1]** 12/7
**commonality [1]** 12/10
**company [3]** 1/10 3/5 15/4
**complete [1]** 10/13
**complex [1]** 12/3
**comprehend [1]** 4/2
**computes [1]** 10/19
**concluded [1]** 15/18
**conducting [1]** 7/2
**confer [1]** 15/7
**confused [3]** 6/1 8/6 8/7
**confusion [1]** 6/3
**conjoint [12]** 3/19 3/24 4/6 5/9 5/13 6/23 7/10 9/7 10/19 13/18 14/19 15/4
**consider [1]** 8/13
**consumer [10]** 6/25 7/2 7/3 9/25 9/25 10/16 11/8 12/18 13/7 13/21
**consumers [5]** 5/9 9/8 10/22 10/24 11/10
**context [1]** 6/25
**correct [8]** 9/16 9/18 9/19 9/21 9/22 12/14 12/19 16/4
**could [5]** 4/20 10/13 11/19 12/24 15/13
**couldn't [1]** 8/7
**COUNSEL [2]** 2/1 3/6
**court [3]** 1/1 5/14 16/9
**court's [2]** 4/14 15/8
**Courthouse [1]** 1/23
**cov.com [1]** 2/17
**Covington [1]** 2/15
**critical [1]** 4/19
**cross [1]** 6/14
**CSR [2]** 1/23 16/10
**CV [2]** 1/9 3/4
**Cymbalta [6]** 4/24 5/5 7/17 7/19 10/15 10/22

## D

**damage [1]** 13/1
**damages [7]** 6/14 7/3 12/15 12/23 12/25 13/1 14/7

## D

**Date [1]  16/9**
**Daubert [4]  3/21 5/15 12/4 15/14**
**DC [1]  2/16**
**deal [1]  15/3**
**dealt [1]  15/5**
**debate [1]  7/9**
**DEBORAH [2]  1/23 16/9**
**decide [1]  7/17**
**deciding [1]  3/21**
**declaration [3]  6/8 6/9 8/22**
**defendant [6]  2/12 3/11 7/11 9/17 9/20 9/24**
**Defendants [1]  1/11**
**defense [4]  4/21 4/22 11/25 12/3**
**depose [1]  14/14**
**depth [1]  6/16**
**detail [2]  5/24 6/1**
**determination [1]  11/12**
**determine [4]  7/3 9/7 10/11 11/9**
**determining [1]  6/24**
**diabetes [1]  4/8**
**did [2]  3/18 3/22**
**didn't [8]  3/16 3/16 3/18 3/20 4/9 5/13 7/15
 10/6**
**difference [2]  8/24 13/6**
**differences [1]  13/10**
**different [5]  5/8 8/15 9/6 10/8 13/19**
**direct [1]  14/5**
**directed [1]  4/14**
**directing [1]  14/12**
**disagree [1]  14/1**
**disagreeing [1]  5/17**
**disclosed [1]  7/20**
**discovery [1]  14/18**
**distinguishing [1]  8/3**
**DISTRICT [3]  1/1 1/2 1/5**
**DIVISION [1]  1/3**
**do [8]  4/4 4/18 4/22 10/5 13/10 13/25 14/10
 14/24**
**does [6]  6/23 8/2 10/18 11/24 11/25 14/3**
**doing [1]  15/3**
**don't [13]  3/25 4/1 4/3 4/7 4/11 4/13 7/9 7/12
 9/4 11/23 14/7 15/2 15/12**
**done [1]  14/19**
**down [1]  8/2**
**Dr [9]  3/19 5/13 5/15 8/18 9/4 10/7 12/4
 14/14 15/13**
**drug [6]  4/7 4/8 4/25 5/7 7/24 10/8**
**drugs [1]  4/7**

## E

**each [1]  9/3**
**earlier [1]  4/18**
**ears [1]  8/17**
**economic [1]  10/15**
**effect [1]  9/17**
**effects [6]  5/2 5/6 5/6 7/18 7/20 10/9**
**efficient [3]  9/12 9/15 9/16**
**effort [1]  15/3**
**either [2]  8/6 12/2**
**elements [1]  13/21**
**ELI [5]  1/10 3/5 4/6 4/25 14/18**
**else [2]  8/9 15/1**
**Email [3]  2/9 2/10 2/17**
**end [2]  9/6 10/13**
**ends [1]  11/2**
**entire [2]  10/15 13/2**
**essentially [1]  9/20**
**establish [2]  12/5 13/15**
**established [1]  13/17**
**estimate [1]  6/10**
**ET [2]  1/7 1/10**

**even [2]  12/4 15/13**
**event [1]  14/6**
**exactly [2]  10/23 12/20**
**except [1]  14/7**
**expert [1]  10/10**
**explain [2]  8/19 8/20**
**expression [1]  4/11**
**extent [1]  5/1**
**eyes [1]  8/25**

## F

**fact [1]  4/6**
**facts [2]  4/15 5/15**
**far [1]  14/9**
**Fax [2]  2/9 2/17**
**feet [1]  6/16**
**Fill [1]  7/22**
**find [2]  4/22 15/4**
**first [4]  3/12 4/12 6/9 8/9**
**five [1]  6/16**
**focusing [1]  12/12**
**follow [1]  8/11**
**following [1]  12/8**
**foregoing [2]  16/3 16/5**
**forgetting [1]  12/15**
**forward [1]  5/19**
**fourth [1]  13/8**
**frame [1]  14/12**
**Freeman [1]  2/6**
**fully [4]  3/24 4/1 4/2 7/12**
**fundamental [1]  8/24**

## G

**GACKLE [2]  1/23 16/9**
**gcappio [1]  2/9**
**generally [1]  5/22**
**get [5]  7/9 10/7 12/11 14/8 14/18**
**gets [1]  11/10**
**getting [3]  5/11 5/12 6/2**
**give [1]  14/12**
**given [1]  6/19**
**go [5]  5/25 7/2 8/17 11/5 14/9**
**goes [1]  4/11**
**going [16]  5/24 5/25 7/10 10/7 10/10 10/11
 10/12 11/8 11/9 11/11 11/16 12/6 14/10
 14/11 14/16 15/14**
**gone [1]  14/9**
**Good [2]  3/7 3/10**
**got [3]  14/5 14/5 14/5**
**grasp [1]  6/4**
**great [1]  15/3**
**Gretchen [2]  2/6 3/8**
**group [1]  5/11**
**guys [1]  8/9**

## H

**had [5]  5/1 5/19 7/20 10/1 10/24**
**happen [1]  15/4**
**hard [1]  8/11**
**has [8]  5/8 6/25 9/17 9/18 9/24 11/22 13/19
 14/25**
**have [18]**
**having [1]  7/13**
**Hay [9]  3/19 5/13 5/15 8/18 9/4 10/7 12/4
 14/14 15/13**
**he [14]  6/8 6/9 6/9 10/11 10/12 10/12 10/18
 10/19 11/2 11/8 11/10 11/11 12/4 14/25**
**he's [4]  10/10 10/10 10/21 11/9**
**hear [2]  6/5 7/12**
**hearing [3]  3/22 7/12 8/5**
**here [2]  6/18 8/12**
**Here's [1]  6/7**
**hereby [1]  16/3**
**Hey [1]  6/8**

**high [1]  7/18**
**higher [1]  7/19**
**him [2]  10/20 11/9**
**his [3]  8/21 10/12 11/13**
**hoisted [2]  4/10 4/13**
**hold [1]  6/12**
**Honor [9]  3/7 3/10 4/12 6/20 7/8 11/19 14/1
 14/14 15/12**
**HONORABLE [1]  1/5**
**hope [1]  12/11**
**host [1]  6/12**
**how [7]  5/24 9/7 10/18 11/11 11/24 12/15
 13/10**
**huge [1]  7/2**

## I

**I'll [4]  4/12 7/12 14/12 15/16**
**I'm [21]**
**I've [1]  14/9**
**if [13]  4/7 5/1 5/19 6/19 7/15 7/19 10/1 10/7
 11/17 12/4 12/17 15/7 15/13**
**important [1]  6/18**
**in [47]**
**indicate [1]  14/3**
**indicated [1]  3/15**
**individual [4]  10/16 12/7 13/1 15/14**
**industry [1]  9/5**
**information [1]  10/14**
**initial [1]  5/10**
**injury [1]  14/4**
**interested [1]  3/19**
**intermediary [3]  4/21 11/25 12/2**
**interpreted [1]  4/20**
**interrupt [1]  9/10**
**interrupting [1]  4/17**
**interstices [1]  6/4**
**into [4]  4/15 7/9 11/23 12/10**
**invite [1]  7/10**
**is [38]**
**isn't [3]  7/14 7/16 9/15**
**issue [8]  4/24 7/23 7/25 8/2 12/13 12/24
 14/11 15/5**
**issue-based [1]  12/13**
**issues [6]  4/20 6/17 12/22 13/1 14/17 15/14**
**it [46]**
**it's [14]  3/25 5/4 6/5 6/25 7/2 7/18 9/16 9/18
 11/4 11/24 12/13 13/20 14/4 14/5**
**Item [1]  3/4**
**its [1]  4/6**

## J

**JENNIFER [2]  1/7 3/4**
**JUDGE [2]  1/5 6/2**
**jumping [1]  12/9**
**jurisdictions [2]  13/6 13/11**
**just [14]  5/12 5/18 6/3 7/5 8/8 8/11 8/18 8/21
 11/5 11/22 12/15 13/25 14/6 14/10**

## K

**keeps [1]  8/13**
**Keller [2]  2/7 3/8**
**kellerrohrback.com [2]  2/9 2/10**
**Kelly [2]  2/14 3/11**
**know [11]  3/24 4/7 4/10 4/11 5/18 6/5 8/8
 8/11 8/12 11/4 15/2**
**knowing [1]  5/5**
**known [2]  10/1 10/25**

## L

**lack [3]  6/3 9/8 10/13**
**language [1]  4/19**
**last [1]  8/5**
**law [3]  4/15 9/13 13/9**
**leap [1]  7/2**

## L

learned [3]  4/20 11/25 12/2
least [1]  14/11
leaving [1]  5/11
legitimately [1]  4/23
less [5]  4/25 4/25 10/4 11/1 12/17
let [5]  3/12 7/6 8/14 8/18 9/10
let's [1]  8/15
level [1]  10/1
liability [3]  12/22 12/23 12/23
light [1]  11/22
like [5]  8/7 8/8 8/12 8/14 12/13
LILLY [5]  1/10 3/5 4/6 4/25 6/25
Lilly's [1]  14/19
limiting [1]  4/20
limits [1]  9/21
little [1]  11/14
LLP [2]  2/7 2/15
look [3]  8/5 10/7 10/12
looking [1]  12/15
LOS [3]  1/16 1/24 3/1
loss [5]  6/13 7/3 10/15 12/5 13/16
lower [1]  5/1
Lynch [4]  2/14 3/10 3/13 11/18

## M

made [1]  3/17
main [1]  6/7
make [8]  3/16 3/18 4/9 5/4 6/19 11/11 14/10 15/13
man [1]  6/14
many [1]  7/1
Mark [2]  2/14 3/10
market [6]  6/10 6/24 9/4 9/12 9/15 9/16
markets [1]  9/2
Marx [1]  8/8
Massachusetts [4]  13/7 13/12 14/2 14/7
materiality [2]  13/9 13/21
matter [3]  13/2 15/8 16/5
may [5]  6/3 6/20 14/14 14/20 14/21
maybe [3]  4/8 4/9 4/11
me [14]  3/12 3/22 4/11 7/6 7/15 7/22 8/6 8/14 8/14 8/18 9/10 10/4 11/1 12/10
mean [2]  10/5 11/25
means [1]  6/24
Meet [1]  15/7
members [1]  12/6
mentioned [1]  10/3
mere [1]  14/2
Michael [2]  2/6 3/7
minute [1]  9/10
mislead [1]  4/2
misrepresentation [3]  12/24 13/8 13/16
Missouri [3]  13/7 13/12 14/2
moment [2]  7/5 11/17
MONDAY [2]  1/17 3/1
monopoly [1]  9/18
motion [4]  3/18 4/9 6/19 7/11
mount [1]  5/15
moving [1]  5/19
Mr. [3]  3/13 7/7 11/18
Mr. Lynch [2]  3/13 11/18
Mr. Woerner [1]  7/7
much [3]  9/6 9/7 11/23
must [2]  8/6 11/6
mwoerner [1]  2/10
my [4]  4/18 6/3 7/13 11/3
myriad [1]  12/6
myself [1]  8/7

## N

name [1]  4/3
near [1]  9/18

nearly [1]  9/2
necessary [2]  13/7 13/14
need [1]  13/14
New [3]  13/7 13/12 14/2
no [9]  1/9 4/17 11/5 11/20 11/20 11/20 13/13 13/14 16/10
North [1]  1/24
not [35]
notice [1]  15/9
notion [1]  11/24
NOVEMBER [3]  1/17 3/1 16/7
now [10]  5/3 5/7 5/19 6/5 6/12 7/9 7/16 9/24 11/15 13/5
NW [1]  2/15

## O

objections [1]  14/24
observe [1]  3/18
obviously [2]  9/17 15/2
occur [1]  3/22
Official [1]  16/9
okay [8]  3/14 4/12 8/15 9/20 11/14 11/21 15/10 15/17
on [17]
one [6]  3/23 6/20 7/5 9/3 10/2 11/5
only [1]  4/17
opportunity [2]  5/19 6/19
opposed [1]  10/2
opposition [1]  14/20
or [22]
order [2]  4/14 14/11
orders [1]  4/18
other [10]  4/24 5/23 6/20 7/15 9/3 10/21 12/14 13/22 14/17 14/21
others [1]  7/1
our [2]  4/13 4/16
out [5]  6/20 10/17 14/16 15/12 15/16
outline [1]  5/23
outset [1]  5/4
over [1]  12/7
overall [1]  3/18
own [2]  4/10 4/13

## P

p.m [2]  3/1 15/18
package [1]  10/15
paid [3]  10/6 10/17 12/4
pains [1]  8/5
papers [1]  10/12
paragraph [2]  6/8 6/9
part [1]  14/14
particular [1]  4/7
passes [3]  3/21 12/4 15/14
past [1]  7/1
patent [1]  9/18
patience [1]  15/13
pay [1]  6/11
Pennsylvania [1]  2/15
people [1]  11/5
percent [8]  10/1 10/2 10/14 10/16 10/18 11/1 11/9 11/9
percentage [2]  5/6 7/18
perfect [2]  9/2 9/4
petard [2]  4/10 4/13
pharmaceutical [1]  9/5
pharmaceuticals [1]  12/3
plaintiff [8]  1/8 2/4 4/21 5/5 7/6 7/17 11/22 13/17
plaintiff's [5]  3/23 4/5 5/7 12/12 12/16
plaintiffs [1]  3/8
pleadings [1]  3/15
please [1]  3/6
pocket [1]  10/17

point [6]  3/20 3/24 4/4 5/16 6/20 14/10
political [1]  11/6
position [2]  12/13 12/16
power [2]  9/17 9/24
predominate [2]  12/7 15/15
preferences [2]  6/25 7/3
preparing [1]  3/22
PRESIDING [1]  1/5
press [1]  8/12
pretend [1]  3/25
price [12]  4/24 5/1 5/7 7/19 8/3 8/4 8/14 8/25 9/2 9/6 9/21 9/24
priced [1]  4/25
pricing [3]  4/7 4/23 9/17
problem [1]  6/7
proceedings [3]  1/15 15/18 16/5
produce [1]  14/22
producing [1]  14/24
product [1]  10/4
purchased [1]  7/24
purchaser [1]  9/1
purpose [1]  9/7
put [2]  9/8 15/8

## Q

question [5]  5/10 5/12 11/6 11/20 11/24
questions [7]  3/12 7/6 11/4 11/5 11/16 12/7 12/7
quite [1]  14/1

## R

range [1]  6/17
reach [2]  4/22 15/7
read [1]  11/23
real [1]  6/2
reason [1]  14/5
reasonable [1]  13/21
reasons [1]  12/8
recognizing [2]  4/22 9/11
record [2]  3/18 16/4
refocus [1]  5/12
regard [1]  5/8
regarding [1]  3/19
regression [1]  3/25
regression-type [1]  3/25
relationship [1]  14/6
reliance [2]  13/13 13/19
repeats [1]  6/8
report [1]  3/21
Reporter [1]  16/9
REPORTER'S [1]  1/15
representative [1]  13/20
request [2]  14/21 14/22
require [1]  13/9
required [1]  13/14
rereading [1]  4/18
research [1]  6/24
resolution [1]  15/8
respect [1]  9/5
respond [1]  7/11
results [1]  11/10
revealed [1]  5/1
right [5]  5/11 8/16 9/14 11/3 11/16
risk [1]  9/8
river [1]  6/15
Rohrback [2]  2/7 3/8
Room [1]  1/24
RPR [1]  1/23
rub [1]  12/1
rug [1]  6/16
Rule [1]  13/3
Rule B3 [1]  13/3

## S

**said [5]** 6/9 6/10 6/15 10/12 11/23
**same [1]** 9/3
**say [5]** 6/4 6/6 8/18 10/14 11/8
**saying [7]** 8/21 9/23 10/3 10/5 10/24 11/24 12/14
**says [1]** 9/25
**seated [1]** 11/17
**Seattle [1]** 2/8
**second [2]** 6/8 8/10
**securities [1]** 9/13
**see [7]** 5/17 11/14 13/4 13/10 13/12 13/24 14/11
**seem [1]** 6/23
**seemed [1]** 8/7
**seems [2]** 13/5 13/9
**seen [2]** 8/25 9/1
**seller [1]** 8/25
**September [1]** 4/14
**serving [1]** 10/21
**set [3]** 9/21 14/16 15/16
**shape [1]** 8/13
**shortened [1]** 15/9
**should [3]** 5/4 7/19 12/17
**show [3]** 11/4 14/3 14/6
**shown [1]** 13/20
**shows [1]** 11/4
**side [6]** 5/2 5/6 5/6 7/18 7/20 10/9
**side-effects [6]** 5/2 5/6 5/6 7/18 7/20 10/9
**sign [1]** 6/15
**signifies [1]** 12/5
**similar [1]** 13/13
**situation [1]** 10/13
**six [1]** 6/9
**skirts [1]** 4/23
**so [17]**
**some [14]** 3/12 3/16 3/25 4/5 4/18 4/19 5/10 7/6 9/21 11/16 12/1 13/9 14/16 15/3
**somebody [1]** 8/9
**someone [1]** 7/24
**something [6]** 4/8 8/25 9/1 9/12 10/6 15/1
**somewhat [1]** 4/19
**sort [3]** 8/11 12/13 15/3
**sorts [1]** 10/9
**specific [1]** 11/20
**spend [1]** 15/3
**Spring [1]** 1/24
**square [1]** 11/25
**Stand [1]** 12/21
**state [1]** 3/6
**states [3]** 1/1 1/23 13/23
**statute [3]** 13/15 14/3 14/4
**statutory [1]** 14/6
**stenographic [1]** 16/4
**STEPHEN [1]** 1/5
**still [2]** 12/6 15/14
**Street [1]** 1/24
**strenuously [1]** 14/1
**structure [1]** 12/16
**subject [1]** 13/5
**submit [2]** 4/14 5/15
**such [1]** 6/19
**suffered [3]** 10/16 12/6 13/17
**Suite [1]** 2/7
**summarized [1]** 7/14
**supplemental [1]** 8/22
**supported [1]** 15/5
**sure [2]** 3/23 14/10
**survey [3]** 5/11 10/7 11/13
**surveyed [1]** 5/9
**surveys [2]** 7/2 11/10
**SVW [2]** 1/9 3/4
**sweep [1]** 6/16
**symptoms [1]** 10/2

## T

**take [2]** 11/19 13/7
**takeaway [1]** 6/18
**talk [3]** 4/3 11/4 11/4
**talked [1]** 8/4
**technique [2]** 7/1 11/13
**tell [6]** 4/11 4/17 7/15 8/6 8/14 10/20
**tells [1]** 11/9
**term [1]** 4/1
**termed [1]** 4/23
**test [2]** 3/21 13/21
**than [3]** 7/19 8/15 12/17
**Thank [4]** 13/24 14/13 15/11 15/17
**that [75]**
**that's [4]** 4/3 5/6 5/10 12/18
**their [1]** 15/4
**them [1]** 13/13
**then [5]** 7/11 7/12 10/3 12/18 13/16
**theory [10]** 3/19 3/24 4/6 4/22 5/7 5/9 5/13 7/10 9/11 9/12
**there [14]** 3/16 4/5 6/12 12/9 12/11 12/22 12/24 12/25 13/5 13/15 13/16 13/22 13/22 14/4
**thereof [1]** 9/9
**these [1]** 10/24
**they [8]** 3/17 8/8 10/2 10/16 14/19 14/22 15/2 15/5
**they're [1]** 6/2
**they've [1]** 4/23
**thing [1]** 6/21
**things [2]** 9/6 10/9
**think [4]** 3/17 4/2 4/13 5/3
**thinking [1]** 4/9
**Third [1]** 2/7
**this [15]** 3/20 3/24 4/4 4/15 5/8 5/16 7/1 7/14 9/8 9/15 11/5 11/23 11/24 12/5 14/15
**those [1]** 13/21
**though [2]** 8/2 12/11
**three [3]** 13/6 13/13 13/22
**through [6]** 5/24 6/1 8/25 10/7 11/13 13/18
**tie [1]** 4/15
**time [3]** 7/13 14/12 15/3
**too [2]** 11/23 14/17
**took [1]** 8/5
**transcript [3]** 1/15 8/6 16/4
**true [1]** 16/3
**truth [1]** 10/25
**truthfully [1]** 5/1
**try [1]** 8/15
**two [1]** 12/22
**type [1]** 3/25

## U

**U.S [1]** 1/5
**under [2]** 6/16 13/2
**understand [5]** 3/24 4/1 5/9 7/16 11/14
**understood [2]** 5/14 7/16
**UNITED [2]** 1/1 1/23
**up [6]** 9/6 10/13 10/18 11/2 12/1 12/21
**us [2]** 4/14 5/14
**use [2]** 4/1 7/17
**used [4]** 4/6 4/8 4/19 7/1

## V

**valuable [1]** 11/1
**value [14]** 4/24 8/3 8/4 8/15 9/1 9/2 9/6 9/8 10/4 10/5 10/15 11/24 12/5 12/17
**various [1]** 10/11
**versus [1]** 3/5
**very [2]** 9/3 13/13
**view [1]** 3/17

**violation [4]** 13/15 14/2 14/4 14/7

## W

**WA [1]** 2/8
**wade [1]** 6/15
**waited [1]** 12/3
**want [8]** 4/1 6/5 7/9 7/12 7/14 13/25 15/1 15/12
**wanted [2]** 5/12 5/18
**wants [1]** 9/21
**warning [1]** 9/8
**was [20]**
**Washington [1]** 2/16
**waste [1]** 7/13
**way [4]** 6/13 8/17 12/1 12/3
**we [14]** 4/3 4/13 5/3 5/14 7/23 8/4 12/11 12/25 14/9 14/14 14/18 15/2 15/4 15/6
**we'll [2]** 4/3 7/11
**we've [2]** 4/13 4/15
**wear [1]** 15/12
**weigh [1]** 13/25
**well [5]** 4/9 9/25 10/24 12/13 14/20
**were [2]** 3/17 4/10
**WESTERN [1]** 1/3
**what [20]**
**when [2]** 3/22 4/1
**where [2]** 9/4 10/13
**whereas [1]** 9/1
**whether [9]** 3/21 5/4 5/10 6/5 7/24 10/8 10/9 12/23 14/18
**which [5]** 5/9 12/3 12/23 13/17 13/22
**while [2]** 11/17 13/5
**Who'd [1]** 8/10
**Who's [1]** 8/9
**whole [3]** 6/16 7/23 10/19
**why [6]** 3/20 4/11 5/13 5/18 7/15 8/14
**wide [3]** 6/14 7/4 13/2
**will [4]** 6/10 10/20 11/17 12/15
**willing [1]** 6/10
**WILSON [1]** 1/5
**wise [1]** 6/14
**withdrawal [4]** 5/2 9/8 10/1 10/14
**withdrawals [2]** 7/20 10/25
**within [1]** 15/4
**without [2]** 5/24 7/13
**Woerner [3]** 2/6 3/8 7/7
**words [6]** 4/24 5/23 7/15 10/21 12/14 14/21
**works [1]** 10/10
**worth [1]** 10/14
**would [19]**
**wouldn't [1]** 10/3

## Y

**yes [8]** 6/22 7/8 8/1 8/23 14/16 14/23 14/23 15/16
**yet [1]** 12/9
**York [3]** 13/7 13/13 14/2
**you [61]**
**you'll [2]** 7/10 7/11
**you're [6]** 9/10 9/11 9/23 12/6 12/9 12/14
**your [20]**