1
Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
2
Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
3
Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com
4
Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
5
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
6
Seattle, WA 98101
Telephone: (206) 623-1900 / Fax: (206) 623-3384
7
Juli E. Farris, Esq. (CA Bar No. 141716)
8
jfarris@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
9
1129 State Street, Suite 8
Santa Barbara, CA 93101
10
Tel: (805) 456-1496 / Fax: (805) 456-1497
11
Mark D. Samson, Esq., *admitted pro hac vice*
msamson@kellerrohrback.com
12
**KELLER ROHRBACK L.L.P.**
3101 N. Central Avenue, Suite 1400
13
Phoenix, AZ 85012
Tel: (602) 248-0088 / Fax: (602) 248-2822
14

15
*Additional Counsel for Plaintiffs on following page*

16
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
17

| | |
|---|---|
| JENNIFER L. SAAVEDRA, DR. MELISSA STRAFFORD, CAROL JACQUEZ, and DAVID MATTHEWS, JR., on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>Defendant. | No. 2:12-CV-09366-SVW(MANx)<br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23(b)(3) AS TO CLAIMS FOR STATUTORY DAMAGES ONLY**<br><br>**Date: June 29, 2015**<br>**Time: 1:30 p.m.**<br>**Location: Courtroom 6**<br>**Judge: Hon. Stephen V. Wilson** |

Michael L. Baum  (SBN: 119511)
mbaum@baumhedlundlaw.com
Bijan Esfandiari (SBN: 223216)
besfandiari@baumhedlundlaw.com
R. Brent Wisner (SBN: 276023)
rbwisner@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel: (310) 207-3233  /  Fax: (310) 820-7444

Samuel S. Deskin, Esq.
sam@deskinlawfirm.com
DESKIN LAW FIRM, PLC
16944 Ventura Blvd
Encino, CA 91316
Tel.:  (800) 709-8978 / Fax: (800) 709-8971

Harris L. Pogust, Esq.
hpogust@pbmattorneys.com
T. Matthew Leckman, Esq.
MLeckman@pbmattorneys.com
POGUST BRASLOW MILLROOD LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel.:  (800) 897-8930 / Fax:  (610) 941-4245

*Additional Counsel for Plaintiffs*

## NOTICE OF MOTION

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 29, 2015, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 6 of the United States District Court, Central District of California, Western District, located at 312 N. Spring Street, Los Angeles, California 90012, Plaintiff Dr. Melissa Strafford will move the Court for Class Certification Pursuant to Rule 23(b)(3).

The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, and the Declaration of R. Brent Wisner, as well as the pleadings, records, and files in this action, and such other further evidence and argument as may be presented at the time of the hearing.

This motion is made following conference of counsel pursuant to L.R. 7-3, which took place on May 2, 2015.

DATED:  June 1, 2015

Respectfully submitted,

**KELLER ROHRBACK L.L.P.**

By: */s/ Michael D. Woerner*
Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com
Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384

# **TABLE OF CONTENTS**

I.   BACKGROUND ................................................................3

II.  CLASS CERTIFICATION STANDARD...........................5

III. CLASS DEFINITIONS ...................................................5

IV. ARGUMENT...................................................................6

    A.   Dr. Strafford's Proposed Class and Subclasses are Ascertainable. ...................................................................6

    B.   Rule 23(a) Requirements:  Numerosity, Commonality, Typicality, and Adequacy Requirements Are Satisfied. ....................7

        1.   *Numerosity*:  Defendant does not dispute numerosity...................................................................7

        2.   *Commonality*: Subclasses Share Common Questions of Law and Fact ........................................7

        3.   *Typicality*:  Dr. Strafford Is Typical of Subclass Members Because She and Putative Class Members Sustained the *Same* Injury Arising Out of the *Same* Course of Conduct .................................9

        4.   *Adequacy*:  Dr. Strafford and Counsel Are Adequate Because There Are No Conflicts and They Will Vigorously Prosecute the Case ...........................11

    C.   Rule 23(b)(3) Requirements:  Predominance and Superiority Are Satisfied ................................................12

        1.   *Predominance*:  Common Issues of Fact Predominate Over Individual Issues Because Lilly Made Common Material Omissions to the Subclasses Which Caused the Subclasses to Sustain Injuries...................................................12

           a.   Common questions predominate under Massachusetts General Laws Chapter 93A. ................12

           b.   Common questions predominate under New York General Business Law Section 349....................17

        2.   *Superiority*:  A class action is superior to other available methods of adjudication here. ................21

V.  CONCLUSION.............................................................22

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                               **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ...................................5

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013)............................................12, 18, 20

*Aspinall v. Philip Morris Cos.*,
    442 Mass. 381, 813 N.E.2d 476 (2004) ............................................................16

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013) ........................................................................6

*Ballard v. Equifax Check Servs., Inc.*,
    186 F.R.D. 589 (E.D. Cal. 1999) .......................................................................5

*In re Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.*,
    MDL No. 05-1699 CRB, 2007 WL 2028408 (N.D. Cal. July 10,
    2007) .....................................................................................................................8

*Bezdek v. Vibram USA*,
    --- F.Supp.3d, 2015 WL 223786 (D. Mass. Jan. 16, 2015) .................8, 9, 13, 17

*Casavant v. Norwegian Cruise Line, Ltd.*,
    76 Mass. App. Ct. 73, 919 N.E.2d 165 (Mass. App. Ct. 2009),
    *aff'd*, 460 Mass. 500, 952 N.E.2d 908 (2011) .............................................13, 16

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
    MDL No. 09-2067-NMG, 2014 WL 4446464 (D. Mass. Sept. 8,
    2014) .....................................................................................................................6

*City of New York v. Smokes-Spirits.Com, Inc.*,
    12 N.Y.3d 616, 883 N.Y.S.2d 772, 911 N.E.2d 834 (N.Y. 2009) ....................17

*In re ConAgra Foods, Inc.*,
    --- F. Supp. 3d, 2015 WL 1062756 (C.D. Cal. Feb. 23, 2015)..........................19

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .............................................................................11

*Engel v. Scully & Scully, Inc.*,
   279 F.R.D. 117 (S.D.N.Y. 2011) ...................................................................16

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179, 180 L. Ed. 2d 24 (2011) ...................................................12

*Guido v. L'Oreal, USA, Inc.*,
   Nos. CV 11-1067 CAS, 2013 WL 3353857 (C.D. Cal. July 1,
   2013) ...................................................................................................19, 20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................*passim*

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ............................................................................9

*Herrera v. LCS Fin. Servs. Corp.*,
   274 F.R.D. 666 (N.D. Cal. 2011).....................................................................21

*Hunt v. Check Recovery Sys., Inc.*,
   241 F.R.D. 505 (N.D. Cal. 2007)......................................................................5

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ......................................................................22

*Krueger v. Wyeth, Inc.*,
   No. 03CV2496 JAH (AJB), 2011 WL 8971449 (S.D. Cal. Mar. 30,
   2011) ..............................................................................................................14

*Leardi v. Brown*,
   394 Mass. 151, 474 N.E.2d 1094 (1985).................................................13, 16

*In re Live Concert Antitrust Litig.*,
   247 F.R.D. 98 (C.D. Cal. 2007) (J. Wilson) ..............................................15, 22

*In re Lupron Mktg. & Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005).........................................................................9

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
   270 F.R.D. 45 (D. Mass. 2010).......................................................................13

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
   289 F.R.D. 674 (S.D. Fla. 2013).....................................................................16

iii

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ...................................................................9

*McDowell v. Eli Lilly & Co.*,
    --- F. Supp. 3d, 2014 WL 5801604 (S.D.N.Y. Nov. 7, 2014) ...........................18

*Morelock Enters., Inc. v. Weyerhaeuser Co.*,
    No. CV 04-583-PA, 2004 WL 2997526 (D. Or. Dec. 16, 2004) ......................22

*O'Connor v. Boeing N. Am., Inc.*,
    184 F.R.D. 311 (C.D. Cal. 1998)...............................................................6

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*
    *N.A.*,
    85 N.Y.2d 20, 647 N.E.2d 741 (N.Y. 1995)..........................................17, 18

*Peel v. BrooksAmerica Mortg. Corp.*,
    No. 8:11-cv-0079-JST, 2012 WL 3808591 (C.D. Cal. Aug. 30,
    2012) ........................................................................................................6

*Purity Supreme, Inc. v. Att'y Gen.*,
    380 Mass. 762, 407 N.E.2d 297 (1980) ...................................................13

*Rodriguez v. It's Just Lunch, Int'l*,
    300 F.R.D. 125 (S.D.N.Y. 2014) ..............................................................18

*Saucedo v. NW Mgmt. & Realty Servs., Inc.*,
    290 F.R.D. 671 (E.D. Wash. 2013) ..........................................................16

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) .........................................................19, 20

*Slaney v. Westwood Auto, Inc.*,
    366 Mass. 688, 322 N.E.2d 768 (1975) ...................................................13

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003)....................................................................16

*In re Steroid Hormone Prod. Cases*,
    181 Cal. App. 4th 145, 104 Cal. Rptr. 3d 329 (Cal. Ct. App. 2010).................14

*Stutman v. Chem. Bank*,
    95 N.Y.2d 24, 731 N.E.2d 608 (N.Y. 2000)...............................................18

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives &*
    *Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002)............................................................6

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)............................................7

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ........................................................5, 21

**Statutes**

Massachusetts General Law Chapter 93A ...........................................*passim*

New York General Business Law Section 349...................17, 18, 19, 20

**Other Authorities**

Fed. R. Civ. P. 23(a)............................................................................5, 7

Fed. R. Civ. P. 23(a)(2)...........................................................................7

Fed. R. Civ. P. 23(a)(3)...........................................................................9

Fed. R. Civ. P. 23(a)(4).........................................................................11

Fed. R. Civ. P. 23(b) ..........................................................................5, 12

Fed. R. Civ. P. 23(b)(3).......................................................................*passim*

Fed. R. Civ. P. 23(b)(3)(D) ....................................................................22

Fed. R. Civ. P. 23(c)(4)............................................................................1

Fed. R. Civ. P. 23(c)(5)............................................................................5

Fed R. Civ. P. 23(g)(1)(A) ....................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs first moved for class certification on August 19, 2013, seeking four state consumer classes under Fed. R. Civ. P. 23(b)(3) and, in the alternative, an issue class under Fed. R. Civ. P. 23(c)(4).  (Pls.' Mot. for Class Cert. Rule 23(b)(3) & Rule 23(c)(4), Dkts. 73 & 74.)  The Court denied all classes on December 18, 2014, focusing primarily on Plaintiffs' "novel theory of damages." (Order on Mots. for Class Cert. at 6, Dkt. 154.)  Plaintiff Melissa Strafford, a medical doctor who purchased Cymbalta for personal use in Massachusetts and New York, now moves to certify a more "traditional" class action, seeking minimum statutory damages of $25 and $50 for each consumer in Massachusetts and New York, respectively.

Unlike the previous motions for class certification, which did "not assert that class members were harmed by being overcharged[,]" this motion specifically focuses on a theory of damages predicated on overcharging consumers for Cymbalta.  *Id.* This new motion is based, in part, on documents recently produced by Eli Lilly and Company ("Lilly") in Cymbalta withdrawal litigation occurring in the Eastern District of Virginia, which are the subject of a sanctions motion soon to be filed before this Court.[1]  These documents provide evidence that Lilly was able to charge a price premium for Cymbalta by minimizing the risks of withdrawal (even in the "inefficient" pharmaceutical market)—conduct that violated Massachusetts and New York consumer protection law.  This evidence is sufficient, for the purposes of seeking a consumer class for statutory damages in Massachusetts and New York, to permit class certification under Rule 23(b)(3).

As the Court may recall, Cymbalta is a "blockbuster" drug—one of only twenty drugs to ever exceed $5 billion dollars in annual sales globally.  Defendant Lilly marketed Cymbalta all over the world, but in the United States Lilly

---

[1] These documents were never produced by Lilly in this action, even though they were clearly relevant to the issues raised in briefing class certification and responsive to the limited discovery ordered by the Court.

1

deliberately omitted material information about the overall risk of suffering from withdrawal symptoms upon cessation of treatment with Cymbalta.

The European and U.S. labels for the same drug communicate remarkably different information to consumers and their doctors.  In Europe, Cymbalta's label disclosed to consumers that an eye-popping percentage—45 percent—of consumers who took Cymbalta experienced withdrawal symptoms after stopping the drug suddenly, and that for some of those consumers, withdrawal could last 2-3 months or more.  In stark contrast, in the United States the Cymbalta label instead only told consumers that distinct withdrawal symptoms occurred at a rate of 1 percent or greater and gave no indication of how long symptoms could last.

Lilly's omission of material information from its United States label, which was uniform throughout the United States (i.e., the same omissions occurred in New York and Massachusetts) violated the New York and Massachusetts consumer protection laws, which are designed to promote an honest marketplace. Because of Lilly's common course of conduct, the number of consumers of Cymbalta, and the relatively small economic value of their consumer protection claims, Plaintiff's claims are best adjudicated using the class action device.

Lilly's defense to Plaintiffs' prior motion for class certification ultimately boils down to the proposition that it is immune from state consumer protection laws, simply because it manufactures prescription drugs rather than soda, cosmetics, or some other consumer product.  Lilly fully utilized all channels of communication with consumers—from TV commercials and magazine ads aimed directly at consumers to indirect messages in WebMD quizzes designed to get consumers to ask their doctors about Cymbalta.  (*See* Pls.' Second Notice Suppl. Material, Dkt. 71 (regarding Lilly-sponsored "quiz" on WebMD that resulted in the same outcome—informing  consumers that they may be at risk for depression— regardless of the consumer's responses).)  In none of these communications with

either consumers or doctors in New York or Massachusetts did Lilly include the information about withdrawal risks that is plainly stated in its European Cymbalta label.  Like any other manufacturer that omits material information when selling products in New York or Massachusetts, Lilly should be held accountable for misleading their consumers.

## I.   BACKGROUND

Plaintiffs' corrected First Amended Complaint ("FAC"), asserted claims on behalf of themselves and all similarly situated individuals under the consumer protection laws of four different states.  (Pls.' corrected First Am. Compl., Dkt. 44.)  The Court denied Lilly's Motion to Dismiss with the exception of Plaintiffs' claims for injunctive and declaratory relief.  (Order on Mot. to Dismiss, Dkt. 52.) Lilly filed its Motion for Summary Judgment a month later, before discovery had taken place (Def.'s Mot. for Summ. J., Dkt. 54.), and Plaintiffs filed a Rule 56(d) motion requesting discovery on April 3, 2013.  (Pls.' Mot. Pursuant Rule 56(d), Dkt. 59.)  The Court denied Lilly's Motion for Summary Judgment and directed Plaintiffs to brief class certification, still without discovery taking place.  (Order on Mot. for Summ. J., Dkt. 72.)

Plaintiffs therefore filed motions for class certification pursuant to Federal Rules of Procedure 23(b)(3) and (c)(4) on August 19, 2013, without having conducted discovery relevant to class certification and before Lilly even answered the complaint.  (Dkts. 73 & 74.)  After Plaintiffs' class certification motions were fully briefed, the Court ordered supplemental briefing to give Defendant "the opportunity to develop a factual record in support of its Opposition before the Court can resolve class certification."  (Order on Opp'n to Mot. for Class Cert. Rule 23(b)(3), Dkt. 89.)  Following that round of briefing and another hearing, the Court ordered additional supplemental briefing related to Plaintiffs' proposed damages model and instructed the parties to confer regarding the exchange of

"information necessary to brief these issues efficiently." (Order on Further Proceedings Mot. for Summ. J. at 2, Dkt. 99.) Each party deposed one expert witness, and Lilly produced five documents on December 13, 2013. Plaintiffs moved to compel narrow discovery related to Lilly's use of conjoint analysis, the basis of their damages model. (Pls.' Mot. to Compel Narrow Disc., Dkt. 111.) The Court concluded that what Lilly had offered to produce to Plaintiffs in an email, plus conjoint analyses related to Prozac's withdrawal risk, was "likely to be sufficient for purposes of the supplemental briefing." (Order on Mot. to Compel at 1, Dkt. 119.) Lilly produced an additional four documents on February 24, 2014. Thus, two expert depositions and nine documents constitute the full extent of discovery conducted in this case as of May 2015.

As noted above, the Court denied Plaintiffs' motions for class certification, finding the "novel" damages theory to be "[a]t the heart of Plaintiffs' case[.]" (Order on Mots. for Class Cert. at 6, Dkt. 154.)

Plaintiffs had also raised the possibility of statutory damages for the New York and Massachusetts classes as an alternative to their damages model in their first motion for class certification pursuant to Rule 23(b)(3). (*See* Dkt. 73 at 22-23 n.15.) In addition, Plaintiffs presented this in their supplemental briefing of March 31, 2014, arguing that Massachusetts and New York allow for minimum statutory damages awards, and that "[e]ven if the Court finds that actual damages cannot be determined on a classwide basis, it would still be appropriate to certify Massachusetts and New York statutory-damages classes." (Suppl. Br. in Supp. of Pls.' Mots. for Class Cert. at 30, Dkt. 132.)

The Court's order on class certification did not address Plaintiffs' claim for statutory damages in New York and Massachusetts. Therefore, in this Motion, Plaintiff Dr. Strafford presents this argument to the Court, so that it may be fully addressed.

## II.   CLASS CERTIFICATION STANDARD

Rule 23 governs class certification.  A party seeking to certify a class or subclass must demonstrate that it has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001); *see* Fed. R. Civ. P. 23(c)(5).  Rule 23(a) provides that a putative class must have sufficient numerosity, commonality, typicality, and adequacy before being certified.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)).

Here, Dr. Strafford seeks to certify classes of Massachusetts and New York consumers defined *infra* at Part III pursuant to Rule 23(b)(3), which requires a court to find that common questions of law or fact predominate over individual questions and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  As a general rule, "[c]lass action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'"  *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007) (quoting *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999)).

## III.   CLASS DEFINITIONS

Dr. Strafford moves to certify the following consumer class and subclasses: All natural persons within the Commonwealth of Massachusetts and the State of New York who purchased and/or paid for Cymbalta manufactured, distributed, and/or marketed by Lilly from Cymbalta's August 2004 launch until the present, divided into the following two subclasses:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(1) A New York General Business Law Section 349 class of consumers who purchased and/or paid for Cymbalta in New York between August 2004 and the present;

(2) A Massachusetts General Law Chapter 93A class of consumers who purchased and/or paid for Cymbalta in Massachusetts between August 2004 and the present.

## IV.   ARGUMENT

**A.     Dr. Strafford's Proposed Class and Subclasses are Ascertainable.**

Courts have held that an implied prerequisite to class certification is that a class must be adequately defined and clearly ascertainable.  *See, e.g.*, *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002).  A class is sufficiently defined and ascertainable if it "is administratively feasible for the court to ascertain whether an individual is a member."  *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  Here, Dr. Strafford's proposed class and subclasses are defined based on an objective criterion, the purchase of Cymbalta.  Records of purchase may be obtained primarily through pharmacy records; records could also be obtained through health insurers or through consumers' medical records and payment receipts.  "Because a review of the records and an application of objective criteria" will determine membership in the class, Dr. Strafford's proposed class and subclasses are sufficiently ascertainable.  *Peel v. BrooksAmerica Mortg. Corp.*, No. 8:11-cv-0079-JST (RNBx), 2012 WL 3808591, at *3 (C.D. Cal. Aug. 30, 2012).  Similar state consumer classes involving pharmaceutical products are commonplace.  *See, e.g.*, *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2067-NMG, 2014 WL 4446464, at *4 (D. Mass. Sept. 8, 2014) (explaining how, in a pharmaceutical class action, class members submit "proof" to claims administrator

6

as part of a class settlement).

**B.      Rule 23(a) Requirements:  Numerosity, Commonality, Typicality, and Adequacy Requirements Are Satisfied.**

      1.      *Numerosity*:  Defendant does not dispute numerosity.

Using Lilly's statement in an advertisement that nine million consumers had taken Cymbalta by 2008 and Census data to extrapolate, Dr. Strafford previously estimated that there are over 576,000 consumers of Cymbalta in New York and over 192,000 consumers of Cymbalta in Massachusetts.  (Dkt. 73 at 4.)  Lilly does not challenge numerosity.  (Def.'s Opp. to Class Cert. Rule 23(b)(3) at 7 n.7, Dkt. 84.)

      2.      *Commonality*: Subclasses Share Common Questions of Law and Fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  As articulated by the Supreme Court, a class claim "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).  Specifically, the Court explained, "'[w]hat matters to class certification … is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'"  *Id*. (citation omitted).

Lilly's conduct was common to the class: nowhere in its U.S. marketing and labeling of Cymbalta did Lilly inform consumers (or their doctors) of a 45% risk of withdrawal.  (In Europe, in contrast, as explained above, Lilly did state clearly on its label that "adverse events seen on abrupt treatment discontinuation occurred in approximately 45% of patients treated with Cymbalta" and that "in some individuals" withdrawal symptoms "may be prolonged (2-3 months or more)."  *See*

Declaration of R. Brent Wisner ("Wisner Decl."), Ex. 3 at 6.)  Lilly's U.S. Cymbalta marketing campaign was pervasive and successful.[2]  By omitting the actual frequency, severity, and duration of Cymbalta withdrawal in all of its communications with consumers and physicians, Lilly exposed every consumer and every physician to the *same* material omission.  Besides being directly exposed to Lilly's universal omissions regarding Cymbalta withdrawal, all subclass members were also indirectly exposed through their physicians to the affirmative misrepresentations on Cymbalta's drug label.  *See In re Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.*, MDL No. 05-1699 CRB, 2007 WL 2028408, at *3 (N.D. Cal. July 10, 2007) ("[A] consumer may suffer actual damages from deceptive advertising if the consumer purchased a product as a result of the advertisements' deception of another.").

In both New York and Massachusetts, a violation of the relevant consumer protection act is "governed by a 'reasonable consumer' test." (Order on Mot. to Dismiss at 12, Dkt. 52 (citation omitted).)  Because an objective standard governs, the question of whether Lilly's omission was deceptive can be answered by common proof.

As the District of Massachusetts noted recently when certifying a settlement class regarding alleged consumer protection violations, "the core issues of fact and law in this case regarding alleged misrepresentation of health benefits are common to all class members and present 'a need for combined treatment and a benefit to be derived therefrom.'" *Bezdek v. Vibram USA*, --- F.Supp.3d ----, Nos. 12-10513-

---

[2] Lilly's Cymbalta marketing team was named the "Large Pharma Marketing Team of the Year" in 2007 based on its ad campaign which generated a "virtually unheard of" six-to-one return on investment.  This ad campaign has been described as "the single most successful prescription drug campaign on television, the gold standard in the competitive direct-to-consumer marketing industry."  By 2012, Lilly surpassed all other pharmaceutical manufacturers to become the single biggest spender on direct-to-consumer advertising.  (*See* Declaration of Michael D. Woerner, Exs. 1, 8, 9, Dkts. 75-1, 75-8, 75-9.)

DPW, 13-10764-DPW, 2015 WL 223786, at *8 (D. Mass. Jan. 16, 2015) (quoting *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005)). Likewise here, the core issues of fact and law regarding Lilly's alleged material omissions are common to all class members.

Moreover, as discussed below, there are common issues relating to causation and damages that are likewise subject to common proof. Commonality—which, after all, "only requires a single significant question of law or fact"—is satisfied. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

### 3. *Typicality*: Dr. Strafford Is Typical of Subclass Members Because She and Putative Class Members Sustained the *Same* Injury Arising Out of the *Same* Course of Conduct

The typicality inquiry under Rule 23(a)(3) requires Plaintiff to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The representative claims do not need to be "substantially identical" to those of absent class members, just "reasonably co-extensive." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted).

Typicality is satisfied because this case is about a universal omission. Unlike European consumers, no one in the U.S., neither consumers nor doctors (and Dr. Strafford is both), received the material information that the risk of Cymbalta withdrawal was at least as high as 44%.[3] Lilly's consumer advertising

---

[3] Other clinical trials funded by Lilly place the risk at 50.8%, *see* Declaration of David Perahia. M.D., Ex. 1 at 12, Dkt. 57, and Cymbalta's pharmacokinetic properties suggest that the risk could be as high as 78%. (*See* Declaration of Joseph Glenmullen. M.D. ("Glenmullen Decl."), ¶ 9, Dkt. 80.)

9

1   campaigns did not provide any information about withdrawal symptoms.  (*See,*

2   *e.g.*, Declaration of Jennifer L. Saavedra, Ex. B, Dkt. 78-2; Declaration of Carol

3   Jacquez, Ex. A, Dkt. 77-1.)  The Cymbalta label itself, which is accessible through

4   Lilly's website,[4] states only that individual withdrawal symptoms occur at a rate of

5   "1% or greater," while saying nothing about the fact that roughly half of all

6   consumers would experience some form of withdrawal upon attempting to stop

7   taking the drug.  (*See* Declaration of Sharon Hoog, M.D., ¶ 13, Dkt. 56.)  Lilly's

8   conduct was therefore not unique to Dr. Strafford.

9          Because of this universal omission, Dr. Strafford and all members of the

10   proposed classes sustained the same injury: each purchased a drug for which the

11   manufacturer omitted material information about the true frequency, severity, and

12   duration of withdrawal.  (*See* Declaration of Dr. Melissa Strafford ("Strafford

13   Decl."), ¶¶ 5-8, Dkt. 76.)  Lilly's common course of deceptive conduct allowed it

14   to market Cymbalta at premium prices.

15          Throughout the course of this litigation, Lilly has hinged its opposition to

16   class certification on the premise that Plaintiffs could never prove that omitting

17   material withdrawal information allowed Lilly to charge premium prices for its

18   drug.  (*See* Def.'s Opp. to Class Cert. Rule 23(b)(3) at 13-17, Dkt. 84; Def.'s Supp.

19   Opp. to Class Cert. Rule 23(b)(3) at 16-22, Dkt. 90.)  But powerful evidence to the

20   contrary is provided by a recently discovered, game-changing document that

21   should have been produced in response to the Court's order but was not. (*See*

22   Order on Mot. to Compel, Dkt. 119.)  The document is a "U.S. Strategic Pricing

23   Study," which Lilly commissioned in 2002, almost two years prior to Cymbalta's

24   approval in the United States.  The U.S. Strategic Pricing Study found that "only

25   three factors could justify or warrant consideration of premium pricing relative to

26   Effexor XR," including ***"[a] significant decrease in rate and severity of***

_____

[4] http://pi.lilly.com/us/cymbalta-pi.pdf

27

28

1    ***withdrawal/discontinuation syndrome.***" Wisner Decl., Ex. 1 at 91 (emphasis

2    added).  Indeed, the U.S. Strategic Pricing Study goes on to explain that of the

3    "product attributes that justify a premium price over ***other antidepressants*** . . .

4    ***Minimization of withdrawal syndrome is also seen as important.***" (*Id.* at 96

5    (emphasis added).)  Thus, according to Lilly's *own* U.S. Strategic Pricing Study,

6    minimizing the risks of withdrawal was directly correlated to whether Lilly would

7    be able to sell Cymbalta at a price premium over competing antidepressants.  This

8    document confirms Plaintiffs' original theory—that consumers overpaid for a

9    misrepresented product.

10          This proposed class action is "based on conduct which is not unique to the

11   named plaintiff[]," and "other class members have been injured by the same course

12   of conduct."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011)

13   (citation and internal quotation marks omitted).  The typicality requirement is met.

14          **4.    *Adequacy*:  Dr. Strafford and Counsel Are Adequate Because
                   There Are No Conflicts and They Will Vigorously Prosecute the
15                 Case**

16          The adequacy requirement requires that the "representative parties . . . fairly

17   and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

18   "Resolution of two questions determines legal adequacy: (1) do the named

19   plaintiffs and their counsel have any conflicts of interest with other class members

20   and (2) will the named plaintiffs and their counsel prosecute the action vigorously

21   on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

22          Here, there are no conflicts of interest between the proposed class

23   representative and the absent class members, and Plaintiff is an active participant

24   in this lawsuit.  (*See* Strafford Decl., ¶¶ 11-17.)  Moreover, counsel for Dr.

25   Strafford—Keller Rohrback, L.L.P., and Baum, Hedlund, Aristei & Goldman—are

26   well versed in litigating complex pharmaceutical cases, including class actions, and

27   have demonstrated competence and a willingness to vigorously prosecute this

28

                                            11

matter on behalf the putative classes.  *See* Fed R. Civ. P. 23(g)(1)(A); Woerner Decl., Ex. 5, Dkt. 75-5.  The adequacy requirement is satisfied.

**C.     Rule 23(b)(3) Requirements:  Predominance and Superiority Are Satisfied**

      **1.     *Predominance*:  Common Issues of Fact Predominate Over Individual Issues Because Lilly Made Common Material Omissions to the Subclasses Which Caused the Subclasses to Sustain Injuries**

Predominance under Rule 23(b)(3) exists when "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ."  *Hanlon,* 150 F.3d at 1022.  The predominance inquiry under Rule 23(b) "does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof.  What the rule does require is that common questions *predominate* over any questions affecting only individual [class] members."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196, 185 L. Ed. 2d 308 (2013) (citations and internal quotation marks omitted).  Here, common questions governed by objective standards under the consumer protection laws of Massachusetts and New York represent a significant aspect of the case and predominate over any individual issues.

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184, 180 L. Ed. 2d 24 (2011) (citation omitted).  As explained below, common questions predominate with respect to both Massachusetts and New York consumer protection statutes.

      **a.     Common questions predominate under Massachusetts General Laws Chapter 93A.**

"'[T]he protections provided by ... Mass. Gen. Laws ch. 93A, § 9, are quite

12

robust and arguably more consumer friendly' than any other state consumer protection provision." *Bezdek*, 2015 WL 223786, at *11 (quoting *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 60 (D. Mass. 2010)). To prove a claim under Ch. 93A, a consumer must show "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." *Casavant v. Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 76, 919 N.E.2d 165 (Mass. App. Ct. 2009), *aff'd*, 460 Mass. 500, 952 N.E.2d 908 (2011).

The standard for evaluating a deceptive act or practice under Ch. 93A is an objective one: whether "it possesses 'a tendency to deceive.'" *Leardi v. Brown*, 394 Mass. 151, 156, 474 N.E.2d 1094 (1985) (citation omitted). Causation is also evaluated objectively, because Ch. 93A does not require reliance. *See Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703-04, 322 N.E.2d 768 (1975). Materiality and causation are established by showing that the deceptive representation "could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted." *Purity Supreme, Inc. v. Att'y Gen.*, 380 Mass. 762, 777, 407 N.E.2d 297 (1980) (citation omitted). In the case of an allegedly deceptive nondisclosure, "[c]ausation can also be established by determining whether the nondisclosure was of a material fact. In the context of c. 93A claims based on nondisclosure, '[m]ateriality ... is in a sense a proxy for causation.'" *Casavant*, 76 Mass. App. Ct. at 77-78 (quoting Gilleran, The Law of Chapter 93A § 4.16, at 185–86 (2d ed. 2007)).

Plaintiff's expert, Dr. Joseph Glenmullen, previously explained that "a drug's propensity to cause withdrawal symptoms and, ultimately, physical dependency is an important factor to consider in deciding whether to prescribe a particular antidepressant to *any* patient." (Glenmullen Decl. ¶ 10 (emphasis added);

13

*see also* Supplemental Declaration of Joseph Glenmullen, M.D. ¶¶ 11, 14, 28-29, Dkt. 97.)  After reviewing Cymbalta's labels and relevant clinical data, Dr. Glenmullen concluded that "Lilly's misrepresentations and omissions made it impossible for *any* patient or physician to make an informed decision about the appropriateness of taking or prescribing Cymbalta." (Glenmullen Decl. ¶ 26 (emphasis added).)  As Dr. Glenmullen's declarations make clear, a medication's propensity to cause physical dependency and to leave the consumer feeling "hooked" is critical information, material to a reasonable consumer.  (*Id.*)  *See also Krueger v. Wyeth, Inc.*, No. 03CV2496 JAH (AJB), 2011 WL 8971449, at *9 (S.D. Cal. Mar. 30, 2011) (finding materiality for class certification purposes by failing to disclose specific drug risks that physicians would consider important); *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157, 104 Cal. Rptr. 3d 329 (Cal. Ct. App. 2010) (finding materiality when drug manufacturer failed to disclose that product contained a steroid).  A medication's propensity to cause withdrawal is a safety consideration and thus material to any consumer or doctor.[5]

Indeed, a recently produced market survey shows that in 2004, the year Cymbalta entered the market, the issue of withdrawal was one of the most important factors influencing prescribing decisions related to antidepressants. Wisner Decl., Ex. 2 at 49.  The survey states that of the "Factors Influencing Doctor's Selection of an Antidepressant . . . ***Avoid dependence / withdrawal issues***" was the most important.  (*Id.* (emphasis added).)  The survey "show[ed] that when promoting Cymbalta to doctors . . . Avoid dependence / withdrawal

---

[5] At the class certification stage, Dr. Strafford need not prove that Lilly's omissions regarding Cymbalta withdrawal were in fact material.  Rather, "[t]he proper inquiry for class certification purposes is whether plaintiff can use common proof to prove whether a misrepresentation or nondisclosure is material." *Krueger v. Wyeth*, No. 03-2496, 2011 WL 8971449, at *6 (S.D. Cal. Mar. 30, 2011). Materiality is an objective standard—whether a reasonable person would attach importance to the information—and thus Dr. Strafford can use common proof to demonstrate at trial the materiality of Cymbalta's significant withdrawal risk.

issues' . . . *must be addressed in order for a productive communication*." (*Id.* at 50 (emphasis added).)  And, "'Avoid dependence / withdrawal issues' *is one of the important factors in selecting an antidepressant*. . . . *This can be used an opportunity for Cymbalta.*" (*Id.* at 69 (emphasis added).)  The survey even recommends that "[w]hen promoting to GPs [General Practitioners], *less side effect profile and 'it does not cause dependence' have to be stressed[.]*" (*Id.* at 156 (emphasis added).)  In other words, Lilly's own survey provides additional evidence of the materiality of Cymbalta's withdrawal risk and, therefore, classwide causation.

Likewise, the element of injury or loss poses questions common to the class.  As discussed above, Dr. Strafford alleges that Lilly's omission of material information—the frequency, severity, and duration of Cymbalta withdrawal—allowed it to sell Cymbalta at a premium price.  The existence of this price premium is supported by Lilly's "U.S. Strategic Pricing Study" and additional evidence in Lilly's possession.  Whether Dr. Strafford can prove this element of her claim rests on evidence common to the class.  In other words, proof that each consumer was economically harmed by paying a price premium for Cymbalta is subject to common proof: Lilly's own pricing data and studies.

Moreover, Dr. Strafford need not measure the exact impact of this price premium for each class member (actual damages) because she only seeks statutory damages under Ch. 93A, i.e., $25 per class member.  Mass. Gen. Laws Ann. ch. 93A, § 9(3) (West 2004) ("[I]f the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars[.]"); *see In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 133 (C.D. Cal. 2007) (J. Wilson) ("[T]he amount of damages sustained by Plaintiffs is a separate and distinct issue from fact of damage or impact.").  The Massachusetts Supreme Judicial Court "has held that plaintiffs who cannot show actual damages under Ch. 93A may nonetheless obtain statutory

damages if liability is established." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 42 (1st Cir. 2003) (citing *Leardi v. Brown*, 394 Mass. 151, 159, 474 N.E.2d 1094 (1985).  For example, in a case about deceptive advertising of cigarettes, the Massachusetts Supreme Judicial Court found that the class would be entitled to statutory damages, and distinguished between the ability to prove actual damages and showing injury from a defendant's unlawful conduct.  *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 402, 813 N.E.2d 476 (2004).  Similarly, in *Casavant*, the plaintiffs were entitled to statutory damages where their injury was not receiving a refund quickly enough.  76 Mass. App. Ct. at 77-78.  In this case, actual damages are likewise difficult to determine, as Cymbalta's premium pricing affected class members to varying degrees because of the existence of health insurance and the varying terms of pharmaceutical benefits that can accompany it. Thus, statutory damages are appropriate.

Class certification based in part on a statutory-damages theory of recovery has been granted under various statutes.  *See, e.g.*, *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 130 (S.D.N.Y. 2011) (certifying class in Fair and Accurate Credit Transactions Act case and explaining that "[b]ecause the complaint seeks statutory damages, there will be no need for individualized damages determinations."); *Saucedo v. NW Mgmt. & Realty Servs., Inc.*, 290 F.R.D. 671 (E.D. Wash. 2013) (granting class certification where plaintiffs claimed statutory damages under the Washington Farm Labor Contractors Act); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 695-96 (S.D. Fla. 2013) (in case involving claims under the Telephone Consumer Protection Act and Fair Debt Collection Practices Act, denying reconsideration of class certification order and allowing plaintiff to modify damages request and seek only statutory damages).

Thus, as courts have found when evaluating other ch. 93A claims involving misrepresentations and price premiums, common questions predominate.  For

example, in certifying a settlement class for claims of false advertising under Ch. 93A, the District of Massachusetts found that "[t]he core questions in this case—whether [Defendant's] advertising was false or misleading, whether its conduct violated the causes of action identified in [Plaintiffs'] amended complaint, and whether the class members suffered injury and are entitled to damages as a result of this conduct—are common to all class members." *Bezdek*, 2015 WL 223786, at *10. The *Bezdek* court's reasoning applies equally here; the core questions in this case parallel those in *Bezdek* and are common to the class.

### b. Common questions predominate under New York General Business Law Section 349.

New York's consumer protection statute, General Business Law ("GBL") Section 349, "declares unlawful '[d]eceptive acts or practices in the conduct of any business.'" *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621, 883 N.Y.S.2d 772, 911 N.E.2d 834 (N.Y. 2009) (quoting GBL § 349(a)). To successfully prosecute a Section 349 claim, a plaintiff must allege "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Id.* at 621–22.

The "consumer-oriented" requirement means that a plaintiff must "demonstrate that the acts or practices have a broader impact on consumers at large"—excluding, for example, private contract disputes. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 647 N.E.2d 741 (N.Y. 1995). Whether Lilly's omission of accurate information regarding Cymbalta withdrawal had a broad impact on consumers at large is a common question that will necessarily be answered classwide.

As to whether the omission is misleading under GBL Section 349, the New York Court of Appeals has adopted "an objective definition of deceptive acts and

17

practices, whether representations or omissions"—i.e., "those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers'*, 85 N.Y.2d at 26.  As with Massachusetts' Ch. 93A, the nature of the objective standard means that whether Lilly's omission was deceptive under New York law is another common question that will necessarily be answered classwide, without regard to the individual class member's experience.[6]

In another parallel to Massachusetts' Ch. 93A, reliance is not an element of a GBL Section 349 claim.  "Crucially, the Court of Appeals of New York has cautioned courts against conflating 'reliance' and 'causation' with regard to section 349 claims." *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 147 (S.D.N.Y. 2014) (finding that common issues predominated with plaintiffs' GBL Section 349 claim and certifying a New York class).  "Reliance and causation are twin concepts, but they are not identical." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30, 731 N.E.2d 608 (N.Y. 2000).  Under GBL Section 349, a plaintiff must show that the defendant's material deception caused her to suffer a loss or actual harm, but she need not show that she would not have otherwise purchased the product.  *Id.* Because reliance is not required, the element of causation turns on materiality.  *See In re ConAgra Foods, Inc.*, --- F. Supp. 3d ----, No. CV 11-05379 MMM (AGRx),

---

[6] Lilly may cite a personal injury case, *McDowell v. Eli Lilly & Co.*, --- F. Supp. 3d ----, No. 13 Civ. 3786, 2014 WL 5801604 (S.D.N.Y. Nov. 7, 2014), in its arguments against Dr. Strafford's proposed New York class.  The *McDowell* court held on summary judgment that the Cymbalta withdrawal warning was adequate, after considering testimony from the plaintiff's prescribing nurse practitioner.  While Dr. Strafford respectfully disagrees with the *McDowell* court's conclusion, that decision is a merits decision in a tort case that does not affect the appropriateness of adjudicating her consumer claims classwide.  Here, the Court should not "put the cart before the horse," as Dr. Strafford need not "first establish that [she] will win the fray" at the class certification stage. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191, 185 L. Ed. 2d 308 (2013).  Whether Lilly's omission was not likely to mislead a reasonable consumer is a common question for the class such that the class "will prevail or fail in unison." *Id.*  Moreover, for purposes of class certification, the Court instructed the parties to "assume that Plaintiffs will be able to prevail on their contention that the warnings given to physicians were inadequate as alleged in the FAC." (Order on Mot. for Summ. J. at 8, Dkt. 72.)

2015 WL 1062756, at *55 (C.D. Cal. Feb. 23, 2015) ("[I]ndividualized issues
concerning reliance and scienter do not preclude classwide proof of plaintiffs'
GBL claim. Plaintiffs must, however, show materiality to demonstrate that
common questions predominate over individualized issues.").

The injury at issue here is the additional money spent by consumers on
Cymbalta because Lilly omitted the frequency, severity, and duration of Cymbalta
withdrawal.  Again, because Dr. Strafford seeks only statutory damages,
determining exactly how much consumers overpaid for Cymbalta because of
Lilly's deception is not necessary.  GBL Section 349 allows a plaintiff to recover
statutory damages of $50, upon a finding that the plaintiff has suffered some
injury.  GBL § 349(h).  The availability of statutory damages eliminates the need
to propose a method for calculating classwide damages.  *Guido v. L'Oreal, USA,
Inc.*, Nos. CV 11-1067 CAS (JCx), CV 11-5465 CAS (JCx), 2013 WL 3353857, at
*16 (C.D. Cal. July 1, 2013).  In *Guido*, for example, Judge Christina Snyder
certified a New York consumer class seeking statutory damages based on omission
of a product's risk.  2013 WL 3353857, at *16-17.

In another case focused on misleading advertising, the district court found
that common questions predominated regarding the plaintiffs' claims under GBL
Section 349, which were found to "depend on generalized evidence."  *In re Scotts
EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015).  The *Scotts EZ Seed* court
explained,

> Classwide evidence will be used to establish whether Scotts's labeling
> of EZ Seed was false, and if so, whether it was likely to mislead a
> reasonable consumer acting reasonably under the circumstances.
> Indeed, the Supreme Court has held materiality "is a question
> common to all members of the class" when, as here, the materiality of
> an alleged misrepresentation is judged according to an objective

> standard.  Likewise, classwide evidence will determine whether plaintiffs were injured. Plaintiffs allege they suffered economic harm when they paid for a worthless product, or when they paid a premium for EZ Seed based on the false 50% thicker claim.

*Id.* (quoting *Amgen*, 133 S. Ct. at 1191).  The *Guido* court applied similar reasoning:

> [L]iability under the New York statutes can be established with common proof.  Individualized proof of reliance is not necessary, and as explained above, whether a reasonable consumer would have been deceived by Serum's packaging is an objective inquiry that focuses on that packaging.  Common questions therefore predominate regarding L'Oreal's liability under the New York consumer protection statutes.

2013 WL 3353857, at *12.

Plaintiff's GBL Section 349 claim presents these same issues: whether Lilly's omission was likely to mislead a reasonable consumer, whether the information omitted was material, and whether Plaintiff and class members were injured by paying a premium for Cymbalta.  These are common questions and they predominate over any individual issues that may arise.

In sum, the significant questions posed by Plaintiff's claims are all common to the proposed classes.  As the Supreme Court reminded us in *Amgen*, Rule 23(b)(3) does not require that every aspect of a plaintiff's case be susceptible to classwide proof.  Rather, common questions must *predominate* over individual questions.  Here, Dr. Strafford has met that standard.  Common questions predominate over individual issues under both the Massachusetts and New York statutes.

### 2.    *Superiority*:  A class action is superior to other available methods of adjudication here.

Rule 23(b)(3) evaluates whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The superiority inquiry "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."  *Hanlon,* 150 F.3d at 1023.  The factors considered in assessing superiority are (1) the class members' interests in individually controlling the litigation, (2) the extent and nature of any litigation already begun, (3) the desirability of concentrating the litigation in the particular forum, and (4) and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).  The superiority inquiry focuses "on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser,* 253 F.3d at 1190.

Here, use of the class action device is superior to other available methods of adjudication.  The "damages suffered by each putative class member are not large," so the class action provides an efficient mechanism to vindicate the consumer interests of the putative subclasses.  *Id.*  Specifically, depending on the location of each class member's Cymbalta purchase, each class member's claim is either $25 or $50.  Members of the putative subclasses have little interest in individually controlling this litigation because the potential recovery of their Cymbalta purchase expenditures is slight compared to the cost of litigation.  Moreover, a class action is superior when, as here, many members of the putative subclasses are unaware that their consumer rights are being violated.  *See Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 682 (N.D. Cal. 2011).

The second and third factors weigh in favor of class certification.  Because this Court has already ruled in several preliminary matters, concentration of the

litigation in this forum is desirable.  *See, e.g.*, *Morelock Enters., Inc. v. Weyerhaeuser Co.*, No. CV 04-583-PA, 2004 WL 2997526, at *5 (D. Or. Dec. 16, 2004) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004)).

Finally, the Court should consider "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D).  This class action, involving only two states of the union, should not pose any manageability challenges beyond those typically present in a consumer class action—challenges that federal courts are well versed in managing.  Moreover, denial of certification on the sole ground of unmanageability is disfavored and should be considered the exception rather than the rule.  *In re Live Concert*, 247 F.R.D. at 148.

## V.   CONCLUSION

For all of the foregoing reasons, Dr. Strafford respectfully requests that the Court certify the proposed Massachusetts and New York Consumer Subclasses pursuant to Fed. R. Civ. P. 23 (b)(3), appoint Dr. Strafford as representative of the proposed classes, and appoint Dr. Strafford's Counsel as class counsel to represent the interests of the Massachusetts and New York Subclasses.

DATED this 1st day of June, 2015.

**KELLER ROHRBACK L.L.P.**

By: *<u>/s/ Michael D. Woerner</u>*
Lynn Lincoln Sarko, Esq., *admitted pro hac vice*
lsarko@kellerrohrback.com
Michael D. Woerner, Esq., *admitted pro hac vice*
mwoerner@kellerrohrback.com
Gretchen Freeman Cappio, Esq., *admitted pro hac vice*
gcappio@kellerrohrback.com
Havila Unrein, Esq., *admitted pro hac vice*
hunrein@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900 / Fax: (206) 623-3384

Juli E. Farris, Esq. (CA Bar No. 141716)
jfarris@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496 / Fax:(805) 456-1497

Mark D. Samson, Esq., *admitted pro hac vice*
msamson@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
3101 N. Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088 / Fax: (602) 248-2822

Michael L. Baum (SBN: 119511)
mbaum@baumhedlundlaw.com
Bijan Esfandiari (SBN: 223216)
besfandiari@baumhedlundlaw.com
R. Brent Wisner (SBN: 276023)
rbwisner@baumhedlundlaw.com
**BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.**
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel: (310) 207-3233 / Fax: (310) 820-7444

Samuel S. Deskin, Esq.
sam@deskinlawfirm.com
**DESKIN LAW FIRM, PLC**
16944 Ventura Blvd, Office
Encino, CA 91316
Tel.:  (800) 709-8978 / Fax: (800) 709-8971

Harris L. Pogust, Esq.
hpogust@pbmattorneys.com
T. Matthew Leckman, Esq.
MLeckman@pbmattorneys.com
**POGUST BRASLOW MILLROOD LLC**
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel.:  (800) 897-8930 / Fax:  (610) 941-4245

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Cate R. Brewer, hereby certify that on this 1st day of June, 2015, I electronically filed **NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23(b)(3) AS TO CLAIMS FOR STATUTORY DAMAGES ONLY** with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

*/s/ Cate R. Brewer*
Cate R. Brewer, Legal Assistant