FILED
CLERK, U.S. DISTRICT COURT

July 21, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_\_PMC\_\_\_\_\_ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER L. SAAVEDRA, DR. MELISSA STRAFFORD, CAROL JACQUEZ, and DAVID MATTHEWS, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>Defendant. | CASE NO. 2:12-cv-9366-SVW (MANx)<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(b)(3) AS TO STATUTORY DAMAGES CLAIMS ONLY [162] |

## I. INTRODUCTION

This is a putative class action arising from defendant Eli Lilly and Company's ("Lilly") alleged misrepresentations regarding its antidepressant, Cymbalta. Plaintiffs filed this action on October 31, 2012. In their corrected First Amended Complaint ("FAC"), Plaintiffs assert claims under four states' consumer protection laws. (Dkt. 44.) On December 18, 2014, this Court denied Plaintiffs' alternative motions for class certification pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(c)(4). (Dkt. 154.)

Plaintiffs now move to certify two subclasses of New York and Massachusetts consumers seeking minimum statutory damages provided under the respective laws of those states. (Dkt. 162.) For the reasons discussed below, the Court DENIES Plaintiffs' motion.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

Because the facts are well known to the parties, the Court here recites only those facts relevant to the instant motion. A more detailed description of the factual and procedural background may be found in the Court's December 18, 2014 Order. (Dkt. 154.)

Plaintiffs previously move to certify under Rule 23(b)(3) the class of:

> All natural persons within the Commonwealth of Massachusetts and the States of Missouri, New York, and California who purchased and/or paid for Cymbalta manufactured, distributed, and/or marketed by Lilly from Cymbalta's August 2004 launch until the present, divided into the following four subclasses:
>
> (1) A California UCL/FAL/CLRA class of consumers who purchased and/or paid for Cymbalta in California between August 2004 and the present;
>
> (2) A Missouri Merchandising Practices Act class of consumers who purchased and/or paid for Cymbalta in Missouri between August 2004 and the present;
>
> (3) A New York General Business Law §§ 349-350 class of consumers who purchased and/or paid for Cymbalta in New York between August 2004 and the present;
>
> (4) A Massachusetts General Law Chapter 93A class of consumers who purchased and/or paid for Cymbalta in Massachusetts between August 2004 and the present

(Dkt. 73: Ps' Mot. Class Cert. Pursuant to Rule 23(b)(3), at 2–3.) Plaintiffs also filed an alternative motion to certify a similarly defined issue class and subclasses under Rule 23(c)(4). (Dkt. 74.)

On December 18, 2014, the Court denied Plaintiffs' motions for class certification. (Dkt. 154.) In its December 18 Order, the Court rejected Plaintiffs' "unusual" theory of injury and damages. (Dkt. 154: Order at 5.) Plaintiffs did not assert that they were injured by being overcharged; instead they asserted that they were harmed because they received "a product that had less value than the value of the product as class members expected to receive it." (*Id.* at 6.) Plaintiffs asserted that they used "value" to mean consumer utility—which they defined as the "benefit consumers believe they will obtain by using or owning a product." (*Id.* at 6.) Plaintiffs planned to prove this harm by using conjoint analysis to determine the relative value the market places on the drug as represented compared to the drug as it allegedly exists. (*Id.* at 6–7.) The Court rejected Plaintiffs' proposed damages model because it looked only to the demand side of

2

the market, and because Plaintiffs proposed applying the "refund ratio" from the conjoint analysis to consumers' out-of-pocket costs. (*Id.* at 7–9.) The Court found applying the refund ratio to consumers' out-of-pocket costs problematic because the prescription drug market is quintessentially inefficient, and thus the relationship between price and value is severed. (*Id.* at 8–9.) In light of the Court's holding rejecting Plaintiffs' conjoint analysis model, the Court found that Plaintiffs failed to show that they could prove the requisite causation and injury on a classwide basis. (*Id.* at 11–13.) Accordingly, the Court found that Plaintiffs failed to show that common issues predominated and thus denied their motion to certify a class under Rule 23(b)(3). (*Id.* at 13–15.)

**III.   ANALYSIS**

Plaintiffs now move to certify New York and Massachusetts subclasses, to be represented by plaintiff Dr. Melissa Strafford ("Strafford").

**A.   Legal Standard**

A party seeking class certification must satisfy two requirements. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001). First, the moving party must show that the proposed class meets four criteria: (1) the members of the proposed class must be so numerous that joinder of all claims would be impracticable ("numerosity"); (2) there must be questions of law and fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of absent class members ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a).

Second, the moving party bears the burden of showing that the class fulfills the conditions of at least one of the three subdivisions of Rule 23(b). Plaintiffs assert that the two proposed classes meet the requirements for Rule 23(b)(3). To qualify for certification under this subsection, a class must satisfy two conditions: (1) common questions of law or fact must "predominate over any questions affecting only individual members," and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement is satisfied where

common questions comprise a significant portion of the case and can be resolved for all class members in one adjudication. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 576 (C.D. Cal. 2014). Rule 23(b)(3)'s predominance requirement also requires the moving party to show that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, ––– U.S. ––––, 133 S. Ct. 1426, 1433 (2013). Specifically, this requires plaintiffs to tie their method of proving damages to their theory of liability.[1] *Id.*

A party seeking to certify a class may not merely rest on his pleadings. Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are ***in fact*** sufficiently numerous parties, common questions of law or fact, etc." *Wal–Mart Stores, Inc. v. Dukes*, ––– U.S. ––––, 131 S.Ct. 2541, 2551 (2011) (emphasis added). Thus, a trial court is expected to engage in a "rigorous analysis" to determine if the moving party has discharged its burden. *Dukes*, 131 S.Ct. at 2551 (quoting *Falcon*, 457 U.S. at 161). This analysis often "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

**B.    Application**

Because Plaintiffs' motion for class certification mainly raises issues regarding predominance, the Court addresses that requirement first.

**1.    Predominance**

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, ––– U.S. ––––, 131 S. Ct. 2179, 2184 (2011) (quoting Rule 23(b)(3)). Here, Plaintiffs seek only minimum statutory damages of $25 and $50 provided under Massachusetts and New York laws, respectively. Thus, there is no question that they have adequately proposed a damages model. Nevertheless, they must still show that common questions predominate on the merits of their claims.

---

[1] Nevertheless, class certification is not defeated solely by the requirement to engage in individualized damages calculations. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (allowing class certification where individualized damages could readily be calculated from computerized payroll records).

4

Plaintiffs assert claims under New York General Business Law ("GBL") §§ 349-350 and Massachusetts General Law Chapter 93A ("Chapter 93A"). GBL § 349 requires proof that the plaintiff was injured as a result of the defendant's allegedly materially deceptive or misleading act. *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (1995)). Similarly, a claim under Chapter 93A requires proof that the defendant's allegedly unfair or deceptive act caused a loss. *Gathuru v. Credit Control Servs., Inc.*, 623 F. Supp. 2d 113, 123 (D. Mass. 2009) (quoting *Hershenow v. Enterprise Rent–A–Car Co. of Boston*, 840 N.E.2d 526, 533 (Mass. 2006)). The loss need not be economic. *Id.*

Plaintiffs assert that they were harmed because Lilly's alleged misrepresentations caused them to pay a price premium for Cymbalta. Plaintiffs claim that they will prove this injury by using Lilly's own pricing data and studies. This theory is either the a variant of the fraud-on-the-market theory that Plaintiffs previously disclaimed or it is the same seemingly subjective injury that the Court previously rejected. As noted in the Court's prior order, the prescription drug market is quintessentially inefficient—characterized by monopolistic and monopsonistic behavior, which is further complicated by the role of insurance copayments. Moreover, in arguing that they qualify for statutory damages because actual damages are difficult to determine, Plaintiffs admit that Cymbalta's "premium pricing affected class members to varying degrees because of the existence of health insurance and the varying terms of pharmaceutical benefits that can accompany it." (Pls.' Mem. P. & A. 16.) Plaintiffs thus admit that the Cymbalta market is informationally inefficient. Thus, Plaintiffs cannot show that the alleged misrepresentation caused them to overpay for Cymbalta under a fraud-on-the-market theory. *See In re POM Wonderful LLC*, ML 10-02199 DDP RZX, 2014 WL 1225184, at *3–4 (C.D. Cal. Mar. 25, 2014) (rejecting a "price premium" model of damages in a consumer class action because the plaintiffs failed to show that the goods at issue were sold in an efficient market).

To the extent that Plaintiffs again assert a seemingly subjective injury based on receiving a drug with less consumer utility than the drug as warranted, the Court has already considered and rejected this argument. The fact that Plaintiffs no longer need to quantify this subjective

5

injury in order to prove their requested statutory minimum damages does not change the fact that Plaintiffs fail to establish that causation and injury will be provable on a classwide basis.

To establish liability in accordance with their theory, Plaintiffs must show that Lilly's alleged misrepresentation caused the class to overpay for Cymbalta. Plaintiffs fail to show that this question can be determined with common proof for a class spanning a decade and including consumers who may have each paid different prices for Cymbalta depending on their insurance policy or other factors. Moreover, Plaintiffs must make this showing as to a product that is priced according to insurance copayments, monopolistic contracts, or a number of other informationally inefficient mechanisms. Finally, Plaintiffs admit that they can't readily quantify their overpayment injury because different class members were affected to different degrees. Plaintiffs apparently assume that though class members were affected to different degrees, each was affected to some degree. Plaintiffs offer no evidence that they can prove that class members suffered this injury using common proof—even if they don't have to quantify it.

Plaintiffs' proposal to use Lilly's own internal documents reflecting Lilly's marketing strategies is inapt. Evidence that Lilly's research showed that a significantly lower withdrawal risk was an attribute that could justify a price premium over other antidepressants does not show: (1) that Lilly actually charged a price premium for Cymbalta; (2) that this "price premium" was a premium over Cymbalta's true value rather than a premium relative to other antidepressants; or (3) that any price premium that Lilly negotiated with third party payers and other entities was passed along to consumers (who may have paid an insurance copayment or some other price).

Thus, for these reasons and for the reasons discussed in the Court's December 18 Order, the Court FINDS that Plaintiffs fail to show that common questions predominate. For the aforementioned reasons, the Court DENIES Plaintiffs' motion for class certification.[2]

///

///

///

---

[2] In light of the foregoing, the Court need not address Lilly's arguments regarding materiality and adequacy.

6

## IV. ORDER

For the aforementioned reasons, the Court DENIES Plaintiffs' motion to certify a class under Rule 23(b)(3).

**IT IS SO ORDERED.**

Dated: July 21, 2015

STEPHEN V. WILSON
United States District Judge